UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- x
STEPHEN STRUGALA, Individually and on : Civil Action No.
Behalf of All Others Similarly Situated, :
: CLASS ACTION
                    Plaintiff, :
: COMPLAINT FOR VIOLATION OF THE
       vs. : FEDERAL SECURITIES LAWS
:
JUMIA TECHNOLOGIES AG, JEREMY :
HODARA, SACHA POIGNONNEC, and :
ANTOINE MAILLET-MEZERAY, : DEMAND FOR JURY TRIAL
:
                    Defendants. :
:
---------------------------------------------------------- x

Plaintiff Stephen Strugala, individually and on behalf of all others similarly situated, alleges the following based upon information and belief as to the investigation conducted by Plaintiff's counsel, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings by Jumia Technologies AG ("Jumia" or the "Company"), securities analyst research reports, press releases, and other public statements issued by, or about, the Company. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action brought on behalf of all purchasers Jumia American Depositary Shares ("ADSs"), each representing two of the Company's Ordinary Shares, between April 12, 2019 and May 9, 2019, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. Sections 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. Section 240.10b-5. This Court has jurisdiction over the subject matter of this action under Section 27 of the Exchange Act, 15 U.S.C. Section 78aa, and 28 U.S.C. Section 1331, because this is a civil action arising under the laws of the United States.

3. Venue is proper in this District under Section 27(c) of the Exchange Act, 15 U.S.C. Section 78aa(c), and 28 U.S.C. Section 1391(b) - (d). Many of the acts complained of herein occurred, in substantial part, in this District, as the Company's Initial Public Offering ("IPO") was marketed in this District.

4. In connection with the acts alleged in this Complaint, Defendants (defined below) directly or indirectly, used the means and instrumentalities of interstate commerce, including, but

not limited to, the mails, interstate telephone communications and the facilities of the of the New York Stock Exchange ("NYSE"), a national securities exchange located in this District.

## PARTIES

5. Plaintiff Stephen Strugala, as set forth in the accompanying certification incorporated by reference herein, purchased Jumia ADSs during the Class Period and has been damaged thereby.

6. Defendant Jumia operates a pan-African e-commerce platform. The Company maintains its principal executive offices in Berlin, Germany and its ADSs are listed and trade on the NYSE under the ticker symbol "JMIA."

7. Defendant Jeremy Hodara ("Hodara") is, and was at all relevant times, Jumia's Co-Chief Executive Officer and a member of its Management Board.

8. Defendant Sacha Poignonnec ("Poignonnec") is, and was at all relevant times, Jumia's Co-Chief Executive Officer and a member of its Management Board.

9. Defendant Antoine Maillet-Mezeray ("Maillet-Mezeray") is, and was at all relevant times, Jumia's Chief Financial Officer and Principal Accounting Officer.

10. Defendants Hodara, Poignonnec and Maillet-Mezeray are collectively referred to hereinafter as the "Individual Defendants." Unless otherwise noted, Jumia and the Individual Defendants are collectively referred to herein as "Defendants."

11. Because of the Individual Defendants' executive positions, they each have had access to the undisclosed adverse information about Jumia's business, operations, services, operational trends, markets, and present and future business prospects via internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof.

12. It is appropriate to treat Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein, are the collective actions of the narrowly defined group of Defendants identified above. Each of the Individual Defendants were directly involved in the management and day-to-day operations of the Company at the highest levels and were privy to confidential proprietary information concerning the Company and its business, operations, growth, services and present and future business prospects, as alleged herein. In addition, the Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, the false and misleading statements being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

13. As officers and controlling persons of a publicly-held company whose ADSs are registered with the SEC pursuant to the Exchange Act and trade on the NYSE, which is governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to promptly disseminate accurate and truthful information with respect to the Company's operations, business, services, markets, management, sales and cost trends and present and future business prospects. In addition, the Individual Defendants each had a duty to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded ADSs would be based upon truthful and accurate information. Defendants' false and misleading misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

14. The Individual Defendants, because of their positions of control and authority as Officers and/or Directors of the Company, were able to, and did, control the content of the various


SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading before or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each Individual Defendant is responsible for the accuracy of the public statements detailed herein and is, therefore, primarily liable for the representations contained therein.

