**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STEPHEN STRUGALA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>JUMIA TECHNOLOGIES AG, JEREMY HODARA, SACHA POIGNONNEC, and ANTOINE MAILLET-MEZERAY,<br><br>Defendants. | Civil Action No.: 1:19-cv-04397-PKC<br><br><u>CLASS ACTION</u><br><br>Hon. P. Kevin Castel |
| LUO ZHI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>JUMIA TECHNOLOGIES AG, JEREMY HODARA, SACHA POIGNONNEC, and ANTOINE MAILLET-MEZERAY,<br><br>Defendants. | Civil Action No.: 1:19-cv-04952-PKC<br><br><u>CLASS ACTION</u><br><br>Hon. P. Kevin Castel |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF RYAN C. HEIST FOR CONSOLIDATION OF THE ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND <u>APPROVAL OF SELECTION OF LEAD COUNSEL</u>**

Case 1:19-cv-04397-PKC   Document 15   Filed 07/15/19   Page 2 of 17

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND .................................................................................................... 2

ARGUMENT ............................................................................................................................ 4

    I.      THE RELATED ACTIONS SHOULD BE CONSOLIDATED .................................. 4

    II.    THE COURT SHOULD APPOINT MOVANT AS LEAD PLAINTIFF.................... 5

        A.     The PSLRA's Provisions Concerning the Appointment of Lead Plaintiff ............. 5

        B.     Movant Satisfies the Lead Plaintiff Provisions of the PSLRA ............................. 7

            1.     Movant Filed a Timely Motion......................................................................... 7

            2.     Movant Has the Largest Financial Interest in the Relief Sought By the Class. 8

            3.     Movant Meets Rule 23's Typicality and Adequacy Requirements .................. 9

                (i)    Movant's Claims Are Typical of the Claims of the Class............................ 10

                (ii)   Movant Will Fairly and Adequately Protect the Interests of the Class ........ 11

    III.   APPOINTING MOVANT'S CHOICE OF COUNSEL AS LEAD PLAINTIFF IS
          APPROPRIATE.................................................................................................... 12

CONCLUSION...................................................................................................................... 13

## TABLE OF AUTHORITIES

**Cases**

*Bevinal v. Avon Prods.,*
2019 U.S. Dist. LEXIS 93368 (S.D.N.Y. June 3, 2019) .......................................................... 7

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.,*
252 F.R.D. 188 (S.D.N.Y. 2008) ............................................................................................... 9

*In re Drexel Burnham Lambert Grp., Inc.,*
960 F.2d 285 (2d Cir. 1992) .................................................................................................... 10

*In re eSpeed, Inc., Sec. Litig.,*
232 F.R.D. 95 (S.D.N.Y. 2005) ................................................................................................ 1

*Foley v. Transocean Ltd.,*
272 F.R.D. 126 (S.D.N.Y. 2011) .......................................................................................... 6, 8

*Gen. Tel. Co. of the Southwest v. Falcon,*
457 U.S. 147 (1982) ................................................................................................................ 10

*In re GE Secs. Litig.,*
No. 09-Civ.-1951 (DC), 2009 U.S. Dist. LEXIS 69133 (S.D.N.Y. July 29, 2009) ................ 11

*Johnson v. Celotex Corp.,*
899 F.2d 1281 (2d Cir. 1990) .................................................................................................... 5

*Kaplan v. Gelfond,*
240 F.R.D. 88 (S.D.N.Y. 2007) ................................................................................................ 8

*In re Milestone Scientific Sec. Litig.,*
183 F.R.D. 404 (D.N.J. 1998) ................................................................................................. 12

*Mitchell v. Complete Mgmt., Inc.,*
No. 99-cv-1454, 1999 U.S. Dist. LEXIS 14460 (S.D.N.Y. Sept. 17, 1999) ............................ 5

*In re Orion Sec. Litig.,*
No. 08 Civ. 1328 (RJS), 2008 U.S. Dist. LEXIS 55368 (S.D.N.Y. July 8, 2008) ................. 10

