UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHEN STRUGALA, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> JUMIA TECHNOLOGIES AG, JEREMY HODARA, SACHA POIGNONNEC, and ANTOINE MAILLET-MEZERAY, <br><br> Defendants. | Case No.  1:19-cv-04397-PKC |
| LUO ZHI, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> JUMIA TECHNOLOGIES AG, JEREMY HODARA, SACHA POIGNONNEC, and ANTOINE MAILLET-MEZERAY, <br><br> Defendants. | Case No.  1:19-cv-04952-PKC |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF THE VENKATARAMANS FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF LEAD COUNSEL**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ..................................................................................................... 2

ARGUMENT ........................................................................................................................ 5

I.      THE RELATED ACTIONS SHOULD BE CONSOLIDATED ..................................... 5

II.     THE VENKATARAMANS SHOULD BE APPOINTED LEAD PLAINTIFFS .............. 6

      A.      The Venkataramans are Willing to Serve as Class Representatives ....................... 7

      B.      The Venkataramans Have the "Largest Financial Interest" in the Action ............. 7

      C.      The Venkataramans Otherwise Satisfy the Requirements of Rule 23 .................... 8

III.    LEAD PLAINTIFFS' SELECTION OF COUNSEL SHOULD BE APPROVED .......... 11

CONCLUSION .................................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aude v. Kobe Steel, Ltd.*, 17-CV-10085,
    2018 U.S. Dist. LEXIS 57591 (S.D.N.Y. Apr. 4, 2018)..............................................................9

*Bassin v. Decode Genetics, Inc.*,
    230 F.R.D. 313 (S.D.N.Y. 2005) .........................................................................................6

*Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*,
    141 F.R.D. 229 (2d Cir. 1992) .........................................................................................10

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
    252 F.R.D. 188 (S.D.N.Y. 2008) .......................................................................................6

*Chahal v. Credit Suisse Grp. AG*, 18-CV-2268 *et al.*,
    2018 U.S. Dist. LEXIS 104185 (S.D.N.Y. June 21, 2018).....................................................8

*Dookeran v. Xunlei Ltd.*, 18-cv-467 (RJS) *et al.*,
    2018 U.S. Dist. LEXIS 62575 (S.D.N.Y. Apr. 12, 2018)......................................................10

*Foley v. Transocean Ltd.*,
    272 F.R.D. 126 (S.D.N.Y. 2011) .....................................................................................10

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001)..............................................................................................8

*In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER),
    2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007) ...................................................8, 12

*In re Drexel Burnham Lambert Grp., Inc.*,
    960 F.2d 285 (2d Cir. 1992)..............................................................................................9

*In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC),
    2009 U.S. Dist. LEXIS 69133 (S.D.N.Y. July 29, 2009) ........................................................6

*In re Molson Coors Brewing Co. Sec. Litig.*,
    233 F.R.D. 147 (D. Del. 2005) ........................................................................................11

*In re Olsten Corp. Sec. Litig.*,
    3 F. Supp. 2d 286 (E.D.N.Y. 1998) ....................................................................................8

*In re Orion Secs. Litig.*, 08 Civ. 1328 (RJS),
    2008 U.S. Dist. LEXIS 55368 (S.D.N.Y. July 7, 2008) .........................................................9

*In re Oxford Health Plans, Inc. Sec. Litig.*,
  182 F.R.D. 42 (S.D.N.Y. 1998) ...................................................................................9

*In re Tronox, Inc. Sec. Litig.*,
  262 F.R.D. 338 (S.D.N.Y. 2009) .................................................................................6

*Janbay v. Canadian Solar, Inc.*,
  272 F.R.D. 113 (S.D.N.Y. 2010) ...............................................................................10

*Johnson v. Celotex Corp.*,
  899 F.2d 1281 (2d Cir. 1990)......................................................................................5

*Kaplan v. Gelfond*,
  240 F.R.D. 88 (S.D.N.Y. 2007) ...................................................................................9

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
  311 F.R.D. 373 (S.D.N.Y. 2015) ...............................................................................11

*Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715,
  1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) .............................................8

*Malcolm v. Nat'l Gypsum Co.*,
  995 F.2d 346 (2d Cir. 1993).........................................................................................5

*Nurlybaev v. ZTO Express (Cayman) Inc.*, 17-CV-06130 (LTS)(SN),
  2017 U.S. Dist. LEXIS 187238 (S.D.N.Y. Nov. 13, 2017) ........................................8

