UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHEN STRUGALA, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> JUMIA TECHNOLOGIES AG, JEREMY HODARA, SACHA POIGNONNEC, and ANTOINE MAILLET-MEZERAY, <br><br> Defendants. | Case No. 1:19-cv-04397-PKC |
| LUO ZHI, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> JUMIA TECHNOLOGIES AG, JEREMY HODARA, SACHA POIGNONNEC, and ANTOINE MAILLET-MEZERAY, <br><br> Defendants. | Case No. 1:19-cv-04952-PKC |

**MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF
MOTION OF KALYAN G. VENKATARAMAN AND KALYANASUNDARAM
VENKATARAMAN FOR CONSOLIDATION OF RELATED ACTIONS,
APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL,
AND (2) IN OPPOSITION TO COMPETING MOTIONS**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT .................................................................................................................... 5

    I.     The Venkataramans Should Be Appointed Lead Plaintiffs .................................. 5

          A.     The Venkataramans Have The Largest Financial Interest In The Relief Sought By The Class .................................................................... 6

          B.     The Venkataramans Satisfy The Requirements Of Rule 23 ...................... 7

    II.    Cai Is Inadequate And/Or Atypical Within The Meaning Of Rule 23 ................... 9

    III.   The Venkataramans' Selection Of Counsel Should Be Approved ....................... 12

CONCLUSION ............................................................................................................... 13

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aude v. Kobe Steel, Ltd.*, 17-CV-10085,
    2018 U.S. Dist. LEXIS 57591 (S.D.N.Y. Apr. 4, 2018)........................................................3, 5, 8

*Beckerman v. Ener1 Inc.*, No. 11 Civ. 5794 (PAC),
    2012 U.S. Dist. LEXIS 19972 (Feb. 15, 2012) ...........................................................................8

*Chahal v. Credit Suisse Grp. AG*, 18-CV-2268 *et al.*,
    2018 U.S. Dist. LEXIS 104185 (S.D.N.Y. June 21, 2018)......................................................2, 6

*China Agritech, Inc. v. Resh*,
    138 S. Ct. 1800 (2018) .............................................................................................................3

*Dookeran v. Xunlei Ltd.*, 18-cv-467 (RJS) *et al.*,
    2018 U.S. Dist. LEXIS 62575 (S.D.N.Y. Apr. 12, 2018)...........................................................8

*Foley v. Transocean Ltd.*,
    272 F.R.D. 126 (S.D.N.Y. 2011) ...........................................................................................6, 8

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    573 U.S. 258 (2014) ...............................................................................................................11

*In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825,
    2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) ..............................................................................6

*In re Critical Path*,
    156 F. Supp. 2d 1102 (N.D. Cal. 2001) .........................................................................3, 9, 12

*In re Deutsche Bank Aktiengesellschaft Sec. Litig.*, 16-CV-03495 (AT) (BCM),
    2016 U.S. Dist. LEXIS 139215 (S.D.N.Y. Oct. 4, 2016) .......................................................2, 7

*In re Orion Secs. Litig.*, 08 Civ. 1328 (RJS),
    2008 U.S. Dist. LEXIS 55368 (S.D.N.Y. July 7, 2008) .............................................................8

*In re Vicuron Pharms., Inc. Sec. Litig.*,
    225 F.R.D. 421 (E.D. Pa. 2005) ................................................................................................6

*Isaacs v. Musk*, Nos. 18-cv-04865-EMC *et al.*,
    2018 U.S. Dist. LEXIS 200717 (N.D. Cal. Nov. 27, 2018)...................................................3, 10

*Janbay v. Canadian Solar, Inc.*,
    272 F.R.D. 113 (S.D.N.Y. 2010) ..............................................................................................8

*Kaplan v. Gelfond*,
    240 F.R.D. 88 (S.D.N.Y. 2007) ........................................................................5, 8

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
    311 F.R.D. 373 (S.D.N.Y. 2015) ..........................................................................12

*Lax v. First Merchants Acceptance Corp.*, Case No. 97 C 2716,
    1997 WL 461036 (N.D. Ill. 1997) .........................................................................6

*Marcus v. J.C. Penney Co.*, Nos. NO. 6:13-CV-736 *et al.*,
    2014 U.S. Dist. LEXIS 197529 (E.D. Tex. Feb. 28, 2014) .................................4, 10

