# EXHIBIT 3

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RICHARD SEEKS, individually and on behalf of all others similarly situated,<br><br>         Plaintiff,<br><br>v.<br><br>THE BOEING COMPANY, DENNIS A. MUILENBURG, and GREGORY D. SMITH,<br><br>         Defendants. | Case No. 1:19-cv-02394<br>(Consolidated)<br><br>CLASS ACTION<br><br>Judge John J. Tharp Jr. |

### MEMORANDUM OF LAW IN FURTHER SUPPORT OF
### MOTION OF THE BOEING INVESTOR GROUP TO APPOINT LEAD PLAINTIFF,
### APPROVE SELECTION OF LEAD COUNSEL, AND
### IN OPPOSITION TO COMPETING MOTIONS

010815-11 1152396 V2

**TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................................1

II.    ARGUMENT...........................................................................................................3

    A.     The Boeing Investor Group is the Movant Most Capable of Adequately Representing the Full Interests of the Class Members.............................................3

        1.     Appointment of One of the Competing Movants Will Lead to a Multiplicity of Litigation. ...........................................................................4

        2.     The Competing Movants are Subject to Class Standing Challenges. ..........5

        3.     The Competing Movants Can Carve Option Traders Out of the Class Without Potential Recourse. .........................................................................6

        4.     The Competing Movants Have No Incentive To Zealously Prosecute Option Trader Claims. ...............................................................................8

        5.     Appointment of the Boeing Investor Group will Increase Efficiency and Preserve Judicial Resources.....................................................................10

    B.     Only the Boeing Investor Group Has Shown that it is Both Typical and Adequate Under Fed. R. Civ. P. 23.......................................................................................11

    C.     Alternatively, the Boeing Investor Group Should Be Appointed as Co-Lead Plaintiffs to Assure Adequate Representation of the Option Purchasers...............13

    D.     The Court Should Approve the Boeing Investor Group's Choice of Lead Counsel. ...............................................................................................................14

III.    CONCLUSION....................................................................................................15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alkhoury v. Lululemon Athletica, Inc.*,
2013 WL 5496171 (S.D.N.Y. Oct. 1, 2013) ...............................................................................4

*Am. Pipe Constr. Co. v. Utah*,
414 U.S. 538 (1974) ...................................................................................................................7

*Banes v. Modany*,
2015 WL 1380250 (S.D. Ind. Mar. 16, 2015) ...........................................................................5

*In re Bank of America Corp. Sec., Derivative, and Emp. Ret. Income Sec. Act
(ERISA) Litig.*,
2011 WL 3211472 (S.D.N.Y. July 29, 2011) ....................................................................4, 5, 8

*In re Bank of America Corp. Sec., Derivative, and Emp. Ret. Income Sec. Act
(ERISA) Litig.*,
2011 WL 4538428 (S.D.N.Y. Sept. 29, 2011) ...........................................................................8

*In re BP, PLC Sec. Litig.*,
758 F. Supp. 2d 428 (S.D. Tex. 2010) .....................................................................................14

*Camp v. Qualcomm Inc.*,
2019 WL 277360 (S.D. Cal. Jan. 22, 2019) ............................................................................11

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) .....................................................................................................11

*City of Sterling Heights Gen. Emp. Ret. Sys. v. Hospira, Inc.*,
2012 WL 1339678 (N.D. Ill. Apr. 18, 2012) ...........................................................................14

*Chandler v. Ulta Beauty, Inc.*,
2018 WL 3141763 (N.D. Ill. June 26, 2018) ...........................................................................15

*Chill v. Green Tree Fin. Corp.*,
181 F.R.D. 398 (D. Minn. 1998) ................................................................................................6

*In re Critical Path, Inc.*
2002 WL 32627559 (N.D. Cal. June 18, 2002) .........................................................................9

*In re Doral Fin. Corp. Sec. Litig.*,
414 F. Supp. 2d 398 (S.D.N.Y. 2006) ........................................................................................4

*In re Facebook, Inc., IPO Sec. and Derivative Litig.*,
288 F.R.D. 26 (S.D.N.Y. 2012) ...............................................................................................11

*In re Fed. Nat. Mortg. Ass'n Secs., Derivative and "ERISA" Litig.*,
247 F.R.D. 32 (D.D.C. 2008).............................................................................................13

