**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq.
Laurence M. Rosen, Esq.
275 Madison Avenue, 34th Floor
New York, New York 10016
Tel: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STEPHEN STRUGALA, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> JUMIA TECHNOLOGIES AG, JEREMY HODARA, SACHA POIGNONNEC, and ANTOINE MAILLET-MEZERAY <br><br> Defendants. | **CASE No.: 1:19-cv-04397-PKC** <br><br> **REPLY MEMORANDUM OF LAW OF HEXUAN CAI IN IN FURTHER SUPPORT OF LEAD PLAINTIFF MOTION** <br><br> **CLASS ACTION** |
| LUO ZHI, Individually and on Behalf of Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> JUMIA TECHNOLOGIES AG, JEREMY HODARA, SACHA POIGNONNEC, and ANTOINE MAILLET-MEZERAY, <br><br> Defendants. | **CASE No.: 1:19-cv-04952-PKC** <br><br> **CLASS ACTION** |

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT......................................................................................................................... 3

      A.      Cai Does Not Suffer from Unique Reliance Defenses ............................ 3

           (i)    Cai is Not a High Frequency Trader Nor a Daytrader .................. 3

           (ii)   Cai's May 9, 2019 Purchases Do Not Render Him Inadequate or
                 Atypical ...................................................................................... 5

           (iii)  Cai is Not A Short Seller .................................................................. 7

      B.      Cai's Domain Name Dispute Does Not Render Him Inadequate or
           Atypical ...................................................................................................... 9

CONCLUSION ................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Amgen, Inc. v. Connecticut Retirement Plans and Trust Funds,*
  568 U.S. 455 (2013)......................................................................................................... 3

*Aviva Partners, LLC v. Navarre Corp.,*
  2005 WL 3782255 (D. Minn. Dec. 13, 2005)................................................................... 8

*Basic, Inc. v. Levinson,*
  485 U.S. 224 (1988)......................................................................................................... 3

*City of Livonia Employees' Ret. Sys. v. Wyeth,*
  284 F.R.D. 173 (S.D.N.Y. 2012) ..................................................................................... 7

*Constance Sczesny Trust v. KPMG LLP,*
  223 F.R.D. 319 (S.D.N.Y. 2004) ...................................................................................1-2

*Crossen v. CV Therapeutics,*
  2005 WL 1910928 (N.D. Cal. Aug. 10, 2005) ................................................................. 8

*Danis v. USN Commc'ns, Inc.,*
  189 F.R.D. 391 (N.D. Ill. 1999)....................................................................................... 8

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
  903 F.2d 176 (2d Cir. 1990)............................................................................................. 5

*George v. China Auto. Sys., Inc.,*
  2013 WL 3357170 (S.D.N.Y. July 3, 2013) ................................................................... 5

*In re Cavanaugh,*
  306 F.3d 726 (9th Cir. 2002) ........................................................................................... 1

*In re Cendant Corp. Litig.,*
  264 F.3d 201 (3d Cir. 2001).............................................................................................. 1

*In re Critical Path, Inc. Sec. Litig.,*
  156 F. Supp. 2d 1102 (N.D. Cal. 2001) ........................................................................... 9

*In re Fuwei Films Sec. Litig.,*
  247 F.R.D. 432 (S.D.N.Y. 2008) ..................................................................................... 1

*In re MicroStrategy Inc. Sec. Litig.,*
  110 F. Supp. 2d 427 (E.D. Va. 2000) .............................................................................. 5

*In re Monster Worldwide, Inc., Sec. Litig.*,
　251 F.R.D. 132 (S.D.N.Y. 2008) ............................................................................................. 6

*In re Moody's Corp. Sec. Litig.*,
　274 F.R.D. 480 (S.D.N.Y. 2011) ............................................................................................. 6

*In re Opnext, Inc. Sec. Litig.*,
　2008 WL 3285732 (D.N.J. Aug. 7, 2008) ............................................................................... 4

*In re Petrobras Sec. Litig.*,
　104 F. Supp. 3d 618 (S.D.N.Y. 2015).................................................................................... 1

*In re Providian Fin. Corp. Sec. Litig.*,
　2004 WL 5684494 (N.D. Cal. Jan. 15, 2004) ......................................................................... 7

*In re Safeguard Scis.*,
　216 F.R.D. 577 (E.D. Pa. 2003).......................................................................................... 5, 10