15.     Each Defendant is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Jumia ADSs by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Jumia's business, operations, services, markets, management, sales and cost trends, demands, present and future business prospects, and the intrinsic value of Jumia ADSs; (ii) enabled the Company to conduct its IPO and sell ADSs pursuant thereto at an artificially inflated price; and (iii) caused Plaintiff and the Class to purchase Jumia publicly-traded ADSs at artificially inflated prices.

## SUBSTANTIVE ALLEGATIONS

16.     Defendant Jumia characterizes itself as the leading pan-African e-commerce platform, which it represents to consist of: (i) a marketplace that connects sellers with consumers; (ii) a package shipment and delivery service; and (iii) a payment service.

17.     Although Jamia's business had historically been conducted through Africa Internet Holding GmbH, and its subsidiaries, on December 17 and 18, 2018, the Company changed its legal form into a German stock corporation (Aktiengesellschaft) and changed its name to Jumia Technologies AG. These changes became effective on January 31, 2019, upon registration with the commercial register of the local court (Amtsgericht) in Berlin, Germany.

18. On March 12, 2019, Jumia filed with the SEC a Form F-1 Registration Statement (the "Registration Statement") for the IPO. The Registration Statement, as amended, was signed by Defendants Hodara, Poignonnec and Maillet-Mezeray and declared effective by the SEC on April 10, 2019.

19. On April 15, 2019, Jumia filed with the SEC a prospectus (the "Prospectus") for the IPO, which forms part of the Registration Statement, offering to sell to the public 15.525 million ADSs (including the underwriters' option to purchase an additional 2.025 million ADSs) at a price of $14.50 per ADS. Thereafter, Jianpu sold 15.525 million ADSs in the IPO and raised approximately $280.2 million therefrom, net of underwriting discounts and commissions and other offering expenses.

20. According to the Registration Statement, the Company's operations are conducted in six regions in Africa, which consist of 14 countries that, together, accounted for 72% of Africa's 2018 Gross Domestic Product. The Registration Statement states Jumia intends to benefit from the expected growth of e-commerce in Africa through the investments and local expertise the Company developed since its founding in 2012.

21. The Registration Statement issued in connection with the IPO was materially false and misleading and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading. These materially false and misleading statements and omissions remained alive and uncorrected during the Class Period.

22. On May 9, 2019, Citron Research issued a research report (the "Citron Report") announcing "Jumia is a Fraud" that "deserves immediate SEC attention." Citron Research publishes an online investment newsletter that, according to its website, has "amassed a track

record identifying fraud and terminal business models second to none among any published business source" over its 17 year existence, with more than 50 companies it highlighted becoming targets of regulatory interventions. Citron Research's website further notes that its reports are based upon the findings of a team of investigators, led by Andrew Left, its founder, who has been quoted in major financial publications, including *Forbes*, *Fortune*, *Wall Street Journal*, *Barron's*, *CNBC*, *Investors' Business Daily*, *and Business Week*.

23. According to the Citron Report, while media in the U.S. naively anointed Jumia the "Amazon of Africa," numerous articles have been issued in its home country of Nigeria claiming widespread fraud at the Company. For example, the Citron Report states, in pertinent part:

> The systemic fraud at Jumia had not been overlooked by local Nigerian newspapers as they articulate the issue clearer than Citron can. An investigation by Nigerian news reporters described Jumia as follows:
>
> - "Cuts a picture of a fast-growing e-commerce company" but "beneath what is painted is a company struggling to survive over internal fraudulent activities."
>
> - Jumia is "sitting on gun powder which might explode any moment as the retail outfit is filled with many shady deals."
>
> \*    \*    \*
>
> Local media commented that their investigation revealed that many top directors of Jumia were engaging in serious acts of fraud including diverting money that was supposed to be used for projects into their own bank accounts and using director owned private companies to accept Jumia orders while receiving advance payments but never fulfilling the orders. In some cases, these fraudsters were relatives of senior management and "the directors would sweep the case under the carpet in order to avoid public scrutiny".