*In re Oxford Health Plans, Inc. Sec. Litig,*
182 F.R.D. 42 (S.D.N.Y.) .......................................................................................................... 9

*Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.,*
275 F.R.D. 187 (S.D.N.Y. 2011) ............................................................................................. 11

*Primavera Familienstifung v. Askin,*
173 F.R.D. 115 (S.D.N.Y. 1997) .............................................................................................. 5

*Reimer v. Ambac Fin. Group, Inc.*,
   No. 0-Civ.-411 (NRB), 2008 U.S. Dist. LEXIS 38729 (S.D.N.Y. May 9, 2008) .................. 11

*Richman v Goldman Sachs Grp*,
   274 F.R.D. 473 (S.D.N.Y. 2011) ....................................................................................... 10

*Strougo v. Brantley Capital Corp.*,
   243 F.R.D. 100 (S.D.N.Y. 2007) ......................................................................................... 9

*Takeda v. Turbodyne Techs., Inc.*,
   67 F. Supp. 2d 1129 (C.D. Cal. 1999) ................................................................................. 5

*Weiss v. Friedman, Billings, Ramsey Group, Inc.*,
   05-cv-4617 (RJH), 2006 U.S. Dist. LEXIS 3028 (S.D.N.Y. Jan. 24, 2006) ........................... 8

*Weisz v. Calpine Corp.*,
   No. 02-cv-1200, 2002 U.S. Dist. LEXIS 27831 (N.D. Cal. Aug. 19, 2002) ........................... 5

*Weltz v. Lee*,
   199 F.R.D. 129 (S.D.N.Y. 2001) ...................................................................................... 4, 8

**Statutes**

15 U.S.C. § 78u-4(a)(3)(A) ................................................................................................. 6, 7

15 U.S.C. § 78u-4(a)(3)(A)(i) ............................................................................................... 7

15 U.S.C. § 78u-4(a)(3)(B) ........................................................................................... passim

15 U.S.C. § 78u-4(a)(3)(B)(i) ................................................................................................ 6

15 U.S.C. § 78u-4(a)(3)(B)(iii) .......................................................................................... 8, 9

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ..................................................................................... 6, 12

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc) .................................................................................... 9

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) ................................................................................. 12

15 U.S.C. § 78u-4(a)(3)(B)(v) ............................................................................................. 12

15 U.S.C. § 78u-4(e) ............................................................................................................ 8

**Rules**

Fed. R. Civ. P. 23(a) ............................................................................................................ 2

Fed. R. Civ. P. 42(a) ............................................................................................................ 4

Movant Ryan C. Heist ("Movant"), on behalf of himself and all similarly situated persons, respectfully submit this Memorandum of Law in support of his motion ("Motion"): (1) consolidating the above-captioned Related Actions;[1] (2) appointing Movant as Lead Plaintiff on behalf of all persons or entities who purchased or otherwise acquired American Depositary Shares ("ADSs") of Jumia Technologies AG ("Jumia" or the "Company") from April 12, 2019 and May 9, 2019, both dates inclusive; (3) approving Movant's selection of the law firm of Levi & Korsinsky, LLP ("Levi & Korsinsky") as Lead Counsel for the putative class; and (4) granting such other and further relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

Presently pending before the Court are two related securities class actions brought on behalf of all persons who purchased or otherwise acquired ADSs of Jumia from April 12, 2019 and May 9, 2019, both dates inclusive (the "Class Period"). Plaintiffs in the Related Actions allege violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§78j(b) and 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. §240.10b-5.

The Private Securities Litigation Reform Act of 1995, as amended, 15 U.S.C. §78u-4(a)(3)(B) (the "PSLRA"), provides for the Court to appoint as lead plaintiff the movant that has the largest financial interest in the litigation and has made a *prima facie* showing that he, she, or it is an adequate class representative under Rule 23 of the Federal Rules of Civil Procedure. *See In re eSpeed, Inc., Sec. Litig.*, 232 F.R.D. 95, 102 (S.D.N.Y. 2005) ("At the lead plaintiff stage of the litigation, the parties moving for lead of the consolidation action need only make a preliminary

---

[1] The "Related Actions" pending in this Court are: *Strugala v. Jumia Technologies AG, et al.*, C.A. No. 1:19-cv-04397 (the "*Strugala* Action") and *Zhi v. Jumia Technologies AG, et al.*, C.A. No. 1:19-cv-04952 (the "*Zhi* Action").