*Pirelli Armstrong Tire Corp. v. LaBranche & Co., Inc.*,
  229 F.R.D. 395 (S.D.N.Y. 2004) .................................................................................8

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
  589 F. Supp. 2d 388 (S.D.N.Y. 2008)........................................................................11

## Statutes

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) .......................................................................... *passim*

## Rules

Fed. R. Civ. P. 23 ................................................................................................... *passim*

Fed. R. Civ. P. 42 ............................................................................................................1, 2, 5

Kalyan G. Venkataraman and Kalyanasundaram Venkataraman (collectively, the "Venkataramans")[1] respectfully submit this memorandum of law in support of their motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and Rule 42 of the Federal Rules of Civil Procedure, for an Order: (1) consolidating the above-captioned related actions (the "Related Actions"); (2) appointing the Venkataramans as Lead Plaintiffs; and (3) approving proposed Lead Plaintiffs' selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.

## PRELIMINARY STATEMENT

The Complaints in the Related Actions allege that Jumia Technologies AG ("Jumia" or the "Company") and the above-named defendants (the "Individual Defendants") (collectively, the "Defendants") defrauded investors in violation of the Exchange Act. Jumia investors, including the Venkataramans, incurred significant losses following the disclosure of the alleged fraud, which caused Jumia's share price to fall sharply, damaging the Venkataramans and other Jumia investors.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant or group of movants that possesses the largest financial interest in the outcome of the action and that satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). In connection with their purchases of Jumia securities between April 12, 2019 and May 9, 2019, both dates inclusive (the "Class Period"), the Venkataramans incurred losses of approximately $151,314. *See* Declaration of Jeremy A. Lieberman in Support of Motion

---

[1] Kalyanasundaram Venkataraman is the father of Kalyan G. Venkataraman.

1

("Lieberman Decl."), Ex. A.  Accordingly, the Venkataramans believe that they have the largest financial interest in the relief sought in this action.

Beyond their considerable financial interest, the Venkataramans also meet the applicable requirements of Rule 23 because their claims are typical of absent class members and because they will fairly and adequately represent the interests of the Class.

In order to fulfill his obligations as Lead Plaintiffs and vigorously prosecute this action on behalf of the Class, the Venkataramans have selected Pomerantz as Lead Counsel for the Class.  Pomerantz is a nationally recognized securities class action firm that has recovered billions of dollars on behalf of defrauded investors, and recently secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the largest securities class action settlement in a decade.

Consolidation is appropriate under Fed. R. Civ. P. 42(a) where actions involve common questions of law or fact.  Here, the Related Actions are all putative class actions alleging violations of the federal securities laws by an overlapping group of Defendants occurring during overlapping class periods arising from the same alleged fraudulent misconduct.  As such, the Related Actions involve common questions of both law *and* fact, and consolidation is plainly warranted.

Accordingly, the Venkataramans respectfully request that the Court enter an order consolidating the Related Actions, appointing the Venkataramans as Lead Plaintiffs and approving their selection of Pomerantz as Lead Counsel.

## STATEMENT OF FACTS

As the Complaints in the Related Actions allege, Jumia characterizes itself as the leading pan-African e-commerce platform, which, according to Jumia, consists of a marketplace that

connects sellers with consumers, a package shipment and delivery service, and a payment service.

Although Jumia's business had historically been conducted through Africa Internet Holding GmbH, and its subsidiaries, on December 17 and 18, 2018, the Company changed its legal form into a German stock corporation (Aktiengesellschaft) and changed its name to Jumia Technologies AG. These changes became effective on January 31, 2019, upon registration with the commercial register of the local court (Amtsgericht) in Berlin, Germany.

On March 12, 2019, Jumia filed a Form F-1 Registration Statement with the SEC (the "Registration Statement") for the Company's initial public offering ("IPO"). The Registration Statement, as amended, was signed by the Individual Defendants and declared effective by the SEC on April 10, 2019.

On April 15, 2019, Jumia filed a prospectus with the SEC for the IPO, which forms part of the Registration Statement, offering to sell to the public 15.525 million American Depositary Shares ("ADSs") (including the underwriters' option to purchase an additional 2.025 million ADSs) at a price of $14.50 per ADS. Thereafter, Jumia sold 15.525 million ADSs in the IPO and raised approximately $280.2 million therefrom, net of underwriting discounts and commissions and other offering expenses.