*McDermott Int'l, Inc. Secs. Litig.*, 08 Civ. 9943 (DC),
    2009 U.S. Dist. LEXIS 21539 (S.D.N.Y. Mar. 6, 2009) .......................................3, 8

*Takara Trust v. Molex, Inc.*,
    229 F.R.D. 577 (N.D. Ill. 2005) .............................................................................6

*Varghese v. China Shenghuo Pharm. Holdings, Inc*,
    589 F. Supp. 2d 388 (S.D.N.Y. Dec. 10, 2008) .................................................7, 12

*Weisz v. Calpine Corp.*, No. C 02-1200 SBA,
    2002 U.S. Dist. LEXIS 27831 (N.D. Cal. Aug. 15, 2002)....................................4, 10

## Statutes

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ...........................................................................*passim*

## Rules

Fed. R. Civ. P. 23 ..................................................................................................*passim*

Movants the Venkataramans[1] respectfully submit this memorandum of law: (i) in further support of their motion for consolidation of the Related Actions, appointment as Lead Plaintiffs, and approval of their selection of Pomerantz as Lead Counsel (Dkt. No. 30); and (ii) in opposition to the competing motions of Hexuan Cai ("Cai") (Dkt. No. 16), Sanjeev Jaiswal ("Jaiswal") (Dkt. No. 19), Donna Jones ("Jones") (Dkt. No. 23), Hongtao Qiu ("Qiu") (Dkt. No. 24) and Ryan C. Heist ("Heist") (Dkt. No. 14).

## PRELIMINARY STATEMENT

This is a class action securities fraud lawsuit against Jumia and certain of the Company's officers. As with all federal class action securities fraud lawsuits, a lead plaintiff must be appointed. The PSLRA governs that process and, pursuant to the PSLRA, the Court should appoint as Lead Plaintiff the movant or movants with the greatest financial interest in the outcome of the action; *and* who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Here, those movants are the Venkataramans, a cohesive group consisting of Kalyan G. Venkataraman and his father Kalyanasundaram Venkataraman, who together suffered over $151,000 in losses in connection with their purchases of Jumia stock as a result of the alleged fraud at issue in the Related Actions, and retained 15,300 shares at the end of the Class Period— by either metric, a greater financial interest in this litigation than any competing movant eligible for appointment. The table below sets forth the losses of the Venkataramans compared to those of the other movants:

---

[1] All capitalized terms herein are defined in the Venkataramans' moving brief, unless otherwise indicated. *See* Dkt. No. 32.

| Movant | Loss | Retained Shares (Net Shares Purchased) |
|---|---|---|
| The Venkataramans | $151,314 | 15,300 |
| *Kalyan G. Venkataraman* | *$64,393* | *7,400* |
| *Kalyanasundaram Venkataraman* | *$86,921* | *7,900* |
| Jaiswal | $130,454 | 10,000 |
| Jones | $129,738 | 10,590 |
| Qiu | $99,839 | 5,700 |
| Heist | $37,658 | 3,400 |
| ~~Cai~~ | ~~$523,484~~ | ~~93,921~~ |

The Venkataramans' loss is significantly larger than that of any competing eligible movant. The movant with the next largest loss, Jaiswal, incurred a loss of only $136,515—nearly $15,000 less than the Venkataramans. Likewise, the Venkataramans retained 15,300 shares at the end of the Class Period, while Jaiswal retained only 10,000. As such, whether assessed in terms of either loss or retained shares, the Venkataramans have the greatest financial interest within the meaning of the PSLRA of any putative Class member seeking appointment as Lead Plaintiff. *See*, *e.g.*, *Chahal v. Credit Suisse Grp. AG*, 18-CV-2268 *et al.*, 2018 U.S. Dist. LEXIS 104185, at *12 (S.D.N.Y. June 21, 2018) (equating financial interest with economic loss); *In re Deutsche Bank Aktiengesellschaft Sec. Litig.*, 16-CV-03495 (AT) (BCM), 2016 U.S. Dist. LEXIS 139215, at *11 (S.D.N.Y. Oct. 4, 2016) (considering net shares purchased (*i.e.*, retained shares) alongside loss in assessing financial interest).

Although one competing movant, Cai, alleged a loss of roughly $580,404 (*see* Dkt. No. 22-3), Cai realized a profit of more than $12,000 short-selling Jumia securities during the Class Period which, for the reasons discussed below, disqualifies Cai from consideration for failure to satisfy the adequacy or typicality requirements of Rule 23.