*Janbay v. Canadian Solar, Inc.*,
272 F.R.D. 113 (S.D.N.Y. 2010) ......................................................................................12

*Laborers Local 1298 Pension Fund v. Campbell Soup Co.*,
2000 WL 486956 (D.N.J. Apr. 24, 2000) .........................................................................14

*Margolis v. Caterpillar, Inc.*,
815 F. Supp. 1150 (C.D. Ill.1991) ....................................................................................13

*Myun-Uk Choi v. Tower Research Capital LLC*,
890 F.3d 60 (2d Cir. 2018)................................................................................................13

*In re New Oriental Educ. & Tech. Group. Sec. Litig.*,
293 F.R.D. 483 (S.D.N.Y. 2013) ....................................................................................6, 7

*In re Oxford Health Plans*,
182 F.R.D. 42 (S.D.N.Y. 1998) ........................................................................................13

*Police & Fire Ret. Sys. of the City of Detroit v. Safenet, Inc.*,
2007 WL 7952453 (S.D.N.Y. Feb. 21, 2007).....................................................................4

*Richman v. Goldman Sachs Group, Inc.*,
274 F.R.D. 473 (S.D.N.Y. 2011) ........................................................................................7

*In re Royal Bank of Scotland Grp. PLC Sec. Litig.*,
765 F. Supp. 2d 327 (S.D.N.Y. 2011).................................................................................5

*Sokolow v. LJM Funds Mgmt.*,
2018 WL 3141814 (N.D. Ill. June 26, 2018) ...................................................................14

*Springer v. Code Rebel Corp.*,
2017 WL 838197 (S.D.N.Y. Mar. 2, 2017) ......................................................................11

*Takata v. Riot Blockchain, Inc.*,
2018 WL 5801379 (D.N.J Nov. 6, 2018) .........................................................................11

*In re Tesla, Inc. Sec. Litig.*,
2018 WL 6609569 (N.D. Cal. Dec. 17, 2018)..................................................................10

*In re Veritas Software Corp. Securities Litigation*,
496 F.3d 962 (9th Cir. 2007) ..............................................................................................8

*In re Wells Fargo Mortgage-Backed Certificates Litig.*,
712 F. Supp. 2d 958 (N.D. Cal. 2010) ................................................................................6

iii

Case 1:19-cv-02343-DKC Document 92 Filed 07/29/21 Page 6 of 22 PageID #: 224

*Winn v. Symons Int'l Grp., Inc.*,
    2001 WL 278113 (S.D. Ind. Mar. 21, 2001) ............................................................................5

*In re Zynga Inc. Sec. Litig.*,
    2014 WL 721948 (N.D. Cal. Feb. 25, 2014) ...........................................................................5

## Federal Statutes

15 U.S.C. § 78u-4 .................................................................................................... *passim*

15 U.S.C. § 78u-4(a)(3)(B)(i) ...........................................................................................3

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) .....................................................................................3

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) .....................................................................................3

15 U.S.C. § 78u-4(a)(3)(B)(v) ..........................................................................................14

## Federal Rules

Fed. R. Civ. P. 23 ...........................................................................................................1, 2, 3, 11

Fed. R. Civ. P. 23(a) .....................................................................................................3

## I. INTRODUCTION

Five motions are pending before the Court filed by movants seeking appointment as lead plaintiff pursuant to the PSLRA.[1]  One movant stands out above the rest: the Boeing Investor Group.  The Boeing Investor Group suffered losses of over $751,000 on their acquisition of Boeing securities during the Class Period.  Moreover, the Boeing Investor Group is the only movant that:

(1) demonstrates losses in both the first operative complaint's class period,[2] as well as during the second (now consolidated) complaint's extended class period;[3]

(2) makes a *prima facie* showing of adequacy under Rule 23 by providing the Court with information about each of its members; *and*

(3) includes investors who traded Boeing options—not just common stock—and suffered losses in those trades.

While the competing movants purport to have a greater financial interest, their alleged losses may be inflated through *Busch*'s questionable late-filed elongated class period.  Moreover,

---

[1] The five remaining movants are: (1) the Boeing Investor Group (comprised of John Armstrong, Joseph Fields, Pierre Givenchy, Richard Eads, and Richard Miller), (2) the Wang Family (comprised of Kathleen Wang, Kenny K. Wang, and Kenny W. Wang), (3) the Public Employees' Retirement System of Mississippi ("Mississippi PERS"), (4) the Labourers' Pension Fund of Central and Eastern Canada ("Labourers"), and (5) Robert W. Kegley Sr., as Trustee of the Robert W. Kegley Sr. Revocable Living Trust U/A DTD 04/16/2003 ("Kegley").  Movants Kin-Yip Chun, Darrell Stock (also named "Boeing Investor Group"), and Ali Alibrahim each withdrew their motions.  *See* ECF Nos. 75-76; 82.