*In re Salomon Analyst Metromedia*,
　236 F.R.D. 208 (S.D.N.Y. 2006) ............................................................................................. 6

*In re WorldCom, Inc. Sec. Litig.*,
　219 F.R.D. 267 (S.D.N.Y. 2003) ............................................................................................. 3

*Isaacs v. Musk*,
　2018 WL 6182753 (N.D. Cal. Nov. 27, 2018) ........................................................................ 9

*Marcus v. J.C. Penney Co.*,
　2014 WL 11394911 (E.D. Tex. Feb. 28, 2014) ....................................................................... 9

*Menaldi v. Och-Ziff Capital Mgmt. Grp. LLC*,
　328 F.R.D. 86 (S.D.N.Y. 2018) ............................................................................................... 6

*Milbeck v. TrueCar, Inc.*,
　2019 WL 2353010 (C.D. Cal. May 24, 2019) ......................................................................... 7

*Montoya v. Herley Indus. Inc.*,
　2006 WL 3337485 (E.D. Pa. Nov. 14, 2006) ........................................................................ 10

*Murphy v. JBS S.A.*,
　2017 WL 4480751 (E.D.N.Y. Oct. 6, 2017)........................................................................... 10

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
　229 F.R.D. 395 (S.D.N.Y. 2004) ........................................................................................... 10

iii

*Pirnik v. Fiat Chrysler Automobiles, N.V.*,
   327 F.R.D. 38 (S.D.N.Y. 2018) .................................................................................... 6

*Tsirekidze v. Syntax-Brillian Corp.*,
   2008 WL 942273 (D. Ariz. Apr. 7, 2008) ................................................................... 5

*Weisman v. Darneille*,
   78 F.R.D. 669 (S.D.N.Y. 1978) ................................................................................. 10

## <u>Statutes</u>

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)................................................................................... 1

Lead Plaintiff Movant Hexuan Cai ("Movant" or "Cai") respectfully submits this reply memorandum in further support of his lead plaintiff motion.

## PRELIMINARY STATEMENT

The PSLRA provides a "clear path that the district court must follow in selecting the lead plaintiff." *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002); *In re Cendant Corp. Litig.*, 264 F.3d 201, 268-69 (3d Cir. 2001). The court "must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit. It must then focus its attention on *that* plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" *Cavanaugh*, 306 F.3d at 730 (emphasis in original). "If the plaintiff with the largest financial stake in the controversy provides information that satisfies these requirements [here, Cai], he becomes the presumptively most adequate plaintiff." *Id.* at 732; *Cendant*, 264 F.3d at 263 ("The initial inquiry (i.e., the determination of whether the movant with the largest interest in the case 'otherwise satisfies' Rule 23) should be confined to determining whether the movant has made a *prima facie* showing of typicality and adequacy."); *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 439 (S.D.N.Y. 2008) (Sullivan, J.) (same).

To overcome the presumption in favor of Cai, competing movants must "com[e] forward with proof that the plaintiff with the largest financial interest '[1] will not fairly and adequately protect the interests of the class; or [2] is subject to unique defenses that render such plaintiff incapable of adequately representing the class.'" *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 621 (S.D.N.Y. 2015) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)). "[C]onclusory assertions of inadequacy are, however, insufficient to rebut the statutory presumption under the PSLRA without specific support in evidence of the existence of an actual or potential conflict of interest or a

defense to which [the potential lead plaintiff] would be uniquely subject." *Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 324-25 (S.D.N.Y. 2004); *Cendant*, 264 F.3d at 270 (unsubstantiated allegations insufficient to rebut presumption).

Of the original six lead plaintiff movants, only two movants oppose Cai's motion:

| Movant | Loss | Opposition to Cai |
|---|---|---|
| 1. Hexuan Cai | $523,436.85 | |
| 2.The Venkataramans[1] | $151,314 | Yes, dkt. no. 38. |
| 3. Sanjeev Jaiswal | $130,463.33 | No, dkt. no. 36 |
| 4. Donna Jones | $129,738.13 | No, dkt. no. 35 |
| 5. Hongtao Qiu ("Qiu") | $99,322.11 | Yes, dkt. no. 39 |
| 6. Ryan C. Heist | $37,828.76 | Withdrawn, dkt. no. 34 |