24. Citron Report further notes that just prior to the IPO, Jumia issued a confidential investor presentation in October 2018 during a capital raising effort. According to the Citron Report, "many material discrepancies in reported key financial metrics" exist between the Registration Statement and the confidential investor presentation, including, in pertinent part:

**Citron** RESEARCH

## Material Discrepancy in Reported Key Financials Metrics

We are sure that when the SEC investigates Jumia we will get endless details on fraud, but here's a sample of the significant discrepancies we found:

|  | Jumia Confidential Presentation (October 2018) | Jumia F-1 (April 2019) |
|---|---|---|
| 2017 Active Consumers (in millions) | 2.1 | 2.7 |
| 2017 Active Merchants (in thousands) | 43 | 53 |

In order to raise more money from investors, Jumia **inflated its active consumers and active merchants figures by 20-30% (FRAUD)**.

The most disturbing disclosure that Jumia removed from its F-1 filing was that **41% of orders were returned, not delivered, or cancelled**. This was previously disclosed in the Company's October 2018 confidential investor presentation. This number is so alarming that is screams **fraudulent activities**.

Instead, Jumia disclosed that "orders accounting for 14.4% of our GMV were either failed deliveries or returned by our consumers" in 2018. Assuming 41% of orders were returned, not delivered, or cancelled in 2018, this implies that **almost 30% of orders were cancelled in 2018**. Since Jumia primarily sells consumer electronics, which should not have this high of a cancellation rate, it wreaks of fraud.

5

25. In response to the issuance of the Citron Report, the price of Jumia ADSs declined approximately *28%* on heavy trading volume over a two-day period, from $33.11 per ADS on May 8, 2019 to $24.50 per ADS on May 10, 2019.

**Materially False and Misleading
Statements Issued During the Class Period**

26. The Class Period begins on April 12, 2019, the first day Jumia ADSs traded on the NYSE. Prior thereto, on April 10, 2019, Jumia issued the Registration Statement, as amended, that contained materially false and misleading statements and omissions about the Company's orders, order cancellations, undelivered orders, returned orders, active consumers, active merchants and related party transactions. These materially false and misleading statements and omissions remained alive and uncorrected during the Class Period

27. On April 15, 2019, Jumia filed the Prospectus with the SEC. The Prospectus contained materially false and misleading statements and omissions about the Company's orders,

- 7 -

order cancellations, undelivered orders, returned orders, active consumers, active merchants and related party transactions.

28. The statements referenced in ¶¶26-27 above were materially false and misleading when made because they misrepresented and failed to disclose the following adverse facts, which were known to Defendants or recklessly disregarded by them as follows:

(a) that Jumia had materially overstated its active customers and active merchants;

(b) that Jumia's representations about its orders, order cancellations, undelivered orders and returned orders lacked a sufficient factual basis and materially overstated the Company's sales;

(c) that Jumia failed to sufficiently disclose related party transactions; and

(d) that Jumia's financial statements were presented in violation of applicable accounting standards.

29. On May 9, 2019, Citron Research issued the Citron Report announcing "Jumia is a Fraud" that "deserves immediate SEC attention." In response to the revelations contained in the Citron Report, the price of Jumia ADSs declined approximately *28%* on heavy trading volume over a two-day period, from $33.11 per ADS on May 8, 2019 to $24.50 per ADS on May 10, 2019.