1

showing that it satisfies the typicality and adequacy requirements of Rule 23.") (quotations omitted). Movant has lost approximately $37,828.76 as a result of the alleged fraud during the Class Period.[2] Movant believes that he has the largest financial interest in the outcome of this case. Moreover, Movant satisfies the requirements of Rule 23 in that his claims are typical of the claims of the Class, and he will fairly and adequately represent the interests of the Class.[3]

For the reasons summarized herein and discussed more fully below, Movant's Motion should be approved in its entirety.

## FACTUAL BACKGROUND

Jumia characterizes itself as the leading pan-African e-commerce platform, which, according to Jumia, consists of a marketplace that connects sellers with consumers, a package shipment and delivery service, and a payment service. ¶ 2[4]. While Jumia's business had historically been conducted through Africa Internet Holding GmbH and its subsidiaries, on December 17 and 18, 2018, the Company changed its legal form into a German stock corporation (Aktiengesellschaft) and changed its name to Jumia Technologies AG. ¶ 3. These changes became effective on January 31, 2019, upon registration with the commercial register of the local court (Amtsgericht) in Berlin, Germany. *Id.*

On March 12, 2019, Jumia filed a Form F-1 Registration Statement with the SEC (the "Registration Statement") for the Company's initial public offering ("IPO"). ¶ 4. Then, on April

---

[2] Certifications identifying Movant's transactions in Jumia, as required by the PSLRA, as well as charts identifying his losses, are attached to the Declaration of Gregory M. Nespole, dated July 15, 2019 ("Nespole Decl."), as Exhibits A and B, respectively.

[3] The "Class" is comprised of all persons, other than defendants, who purchased or otherwise acquired Jumia ADSs during the Class Period.

[4] Citations to "¶ __" are to paragraphs of the Class Action Complaint (the "Complaint") filed in the *Zhi* Action on May 28, 2019. Unless otherwise defined, capitalized terms shall have the same meaning set forth in the Complaint. The facts set forth in the Complaint are incorporated herein by reference.

15, 2019, Jumia filed a prospectus with the SEC for the IPO (the "Prospectus"), which forms part of the Registration Statement, offering to sell to the public 15.525 million ADSs (including the underwriters' option to purchase an additional 2.025 million ADSs) at a price of $14.50 per ADS. ¶ 5. Thereafter, Jumia sold 15.525 million ADSs in the IPO and raised approximately $280.2 million therefrom, net of underwriting discounts and commissions and other offering expenses. *Id.*

According to the Registration Statement, the Company's operations are conducted in six regions in Africa, which consist of fourteen countries that, together, accounted for 72% of Africa's 2018 Gross Domestic Product. ¶ 6. The Registration Statement states that Jumia intends to benefit from the expected growth of e-commerce in Africa through the investments and local expertise the Company developed since its founding in 2012. *Id.*

The Registration Statement issued in connection with the IPO was materially false and misleading and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading. ¶ 7. These materially false and misleading statements and omissions remained alive and uncorrected during the Class Period. Specifically, Defendants failed to disclose the following adverse facts, which were known to Defendants or recklessly disregarded by them as follows: (i) that Jumia had materially overstated its active customers and active merchants; (ii) that Jumia's representations about its orders, order cancellations, undelivered orders, and returned orders lacked a sufficient factual basis and materially overstated the Company's sales; (iii) that Jumia failed to sufficiently disclose related party transactions; and (iv) that Jumia's financial statements were presented in violation of applicable accounting standards. *Id.*

On May 9, 2019, the investment research firm Citron Research issued a report (the "Citron Report") announcing "Jumia is a Fraud" that "deserves immediate SEC attention." ¶ 8. According