According to the Registration Statement, the Company's operations are conducted in six regions in Africa, which consist of fourteen countries that, together, accounted for 72% of Africa's 2018 Gross Domestic Product. The Registration Statement states that Jumia intends to benefit from the expected growth of e-commerce in Africa through the investments and local expertise the Company developed since its founding in 2012.

The Registration Statement issued in connection with the IPO was materially false and misleading and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.  These materially false and misleading statements and omissions remained alive and uncorrected during the Class Period.  Specifically, Defendants failed to disclose the following adverse facts, which were known to Defendants or recklessly disregarded by them as follows: (i) that Jumia had materially overstated its active customers and active merchants; (ii) that Jumia's representations about its orders, order cancellations, undelivered orders, and returned orders lacked a sufficient factual basis and materially overstated the Company's sales; (iii) that Jumia failed to sufficiently disclose related party transactions; and (iv) that Jumia's financial statements were presented in violation of applicable accounting standards.

On May 9, 2019, the investment research firm Citron Research issued a report (the "Citron Report") announcing "Jumia is a Fraud" that "deserves immediate SEC attention." According to the Citron Report, while media in the U.S. naively anointed Jumia the "Amazon of Africa," numerous articles were issued in its home country of Nigeria claiming widespread fraud at the Company.  For example, the Citron Report stated, in pertinent part:

> The systemic fraud at Jumia had not been overlooked by local Nigerian newspapers as they articulate the issue clearer than Citron can. An investigation by Nigerian news reporters described Jumia as follows:
>
> - "Cuts a picture of a fast-growing e-commerce company" but "beneath what is painted is a company struggling to survive over internal fraudulent activities."
>
> - Jumia is "sitting on gun powder which might explode any moment as the retail outfit is filled with many shady deals."
>
> * * *
>
> Local media commented that their investigation revealed that many top directors of Jumia were engaging in serious acts of fraud including diverting money that

was supposed to be used for projects into their own bank accounts and using director owned private companies to accept Jumia orders while receiving advance payments but never fulfilling the orders. In some cases, these fraudsters were relatives of senior management and "the directors would sweep the case under the carpet in order to avoid public scrutiny".

The Citron Report further noted that, just prior to the IPO, Jumia issued a confidential investor presentation in October 2018 during a capital raising effort. According to the Citron Report, "many material discrepancies in reported key financial metrics" exist between the Registration Statement and the confidential investor presentation, including, its reported active consumers and active merchants.

In response to the issuance of the Citron Report, the price of Jumia ADSs declined over 26% on heavy trading volume over a two-day period, from $33.11 per ADS on May 8, 2019 to $24.50 per ADS on May 10, 2019.

## ARGUMENT

## I.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED

Consolidation of related cases is appropriate, where, as here, the actions involve common questions of law and fact, and therefore consolidation would avoid unnecessary cost, delay and overlap in adjudication:

> Where actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters at issue in the actions; it may order all the actions consolidated; and it may make such order concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed. R. Civ. P. 42(a). *See also* Manual for Complex Litigation (Third), § 20.123 (1995). Consolidation is appropriate when the actions before the court involve common questions of law *or* fact. *See* Fed. R. Civ. P. 42(a); *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)).

The Related Actions at issue here clearly involve common questions of law *and* fact. Each action was brought against an overlapping group of Defendants (Jumia and certain of its officers) in connection with violations of the federal securities laws during overlapping class periods. Accordingly, the Related Actions allege substantially the same wrongdoing—namely that the Defendants issued materially false and misleading statements and omissions that artificially inflated the price of Jumia's securities and subsequently damaged the putative class members when the price of Jumia's securities plunged as the truth emerged. Consolidation of the Related Actions is therefore appropriate. *See Bassin v. Decode Genetics, Inc.*, 230 F.R.D. 313, 315 (S.D.N.Y. 2005) (consolidation of securities class actions is particularly appropriate in the context of securities class actions where the complaints are based on the same statements and the defendants will not be prejudiced); *In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 U.S. Dist. LEXIS 69133, at *5 (S.D.N.Y. July 29, 2009) ("Consolidation promotes judicial convenience and avoids unnecessary costs to the parties."); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (consolidating securities class actions); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008) (same).