In addition to their significant financial interest, the Venkataramans also satisfy the adequacy and typicality requirements of Rule 23. The Venkataramans, like all members of the

Class, purchased Jumia securities at prices artificially inflated by Defendants' misrepresentations or omissions, and were damaged upon the disclosure of those misrepresentations or omissions. These shared claims, which are based on the same legal theory, and arise from the same events and course of conduct as the Class claims, satisfy the requirements of Rule 23. *Aude v. Kobe Steel, Ltd.*, 17-CV-10085, 2018 U.S. Dist. LEXIS 57591, at \*8 (S.D.N.Y. Apr. 4, 2018). The Venkataramans are father and son, and thus obviously have a meaningful relationship with one another that pre-dates this litigation. As such, they constitute exactly the kind of cohesive group consisting of related individuals that the PSLRA expressly permits and courts in this Judicial District routinely appoint to serve as lead plaintiffs in securities class actions. *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1807 n.3 (2018) ("District courts often permit aggregation of plaintiffs into plaintiff groups"); *McDermott Int'l, Inc. Secs. Litig.*, 08 Civ. 9943 (DC), 2009 U.S. Dist. LEXIS 21539, at \*11-\*12 (S.D.N.Y. Mar. 6, 2009) (approving family members as co-lead plaintiffs, noting presumed ability "to function cohesively"). Accordingly, the Venkataramans are highly qualified to serve as a class representatives and to supervise Pomerantz, their chosen counsel, to prosecute this action vigorously on behalf of Jumia investors.

By contrast, the fact that Cai made approximately $12,090 by short-selling Jumia securities during the Class Period—making, in effect, a highly profitable bet ***against*** Jumia just days before the alleged fraud was disclosed—renders him inadequate and atypical within the meaning of Rule 23, and thus precludes his appointment. Courts routinely decline to appoint short-sellers as lead plaintiffs in PSLRA actions, because "[s]hort sales raise the question of whether the seller was actually relying on the market price, and the class is not served by its representative coming under such scrutiny." *In re Critical Path*, 156 F. Supp. 2d 1102, 1110 (N.D. Cal. 2001). *See also Isaacs v. Musk*, Nos. 18-cv-04865-EMC *et al.*, 2018 U.S. Dist.

LEXIS 200717, at *12-*13 (N.D. Cal. Nov. 27, 2018); *Weisz v. Calpine Corp.*, No. C 02-1200 SBA, 2002 U.S. Dist. LEXIS 27831, at *28 (N.D. Cal. Aug. 15, 2002); *Marcus v. J.C. Penney Co.*, Nos. NO. 6:13-CV-736 *et al.*, 2014 U.S. Dist. LEXIS 197529, at *20-*21 (E.D. Tex. Feb. 28, 2014).

During the Class Period, Cai sold short 2,500 shares of Jumia stock, realizing $12,090 from that trade. This robust and profitable short position renders Cai highly atypical of the putative class in this action—namely, investors who lost money on their purchases of Jumia stock in reliance upon the Defendants' alleged misstatements concerning the Company's operations, in the good faith belief that Jumia's stock price would *appreciate* in value—and thus precludes his appointment as Lead Plaintiff. The timing of Cai's short sale is even more suspicious. First, Cai dumped all of his 37,337 shares on April 26, 2019, a mere fourteen days before the fraud was revealed to the market. Cementing his apparent lack of confidence in Jumia's stock, he then initiated his short position on May 1, 2019 and closed it at a substantial profit the following day, a mere seven days prior to the alleged corrective disclosure accusing the Company of manipulating its financial metrics. Serious questions exist as to whether Cai suspected that there would be a revelation of fraud or other adverse news on that date and therefore entered into a short position to his profit—and the detriment of other investors. The chart below demonstrates the dubious timing of Cai's transactions. At the very least, Cai's financial interest in Jumia's stock plummeting was clearly adverse to the rest of the Class's interests in their investments succeeding.

4



For the reasons set forth herein, the Venkataramans respectfully submit that their motion should be granted in its entirety, and that the competing motions should be denied.

## ARGUMENT

### I.     The Venkataramans Should Be Appointed Lead Plaintiffs

The PSLRA creates a strong presumption that the Lead Plaintiff is the "person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).   The movant that has the largest financial interest must "make a *prima facie* showing that they meet [the requirements of] Rule 23". *Aude*, 2018 U.S. Dist. LEXIS 57591, at *8; *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007).   Once this presumption is triggered, it may be rebutted upon proof that the presumptive Lead Plaintiff will not fairly represent the interests of the Class.   15 U.S.C. § 78u–4(a)(3)(B)(iii)(II) (emphasis added).   Here, the most adequate class representative is the Venkataramans.