[2] *See* Class Action Complaint, *Seeks v. The Boeing Company at al.*, Case No. 1:19-cv-02394 (filed April 9, 2019) (hereinafter "*Seeks*"), at ¶ 1 (establishing class period as encompassing transactions between January 8, 2019 and March 21, 2019).

[3] *See* Class Action Complaint for Violations of the Federal Securities Laws, *Busch v. The Boeing Company et al.*, Case No. 1:19-cv-3548 (filed May 29, 2019) (consolidated on June 21, 2019) (hereinafter "*Busch*"), at ¶ 1 (expanding class period to include transactions between January 8, 2019 and May 8, 2019).

1

each of the competing movants are susceptible to unique standing, typicality and adequacy defenses to represent the entirety of the Class:

| | The Boeing Investor Group | The Wang Family | Mississippi PERS | Kegley | Labourer's Pension Canada |
|---|---|---|---|---|---|
| **Claimed Loss** | $751K | $4.7 Million | $2.5 Million | $885K | $865K |
| **Loss in Class Period in Operative Complaint (*Seeks*)** | Both. | Both | Only 385 shares | Both | No |
| **Provides information to make *prima facie* showing of adequacy under Rule 23** | Yes, Declaration by each movant. | No | Yes | Yes | No |
| **Options** | Yes | No | No | No | No |

As reflected by the chart above, the two institutional investor movants – (i) Mississippi PERS; and (ii) Labourers – either suffered no injury or incurred nominal losses during the class period alleged in the operative *Seeks* complaint. Specifically, Mississippi PERS bought only 385 shares during the operative Class Period, and Labourers bought none. Consequently, should the Court reject the additional disclosures alleged in *Busch*, these movants will either lack standing or have minimal incentive to prosecute the Class's claims.[4]

In contrast, Boeing Investor Group members Richard Miller, John Armstrong, and Pierre Givenchy purchased 2,105, 1,500, and 809 common shares during the operative Class Period, respectively, held them throughout both class periods and lost $106,506.67, $122,447.50, $72,877.15 and, respectively.[5] In the *Busch* Class Period, the Boeing Investor Group members

---

[4] *See, e.g., In re Bally Total Fitness Sec. Litig*., Lead Case No. 1:04-cv-03530, 2005 WL 627960, at *6 (N.D. Ill. Mar. 15, 2005) (movant inadequate and atypical because it would need to expend "considerable resources" to establish loss causation).

[5] ECF Nos. 38-1 at 15-21; 38-2 at 2, 103-105.

2

Richard Eads and Joseph Fields purchased common stock and options during both class periods and lost $367, 695.18 and $82, 214.25, respectively.

Moreover, the Wang Family are unknown individual investors who have failed to provide even the most basic background information. These investors have therefore proved themselves unqualified to represent the Class.

Finally, all of the competing movants lack class standing or the motivation to recover the Class Period losses of Boeing option traders. Only the Boeing Investor Group has both standing and the incentive to zealously prosecute the valuable option trader claims.

Because the Boeing Investor Group has proven itself the movant "most capable of adequately representing the interests of class members," the Court should appoint the Boeing Investor Group as Lead Plaintiff and approve their selection of Hagen Berman as Lead Counsel.

## II. ARGUMENT

### A. The Boeing Investor Group is the Movant Most Capable of Adequately Representing the Full Interests of the Class Members

In a PSLRA class action, a court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). Courts are to "adopt a presumption" that the most adequate plaintiff is the plaintiff who: (1) has either filed a complaint or moved to be named lead plaintiff, (2) has the largest financial interest in the relief sought by the class, and (3) satisfies the requirements of Federal Rule of Civil Procedure 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Rule 23(a) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class" and that "the representative parties will fairly and adequately protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

3

Of all the movants, only the Boeing Investor Group purchased both common stock and options in the class period of the operative *Seeks* complaint and the later filed tag-along *Busch* complaint. No other movant has moved to nor has standing to represent option traders. Accordingly, the Boeing Investor Group has the "largest financial interest" to represent both common stock and option purchasers in Boeing securities.