The Venkataramans and Qiu do not dispute that Cai has by far the largest financial interest—indeed, Cai's losses are more than *double* the combined losses of the Venkataramans and Qiu. Instead, the Venkataramans and Qiu attempt to rebut the presumption in favor of Cai through two categories of arguments:

(A) that Cai suffers from unique reliance defenses because he: (i) is a high frequency trader or daytrader engaging in over 100 trades a in a single day (Qiu Opp. at 1&2)[2]; (ii) purchased shares on May 9, 2019 supposedly aware of the fraud and thus did not rely on the integrity of the market (*Id.*); and (iii) is a short seller and may have relied on non-public information (Venkataramans Opp. at 3-4);[3] and

(B) that Cai's domain name dispute renders him inadequate or atypical (Qiu Opp. at 3).

These arguments fail to the rise to the requisite level of *proof* required under the PSLRA

---

[1] Comprised of Kalyan G. Venkataraman and Kalyanasundaram Venkataraman
[2] "Qiu Opp." refers to Hongtao Qiu's opposition, dkt. no. 39.
[3] "Venkataraman Opp." refers to the Venkataramans' opposition, dkt. no. 38.

to rebut the presumption in favor of Cai, because the arguments are factually wrong, founded on baseless speculation, and rely on inapposite case authorities. Cai's motion should be granted and the competing motions should be denied.

## ARGUMENT

### A. Cai Does Not Suffer from Unique Reliance Defenses

The related actions here assert the fraud on the market presumption of reliance.[4]  The fraud on the market theory holds that if a security trades in an efficient market, the market price of the security reflects the publicly available information about that security. *Basic, Inc. v. Levinson*, 485 U.S. 224, 245-47 (1988). Therefore, "it is reasonable to presume that most investors—knowing that they have little hope of outperforming the market in the long run based solely on their analysis of publicly available information—will rely on the securities' market price as an unbiased assessment of the security's values in light of all public information." *Amgen, Inc. v. Connecticut Retirement Plans and Trust Funds,* 568 U.S. 455, 462 (2013). Thus, "a plaintiff need not prove that she read or heard the misrepresentation that underlies her securities claim." *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 291 (S.D.N.Y. 2003).  "[C]ourts … presume that investors trading in efficient markets indirectly rely on public, material misrepresentations through their 'reliance on the integrity of the price set by the market.'" *Amgen*, 568 U.S. at 462 (quoting *Basic*, 485 U.S. at 245).

### (i)    Cai is Not a High Frequency Trader Nor a Daytrader

Qiu, citing "over 100" trades made on May 9, 2019, argues that Cai is an atypical high-

---

[4]  *See*, dkt. no. 1, ¶¶41-42; *Zhi v. Jumia Techs. AG, et al.*, 19-cv-4952 (PKC) ("*Zhi* Action"), dkt no. 1, ¶¶59-60.

3

frequency trader. (Qiu Opp. at 1-2). Qiu then surmises that Cai's "trading strategy which entails making dozens or more trades in a single day, many at varying prices, evidences a focus 'on technical price movements rather than price' thereby saddling the putative class with a 'compelling reason to rebut the [fraud on the market] reliance presumption.'" (*Id.*).

Simply, this speculation is wrong.  Cai is not a high frequency trader nor a daytrader.  (*See* Declaration of Hexuan Cai ("Cai Decl.") ¶2, attached as Exhibit 1 to the Declaration of Phillip Kim in Support of Hexuan Cai's Reply Memorandum of Law ("Kim Decl.") filed herewith. Cai did not make over 100 trades on May 9.  Cai placed 16 trades with his brokerage on May 9. (Cai Decl., ¶2 and Ex. A). Those trades were then filled by the brokerage through numerous transactions.  (*Id.*).  Cai has filed herewith a chart detailing the actual orders he placed and how they were filed by his brokerage. (*Id.*). This is common practice for brokers. (*Id.*).[5] Thus, the actual number of transactions that a brokerage firm uses to execute a single trade has nothing to do with an investor's reliance.[6]

Qiu cites no cases from the Second Circuit in support. Qiu's out of circuit cases are off the mark. In, *Shaffer v. Digital Generation, Inc*., No. 3:13-cv-01684-N, ECF No. 38 at 6-7 (N.D. Tex. Sept. 19, 2013), the lead plaintiff presumption was rebutted because movant engaged in over 800 trades during a 266-day window in the class period with as many as 55 trades in one day. *In re Opnext, Inc. Sec. Litig.*, 2008 WL 3285732, at *3 (D.N.J. Aug. 7, 2008) turned on the court's

---

[5] *See, also,* Trade Execution, Jan. 16, 2013, https://www.sec.gov/reportspubs/investor-publications/investorpubstradexechtm.html (last viewed August 5, 2019).