30. The market for Jumia ADSs was open, well-developed and efficient at all relevant times. As a result of the alleged materially false and/or misleading statements, and/or omissions of material fact alleged herein, Jumia ADSs traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased Jumia ADSs relying upon the integrity of the market price of Jumia ADSs and market information relating to Jumia, and have been damaged thereby.

31. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Jumia ADSs, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and its operations, as alleged herein.

32. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused, or were a substantial contributing cause of, the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false or misleading statements about Jumia's business and its operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Jumia, its business, financial reporting, services, and financial prospects and thus causing the Company's ADSs to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing Jumia ADSs at artificially inflated prices, thus causing the damages complained of herein.

**Additional Scienter Allegations**

33. As alleged herein, Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. Defendants, by virtue of their receipt of information reflecting the true facts regarding Jumia, their

control over, and/or receipt and/or modification of Jumia's allegedly materially misleading misstatements and/or their associations with the Company, which made them privy to confidential proprietary information concerning Jumia, participated in the fraudulent scheme alleged herein.

34.     The fraudulent scheme described herein could not have been perpetrated during the Class Period without the knowledge and complicity of, or at least the reckless disregard by, personnel at the highest levels of the Company, including Individual Defendants.  Given their executive level positions with Jumia, Individual Defendants controlled the contents of Jumia's public statements during the Class Period.  Individual Defendants were each provided with or had access to the information alleged herein to be false and/or misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information, the Individual Defendants knew and/or recklessly disregarded that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations that were being made were false and misleading.  As a result, each of the Individual Defendants were responsible for the accuracy of Jumia's corporate statements and are, therefore, responsible and liable for the representations contained therein.

35.     Plaintiff also alleges that the scienter of Defendants Hodara, Poignonnec and Maillet-Mezeray can be imputed to Jumia.  Defendants Hodara, Poignonnec and Maillet-Mezeray each served as executive officers of Jumia, knew or recklessly ignored facts related to the core operations of the Company, and signed the materially false and misleading Registration Statement.

36.     Defendants were also motivated to engage in this course of conduct to facilitate and maximize the amount of funding Jumia could raise on favorable terms from its IPO.  On April 23,

2019, Jumia filed a Form 6-K with the SEC announcing that it received net proceeds of $280.2 million from the IPO.

## LOSS CAUSATION

37. As detailed herein, during the Class Period, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Jumia ADSs. This scheme operated as a fraud or deceit on Class Period purchasers of Jumia ADSs by failing to disclose and misrepresenting the adverse facts detailed herein. When Defendants' prior misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the price of Jumia ADSs declined significantly as the prior artificial inflation came out of the price of Jumia ADSs.

38. By concealing from investors the adverse facts detailed herein, Defendants presented a misleading picture of Jumia's business, prospects and operations. Defendants' false and misleading statements had the intended effect and caused Jumia ADSs to trade at artificially inflated levels throughout the Class Period, reaching as high as $49.77 per ADS on April 17, 2019. As a result of their purchases of Jumia ADSs at artificially inflated prices during the Class Period, Plaintiff and the other Class members suffered economic loss, *i.e.,* damages, under the federal securities laws.

39. When the truth about the Company was revealed to the market, the price of Jumia ADSs fell significantly. The decline removed the inflation from the price of Jumia ADSs, causing real economic loss to investors who had purchased Jumia ADSs during the Class Period. The decline in the price of Jumia ADSs, when the corrective disclosure came to light, was a direct result of the nature and extent of Defendants' fraudulent misrepresentations being revealed to investors and the market. The timing and magnitude of the price decline in Jumia ADSs negates any inference that the loss suffered by Plaintiff and the other Class members was caused by

changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to Defendants' fraudulent conduct.

40. The economic loss, i.e., damages, suffered by Plaintiff and the other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the price of Jumia ADSs and the subsequent significant decline in the value of Jumia ADSs when Defendants' prior misrepresentations and other fraudulent conduct were revealed.

### APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET DOCTRINE

41. At all relevant times, the market for Jumia ADSs was an efficient market for the following reasons, among others:

(a) Jumia ADSs met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient, national stock market;

(b) as a regulated issuer, Jumia filed periodic public reports with the SEC and the NYSE;

(c) Jumia regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d) Jumia was followed by securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

42. As a result of the foregoing, the market for Jumia ADSs promptly digested current information regarding Jumia from all publicly available sources and reflected such information in

the price of the Jumia ADSs.  Under these circumstances, all purchasers of Jumia ADSs during the Class Period suffered similar injury through their purchase of Jumia ADSs at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

43.     The statutory safe harbor provided for forward-looking statements under the Private Securities Litigation Reform Act of 1995 does not apply to any of the allegedly false statements plead in this Complaint.  The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.  In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not adequately identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Jumia who knew that the statement was false when made.

## COUNT I

### Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants

44.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

45.     During the Class Period, Defendants disseminated or approved the materially false and misleading statements specified above, which they knew or deliberately disregarded were

misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

46. Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements made not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company ADSs during the Class Period.

47. Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Jumia ADSs. Plaintiff and the Class would not have purchased Jumia ADSs at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

48. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of Jumia ADSs during the Class Period.

## COUNT II

**Violation of Section 20(a) of
the Exchange Act Against the Individual Defendants**

49. Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

50. The Individual Defendants acted as controlling persons of Jumia within the meaning of Section 20(a) of the Exchange Act.

51. By virtue of their positions as officers and/or directors of Jumia, and/or their ownership of Jumia ADSs, the Individual Defendants had the power and authority to, and did, cause Jumia to engage in the wrongful conduct alleged.

52. As a direct and proximate result of the Individual Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of Jumia ADSs during the Class Period.

53. By reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, on behalf of himself and the Class, prays for judgment as follows:

A. Designating Plaintiff as Lead Plaintiff and declaring this action to be a class action properly maintained pursuant to Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

B. Awarding the Plaintiff and other members of the Class damages together with interest thereon;

C. Awarding the Plaintiff and other members of the Class their costs and expenses of this litigation, including reasonable attorneys' fees, expert fees and other costs and disbursements; and

D. Awarding the Plaintiff and other members of the Class such other and further relief as the Court deems just and proper under the circumstances.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

DATED: May 14, 2019

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD

*/s/ Samuel H. Rudman*
SAMUEL H. RUDMAN

58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com

HOLZER & HOLZER, LLC
COREY D. HOLZER
1200 Ashwood Parkway, Suite 410
Atlanta, GA 30338
Telephone: 770/392-0090
770/392-0029 (fax)
cholzer@holzerlaw.com

*Attorneys for Plaintiff*

# CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

The undersigned declares, as to the claims asserted under the federal securities laws, that:

Plaintiff has reviewed the initial complaint filed in this action.

Plaintiff did not purchase and/or acquire the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action under the federal securities laws.

Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary. I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Plaintiff Certification.

Plaintiff's transactions in the security that is the subject of this action during the Class Period are as follows:

Purchases:

| Name of Company | Date(s) Purchased | # Shares Purchased | Cost/Share |
|---|---|---|---|
| JMIA | 05/08/2019 | 100 | $34.7131 |

Sales:

| Name of Company | Date(s) Sold | # Shares Sold | Proceeds/Share |
|---|---|---|---|
| JMIA | 05/10/2019 | 100 | $21.1346 |

During the three (3) years prior to the date of this certification, Plaintiff has not sought to serve or served as a class representative in an action filed under the federal securities laws except for the following (if any):

None

Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this __14__ day of __May__, 2019 in __Santa Monica__, __California__.
　　　　　　　　　　　　　　　　　　　　　　　City　　　　　　　　　State

(Signature) X _____ /s/ Stephen Strugala _____
　　　　　　　　　　　DocuSigned by: 476B60E12861478...

(Print Name) __Stephen Strugala__