3

to the Citron Report, while media in the U.S. naively anointed Jumia the "Amazon of Africa," numerous articles were issued in its home country of Nigeria claiming widespread fraud at the Company. *Id.*

The Citron Report further noted that, just prior to the IPO, Jumia issued a confidential investor presentation in October 2018 during a capital raising effort. ¶ 9. According to the Citron Report, "many material discrepancies in reported key financial metrics" exist between the Registration Statement and the confidential investor presentation, including, its reported active consumers and active merchants. *Id.*

In response to the issuance of the Citron Report, the price of Jumia ADSs declined over 26% on heavy trading volume over a two-day period, from $33.11 per ADS on May 8, 2019 to $24.50 per ADS on May 10, 2019, causing class members to suffer significant losses and damages. ¶ 10.

## ARGUMENT

### I.     THE RELATED ACTIONS SHOULD BE CONSOLIDATED

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this [sub-]chapter has been filed," the Court shall not make the determination of the most adequate plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. §78u-4(a)(3)(B)(ii). Thereafter, the Court "shall appoint the most adequate plaintiff for the consolidated actions." *Id.*

Under Rule 42(a) of the Federal Rules of Civil Procedure, consolidation is appropriate when the actions involve common questions of law or fact. *See* Fed. R. Civ. P. 42(a); *Weltz v. Lee*, 199 F.R.D. 129, 131 (S.D.N.Y. 2001) ("[C]ourts have taken the view that considerations of judicial economy favor consolidation." (quoting *Johnson v. Celotex Corp.,* 899 F.2d 1281, 1284-85 (2d

Cir. 1990)); *see also Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1132-33 (C.D. Cal. 1999). Consolidation is particularly appropriate in securities class action litigation such as this. *See Mitchell v. Complete Mgmt., Inc.*, 1999 U.S. Dist. LEXIS 14460, at *4 (S.D.N.Y. Sept. 17, 1999) ("In securities actions where the complaints are based on the same 'public statements and reports' consolidation is appropriate if there are common questions of law and fact . . . .") (citation omitted); *Primavera Familienstifung v. Askin*, 173 F.R.D. 115, 129 (S.D.N.Y. 1997) (same). Courts, therefore, routinely find that consolidating multiple securities cases is an efficient solution where the complaints arise generally from the same alleged false and misleading statements. *See, e.g.*, *Weisz v. Calpine Corp.*, 2002 U.S. Dist. LEXIS 27831, at *7-8 (N.D. Cal. Aug. 19, 2002); *Takeda*, 67 F. Supp. 2d at 1132-33 (consolidation appropriate in securities class actions).

The Related Actions pending before this Court present similar factual and legal issues, as they both involve the same subject matter and are based on the same wrongful course of conduct. Each names Jumia and certain of its officers and/or directors as defendants. Because the Related Actions arise from the same facts and circumstances and involve the same subject matter, the same discovery and similar class certification issues will be relevant to all Related Actions. Accordingly, consolidation under Rule 42(a) is appropriate. *See Celotex Corp.*, 899 F.2d at 1285.

## II.      THE COURT SHOULD APPOINT MOVANT AS LEAD PLAINTIFF

### A.      The PSLRA's Provisions Concerning the Appointment of Lead Plaintiff

Once the Court decides the consolidation motion, the PSLRA mandates that the Court decide the lead plaintiff issue "[a]s soon as practicable." 15 U.S.C. §78u-4(a)(3)(B)(ii). The PSLRA establishes the procedure for appointment of the lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a) and (a)(3)(B).

5

*First,* the PSLRA provides that within 20 days after the date on which the first class action is filed, the plaintiff to that action shall cause to be published in a widely circulated national business publication or wire service, a notice advising members of the proposed class of the pendency of the action and their right to move for appointment as lead plaintiff within 60 days of the notice publication. *See Foley v. Transocean Ltd.*, 272 F.R.D. 126, 127 (S.D.N.Y. 2011) (citing 15 U.S.C. §78u-4(a)(3)(A)).