## II.    THE VENKATARAMANS SHOULD BE APPOINTED LEAD PLAINTIFFS

The Venkataramans should be appointed Lead Plaintiff because, to their knowledge, they have the largest financial interest in the proposed consolidated action and otherwise satisfies the requirements of Rule 23. The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of the class action and to do so by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) & (ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any

such notice.  Specifically, the Court "shall" appoint the presumptively "most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
>  (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, the Venkataramans satisfy all three of these criteria and thus are entitled to the presumption that they are the most adequate plaintiffs of the Class and, therefore, should be appointed Lead Plaintiffs for the Class.

### A.    The Venkataramans are Willing to Serve as Class Representatives

On May 14, 2019, counsel for plaintiff in the first-filed of the Related Actions caused a notice to be published over *Business Wire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, which announced that a securities fraud class action had been filed against Defendants and which advised investors in Jumia securities that they had 60 days—*i.e.*, until July 15, 2019—to file a motion to be appointed as lead plaintiff (the "PSLRA Notice").  *See* Lieberman Decl., Ex. B. The Venkataramans have filed the instant motion pursuant to the PSLRA Notice, and have attached Certifications attesting that they are willing to serve as representatives for the Class, and to provide testimony at deposition and trial, if necessary.  *See id.*, Ex. C.  Accordingly, the Venkataramans satisfy the first requirement to serve as Lead Plaintiffs of the Class.

### B.    The Venkataramans Have the "Largest Financial Interest" in the Action

The PSLRA requires a court to adopt a presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii).  To the best of their knowledge, the Venkataramans

have the largest financial interest of any Jumia investor or investor group seeking to serve as Lead Plaintiff. For claims arising under federal securities laws, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered. Nos. 97 C 2715 *et al.*, 1997 U.S. Dist. LEXIS 11866, at \*17 (N.D. Ill. Aug. 6, 1997). In accord with other courts nationwide,[2] these *Lax* factors have been adopted and routinely applied by courts in this judicial district. *See, e.g.*, *Chahal v. Credit Suisse Grp. AG*, 18-CV-2268 *et al.*, 2018 U.S. Dist. LEXIS 104185, at \*12 (S.D.N.Y. June 21, 2018); *Nurlybaev v. ZTO Express (Cayman) Inc.*, 17-CV-06130 (LTS)(SN), 2017 U.S. Dist. LEXIS 187238, at \*3 (S.D.N.Y. Nov. 13, 2017); *Pirelli Armstrong Tire Corp. v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 404-05 (S.D.N.Y. 2004).

During the Class Period, the Venkataramans: (1) purchased 36,000 shares of Jumia securities; (2) expended $1,208,999 on purchases of Jumia securities; (3) retained 15,300 of their shares of Jumia securities; and (4) incurred losses of $151,314 in connection with their transactions in Jumia securities. *See* Lieberman Decl., Ex. A. To the extent that the Venkataramans possess the largest financial interest in the outcome of this litigation, they are the presumptive "most adequate" plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### C.   The Venkataramans Otherwise Satisfy the Requirements of Rule 23

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must

---

[2] *See, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *accord In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 U.S. Dist. LEXIS 14878, at \*22-\*25 (E.D.N.Y. Mar. 2, 2007).

"otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that a lead plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification. Instead, "[t]he parties moving for lead plaintiff are only required to make a *prima facie* showing that they meet [the requirements of] Rule 23". *Aude v. Kobe Steel, Ltd.*, 17-CV-10085, 2018 U.S. Dist. LEXIS 57591, at *8 (S.D.N.Y. Apr. 4, 2018); *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007) ("[A]t this stage of the litigation, only a preliminary showing of typicality and adequacy is required."). Moreover, "[t]ypicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998); *see also Aude*, 2018 U.S. Dist. LEXIS 57591 at *8. Here, the Complaints in the Related Actions sufficiently plead Rule 23(a)(1) numerosity and Rule 23(a)(2) common questions in a manner common to all class members, including the Venkataramans.