5

**A.     The Venkataramans Have The Largest Financial Interest In The Relief Sought By The Class**

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). While the PSLRA itself does not provide any guidance concerning the method of calculating which plaintiff has the "largest financial interest," courts in this Judicial District, the Second Circuit, and around the country recognize that the amount of financial loss is the most significant factor to be considered. *See, e.g., Foley v. Transocean Ltd.*, 272 F.R.D. 126, 128 (S.D.N.Y. 2011) ("[W]e, as have other courts, shall place the most emphasis on the last of the four factors, the approximate loss suffered by the movant"); *Chahal*, 2018 U.S. Dist. LEXIS 104185, at *12 (equating financial interest with economic loss); *Nurlybaev*, 2017 U.S. Dist. LEXIS 187238, at *3 (same); *In re Comverse Tech., Inc. Sec. Litig.,* No. 06-CV-1825, 2007 WL 680779, at *3 (E.D.N.Y. Mar. 2, 2007) (recognizing that most courts consider "the approximate loss a plaintiff suffered during the class period to be most influential in identifying the plaintiff with the largest financial interest"); *In re Vicuron Pharms., Inc. Sec. Litig.*, 225 F.R.D. 421, 511  (E.D. Pa. 2005) (finding the amount of the financial loss "the most significant" factor); *Takara Trust v. Molex, Inc.*, 229 F.R.D. 577, 579 (N.D. Ill. 2005) ("most courts simply determine which potential lead plaintiff has suffered the greatest total losses.").

Second to financial loss, courts frequently consider net shares purchased during the class period (*i.e.*, retained shares) as another measure of financial interest. *See, e.g., Lax v. First Merchants Acceptance Corp.*, Case No. 97 C 2716, 1997 WL 461036, at *5 (N.D. Ill. 1997) (considering net shares purchased (*i.e.*, retained shares) alongside net loss in assessing financial

6

interest); *Deutsche Bank*, 2016 U.S. Dist. LEXIS 139215, at \*11 (same); *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 395 (S.D.N.Y. 2008) (same).

Under either of the foregoing analyses, no movant seeking appointment as lead plaintiff in the Related Actions has a larger financial interest in the litigation than the Venkataramans. The following chart summarizes the Venkataramans' substantial financial interest compared to that of the other competing movants:

| Movant | Loss | Retained Shares (Net Shares Purchased) |
|---|---|---|
| The Venkataramans | $151,314 | 15,300 |
| *Kalyan G. Venkataraman* | *$64,393* | *7,400* |
| *Kalyanasundaram Venkataraman* | *$86,921* | *7,900* |
| Jaiswal | $130,454 | 10,000 |
| Jones | $129,738 | 10,590 |
| Qiu | $99,839 | 5,700 |
| Heist | $37,658 | 3,400 |
| ~~Cai~~ | ~~$523,484~~ | ~~93,921~~ |

As shown above, the Venkataramans suffered a loss of more than $151,000 in connection with their Class Period purchases of Jumia stock. Jaiswal, the movant with the next largest loss, incurred a loss roughly $15,000 smaller than that of the Venkataramans. In addition, the Venkataramans retained 15,300 shares at the end of the Class Period, whereas 5,300, or 53%, more than Jaiswal's 10,000 retained shares. As discussed in detail *infra* at Section II, Cai, the only movant alleging a greater financial interest than the Venkataramans, is atypical and/or inadequate as a class representative within the meaning of Rule 23, and as such is disqualified from consideration.

### B.    The Venkataramans Satisfy The Requirements Of Rule 23

In addition to possessing the largest financial interest in the relief sought by the Class, the Venkataramans have also made the requisite *prima facie* showing that they satisfy the typicality