Regardless, when compared to other movants whose interests are limited to common stock, or the tag-along class period, the Boeing Investor Group's losses are a combination of common stock positions and option positions, within both the operative Class Period and the tag-along class period. Therefore, the Boeing Investor Group has the most to gain by assuring an outcome that covers all class members. *See In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 403 (S.D.N.Y. 2006) (the court appointed the movant with lower financial losses who was "the more adequate and preferable of the two plaintiffs" naming the movant as sole "lead plaintiff, to minimize control problems and expense."); s*ee, e.g., Alkhoury v. Lululemon Athletica, Inc.*, No. 1:13-cv-04596-KBF, 2013 WL 5496171, at \*1 (S.D.N.Y. Oct. 1, 2013) (finding a negligible difference in losses "insufficient to outweigh the substantial financial interest of [movant] that is evidenced by the other factors.") (citing *Police & Fire Ret. Sys. of the City of Detroit v. Safenet, Inc.*, No. 1:06-cv-05797-PAC, 2007 WL 7952453, at \*2 (S.D.N.Y. Feb. 21, 2007)). The other movants do not have the same interests.

### 1. Appointment of One of the Competing Movants Will Lead to a Multiplicity of Litigation.

The risks of failing to ensure the adequate protection of all traders' interests are most evident in cases where those risks materialized into needless litigation. For example, in *In re Bank of America Corp. Sec., Derivative, and Emp. Ret. Income Sec. Act (ERISA) Litig.*, No. 1:09-md-02058-PKC, 2011 WL 3211472, at \*12 (S.D.N.Y. July 29, 2011), the class was

4

originally defined to include "owners of call options purchased during the class period and put options sold during the class period." *Id*. at *12. However, the lead plaintiffs that the court appointed were not significant options traders. As a result, the defendants argued that "these claims should be dismissed because the class plaintiffs did not themselves purchase or sell these securities, and therefore lack Article III standing to bring a justiciable claim." *Id*.

The court largely agreed, noting that only one plaintiff "purchased 10 call options for $35 and sold them for $14.50, for a loss of more than $20. This class representative's call options were callable in January 2011." *Id*. at *14 (citation omitted). The court thus held that "lead plaintiffs have standing to pursue claims solely on behalf of holders of January 2011 call options." *Id*. Significantly, the court rejected an attempt by Dornfest, an options trader, to "provide[] standing for lead plaintiffs to pursue all BofA options claims," on the grounds that "Dornfest is not a named class representative, [such that] his purchases do not establish standing to pursue classwide claims." *Id*. at 14 n. 11. As a result, option traders were significantly prejudiced by the failure to have a lead plaintiff with standing to assert their claims.[6]

**2. The Competing Movants are Subject to Class Standing Challenges.**

If the Court were to appoint a lead plaintiff in this case that does not include all interests—namely options purchasers—there is a risk that this will invite attacks on standing. *See, e.g., In re Zynga Inc. Sec. Litig.*, No. 4:12-cv-04007-JSW, 2014 WL 721948, at *3 (N.D. Cal. Feb. 25, 2014) (dismissing claims because lead plaintiff(s) lacked standing); *In re Royal*

---

[6] *See also Banes v. Modany*, No. 1:14-cv-1599-TWP-DML, 2015 WL 1380250, at *2 (S.D. Ind. Mar. 16, 2015) (appointing lead plaintiff movant with both options and common stock losses, finding the movant's claims "are typical of the class and that it will fairly and adequately protect the interests of the class.") (*citing Winn v. Symons Int'l Grp., Inc.*, No. IP 00-0310-C-B/S, 2001 WL 278113, at *4–5 (S.D. Ind. Mar. 21, 2001)).

*Bank of Scotland Grp. PLC Sec. Litig.*, 765 F. Supp. 2d 327, 339 (S.D.N.Y. 2011) (same); *In re Wells Fargo Mortgage-Backed Certificates Litig.*, 712 F. Supp. 2d 958, 965 (N.D. Cal. 2010) (same). The Boeing Investor Group is the most adequate plaintiff to handle all of the class's interests. Appointing the Boeing Investor Group as Lead Plaintiff substantially forecloses such attacks. *See, e.g., Chill v. Green Tree Fin. Corp.*, 181 F.R.D. 398, 406 (D. Minn. 1998) ("[O]ur role is not to resolve the standing issue, which appears to remain open to honest debate, but to determine whether the debate itself is substantive enough" to warrant prophylactic measures.).