[6] The number transactions a brokerage uses to execute a trade should not impugn an investor's ability to serve as lead plaintiff.  The PSLRA requires the court to appoint investors with the largest financial interest. As the number of shares purchased and sold get larger, the number of transactions a broker would use to fill those trades would increase as well.

decision to refuse to aggregate the losses of unrelated investors. In *In re Safeguard Scis.*, 216 F.R.D. 577, 582 (E.D. Pa. 2003), the movant was a professional daytrader.[7]

### (ii) Cai's May 9, 2019 Purchases Do Not Render Him Inadequate or Atypical

Qiu argues that because Cai bought 38,440 shares on May 9, 2019—the day when Citron Research issued its report—it "appears" that Cai made a substantial portion of his purchases "because of the disclosure of the fraud" which will "harm his ability to establish reliance on the integrity of the market price of Jumia securities" and the materiality of the alleged misstatements. (Qiu Opp. at 1-2). Qiu relies on *Safeguard,* 216 F.R.D. at 582 in support of this argument. Qiu is wrong on several levels.

First, *Safeguard* is off the mark. As noted above, the movant in *Safeguard* was a professional daytrader and would, and did, buy the stock regardless of the fraud, and thus the alleged misstatements and omissions were not material to his transactions. 216 F.RD. at 582.[8]

Here, Cai is not a daytrader. (Cai Decl., ¶ 2). On May 9, 2019, Cai was not aware of the fraud and did not see or read Citron Research's report. (*Id.* at ¶5). "Had [Cai] known there was any fraud within Jumia on May 9, 2019, [he] would not have purchased those shares." (*Id.*). Rather,

---

[7] Qiu's other cases are distinguishable. *In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 437 (E.D. Va. 2000), the movant included indecipherable financial statements purporting to demonstrate financial interest and the movant was an institutional investor that specialized in options trading and therefore was atypical. *Tsirekidze v. Syntax-Brillian Corp.*, 2008 WL 942273, at *4 (D. Ariz. Apr. 7, 2008) turned on unrelated groups and the fact a principal member of the group sent a certification to another firm who also made a motion on his behalf.

[8] Qiu citation to *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 179 (2d Cir. 1990) does not help him as in that case the class representative had fully investigated the fraud and was on notice of the fraud. In *George v. China Auto. Sys., Inc.*, No. 11 CIV. 7533 KBF, 2013 WL 3357170, at *5– *7 (S.D.N.Y. July 3, 2013) is distinguishable as there the proposed class representatives engaged in post fraud purchases and made profits on those trades, and the movants engaged in significant and profitable in and out trades.

Cai relied on the market price of Jumia stock and the publicly available information he read. (*Id.* at ¶6). Cai bought shares on May 9, 2019 because he saw the price of Jumia shares trending down and believed it as a good buying opportunity to increase his investment and average down his cost basis. (*Id.* ¶5). *See In re Moody's Corp. Sec. Litig.*, 274 F.R.D. 480, 488 (S.D.N.Y. 2011) (Daniels, J.) (post fraud disclosure purchases did not rebut reliance presumption, and explaining "the strategy of cost averaging down is a common investment strategy that decreases the average cost of an investment."); *In re Monster Worldwide, Inc., Sec. Litig.*, 251 F.R.D. 132, 135-36 (S.D.N.Y. 2008) (Rakoff, J.) (post fraud purchases have no bearing on whether investor relied on integrity of the market prior to fraud disclosure); *In re Salomon Analyst Metromedia*, 236 F.R.D. 208, 216 (S.D.N.Y. 2006) (Lynch, J.) (same), *vacated on other grounds*, 544 F.3d 474 (2d Cir. 2008); *Pirnik v. Fiat Chrysler Automobiles, N.V.*, 327 F.R.D. 38, 43, n. 2 (S.D.N.Y. 2018) (same) (Furman J.); *Menaldi v. Och-Ziff Capital Mgmt. Grp. LLC*, 328 F.R.D. 86, 93 (S.D.N.Y. 2018) (Oetken, J.) (same, and noting even if post disclosure purchases are excluded, investor still had pre-disclosure purchases and could be class representative).