Under 15 U.S.C. §78u-4(a)(3)(B)(i), the Court will, no later than 90 days after the date on which a notice is published, consider any motion filed by a purported class member in response to the notice and appoint as lead plaintiff the plaintiff that the court determines to be "most capable of adequately representing the interests of class members." The PSLRA provides a presumption that the most "adequate plaintiff" to serve as lead plaintiff is the "person or group of persons" that:

(aa)   has either filed the complaint or made a motion in response to a notice;

(bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted only upon proof by a Class member that the presumptive most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II).

As set forth below, Movant has complied with the procedural prerequisites of the PSLRA and sustained, to the best of his knowledge, the largest financial interest in the litigation of any other Class member(s) seeking appointment as lead plaintiff. Movant is also unaware of any unique

defenses that Defendants could raise against him. Therefore, Movant is entitled to the presumption that he is the most adequate plaintiff to represent the Class and, as a result, should be appointed lead plaintiff in the consolidated action.

### B.      Movant Satisfies the Lead Plaintiff Provisions of the PSLRA

As described in further detail below, Movant should be appointed lead plaintiff because he satisfies all of the requirements of the PSLRA. Movant filed a timely motion to be appointed lead plaintiff, holds the largest financial interest in the relief sought by the Class and satisfies the typicality and adequacy requirements of Rule 23.

### 1.      Movant Filed a Timely Motion

On May 14, 2019, which was within twenty (20) days of the filing of the first-filed complaint as required by 15 U.S.C. §78u-4(a)(3)(A)(i), plaintiff in the *Strugala* Action published notice of that action over *Business Wire*, a widely circulated national business-oriented wire service. *See* Nespole Decl., Ex. C; *see also Bevinal v. Avon Prods.,* 2019 U.S. Dist. LEXIS 93368, at \*1 (S.D.N.Y. June 3, 2019) (considering filing a notice on *Business Wire* to be sufficient to satisfy the PSLRA's notice requirement). Consequently, any member of the proposed Class was required to seek appointment as lead plaintiff within 60 days after publication of that notice. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). Therefore, the time period in which class members may move to be appointed lead plaintiff herein under 15 U.S.C. § 78u-4(a)(3)(A) and (B) expires on July 15, 2019. Pursuant to the PSLRA and within the requisite time frame after publication of the required notice, Movant herein timely moves this Court to be appointed lead plaintiff on behalf of all members of the Class.

### 2. Movant Has the Largest Financial Interest in the Relief Sought By the Class

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the Court shall appoint as lead plaintiff the movant or movants with the largest financial loss in the relief sought by the action. As demonstrated herein, Movant has the largest known financial interest in the relief sought by the Class. *See* Nespole Decl., Ex. B. The movant who has the largest financial interest in this litigation and meets the adequacy and typicality requirements of Rule 23 is presumptively the lead plaintiff. *See Weltz v. Lee*, 199 F.R.D. 129, 132 (S.D.N.Y. 2001); *Foley,* 272 F.R.D. 126, 127 (stating "[a]lthough courts have differed on how much weight to assign to each of the factors, the Second Circuit, as have other courts, shall place the most emphasis on the last of the four factors: the approximate loss suffered by the movant."). *See also Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007) (same); *Weiss v. Friedman, Billings, Ramsey Group, Inc.,* 2006 U.S. Dist. LEXIS 3028, *13-14 (S.D.N.Y. Jan. 24, 2006) ("We believe that the best yardstick by which to judge 'largest financial interest' is the amount of loss, period").

Under the PSLRA, damages are calculated based on (i) the difference between the purchase price paid for the shares and the average trading price of the shares during the 90-day period beginning on the date the information correcting the misstatement was disseminated, or (ii) the difference between the purchase price paid for the shares and the average trading price of the shares between the date when the misstatement was corrected and the date on which the plaintiff sold their shares, if they sold their shares before the end of the 90-day period. 15 U.S.C. §78u-4(e).