The typicality requirement of Fed. R. Civ. P. 23(a)(3) "is satisfied if 'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Orion Secs. Litig.*, 08 Civ. 1328 (RJS), 2008 U.S. Dist. LEXIS 55368, at *12 (S.D.N.Y. July 7, 2008) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291) (2d Cir. 1992)). "[T]he claims of the class representative need not be identical those of all members of the class. '[T]he typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named

plaintiffs and those of other class members, including distinctions in the qualifications of the class members.'"  *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 113, 120 (S.D.N.Y. 2010) (quoting *Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*, 141 F.R.D. 229, 238 (2d Cir. 1992)).

The Venkataramans' claims are typical of those of the Class.  the Venkataramans allege, as do all Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts and/or omitting to disclose material facts concerning Jumia.  The Venkataramans, as did all members of the Class, purchased Jumia securities during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and was damaged upon the disclosure of those misrepresentations and/or omissions that drove Jumia's share price downward.  These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011); *see also Dookeran v. Xunlei Ltd.*, 18-cv-467 (RJS) *et al.*, 2018 U.S. Dist. LEXIS 62575, at *6 (S.D.N.Y. Apr. 12, 2018) (same).

As set forth in greater detail below, in Pomerantz, the Venkataramans have retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this action, and submit their choice of Pomerantz to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).  There is no evidence of antagonism or conflict between the

10

Venkataramans' interests and the interests of the Class.  The Venkataramans have submitted signed Certifications declaring their commitment to protect the interests of the Class (*see* Lieberman Decl., Ex. C), and the significant losses incurred by the Venkataramans demonstrate that they have a sufficient interest in the outcome of this litigation to ensure vigorous adequacy.

**III.    LEAD PLAINTIFFS' SELECTION OF COUNSEL SHOULD BE APPROVED**

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to Court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  The Court should only interfere with lead plaintiff's choice if necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).  *See also Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.") (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008)). *See also In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 151 (D. Del. 2005).

Here, the Venkataramans have selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the area of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume. *See* Lieberman Decl., Ex. D.  Pomerantz is a premiere firm in the area of securities litigation based in New York, with offices in Chicago, Los Angeles, and Paris, France.  For more than 75 years, Pomerantz has represented defrauded investors.  In 2018 alone, Pomerantz secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the fifth largest class action settlement ever achieved in the United States, as well as an $80 million recovery on behalf of investors in Yahoo! securities. *See id.* More recently, Pomerantz announced as Co-Lead Counsel on behalf of a class of Fiat Chrysler Automobiles N.V. investors that it had achieved a $110 million settlement on behalf of the class

11

in that action. *See* THE WALL STREET JOURNAL, *Fiat Chrysler to Settle Lawsuit for $110 Million*, April 8, 2019 (available at https://www.wsj.com/articles/fiat-chrysler-to-settle-lawsuit-for-110-million-11554746066). The foregoing achievements are part of a long line of record-setting recoveries led by Pomerantz, including a $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 06-CV-1825 (E.D.N.Y.), in June 2010. *See* Lieberman Decl., Ex. D. Courts in this Judicial District and throughout the country have recognized Pomerantz's qualifications to serve as class counsel, and Pomerantz has recently been appointed lead counsel in actions including *In re Allergan PLC Sec. Litig.*, 18-cv-12089 (S.D.N.Y.); *Anarkat v. CVS Health Corporation*, 19-cv-01725 (S.D.N.Y.); *Schiro v. CEMEX, S.A.B. de C.V.*, 18-cv-2352 (S.D.N.Y.); *Yang v. Nobilis Health Corp.*, 19-cv-145 (S.D. Tex.); and *Costas v. Ormat Technologies, Inc.*, 18-cv-271 (D. Nev.). As a result of Pomerantz's extensive experience in litigation involving issues similar to those raised in the instant action, the Venkataramans' chosen counsel have the skill, knowledge, expertise, and experience that will enable them to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving the Venkataramans' selection of Pomerantz as Lead Counsel, the members of the class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, the Venkataramans respectfully request that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing the Venkataramans as Lead Plaintiffs; and (3) approving proposed Lead Plaintiffs' selection of Pomerantz as Lead Counsel for the Class.

Dated: July 15, 2019

Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
          ahood@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

*Counsel for Lead Plaintiff Movants the Venkataramans and Proposed Lead Counsel for the Class*

THE SCHALL LAW FIRM
Brian Schall
1880 Century Park East
Los Angeles, CA 90067
(424) 303-1964
Email: brian@schallfirm.com

*Additional Counsel for Lead Plaintiff Movants the Venkataramans*