and adequacy requirements of Rule 23. *See Aude*, 2018 U.S. Dist. LEXIS 57591, at \*8; *Kaplan*, 240 F.R.D. at 94. First, the Venkataramans' claims satisfy the typicality requirement of Rule 23(a)(3) because their claims against Jumia and the other Defendants are based on the same legal theory and arise from the same events and course of conduct as the Class's claims. *See, e.g., In re Orion Secs. Litig.*, 08 Civ. 1328 (RJS), 2008 U.S. Dist. LEXIS 55368, at \*12 (S.D.N.Y. July 7, 2008); *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 113, 120 (S.D.N.Y. 2010). Second, the Venkataramans satisfy the adequacy requirement of Rule 23(a)(4) because "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Foley*, 272 F.R.D. at 131; *see also Dookeran v. Xunlei Ltd.*, 18-cv-467 (RJS) *et al.*, 2018 U.S. Dist. LEXIS 62575, at \*6 (S.D.N.Y. Apr. 12, 2018) (same). Moreover, as family members, the Venkataramans constitute exactly the kind of group that courts in this Judicial District routinely appoint as lead plaintiffs. *See, e.g., McDermott Int'l*, 2009 U.S. Dist. LEXIS 21539, at \*11-\*12 ("The members of the Adams Family are not 'unrelated investors' grouped together by their lawyer for purposes of aggregating their losses and obtaining appointment as lead plaintiff. Thus there is no need for the Adams Family to 'proffer an evidentiary showing that unrelated members of a group will be able to function cohesively.'") (quoting *Varghese*, 589 F. Supp. 2d at 392) (internal citations omitted); *Beckerman v. Ener1 Inc.*, No. 11 Civ. 5794 (PAC), 2012 U.S. Dist. LEXIS 19972, at \*12 (Feb. 15, 2012) (finding that lead plaintiff movant groups "composed solely of family members[] present none of the concerns" raised by the appointment of groups consisting of unrelated individuals).

8

To overcome the strong presumption entitling the Venkataramans to appointment as Lead Plaintiffs, the PSLRA requires "***proof***" that the presumptive Lead Plaintiff is inadequate.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added).  No such proof exists in this case and any arguments to the contrary should be flatly rejected.

Finally, as discussed in greater detail below, the Venkataramans have further demonstrated their adequacy by selecting Pomerantz—counsel highly capable and experienced in prosecuting securities cases and managing complex litigation efficiently—to serve as Lead Counsel for the Class.

* * * *

Because the Venkataramans have the largest financial interest in the relief sought by the Class and otherwise satisfy Rule 23, they are the presumptive "most adequate plaintiffs" of the Class within the meaning of the PSLRA.

## II.    Cai Is Inadequate And/Or Atypical Within The Meaning Of Rule 23

Although Cai has alleged a significant loss in connection with Jumia's alleged fraud, Cai cannot trigger the most adequate plaintiff presumption because he is a short seller, meaning that he made money betting *against* the Company during the Class Period.

A short seller is an investor who sells a security with the intention of repurchasing it later at a lower price.  Whereas a typical investor purchases a security with the expectation that its value will go up, a short seller thus trades in the expectation that a security's value will go down—in effect, betting *against* the company.  Thus, for obvious reasons, courts routinely decline to appoint short sellers as lead plaintiffs in PSLRA actions for failure to satisfy the typicality and adequacy requirements of Rule 23.  *See*, *e.g.*, *Critical Path*, 156 F. Supp. 2d at 1009-10 ("It is a poor choice to appoint a class representative who engaged in a trading practice premised on the belief the stock would fall.  . . .  Short sales raise the question of whether the

9

seller was actually relying on the market price, and the class is not served by its representative coming under such scrutiny."); *Isaacs*, 2018 U.S. Dist. LEXIS 200717, at \*12-\*13 ("[T]he Court has concerns regarding the adequacy or typicality of [movant] because it is a short seller[.]"); *Weisz*, 2002 U.S. Dist. LEXIS 27831, at \*28 (finding movant to be "disqualified from serving as a lead plaintiff by virtue of the fact that he admittedly sold Calpine stock 'short' during the Class Period."); *Marcus*, 2014 U.S. Dist. LEXIS 197529, at \*20-\*21 (finding short selling to be an "atypical trading practice" and holding short seller to be "subject to unique defenses and flaws that render him inadequate to serve as lead plaintiff").