### 3.    The Competing Movants Can Carve Option Traders Out of the Class Without Potential Recourse.

Another complication that has arisen in other securities cases is the outright exclusion of certain traders from the class definition. For example, in *In re New Oriental Educ. & Tech. Group. Sec. Litig.*, 293 F.R.D. 483 (S.D.N.Y. 2013), although options traders were initially part of the case, the lead plaintiff's amended complaint did "not assert claims on behalf of purchasers or sellers of EDU option contracts." *Id*. at 485. This was so even though counsel for the lead plaintiff initially represented to counsel for an options trader that options traders' claims would be pursued. *Id*.

The lead plaintiff claimed that this decision was based on fears that options claims could not meet certain class certification requirements. *See* Lead Plaintiff's Opposition Brief, *In re New Oriental Educ. & Tech. Group. Sec. Litig.*, No. 1:12-cv-05724-JGK (S.D.N.Y. Apr. 26, 2013), ECF No. 47. The options trader then requested either appointment as co-lead plaintiff, or severance and permission to proceed with a separate class action. *In re New Oriental*, 293 F.R.D. at 484. The defendants and the existing lead plaintiff strongly opposed, arguing, among other things, that severance would "result in an 'ecosystem' of additional class actions for all of

the claims that the lead plaintiff excises," and that the existing lead plaintiff's authority to define the class should not be disturbed. *Id*. at 488.

The court agreed that the failure to include options traders posed a substantial problem, including because options traders no longer benefited from *Am. Pipe* tolling as a result of being omitted from the class, thus creating substantial "statute of limitations repercussions." *Id*. at 487. Further, in response to the existing lead plaintiff's claims that the options class plaintiffs could not meet class certification requirements since they purportedly could not rely on the fraud-on-the-market doctrine, the court noted that to accept that argument without permitting severance "would have the effect of peremptorily dismissing the options class claims without any briefing on whether such a dismissal was warranted." *Id*. at 488. Thus, "in order to protect the potential options class," the court severed the option trader's case and ordered that he "may pursue his claims on an individual basis and can seek to have a class certified if he can satisfy all of the requirements for such a class action." *Id*.

Although the court in *In re New Oriental* severed the option trader's case, other courts have not provided traders with the same remedy when they are excluded from the class definition. For example, in *Richman v. Goldman Sachs Group, Inc.*, 274 F.R.D. 473 (S.D.N.Y. 2011), the court rejected Bochner's – an options trader – application for appointment as co-lead plaintiff, despite Bochner's argument that the other movants would not adequately protect options traders. In so doing, the court noted that "the option claims raised by Ms. Bochner can be handled in other ways which fully protect the interests of her proposed class," but did not elaborate on what those methods were. *Id*. at 476-77. Later, when the appointed lead plaintiffs filed their consolidated complaint and class certification motions, options traders were not included. *See* Consolidated Amended Complaint, *In re Goldman Sachs Grp., Inc. Sec. Litig.*,

No. 1:10-cv-03461-PAC (S.D.N.Y. July 25, 2011), ECF No. 68 (covering only "purchasers" of Goldman securities, and thus omitting at least put option sellers); *see also* Memorandum of Law In Support of Motion for Class Certification, *In re Goldman Sachs Grp., Inc. Sec. Litig.*, No. 1:10-cv-03461-PAC (S.D.N.Y. Jan. 30, 2015), ECF No. 136 (covering only Goldman "common stock," and thus definitively excluding options traders).

Similarly, in the *Bank of America* case described above, Dornfest, the options trader whose attempt to protect options traders' interests was rebuffed, later tried to file a separate class action on behalf of Bank of America options traders. *See In re Bank of America Corp. Sec., Derivative, and Emp. Ret. Income Sec. Act (ERISA) Litig.*, No. 1:09-md-02058-PKC, 2011 WL 4538428, at *1 (S.D.N.Y. Sept. 29, 2011). The court, however, rejected that attempt as well, essentially deferring to the lead plaintiffs' decision to abandon options traders. *Id*. Instead, the court only permitted Dornfest to pursue his claims individually. *Id*. at *2.