Second, all the complaints filed, including the one filed by Qiu's counsel, defines the class to include May 9, 2019. (dkt no. 1, ¶1.) Thus, by definition whether Cai bought shares on May 9, 2019 is not a defense unique to him. It is a classwide defense. On this ground Qiu's argument fails. It is no surprise the complaints filed include all of May 9, 2019. Nor would it be unique for class members to purchase shares following the class period given the market was determining how much weight to provide to the Citron Research report given that it was a short seller report. The price action the days from May 9, 2019 indicates the market digesting the veracity of the Citron Report.

6

| Date | Close | Volume |
|---|---|---|
| 8-May-19 | 33.11 | 1,406,600 |
| 9-May-19 | 26.89 | 9,042,10 |
| 10-May-19 | 24.5 | 10,574,900 |
| 13-May-19 | 26.6 | 7,973,100 |
| 14-May-19 | 25.6 | 5,302,200 |

*See In re Providian Fin. Corp. Sec. Litig.*, 2004 WL 5684494, at *2 (N.D. Cal. Jan. 15, 2004) (unique defense has to be unique to proposed representative to be disqualifying).

Third, Qiu misstates the quantity of shares Cai purchased following the issuance of the Citron Research report. The Citron Research report was issued on 12:57 p.m. EST on May 9, 2019. (Kim Decl., Ex. 2).  Contrary to Qiu, Cai only purchased 30,000 shares following the disclosure of the Citron report, as 8,440 shares were purchased prior to 12:57 p.m. EST.  (Cai Decl., Ex. A). Thus, Cai purchased 30,000 shares of his 175,421 Jumia shares (dkt. no. 22-3) following the issuance of the Citron report, or 17.1% of his purchases.[9] *See City of Livonia Employees' Ret. Sys. v. Wyeth*, 284 F.R.D. 173, 178 (S.D.N.Y. 2012) (not inadequate or atypical when proposed class representative bought 5,350 shares out of 40,000 shares post fraud disclosure and then bought another additional 8,150 shares post fraud as well. Out of the 48,150 shares purchased, 13,500 shares were after the full disclosure of the fraud or 28%); *Milbeck v. TrueCar, Inc.*, 2019 WL 2353010, at *3 (C.D. Cal. May 24, 2019) (38% of shares bought post fraud disclosure not disproportionately large to disqualify proposed class representative).

### (iii)    Cai is Not A Short Seller

The Venkataramans argue that Cai's short sale of 2,500 shares on May 1, 2019 and his closing out that position on May 2, 2019 for a small profit of $12,000 renders him an inadequate

---

[9] As applied to Cai's net shares, 30,000 is 32% of the 93,921 net shares.

7

or an atypical short seller. The Venkataramans postulate that this short sale is evidence that Cai "suspected that there would be a revelation of fraud or other adverse news" (Venkataramans Opp. at 4); that the short sale "necessarily begs the question: was Cai privy to information unknown to Class members?" (*Id.*, at 11); and that this forms some sort of "exotic trading strategy." (*Id.*).

These arguments are without merit and fall well short of the requisite *proof* required to rebut the presumption in favor of Cai. Cai is not a short seller investor. (Cai Decl., ¶3). The short sale of 2,500 shares he placed on May 1, 2019 was made in error. (*Id.*).  He accidently "checked the wrong box" and his "intention was to purchase 2,500 shares, not short them." (*Id.*). The following day, when Cai learned of the accidental short sale, he closed out his short position.  (*Id.*). Cai's "accidental short sale was not part of any elaborate trading strategy nor any short selling or hedging strategy." (*Id.* at ¶4). Nor was Cai's trading based any non-public information. (*Id.*).  It was just an accidental short sale and Cai "did not otherwise short sell Jumia stock." (*Id.*).  Nor do these theories make sense. If Cai was aware of the fraud or otherwise expected the price of Jumia shares to drop, he would have continued to short sell these shares, not buy large quantities of Jumia stock as he did and suffer over $523,000 in losses.