Within the Class Period, Movant purchased Jumia ADSs in reliance upon the materially false and misleading statements issued by the Defendants and was injured thereby. Movant suffered substantial losses of approximately $37,828.76 as a result of the Defendants' alleged fraudulent statements. *See* Nespole Decl., Ex. B. Movant, thus, has a significant financial interest

8

in the outcome of this case. To the best of his knowledge, there are no other applicants who have sought, or are seeking, appointment as lead plaintiff that have a larger financial interest and also satisfy Rule 23.

### 3.    Movant Meets Rule 23's Typicality and Adequacy Requirements

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(iii), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) provides that a class may be certified only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative party are typical of the claims or defenses of the class; and (4) the representative party will fairly and adequately protect the interests of the class. Of these four prerequisites, only two—typicality and adequacy—directly address the personal characteristics of the lead plaintiff movant. Consequently, in deciding a lead plaintiff motion, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a) and defer examination of the remaining requirements until a class certification motion is filed. *See In re Oxford Health Plans, Inc. Sec. Litig*, 182 F.R.D. 42, 49 (S.D.N.Y.) ("Typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA."). *See also Strougo v. Brantley Capital Corp.,* 243 F.R.D. 100, 105 (S.D.N.Y. 2007); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.,* 252 F.R.D. 188, 191 (S.D.N.Y. 2008) ("At this stage of the litigation, the moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met.").

As detailed below, Movant satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying his appointment as lead plaintiff.

**(i)       Movant's Claims Are Typical of the Claims of the Class**

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. A plaintiff satisfies the typicality requirement if the plaintiff has: (a) suffered the same injuries as the absent class members; (b) the injuries are as a result of the same course of conduct by defendants; and (c) the plaintiff's claims are based on the same legal issues that prove the defendant's liability. *See In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992). "However, the claims of the class representative need not be identical to those of all members of the class." *Id.; In re Orion Sec. Litig.*, 2008 U.S. Dist. LEXIS 55368, at *12 (S.D.N.Y. July 8, 2008) ("Indeed, the possibility of factual distinctions between the claims of the named plaintiffs and those of other class members does not destroy typicality, as similarity of legal theory may control even in the face of differences of fact.").[5]

In this case, the typicality requirement is met because Movant's claims are identical to, and neither compete, nor conflict, with the claims of the other Class members. *See Richman v Goldman Sachs Grp*, 274 F.R.D. 473, 479 (S.D.N.Y. 2011) ("The typicality requirement is satisfied when the claims of the proposed lead plaintiff arise from the same conduct from which the other class members' claims and injuries arise.") (quotations omitted). Movant, like the other members of the Class, Movant acquired Jumia ADSs during the Class Period at prices artificially inflated by the Defendants' materially false and misleading statements and was damaged thereby. Thus, his claims are typical, if not identical, to those of the other members of the Class because Movant suffered losses similar to those of other Class members and his losses resulted from the Defendants' common course of wrongful conduct. Accordingly, Movant satisfies the typicality

---

[5] Further, although not relevant to the present motion, a finding of commonality frequently supports a finding of typicality and *vice versa*. *See Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 158 n.13 (1982) (noting that the typicality and commonality requirements tend to merge).

requirement of Rule 23(a)(3). *See Reimer v. Ambac Fin. Group, Inc.,* 2008 U.S. Dist. LEXIS 38729, \*12 (S.D.N.Y. May 9, 2008) ("Typicality is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."). Additionally, Movant is not subject to any unique defenses and there is no evidence of any conflicts between Movant and the other members of the Class.

Movant therefore satisfies the required *prima facie* showing of the typicality requirement of Rule 23 for purposes of this Motion.