The following chart summarizes Cai's Class Period trades in Jumia securities in one of his two accounts:

| Trade Date | Transaction | Shares | Cumulative Holdings |
|---|---|---|---|
| 4/16/2019 | Purchase | 10,000 | 10,000 |
| 4/16/2019 | Sale | (9,000) | 1,000 |
| 4/17/2019 | Purchase | 13,000 | 14,000 |
| 4/18/2019 | Purchase | 4,000 | 18,000 |
| 4/22/2019 | Purchase | 47,000 | 65,000 |
| 4/24/2019 | Sale | (32,663) | 32,337 |
| 4/25/2019 | Purchase | 5,000 | 37,337 |
| 4/26/2019 | Sale | (37,337) | 0 |
| 5/1/2019 | Short Sale | (2,500) | (2,500) |
| 5/2/2019 | Cover Purchase | 2,500 | 0 |

As the chart illustrates, Cai purchased a total of 79,000 shares of Jumia securities between April 16 and April 25, 2019. Cai also sold the same number of shares between April 16 and April 26, 2019, thereby selling out his entire position as of April 26. Then, three trading days later, Cai abruptly sold short 2,500 shares of Jumia stock. The following day, after Jumia's stock price fell, Cai purchased 2,500 shares of Jumia stock to cover his short position, bringing his holdings back to zero and securing a $12,090 *profit* for Cai in his bet against Jumia.

10

While the majority of the Class simply purchased Jumia stock based upon the Company's positive representations as to its business and operations, in the good-faith expectation that the value of Jumia stock would simply rise, Cai took a contrary position and bet *against* the Company's fortunes.  For Cai to execute trades based on the expectation that Jumia's stock price would *decrease*, even as the Defendants' false and misleading statements artificially *inflated* Jumia's stock price, necessarily begs the question: was Cai privy to information unknown to other Class members?  Indeed, Cai's liquidation of his *entire* holding of 37,337 Jumia shares just fourteen days before the revelation of fraud and then engaging in a short sale six days before that date is puzzling.  This exotic trading strategy begs the question as whether or not Cai somehow anticipated that adverse news regarding Jumia's stock would soon enter the market.  At the very least, it is clear that as of April 26 through May 2, 2019, Cai had lost confidence in the value of Jumia's stock, wagering that Jumia's stock price would plummet, while the rest of the Class was hoping that the Company would succeed.  Cai's exotic trading strategy clearly renders his interests antagonistic to those of the rest of the Class.

If Cai is appointed as Lead Plaintiff, Defendants will surely make an issue out of this point at the class certification stage of this litigation, thereby needlessly distracting Cai from prosecution of fraud claims against the Defendants as the issue is litigated, to the undeniable prejudice of the Class.  Specifically, Defendants will seek to show that Cai did *not* rely on their Class Period statements with respect to his Jumia investments and/or was in fact betting *against* the Company, because "[a]ny showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price, will be sufficient to rebut the presumption of reliance."  *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 269 (2014) (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 248 (1988)).

11

Cai, in turn, will be required to devote significant time and resources to addressing these arguments. It is for *precisely* this reason that courts routinely decline to appoint short sellers like Cai as lead plaintiffs: "It is a poor choice to appoint a class representative who engaged in a trading practice premised on the belief the stock would fall. . . . ***Short sales raise the question of whether the seller was actually relying on the market price, and the class is not served by its representative coming under such scrutiny***." *Critical Path*, 156 F. Supp. 2d at 1009-10 (emphasis added). There is simply no reason to appoint a Lead Plaintiff subject to such a glaring unique defense with the Venkataramans standing ready and willing to serve in that role, unencumbered by such deficiencies.

## III.   The Venkataramans' Selection Of Counsel Should Be Approved

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with Lead Plaintiff's selection only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.") (quoting *Varghese*, 589 F. Supp. 2d at 398; *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 150 (D. Del. 2005) (the Lead Plaintiff "is primarily responsible for selecting lead counsel.")).

Here, the Venkataramans have selected Pomerantz as Lead Counsel for the Class. As its resume reflects, Pomerantz is highly experienced in the area of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors. In 2018 alone, Pomerantz secured a settlement of nearly $3 billion on behalf of investors in the securities of Petróleo Brasileiro S.A.–Petrobras—the largest securities class action settlement in a decade—and an $80 million settlement on behalf of Yahoo

12

Inc. investors.  *See* Dkt. No. 33-4.  Thus, the Court may be assured that by approving the selection of counsel by the Venkataramans, the members of the class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, the Venkataramans respectfully request that the Court grant their motion in its entirety, and deny the competing motions.

Dated:  July 29, 2019

Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
Jonathan D. Lindenfeld
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com
jlindenfeld@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

*Counsel for Lead Plaintiff Movants Kalyan G.
Venkataraman and Kalyanasundaram
Venkataraman and Proposed Lead Counsel
for the Class*

13