**4.** **The Competing Movants Have No Incentive To Zealously Prosecute Option Trader Claims.**

Even if the class definition does end up including all traders, there is no guarantee that their interests will be protected throughout the case. For example, in *In re Veritas Software Corp. Securities Litigation*, 496 F.3d 962 (9th Cir. 2007), although the complaint's class definition included both common stock and option traders, the initial settlement agreement only covered "purchasers of VERITAS common stock." *Id*. at 965. Only after an options trader objected was the lead plaintiff forced to include options traders in the settlement, nearly five months after the initial settlement had been reached. *Id*. at 966. Yet, even then, the revised settlement limited the claims of options traders to a mere 2% of the recovery, drawing further objections. *Id*. at 968. This led to substantial additional litigation over the settlement, including an appeal to the Ninth

Circuit. The Ninth Circuit ultimately did not rule on the fairness of the 2% cap, vacating the district court's judgment on other grounds.[7]

Further, if the case is settled and the class definition does not include all traders, the Boeing Investor Group and similarly situated class members will be even less protected. In *In re Critical Path, Inc.*, the court rejected an option trader's objection that a "settlement unjustly excludes investors who purchased call options or sold put options during the class period," because the "consolidated complaint did not mention options" and claims based on options were "outside the scope of the case." No. 3:01-cv-00551-WHA, 2002 WL 32627559, at *5 (N.D. Cal. June 18, 2002).

Accordingly, because option traders in the Boeing Investor Group and other traders might simply be defined out of the class by the amended complaint or by the class certification motion, it is not enough to say that any potential conflicts or issues, such as issues related to standing, can be resolved later. As the above cases demonstrate, the danger is not merely that a lead plaintiff will lack standing. It is that a lead plaintiff will simply choose not to include certain traders in the class definition. If that were to occur, members of the Boeing Investor Group and others like them will have little meaningful recourse. Certain types of traders would not even be class members, let alone have the ability to try to become class representatives.

---

[7] After omitting options traders completely, the lead plaintiffs then defended the 2% cap by arguing that calculating damages for options traders was too complicated. These kinds of disputes only further highlight the need for the lead plaintiff to have an interest in all claims of the class from the very beginning of the case.

**5. Appointment of the Boeing Investor Group will Increase Efficiency and Preserve Judicial Resources.**

The above cases are clear examples of the complications that can arise from the failure to ensure the interests of a distinct group, such as option traders, are adequately protected at the outset of a class action. Importantly, not only were certain traders' interests prejudiced in these cases, but judicial resources were unnecessarily wasted as a result. Much of that waste could have been avoided by the early appointment of a lead plaintiff with complete standing at the onset of the litigation. Most recently, the District Court in the securities litigation involving Tesla recognized the need to have representation by class members with standing in each type of security.[8]

Here, the Court has the ability to foreclose all such complications at the outset by appointing the Boeing Investor Group as Lead Plaintiff. Among other things, doing so has the significant benefits of ensuring that certain traders are not arbitrarily (and without representation) excluded from the class definition, and that they are adequately represented in the event of a recovery. Moreover, there is virtually no downside risk to so doing as any issues with class certification of particular sub-categories of Boeing investors can be addressed at class certification on a full record.

As set forth in Exhibit B to the Declaration of Reed R. Kathrein submitted in support of their motion,[9] the Boeing Investor Group suffered significant losses totaling over $750,000

---

[8] *See In re Tesla, Inc. Sec. Litig.*, No. 18-CV-04865-EMC, 2018 WL 6609569, at *4 (N.D. Cal. Dec. 17, 2018) ("The Court should also reject Bridgestone's suggestion that the Court should give no consideration to potential conflicts among the class because "'equity conflict' is 'present in almost every large, complex securities case.'" [citation omitted] Equity conflict, as a general matter, may be "an inappropriate basis for denial of class certification," i.e., on the ground of adequacy. But that does not mean that equity conflict never matters.")

[9] *See* ECF No. 38-2.

giving them a significant financial interest in the case and the most to gain from litigating the claims of *all* the members of the Class.  Accordingly, the Court should appoint the Boeing Investor Group as Lead Plaintiff.