Even if Cai's short sale was deliberate (it was not), one short sale is insufficient to disqualify him. *E.g., Aviva Partners, LLC v. Navarre Corp.*, 2005 WL 3782255, at *3 (D. Minn. Dec. 13, 2005) (movant who engaged in one short sale and the balance long is not atypical to the class, explaining, "the Court finds that Lai's trading activity does not make her claims atypical to those of the class. Indeed, short sales do not necessarily render claims atypical."); *see, also Crossen v. CV Therapeutics*, 2005 WL 1910928, at *5 (N.D. Cal. Aug. 10, 2005) ("Short sales do not in and of themselves render a lead plaintiff's claims atypical."); *Danis v. USN Commc'ns, Inc.*, 189

8

F.R.D. 391, 396 (N.D. Ill. 1999) (investor not inadequate or atypical as he bought and held shares after short sales and sustained losses).

The Venkataramans claim that "courts routinely decline to appoint short-sellers as lead plaintiffs in PSLRA actions", however, the Venkataramans cite no cases from this Circuit. (Venkataramans Opp. at 3, 4).  Moreover, their cases are distinguishable.  *In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1110 (N.D. Cal. 2001) involved a private investment firm that engaged in a deliberate short sale as part of an investment strategy, and the outcome turned on the fact that the investment firm it did not have the largest financial interest. *Id.,* at 1108, 1113–14. *Isaacs v. Musk*, 2018 WL 6182753, at *2 (N.D. Cal. Nov. 27, 2018), *reconsideration denied sub nom. In re Tesla, Inc. Sec. Litig.*, 2018 WL 6609569 (N.D. Cal. Dec. 17, 2018) involved a movant who exclusively short sold the subject security.  *Marcus v. J.C. Penney Co.*, 2014 WL 11394911, at *7 (E.D. Tex. Feb. 28, 2014) involved a short seller engaged in daytrading where he "bought and sold his entire JCP portfolio on the same or next trading day on at least ten different instances" during the class period.  *Id.*, at * 7.

### B.  Cai's Domain Name Dispute Does Not Render Him Inadequate or Atypical

Qiu cites a 2013 arbitration ruling concerning a domain name dispute Cai had with Cerulean Studios LLC ("Cerulean") to suggest that Cai has credibility issues and thus is inadequate. (Qiu Opp. at 3). This argument is without merit.

Preliminarily, the arbitration decision was not the final resolution of the matter.  Following the decision, Cai promptly brought suit to challenge the ruling, and ultimately reached a settlement of the suit with Cerulean. (Cai Decl., ¶7). Moreover, while some courts have disqualified lead plaintiffs on credibility grounds, they have done so in cases where credibility was "called into

9

question as to issues central to the litigation." *Murphy v. JBS S.A.*, 2017 WL 4480751, at *6 (E.D.N.Y. Oct. 6, 2017) (declining to disqualify lead plaintiff based on regulatory action by securities regulator brought against movant on issues unrelated to the litigation); *see also Montoya v. Herley Indus. Inc.*, 2006 WL 3337485, at *2 (E.D. Pa. Nov. 14, 2006) (noting that even if violations in question have been proven, no connection between the types of violations claimed and the fraud alleged).[10]  Here, Cai's domain name dispute has nothing to with the claims alleged in this action and fail to rebut the presumption in his favor.

## CONCLUSION

For the foregoing reasons, Cai's motion should be granted in its entirety and the competing motions should be denied.

Dated: August 5, 2019

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/ Phillip Kim
Phillip Kim, Esq.
Laurence M. Rosen, Esq.
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827

---

[10] Qiu's cases are no different. In *Weisman v. Darneille*, 78 F.R.D. 669, 670-71 (S.D.N.Y. 1978), the court rejected a proposed class representative because he was "a felon convicted of violating Section 10(b), the very statute he invoke[ed]" in that case and because he lied about the conviction during the deposition.  In *Safeguard Scis.*, 216 F.R.D. at 583, the court raised credibility concerns given that his sworn PSLRA certification omitted a significant number of trades "which leads this Court to believe that the misstatement was more than mere clerical mishap." In *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 416 (S.D.N.Y. 2004), the Court found that a censure and settlement with the Chicago Mercantile Exchange concerning movant posing as a government official even if proven, "do not appear to represent the serious misconduct that would require" movant to be rejected given the age and because there was connection to the claims alleged in the case or fraud alleged.

Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Plaintiff and the Class*

11

## CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2019, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/Phillip Kim

12