**(ii)     Movant Will Fairly and Adequately Protect the Interests of the Class**

Movant is also an adequate representative for the Class. Under Rule 23(a)(4), representative parties must also "fairly and adequately protect the interests of the class."  Adequate representation will be found if the representative has: (a) retained able and experienced counsel; and (b) the representative has no fundamental conflicts of interest with the interests of the class as a whole. *See Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 190 (S.D.N.Y. 2011) ("In considering the adequacy of a proposed lead plaintiff, a court must consider: (1) whether the lead plaintiff's claims conflict with those of the class; and (2) whether class counsel is qualified, experienced, and generally able to conduct the litigation."); *In re GE Secs. Litig.*, 2009 U.S. Dist. LEXIS 69133, at \*15 (S.D.N.Y. July 29, 2009) (Movant "satisfies the adequacy requirement because its interests are aligned with those of the putative class, and it has retained competent and experienced counsel."). The PSLRA directs the Court to limit its inquiry regarding the adequacy of the movant to whether the interests of the movant are clearly aligned with the members of the putative Class and whether there is evidence of any antagonism between the interests of the movant and other members of the Class. 15 U.S.C. §78u-4(a)(3)(B).

Movant has met both of the requirements under Rule 23(a)(4) to fairly and adequately protect the interests of the putative class. Not only is there no evidence of conflict between

11

Movant's interests and those of the other members of the putative Class, but Movant has a significant and compelling interest in prosecuting the consolidated action based on the large financial losses he suffered as a result of the wrongful conduct alleged therein. *See In re Milestone Scientific Sec. Litig.*, 183 F.R.D. 404, 416 (D.N.J. 1998) (Plaintiff's "financial stake in the litigation provides an adequate incentive for [Plaintiff] to vigorously prosecute the action."). Indeed Movant has already taken significant steps demonstrating that he recognizes and will protect the interests of the Class, including: (1) executing certifications detailing his Class Period transactions and expressing its willingness to serve as Class representative; (2) moving this Court to be appointed lead plaintiff; and (3) retaining competent and experienced counsel, who, as shown below, are experienced in class action litigation such as this involving allegations of securities fraud. Therefore, Movant will prosecute the consolidated action vigorously on behalf of the Class.

Accordingly, at this stage of the proceedings, Movant has made the preliminary showing necessary to satisfy the typicality and adequacy requirements of Rule 23 and, therefore, satisfies 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). In addition, because Movant has sustained the largest amount of losses from Defendants' alleged wrongdoing, he is the presumptive lead plaintiff in accordance with §78u-4(a)(3)(B)(iii)(I) and should be appointed as such to lead this consolidated action.

### III. APPOINTING MOVANT'S CHOICE OF COUNSEL AS LEAD PLAINTIFF IS APPROPRIATE

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the Court's approval. 15 U.S.C. §78u-4(a)(3)(B)(v). The Court should interfere with the lead plaintiff's selection only when necessary to "protect the interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa). Here, Movant has selected and retained Levi & Korsinsky as the proposed Lead Counsel for the Class.

12

As set forth in the accompanying firm résumé (Nespole Decl. Ex. D), Levi & Korsinsky is a highly accomplished firm and currently acting as lead counsel in a number of federal securities actions and has achieved many multi-million dollar recoveries for investors. The members of Levi & Korsinsky have extensive experience in successfully prosecuting complex securities class actions such as these and are well-qualified to represent the Class. Thus, this Court may be assured that in the event that the instant Motion is granted, the members of the Class will receive the highest caliber of legal representation.

## CONCLUSION

For all the foregoing reasons, Movant respectfully requests that the Court: (1) consolidate the Related Actions; (2) appoint Movant as Lead Plaintiff on behalf the Class; (3) approve Movant's selection of counsel, Levi & Korsinsky, as Lead Counsel; and (4) grant such other and further relief as the Court may deem just and proper.

Dated: July 15, 2019                              Respectfully Submitted,

                                                  **LEVI & KORSINSKY, LLP**

                                                  By: /s/ *Gregory M. Nespole*
                                                  Gregory M. Nespole (GN-6820)
                                                  55 Broadway, 10th Floor
                                                  New York, NY 10006
                                                  Tel: (212) 363-7500
                                                  Fax: (212) 363-7171
                                                  Email: gnespole@zlk.com


                                                  *Lead Counsel for Movants and [Proposed]*
                                                  *Lead Counsel for the Class*

13