**B.**     **Only the Boeing Investor Group Has Shown that it is Both Typical and Adequate Under Fed. R. Civ. P. 23**

A "'movant's financial interest is just a beginning point.'"  *In re Facebook, Inc., IPO Sec. and Derivative Litig.*, 288 F.R.D. 26, 37 (S.D.N.Y. 2012).  [citation omitted]  "To qualify as the presumptive lead plaintiff, in addition to possessing a significant financial interest, a lead plaintiff must also 'satisf[y] the requirements of Rule 23.'"  *Id*.

Importantly, the PSLRA "does not permit courts simply to 'presume' that the movant with 'the largest financial interest in the relief sought by the class' satisfies the typicality and adequacy requirements."  *In re Cendant Corp. Litig.*, 264 F.3d 201, 264 (3d Cir. 2001).  Rather, movants are required to affirmatively make "a sufficient preliminary showing that they can satisfy the relevant requirements of Federal Rule of Civil Procedure 23."  *Springer v. Code Rebel Corp.*, No. 1:16-cv-3492, 2017 WL 838197, at *2 (S.D.N.Y. Mar. 2, 2017).

A movant's failure to include facts ***in their moving papers*** detailing their adequacy "could, by itself, be a basis for denying lead plaintiff status."  *Takata v. Riot Blockchain, Inc.*, No. 3:18-cv-02293, 2018 WL 5801379, at *5 (D.N.J Nov. 6, 2018); *Camp v. Qualcomm Inc.*, No. 1:18-cv-1208-AJB-BLM, 2019 WL 277360, at *3 (S.D. Cal. Jan. 22, 2019) ("Singh failed to include any basic details about himself, including where he lives or who he is specifically in his motion.").

As demonstrated in their declaration—including the options, common stock, and both class period trades noted above—the Boeing Investor Group satisfies both the typicality and adequacy requirements of Rule 23, thereby warranting the Group's appointment as Lead

Plaintiff. The joint declaration submitted by the Boeing Investor Group in support of the Group's motion describes how each member has significant investment, educational and sophisticated work experience, and each suffered substantial losses from their investment in Boeing.[10] The Group's joint declaration explains how and why the Group made the decision jointly to seek appointment as lead plaintiff.[11] Specifically, the Group concluded that it made sense to combine their "collective decision-making and resources" to ensure that the best interests of the class are protected.[12] In addition, the Group emphasized their commitment to working together in the best interests of the class[13] and overseeing class counsel,[14] and developed a decision-making structure.[15]

In contrast, the Wang Family has not submitted any declaration explaining who they are, their educational or professional background, or how they made the decision to seek a lead plaintiff appointment.[16] So too Labourers has not submitted a declaration on its own behalf with any information for the Court to make an informed decision with respect to their motions,

---

[10] Boeing Investor Group Joint Declaration. ECF No. 38-5, at ¶¶ 4-8. *See also Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 113, 119-20 (S.D.N.Y. 2010) (approving group comprised of "sophisticated individuals who have demonstrated their intent to participate directly in this litigation and their willingness and ability to serve as class representatives. They have indicated that they have a detailed decision-making structure in place, with established methods for communication amongst themselves and with counsel.").

[11] *Id*. at ¶¶ 12-14; 24.

[12] *Id*.

[13] *Id*. at ¶ 17.

[14] *Id*. at ¶ 11.

[15] *Id*. at ¶ 15.

[16] *See* ECF Nos. 41-43, 45.

12

including the background of the institution, its decision-making process, or its intent to oversee counsel.[17]

To the extent that these competing movants attempt to correct these deficiencies, the showing of their adequacy should have been made in the moving papers. Now it is too late. *See Myun-Uk Choi v. Tower Research Capital LLC*, 890 F.3d 60, 69 n.5 (2d Cir. 2018) ("Defendants did not raise this argument in their motion . . . and it is therefore waived.").

**C.      Alternatively, the Boeing Investor Group Should Be Appointed as Co-Lead Plaintiffs to Assure Adequate Representation of the Option Purchasers**

As set forth in the chart above, none of the competing movants, either individually or as a group, have standing or an incentive to represent option purchasers.  Options are different securities than common stock.  They behave differently, are not issued by Boeing, are often attacked by Defendants, and therefore should have representation by investors with standing.[18]

For these reasons, in *In re Oxford Health Plans*, 182 F.R.D. 42, 45-46 (S.D.N.Y. 1998), the court appointed three competing movants as co-lead plaintiffs when "all suffered significant losses" on the grounds that such a structure "provides the proposed class with the substantial benefits of joint decision-making" and is otherwise consistent with the PSLRA.[19]  The same

---

[17] *See* ECF Nos. 46-48.

[18] *See, e.g.*, *In re Fed. Nat. Mortg. Ass'n Secs., Derivative and "ERISA" Litig.*, 247 F.R.D. 32, 41 (D.D.C. 2008) (defendant requested to exclude options traders from the class definition); *Margolis v. Caterpillar, Inc.,* 815 F. Supp. 1150, 1156 (C.D. Ill.1991) (since option holder's claim was "not typical of stock purchaser's claim," option holder could "only represent a class of option holders, not stock holders.").

[19] *Id*.  Explaining its decision, the court further noted that the appointment of "a state pension fund, significant individual investors and a large institutional investor" would "ensure[] that the interests of all class members will be adequately represented in the prosecution of the action and in the negotiation and approval of a fair settlement, and that the settlement process will not be distorted by the differing aims of differently situated claimants." *Id*. at 49.

reasoning applies here, and the rationale for the appointment of a lead plaintiff and separate lead counsel for different classes of investors, and the case law discussing the considerations, is also examined in depth in *In re BP, PLC Sec. Litig.,* 758 F. Supp. 2d 428, 436-443 (S.D. Tex. 2010).[20]

## D.     The Court Should Approve the Boeing Investor Group's Choice of Lead Counsel.

Pursuant to the PSLRA, the lead plaintiff may select and retain lead counsel, subject to this Court's approval.[21]  Hagens Berman filed the operative *Seeks* complaint and did the initial investigation. Movant has selected Hagens Berman to serve as Lead Counsel for the proposed class.  Hagens Berman has previously been appointed as lead counsel in numerous other cases and has a demonstrated ability to work in an efficient fashion in the class's best interests.[22] Hagens Berman is one of the country's leading securities litigation firms, advising clients in both individual and class-action cases, and has served as Lead Counsel or Co-lead Counsel in several high-profile securities class actions.[23]  Moreover, Hagens Berman suffers from no disabling

---

[20] *See also Sokolow v. LJM Funds Mgmt.*, No. 1:18-cv-01039, 2018 WL 3141814, at \*5 (N.D. Ill. June 26, 2018) ("Indeed, other courts have recognized that more diverse groups can better serve the interests of class members in securities class actions.") (*citing City of Sterling Heights Gen. Emp. Ret. Sys. v. Hospira, Inc.*, No. 1:11-cv-8332, 2012 WL 1339678, at \*8 (N.D. Ill. Apr. 18, 2012); *Laborers Local 1298 Pension Fund v. Campbell Soup Co.*, No. 1:00-cv-00152-JEI, 2000 WL 486956, at \*3 (D.N.J. Apr. 24, 2000) (appointing two competing movants as co-lead plaintiffs in view of the desirability of having both institutional investors and individual investors as lead plaintiffs "since each may bring a unique perspective to the litigation")).

[21] *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).

[22] *See* ECF No. 38-4 (Hagens Berman Firm Résumé, Kathrein Decl., Ex. D).

[23] *Id.* at pages 31-32.

14

conflict of interest. Accordingly, the Boeing Investor Group respectfully requests that Hagens Berman be appointed lead counsel.[24]

## III. CONCLUSION

For the foregoing reasons, the Boeing Investor Group respectfully requests that the Court: (1) appoint Movant as Lead or Co-Lead Plaintiff pursuant to the PSLRA; (2) approve Movant's selection of Hagens Berman to serve as Lead or Co-Lead Counsel for the putative/proposed Class; and (3) deny all other competing motions.

DATED: July 19, 2019

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By _/s/ Reed R. Kathrein_
   Reed R. Kathrein
Danielle Smith
Lucas E. Gilmore
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
danielles@hbsslaw.com
lucasg@hbsslaw.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

_Counsel for Proposed Lead Plaintiff Boeing Investor Group_

---

[24] _See also Chandler v. Ulta Beauty, Inc._, No. 1:18-cv-01577, 2018 WL 3141763, at *6 (N.D. Ill. June 26, 2018) ("Given the extensive experience of [proposed Lead Counsel] in the area of securities law, the Court approves them as counsel in this case.").

15

**CERTIFICATE OF SERVICE**

I hereby certify that on July 19, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed a paper copy of the foregoing document via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List generated by the CM/ECF system.

> */s/ Reed R. Kathrein*
> REED R. KATHREIN