# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
| --- | --- |
| IN RE JUMIA TECHNOLOGIES AG SECURITIES LITIGATION, | Master File No. 1:19-cv-04397-PKC |

## STIPULATION OF SETTLEMENT

This Stipulation of Settlement dated October 9, 2020 (the "Federal Stipulation"), is made and entered into by and among: (i) Lead Plaintiff Hexuan Cai and Named Plaintiffs Kalyan and Kalyanasundaram Venkataraman, Matthew Sacks, and Yifeng Zhu (collectively, "Federal Plaintiffs"), on behalf of themselves and each of the Exchange Act Settlement Class Members; and (ii) Jumia Technologies AG ("Jumia"); (iii) Jeremy Hodara; Sacha Poignonnec; Antoine Maillet-Mezeray; Donald J. Puglisi; Gilles Bogaert; Andre T. Igoudala; Blaise Judja-Sato; Jonathan D. Klein; Angela Kaya Mwanza; Alioune Ndiaye; Matthew Odgers; and John H. Rittenhouse (collectively, the "Individual Defendants"); and (iv) Morgan Stanley & Co. LLC; Citigroup Global Markets Inc.; Berenberg Capital Markets, LLC; RBC Capital Markets, LLC; Stifel, Nicolaus & Company, Incorporated; Raymond James & Associates, Inc.; and William Blair & Company, L.L.C. (collectively, the "Underwriter Defendants," and together with Jumia and the Individual Defendants, "Federal Defendants"), by and through their respective counsel of record in the above-captioned action ("Federal Action").  The Federal Stipulation is intended to fully, finally, and forever compromise, resolve, release, discharge, settle, and dismiss with prejudice the Federal Action and the Released Plaintiffs' Claims as against the Released Defendant Parties, upon and subject to the terms and conditions hereof and subject to the approval of the Federal Court. As set forth herein, this Federal Action Settlement shall not become effective until both the Federal

Action Settlement and the State Action Settlement have received final approval from their respective courts, and both settlements have become Final.

All capitalized terms herein shall have the meaning stated in section 1 ("Definitions"), below, or as otherwise defined in this Federal Stipulation.

## I.   RECITALS

WHEREAS, on May 14, 2019, Stephen Strugala filed *Strugala* v. *Jumia Technologies AG*, No. 19-cv-4397 (Castel, J.) (the "*Strugala* Action") in the U.S. District Court for the Southern District of New York ("Federal Court"), asserting putative class action claims against Defendants Jumia and Messrs. Hodara, Poignnonec, and Maillet-Mezeray under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act");

WHEREAS, on May 28, 2019, Plaintiff Luo Zhi filed *Zhi* v. *Jumia Technologies AG*, No. 19-cv-4952 (Castel, J.) (the "*Zhi* Action") in the Federal Court, asserting putative class action claims against Defendants Jumia and Messrs. Hodara, Poignnonec, and Maillet-Mezeray under Sections 10(b) and 20(a) of the Exchange Act;

WHEREAS, on October 15, 2019, Plaintiff Mark Convery filed *Convery* v. *Jumia Technologies AG*, *et al.*, Index No. 656021/2019 (Masley, J.) (the "State Action")  in the Supreme Court of the State of New York, New York County (the "State Court"), asserting putative class action claims against Defendants Jumia, Messrs. Hodara, Poignnonec, Maillet-Mezeray, Bogaert, Igoudala, Judja-Sato, Klein, Ndiaye, Odgers, and Rittenhouse, Ms. Kaya Mwanza, and the Underwriter Defendants on behalf of purchasers of the American Depositary Shares ("ADSs") of Jumia pursuant and/or traceable to the Registration Statement issued in connection with Jumia's April 12, 2019 initial public stock offering of 15.525 million ADSs (including exercise of over-allotment option) at $14.50 per share (the "IPO"), seeking to pursue remedies under Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act");

WHEREAS, on October 29, 2019, the Federal Court consolidated the *Strugala* Action and the *Zhi* Action for all purposes; captioned the consolidated action *In re Jumia Technologies AG Securities Litigation*, No. 19-cv-4397 (S.D.N.Y.) (Castel, J.); appointed Hexuan Cai as Federal Lead Plaintiff, Kalyan and Kalyanasundaram Venkataraman as named plaintiffs, and The Rosen Law Firm, P.A. and Pomerantz LLP as Federal Lead Counsel; and set a schedule for the filing of a consolidated amended complaint in the Federal Action;

WHEREAS, on December 30, 2019, Federal Lead Plaintiff and Federal Named Plaintiffs ("Federal Plaintiffs") filed an amended complaint in the Federal Action asserting claims against Defendants Jumia, Messrs. Hodara, Poignnonec, Maillet-Mezeray, Bogaert, Igoudala, Judja-Sato, Klein, Ndiaye, Odgers, and Rittenhouse, Ms. Kaya Mwanza, and the Underwriter Defendants under Sections 10(b) and 20(a) of the Exchange Act and Sections 11 and 15 of the Securities Act;

WHEREAS, on January 22, 2020, Jumia, certain of the Individual Defendants, and the Underwriter Defendants filed a motion to stay all proceedings in the State Action pending adjudication of the Federal Action, which was fully briefed on February 6, 2020;

WHEREAS, on January 27, 2020, State Plaintiff filed the Amended Complaint for Violations of the Securities Act of 1933 (the "State Amended Complaint") adding claims under Section 12(a)(2) of the Securities Act, and claims against Defendants Puglisi and Ernst & Young, Société Anonyme ("E&Y");

WHEREAS, on February 13, 2020, the State Court held oral argument on the motion to stay;

WHEREAS, on March 13, 2020, Federal Plaintiffs filed the operative Second Amended Securities Class Action Complaint in the Federal Action asserting claims against Defendants Jumia, the Individual Defendants, and the Underwriter Defendants under Sections 10(b) and 20(a)

of the Exchange Act and Sections 11 and 15 of the Securities Act (the "Federal Second Amended Complaint");

WHEREAS, on May 12, 2020, Federal Plaintiffs, State Plaintiff, Jumia, and the Individual Defendants engaged in a mediation via videoconference before Jed Melnick, an experienced mediator with JAMS (the "Mediator").  Federal Plaintiffs, State Plaintiff, Jumia, and the Individual Defendants submitted mediation statements to the Mediator in advance of the mediation;

WHEREAS, during the mediation, Federal Plaintiffs, State Plaintiff, Jumia, and the Individual Defendants engaged in arm's-length negotiations.  Although the mediation did not result in the settlement of either the Federal Action or the State Action, the parties continued negotiating through the Mediator;

WHEREAS, on June 1, 2020, Federal Defendants filed a motion to dismiss the Federal Second Amended Complaint in the Federal Action, which was scheduled to be fully briefed on August 21, 2020;

WHEREAS, on July 31, 2020, Federal Plaintiffs filed an opposition to Federal Defendants' motion to dismiss the Federal Second Amended Complaint in the Federal Action;

WHEREAS, on August 10, 2020, the State Court denied the motion to stay and ordered State Defendants to answer or otherwise respond to the State Amended Complaint within 30 days;

WHEREAS, on August 11, 2020, after further arm's-length negotiations with the assistance of the Mediator, Federal Plaintiffs, State Plaintiff, Jumia, and the Individual Defendants agreed to a settlement of the Federal Action and the State Action on terms that included total settlement consideration of $5,000,000.00 (five million U.S. dollars), to be allocated, as set forth in further detail below, between the Federal Action and the State Action.  The proposed settlement terms were memorialized in a term sheet executed on August 11, 2020 by Jumia, the Individual

4

Defendants, Federal Plaintiffs, and State Plaintiff;

WHEREAS, on August 12, 2020, the parties filed a letter with the Federal Court and a letter and stipulation with the State Court informing the Courts of the settlements and requesting a stay of all proceedings in the Federal Action and the State Action pending the parties' finalization of the settlement papers, which the Federal Court and the State Court granted;

WHEREAS, Federal Plaintiffs and the Exchange Act Settlement Class settle, compromise, resolve, release, discharge, and dismiss with prejudice all Released Plaintiffs' Claims against the Released Defendant Parties before the Federal Court for settlement consideration including a settlement payment of $2,000,000.00 (two million U.S. dollars) on the terms set forth in the Federal Stipulation, subject to approval by the Federal Court ("Federal Action Settlement");

WHEREAS, in a separate stipulation, State Plaintiff and the Securities Act Settlement Class settle, compromise, resolve, release, discharge, and dismiss with prejudice all Released Plaintiffs' Claims against the Released Defendant Parties for settlement consideration including a settlement payment of $3,000,000.00 (three million U.S. dollars) on the terms set forth herein, subject to approval by the State Court ("State Action Settlement");

WHEREAS, the Federal Action Settlement and the State Action Settlement were jointly negotiated by the parties, and the parties intend for the effectiveness of the Federal Action Settlement and the State Action Settlement to be dependent upon one another, such that if one settlement is not approved, neither settlement will become Final;

WHEREAS, although there are separate stipulations of settlement for the Federal Action and the State Action, the parties intend their provisions to be interrelated.  For example, to avoid any potential confusion of members of the Settlement Classes, to simplify the process for settlement participation, for efficiency, and to avoid unnecessarily duplicative Class Notice and

Administration Expenses, the parties in the Federal Action and the State Action have agreed that there shall be one Claims Administrator, one joint Long Notice, Proof of Claim and Release Form, Summary Notice, and Postcard Notice, and that the Settlements shall be jointly administered, with concurrent payment to members of the Settlement Classes of timely filed and valid claims;

WHEREAS, Federal Lead Counsel anticipates filing a motion for an award of attorneys' fees, reimbursement of reasonable litigation expenses incurred in connection with the prosecution of claims on behalf of the Exchange Act Settlement Class by Federal Lead Counsel in the Federal Action, and reimbursement to Federal Lead Plaintiff and Federal Named Plaintiffs for their reasonable costs and expenses (including lost wages) directly related to their representation of the Exchange Act Settlement Class Members in the Federal Action;

WHEREAS, Federal Plaintiffs and Federal Lead Counsel recognize the expense, risks, and uncertain outcome of any litigation and subsequent appeals, especially for a complex action such as this.  Federal Plaintiffs, on behalf of themselves and all other members of the Exchange Act Settlement Class, desire to settle the Released Plaintiffs' Claims against the Released Defendant Parties on the terms and conditions set forth in this Federal Stipulation.  Furthermore, Federal Plaintiffs and Federal Lead Counsel deem the Federal Action Settlement to be fair, reasonable, adequate, and in the best interests of the members of the Exchange Act Settlement Class; have agreed that the Released Defendant Parties should be released from the Released Plaintiffs' Claims pursuant to the terms and provisions of this Federal Stipulation; and have agreed, subject to Federal Court approval, to the dismissal of the Federal Action with prejudice, after considering the substantial benefits that Federal Plaintiffs and all members of the Exchange Act Settlement Class will receive from the Federal Action Settlement; and

WHEREAS, Federal Defendants continue to deny all allegations of wrongdoing or liability whatsoever arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Federal Action, including the allegations that Federal Defendants made any misrepresentations or omissions in the Registration Statement or in any other public statements made during the Class Period.  Federal Defendants also recognize the expense, risks, and uncertain outcome of any litigation, especially a complex action such as this, and Federal Defendants desire to settle the Released Plaintiffs' Claims so as to avoid lengthy, distracting, and time-consuming litigation and the burden, inconvenience, and expense connected therewith, without in any way acknowledging any fault or liability, such that this Federal Stipulation and all related documents are not, and shall not in any event be construed or deemed to be, evidence of an admission or concession on the part of Federal Defendants with respect to any claim, fault, liability, wrongdoing, or damage whatsoever, or any infirmity in the defenses that Federal Defendants have or could have asserted;

NOW, THEREFORE, without any admission or concession on the part of Federal Plaintiffs of any lack of merit of the Federal Action whatsoever, and without any admission or concession on the part of Federal Defendants of any liability, wrongdoing, or lack of merit in their defenses whatsoever, IT IS HEREBY STIPULATED, CONSENTED TO, AND AGREED, between Federal Plaintiffs (individually and on behalf of the Exchange Act Settlement Class) and Federal Defendants, by and through their respective attorneys, that the Federal Action and all Released Plaintiffs' Claims as against the Released Defendant Parties shall be settled, compromised, resolved, released, discharged, and dismissed with prejudice in the manner and upon the terms and conditions set forth herein, subject to (i) the approval of the Federal Court and (ii) the approval of the State Court of the concurrently filed State Action Settlement.

1.      **Definitions**

As used in this Federal Stipulation, the following capitalized terms shall have the following meaning:

1.1      "Actions" means both the Federal Action and the State Action.

1.2      "ADSs" means American Depositary Shares.

1.3      "Federal Authorized Claimant" means an Exchange Act Settlement Class Member who submits a timely and valid Proof of Claim and Release Form to the Claims Administrator that is approved for payment from the Net Federal Settlement Fund.

1.4      "Award to Federal Plaintiffs" means the requested reimbursement to Federal Lead Plaintiff and Federal Named Plaintiffs for their reasonable costs and expenses (including lost wages) directly related to their representation of the Exchange Act Settlement Class Members in the Federal Action.

1.5      "Business Day" means any day except Saturday or Sunday or any other day on which national banks are authorized by law or executive order to close in the State of New York.

1.6      "Claims Administrator" means the firm of Strategic Claims Services ("SCS"), which shall administer the Federal Action Settlement.

1.7      "Class Notice and Administration Expenses" means the fees and expenses reasonably and actually incurred for providing notice to both Exchange Act Settlement Class Members and Securities Act Settlement Class Members, locating Exchange Act Settlement Class Members and Securities Act Settlement Class Members, assisting with the filing of claims, processing Proof of Claim and Release Forms, administering and distributing the Net Federal Settlement Fund to Federal Authorized Claimants and administering and distributing the Net State Settlement Fund to State Authorized Claimants, and paying escrow fees and costs, if any.

1.8    "Class Period" means the period from April 12, 2019 through and including December 9, 2019.

1.9    "Defendants" means both Federal Defendants and State Defendants.

1.10    "Effective Date" means the first date by which all of the conditions and events specified in ¶7.1 of the Federal Stipulation have been met and have occurred, or have been expressly waived in writing.

1.11    "Escrow Account" means the segregated and separate escrow account designated and controlled by the Escrow Agent at one or more national banking institutions into which the Federal Settlement Amount will be deposited for the benefit of Exchange Act Settlement Class Members.

1.12    "Escrow Agent" means The Huntington National Bank or its appointed agents.  The Escrow Agent shall perform the duties as set forth in this Federal Stipulation and any order of the Federal Court in connection with the Federal Action Settlement.

1.13    "Exchange Act" means the Securities Exchange Act of 1934.

1.14    "Exchange Act Settlement Class" means all persons or entities (and their beneficiaries) who purchased or otherwise acquired Jumia ADSs from April 12, 2019 through and including December 9, 2019, and were damaged thereby.  Excluded from the Exchange Act Settlement Class are the Released Defendant Parties, except for any Investment Vehicle as defined herein.  Also excluded are those Persons who timely and validly request exclusion from the Exchange Act Settlement Class pursuant to the Notice.

1.15    "Exchange Act Settlement Class Member" or "Exchange Act Settlement Class Members" means any Person who falls within the definition of the Exchange Act Settlement Class.

1.16    "E&Y" means Ernst & Young, Société Anonyme.

1.17    "Federal Action" means the action captioned *In re Jumia Technologies AG Securities Litigation*, No. 19-cv-4397 (S.D.N.Y.) (Castel, J.), in the Federal Court.

1.18    "Federal Action Settlement" means the settlement of the Federal Action on the terms and conditions set forth in the Federal Stipulation.

1.19    "Federal Court" means the United States District Court for the Southern District of New York.

1.20    "Federal Defendants" means Jumia, the Individual Defendants, and the Underwriter Defendants.

1.21    "Federal Fee and Expense Application" means Federal Plaintiffs' submission of an application to the Federal Court for distributions from the Federal Settlement Fund for: (i) an award of attorneys' fees for Federal Lead Counsel in connection with prosecuting the claims on behalf of the Exchange Act Settlement Class; (ii) payment of expenses and costs incurred by Federal Lead Counsel in connection with prosecuting the claims on behalf of the Exchange Act Settlement Class; (iii) any interest on such attorneys' fees, costs, and expenses at the same rate and for the same periods as earned by the Federal Settlement Fund; and (iv) an Award to Federal Plaintiffs.

1.22    "Federal Fee and Expense Award" means the amount the Federal Court awards Federal Lead Counsel for attorneys' fees and reimbursement of expenses and costs, with interest thereon.

1.23    "Federal Final Settlement Approval Hearing" means the final hearing to be held by the Federal Court to determine whether the proposed Federal Action Settlement should be approved as fair, reasonable, and adequate; whether all Released Plaintiffs' Claims should be dismissed with prejudice; whether an order providing final approval of the Federal Action

Settlement should be entered; whether the allocation of the Federal Settlement Fund should be approved; whether and in what amounts to award attorneys' fees and expenses to Federal Lead Counsel, and whether to approve the Award to Federal Plaintiffs.

1.24    "Federal Lead Counsel" means The Rosen Law Firm, P.A. and Pomerantz LLP.

1.25    "Federal Lead Plaintiff" means the lead plaintiff in the Federal Action, Hexuan Cai.

1.26    "Federal Named Plaintiffs" means the named plaintiffs in the Federal Action, Kalyan and Kalyanasundaram Venkataraman, Matthew Sacks, and Yifeng Zhu.

1.27    "Federal Order and Final Judgment" means the final judgment and order of dismissal with prejudice, substantially in the form attached hereto as Exhibit B, to be rendered by the Federal Court upon final approval of the Federal Action Settlement.

1.28    "Federal Plaintiffs" means both Federal Lead Plaintiff and Federal Named Plaintiffs.

1.29    "Federal Preliminary Approval Order" means the order, substantially in the form attached hereto as Exhibit A, to be entered by the Federal Court preliminarily approving the Federal Action Settlement and providing that notice of the Federal Action Settlement be provided to the Exchange Act Settlement Class.

1.30    "Federal Second Amended Complaint" means the Second Amended Securities Class Action Complaint, Dkt. No. 87, filed on March 13, 2020 in the Federal Action.

1.31    "Federal Settlement Amount" means the principal amount of $2,000,000.00 (two million U.S. dollars) to be paid pursuant to ¶2.2 of this Federal Stipulation.

1.32    "Federal Settlement Fund" means the Federal Settlement Amount plus any interest that may accrue thereon as provided for herein.

1.33     "Federal Settling Parties" means, collectively, each of Federal Defendants and Federal Plaintiffs, on behalf of themselves and each of the Exchange Act Settlement Class Members.

1.34     "Federal Stipulation" means this stipulation of settlement entered into by and between Federal Defendants and Federal Plaintiffs, on behalf of themselves and the Exchange Act Settlement Class.

1.35     "Final" means, with respect to any order or judgment of a court, including, of this Federal Court or the State Court, that it represents a final and binding determination of all issues within its scope and is not subject to further review on appeal or otherwise.  Without limitation:

(a)     an order of this Federal Court becomes "Final" when the last of the following has occurred:  (i) the Federal Order and Final Judgment has been entered and the expiration of the time to file a motion to alter, amend, or reconsider the Federal Order and Final Judgment has passed without any such motion having been filed; (ii) the expiration under the Federal Rules of Appellate Procedure of the time in which to appeal the Federal Order and Final Judgment has passed without any such appeal having been filed; and (iii) if a motion to alter, amend, or reconsider is filed or if an appeal is filed, immediately after the determination of that motion or appeal so that the Federal Order and Final Judgment is no longer subject to any further judicial review or appeal whatsoever, whether by reason of affirmance by a court of last resort, lapse of time, voluntary dismissal of appeal, or otherwise, and in such a manner as to permit the consummation of the Federal Action Settlement substantially in accordance with the Federal Order and Final Judgment.

(b)     an order of the State Court becomes "Final" when the last of the following has occurred: (i) the State Court has entered an order and judgment approving the State

Stipulation, and the expiration of the time to file a motion to alter, amend, or reconsider that order and judgment has passed without any such motion having been filed; (ii) the expiration of the time in which to appeal the order and judgment has passed without any appeal having been taken, which date shall be deemed to be thirty (30) calendar days following the entry of the order and judgment unless the date to take such an appeal shall have been extended by State Court order or otherwise, or unless the 30th calendar day falls on a weekend or a State Court holiday, in which case the date shall be deemed to be the next State Court business day after such 30th calendar day; and (iii) if a motion to alter, amend, or reconsider is filed or if an appeal is taken, immediately after the determination of that motion or appeal so that the order and judgment is no longer subject to any further judicial review or appeal whatsoever, whether by reason of affirmance by a court of last resort, lapse of time, voluntary dismissal of the appeal or otherwise, and in such a manner as to permit the consummation of the State Action Settlement in accordance with the terms and conditions of the State Stipulation.

For purposes of this paragraph, an "appeal" shall include any appeal, petition for writ of certiorari, or other writ that may be filed in connection with approval or disapproval of the Federal Action Settlement or the State Action Settlement, but shall not include any appeal which concerns only the issue of attorneys' fees and expenses, the Plan of Allocation of the Net Federal Settlement Fund, or the procedures for determining Federal Authorized Claimants' recognized claims.

1.36 "Individual Defendants" means Jeremy Hodara, Sacha Poignonnec, Antoine Maillet-Mezeray, Donald J. Puglisi, Gilles Bogaert, Andre T. Igoudala, Blaise Judja-Sato, Jonathan D. Klein, Angela Kaya Mwanza, Alioune Ndiaye, Matthew Odgers, and John H. Rittenhouse.

1.37    "IPO" means Jumia's April 12, 2019 initial public stock offering of 15.525 million ADSs (including exercise of over-allotment option) at $14.50 per share.

1.38    "Investment Vehicle" means any investment company or pooled investment fund, including, but not limited to, mutual fund families, exchange-traded funds, funds of funds, and hedge funds, in which the Underwriter Defendants, or any of them, have, has, or may have a direct or indirect interest, or as to which its affiliates may act as an investment advisor but of which any Underwriter Defendant or any of its respective affiliates is not a majority owner or does not hold a majority beneficial interest.

1.39    "Jumia" means Jumia Technologies AG.

1.40    "Long Notice" means the Notice of (I) Pendency of Class Actions and Proposed Settlement of Federal Action and State Action; (II) Motions for Awards of Attorneys' Fees and Litigation Expenses; and (III) Settlement Hearings, substantially in the form attached hereto as Exhibit A-1, to be sent to Exchange Act Settlement Class Members on request and made available on the Claims Administrator's website.

1.41    "Mediator" means Jed Melnick, a mediator with JAMS.

1.42    "Net Federal Settlement Fund" means the Federal Settlement Fund less:  (i) the amount of the Federal Fee and Expense Award, if and to the extent allowed by the Federal Court; (ii) the Award to Federal Plaintiffs, if and to the extent allowed by the Federal Court; (iii) Class Notice and Administration Expenses; (iv) Taxes and Tax Expenses; and (v) any other fees or expenses approved by the Federal Court.

1.43    "Notice" means, collectively, the Long Notice, Summary Notice, and Postcard Notice, substantially in the form attached hereto as Exhibits A-1, A-3, and A-4.

14

1.44    "Notice and Administration Fund" means a fund of up to $250,000.00 allocated for Class Notice and Administration Expenses for both the State Action and the Federal Action.

1.45    "Opt-Out Threshold" means the agreed-upon criteria regarding requests for exclusion from the Settlement Classes, which, if exceeded, shall afford Jumia the option to render the Settlements null and void.

1.46    "Person" means an individual, corporation (including all divisions and subsidiaries), limited liability corporation, professional corporation, limited liability partnership, partnership, limited partnership, limited liability company, association, joint stock company, joint venture, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity.

1.47    "Plan of Allocation" means the proposed plan or formula of allocation of the Net Federal Settlement Fund set forth in the Long Notice, or such other plan or formula of allocation that the Federal Court approves, whereby the Net Federal Settlement Fund shall be distributed to Federal Authorized Claimants.  Any Plan of Allocation is not part of the Federal Stipulation, and the Released Defendant Parties shall have no responsibility or liability with respect thereto.

1.48    "Postcard Notice" means the postcard, substantially in the form attached hereto as Exhibit A-4, to be mailed to Exchange Act Settlement Class Members.

1.49    "Proof of Claim and Release Form" means the form for submitting a claim, substantially in the form attached hereto as Exhibit A-2, to be made available on the Claims Administrator's website, that a member of the Exchange Act Settlement Class must complete to be eligible to share in distribution of the Net Federal Settlement Fund.

1.50    "Registration Statement" means the final amended registration statement that was filed with the SEC on Form F-1/A on April 10, 2019, and the final prospectus for the IPO, dated April 11, 2019, filed with the SEC on April 15, 2019.

1.51    "Related Parties" means the Individual Defendants, in their individual or official capacities, Jumia, the Underwriter Defendants, and E&Y, as well as (i) with respect to each Individual Defendant, his or her assigns, assignees, attorneys, advisors, auditors, accountants, representatives, members of his or her immediate family, heirs, executors, estates, administrators, and insurers and reinsurers, in their respective capacities as such; (ii) with respect to all other Defendants, each of their predecessors, successors, past, present, or future parents, subsidiaries, affiliates, and divisions, whether direct or indirect, and each of their respective past, present, or future officers, directors, management and supervisory board members, agents, partners, principals, members, employees, attorneys, advisors, auditors, accountants, underwriters, investment bankers, and insurers and reinsurers, in their respective capacities as such; (iii) with respect to all Defendants, any firm, trust, corporation, or other entity in which any of Defendants has or had a controlling interest, in their respective capacities as such; and (iv) with respect to E&Y, Ernst & Young Global Limited and all member firms of Ernst & Young Global Limited, including but not limited to Ernst & Young LLP.

1.52    "Released Claims" means both the Released Defendants' Claims and the Released Plaintiffs' Claims.

1.53    "Released Defendant Parties" means any and all of Defendants and each of their Related Parties.

1.54    "Released Defendants' Claims" means any and all (a) claims (including Unknown Claims), debts, disputes, demands, rights, actions or causes of action, liabilities, damages, losses,

obligations, sums of money due, judgments, suits, amounts, matters, issues, claims, controversies, and charges of any kind whatsoever (including, but not limited to, any claims for interest, attorneys' fees, expert or consulting fees, and any other costs, expenses, amounts, or liabilities whatsoever), whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, foreseen or unforeseen, whether individual or class in nature, whether arising under federal, state, local, or foreign statutory, common, or administrative law, or any other law, rule, or regulation, whether foreign or domestic, that (b) arise out of or are based upon the institution, prosecution, or settlement of the claims against Defendants in the Actions. Notwithstanding the foregoing, Released Defendants' Claims do not include:  (i) any claims relating to the enforcement of the Settlements; (ii) any claims against any person or entity who or which submits a request for exclusion from the Settlements that is accepted by the Federal Court or the State Court as valid; and (iii) any claims that any Defendant may have under or relating to any policy of liability or any other insurance policy.  For the avoidance of doubt, this Federal Stipulation shall not release (i) any insurer, co-insurer, excess insurer, or re-insurer from any obligation owed to any Defendant in the Actions for indemnity or coverage under or relating to any policy of liability or other insurance policy or (ii) Jumia or any selling shareholder in the IPO from any indemnity obligation owed to the Underwriter Defendants under the IPO Underwriting Agreement, dated April 11, 2019, between Jumia and the Underwriter Defendants.

1.55    "Released Plaintiffs' Claims" means any and all (a) claims (including Unknown Claims), debts, disputes, demands, rights, actions or causes of action, liabilities, damages, losses, obligations, sums of money due, judgments, suits, amounts, matters, issues, claims, controversies, and charges of any kind whatsoever (including, but not limited to, any claims for interest, attorneys' fees, expert or consulting fees, and any other costs, expenses, amounts, or liabilities

whatsoever), whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, foreseen or unforeseen, whether individual or class in nature, whether arising under federal, state, local, or foreign statutory, common, or administrative law, or any other law, rule, or regulation, whether foreign or domestic, that (b) Federal Plaintiffs, State Plaintiff, or any other member of the Settlement Classes: (i) asserted in any of the complaints filed in the Actions; or (ii) could have asserted in the Actions or in any other action or in any other forum that (c) have arisen, arise now, or hereafter arise out of, are based upon, or relate, directly or indirectly, in any manner, or are in consequence of any of the facts, allegations, transactions, matters, events, practices, conduct, disclosures, nondisclosures, occurrences, representations, statements, acts, omissions, or failures to act that were involved, set forth, or referred to in any of the complaints filed in the Actions, and that (d) relate, directly or indirectly, in any manner to the trading, purchase, acquisition, holding, disposition, or sale of Jumia ADSs during the Class Period, including, without limitation, any claims related to statements, disclosures, nondisclosures, or omissions allegedly made or not made by Defendants or any other of the Released Defendant Parties, or that otherwise would have been barred by res judicata had the Actions been litigated to a final judgment. Released Plaintiffs' Claims include all rights of appeal from any prior decision of the Federal Court and the State Court in the Actions. Released Plaintiffs' Claims do not include any claims relating to the enforcement of the Settlements.

1.56    "Securities Act" means the Securities Act of 1933.

1.57    "Securities Act Settlement Class" means all persons or entities (and their beneficiaries) who purchased or otherwise acquired Jumia ADSs pursuant and/or traceable to the Registration Statement issued in connection with the IPO during the period from April 12, 2019 through and including December 9, 2019, and were damaged thereby. Excluded from the

Securities Act Settlement Class are the Released Defendant Parties, except for any Investment Vehicle as defined herein.   Also excluded are those Persons who timely and validly request exclusion from the Securities Act Settlement Class pursuant to the Notice.

1.58     "Securities Act Settlement Class Member" or "Securities Act Settlement Class Members" mean any Person who falls within the definition of the Securities Act Settlement Class.

1.59     "Settlement Classes" means both the Exchange Act Settlement Class and the Securities Act Settlement Class.

1.60     "Settlements" means both the Federal Action Settlement and the State Action Settlement.

1.61     "State Action" means the action captioned *Convery* v. *Jumia Technologies AG*, *et al.*, Index No. 656021/2019 (N.Y. Sup. Ct., N.Y. Cty.) (Masley, J.), in the State Court.

1.62     "State Action Settlement" means the settlement of the State Action on the terms and conditions set forth in the State Stipulation.

1.63     "State Amended Complaint" means the Amended Complaint for Violations of the Securities Act of 1933 filed on January 27, 2020.

1.64     "State Court" means the Supreme Court of the State of New York, County of New York.

1.65     "State Defendants" means Jumia, the Individual Defendants, the Underwriter Defendants, and E&Y.

1.66     "State Plaintiff's Counsel" means Kaplan Fox & Kilsheimer, LLP or its successor(s).

1.67     "State Plaintiff" means Mark Convery.

1.68    "State Settlement Amount" means the principal amount of $3,000,000.00 (three million U.S. dollars) to be paid in conjunction with the State Action Settlement.

1.69    "State Settlement Fund" means the State Settlement Amount plus any interest that may accrue thereon as provided for in the State Stipulation.

1.70    "State Settling Parties" means, collectively, each of State Defendants and State Plaintiff, on behalf of himself and each of the Securities Act Settlement Class Members.

1.71    "State Stipulation" means the stipulation of settlement entered into by and between State Defendants and State Plaintiff, on behalf of himself and the Securities Act Settlement Class.

1.72    "Summary Notice" means the Summary Notice of (I) Pendency of Class Actions and Proposed Settlement of Federal and State Actions; (II) Motions for Awards of Attorneys' Fees and Litigation Expenses; and (III) Settlement Hearings, substantially in the form attached hereto as Exhibit A-3, to be disseminated to Exchange Act Settlement Class Members.

1.73    "Tax Expenses" means expenses and costs incurred in connection with the operation and implementation of ¶2.13 below (including, without limitation, expenses of tax attorneys and/or accountants, mailing and distribution costs, and expenses relating to filing (or failing to file) the returns described in ¶2.13 below).

1.74    "Taxes" means any taxes, interest, or penalties arising with respect to the income earned by the Federal Settlement Fund, including any taxes or tax detriments that may be imposed upon the Released Defendant Parties with respect to any income earned by the Federal Settlement Fund for any period during which the Federal Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes.

1.75    "Termination Notice" means a written notice to all other parties hereto within thirty (30) calendar days of any of the events in ¶7.3 below of Jumia's and/or Federal Plaintiffs' election to terminate the Federal Action Settlement.

1.76    "Total Settlement Amount" means both the State Settlement Amount and the Federal Settlement Amount.

1.77    "Supplemental Agreement" means the Supplemental Agreement to be executed by the State Settling Parties and the Federal Settling Parties which shall provide the terms of the Opt-Out Threshold.

1.78    "Underwriter Defendants" means Morgan Stanley & Co. LLC, Citigroup Global Markets Inc., Berenberg Capital Markets, LLC, RBC Capital Markets, LLC, Stifel, Nicolaus & Company, Incorporated, Raymond James & Associates, Inc., and William Blair & Company, L.L.C.

1.79    "Unknown Claims" means any of the Released Plaintiffs' Claims which Federal Plaintiffs or any Exchange Act Settlement Class Member does not know or suspect to exist in such party's favor at the time of the release of the Released Defendant Parties which, if known by such party, might have affected such party's settlement with and release of the Released Defendant Parties, or might have affected such party's decision not to object to this Federal Action Settlement. With respect to any and all Released Plaintiffs' Claims, upon the Effective Date, Federal Plaintiffs and the Exchange Act Settlement Class Members shall expressly waive, and by operation of the Federal Order and Final Judgment shall have expressly waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, which is or has an effect which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

*A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.*

Federal Plaintiffs and the Exchange Act Settlement Class Members may hereafter discover facts, legal theories, or authorities in addition to or different from those which such party now knows or believes to be true with respect to the subject matter of the Released Plaintiffs' Claims, but Federal Plaintiffs and the Exchange Act Settlement Class Members, upon the Effective Date, by operation of the Federal Order and Final Judgment shall have fully, finally, and forever settled and released any and all Released Plaintiffs' Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, that now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts, legal theories, or authorities.  Federal Plaintiffs and the Exchange Act Settlement Class Members acknowledge that the inclusion of "Unknown Claims" in the definition of Released Plaintiffs' Claims was separately bargained for and was a material element of the Federal Action Settlement.

**2.      The Settlement**

**a.      The Federal Settlement Fund**

2.1      In consideration of the full settlement of the Federal Action and the State Action and the full release of Plaintiffs' Released Claims against the Released Defendant Parties, Jumia has agreed to pay or cause Jumia's insurers to pay directly into the Escrow Account, a total amount of $5,000,000.00 (five million U.S. dollars) in cash, with $4,000,000.00 (four million U.S. dollars) funded by Jumia and $1,000,000.00 (one million U.S. dollars) funded by Jumia's insurers.  No

other Defendant shall pay, or be liable to pay, any part of this amount.  The Total Settlement Amount represents the entirety of Defendants' financial obligations in connection with this Federal Action Settlement and the State Action Settlement, including under this Federal Stipulation and the State Stipulation, and includes all attorneys' fees and expenses, any Award to Federal Plaintiffs, Class Notice and Administration Expenses, Taxes and Tax Expenses, and costs of any kind whatsoever associated with the Federal Action Settlement and the State Action Settlement. The full payment of the Total Settlement Amount into the Escrow Account in accordance with this paragraph fully discharges Defendants' financial obligations in connection with the Federal Action Settlement and the State Action Settlement, including under this Federal Stipulation and the State Stipulation.  Once the Total Settlement Amount has been paid, and the Settlements have become final, no Defendant shall have any obligation to make any further payment into the Escrow Account, to make any payments to members of the Settlement Classes, or to make any payments to any other Person, including for attorneys' fees and costs.  For avoidance of doubt, under no circumstances shall the total to be paid by Defendants under this Federal Stipulation and the State Stipulation exceed the Total Settlement Amount.

2.2     Jumia will pay or cause its insurers to pay the Federal Settlement Amount (*i.e.*, $2,000,000.00) into the Escrow Account within twenty (20) calendar days after the entry of the Federal Preliminary Approval Order and the entry of the order granting preliminary settlement approval in the State Action, whichever is later, in accordance with instructions to be provided by the Escrow Agent.  The Federal Settlement Amount may be paid by wire transfer, by delivering to the Escrow Agent a check or checks payable to the Federal Settlement Fund, by any combination of those methods, or in any other manner agreed upon by Federal Plaintiffs and Jumia and its insurers.  Within five (5) Business Days of execution of this Federal Stipulation, the Escrow Agent

will furnish to Jumia adequate payment instructions, consisting of wire transfer instructions and a completed IRS Form W-9 for the Federal Settlement Fund, including an address and tax ID number.

2.3    If the entire Federal Settlement Amount is not timely paid to the Escrow Agent, Federal Plaintiffs may terminate the Federal Action Settlement but only if (i) Federal Lead Counsel has notified Federal Defendants' counsel in writing of Federal Lead Counsel's intention to terminate the Federal Action Settlement, and (ii) the entire Federal Settlement Amount is not transferred to the Escrow Agent within ten (10) calendar days after Federal Lead Counsel have provided such written notice.  Failure by Federal Lead Counsel or the Escrow Agent to timely furnish adequate payment instructions to Jumia pursuant to ¶2.2 shall not be a basis for termination under this section and any delay in providing such instructions shall extend the period in which the Federal Settlement Amount will be paid under ¶2.2 by a number of days equivalent to the delay.

2.4    The Escrow Agent shall deposit the Federal Settlement Amount plus any accrued interest in a segregated Escrow Account maintained by the Escrow Agent.

### b.    The Escrow Agent

2.5    The Escrow Agent shall invest the Federal Settlement Amount deposited into the Federal Settlement Fund pursuant to ¶2.2 above in short-term United States Agency or Treasury Securities (or a mutual fund invested solely in such instruments) and shall collect and reinvest all interest accrued thereon in the same instruments.  Any funds held in escrow in an amount of less than or equal to $250,000.00 may be held in an interest-bearing bank account insured by the FDIC.

2.6    The Escrow Agent shall not disburse the Federal Settlement Fund except as provided in the Federal Stipulation, by an order of the Federal Court, or with the prior written agreement of Federal Lead Counsel and Federal Defendants.

2.7     Subject to further order and/or direction by the Federal Court, the Escrow Agent is authorized to execute such transactions on behalf of the Exchange Act Settlement Class Members as are consistent with the terms of the Federal Stipulation.

2.8     All funds held by the Escrow Agent in the Federal Settlement Fund shall be deemed and considered to be in *custodia legis*, and shall remain subject to the jurisdiction of the Federal Court, until such time as such funds shall be distributed pursuant to the Federal Stipulation and/or further order(s) of the Federal Court.

2.9     Within five (5) calendar days after payment of the Federal Settlement Amount to the Escrow Agent pursuant to ¶2.2 hereof, the Escrow Agent may establish a "Notice and Administration Fund" and allocate up to $250,000.00 for Class Notice and Administration Expenses.  For the avoidance of doubt, the deposit authorized under this provision shall be up to $250,000.00 combined for the joint Notice and Administration Fund for both the Federal Action and the State Action.

2.10    After (i) the Federal Court preliminarily approves the Federal Action Settlement; (ii) the State Court preliminarily approves the State Action Settlement; and (iii) Jumia and its insurers fund the Escrow Account with the Federal Settlement Amount and the State Settlement Amount, the Notice and Administration Fund may be used by the Escrow Agent without further consent of Federal Defendants or order of the Federal Court to pay costs and expenses reasonably and actually incurred in connection with (a) providing notice to the Exchange Act Settlement Class, (b) locating Exchange Act Settlement Class Members, (c) soliciting claims, (d) assisting with the filing of claims, (e) processing Proof of Claim and Release Forms, (f) administering and distributing the Federal Settlement Fund to Federal Authorized Claimants, and (g) paying escrow

fees and costs, if any.  The Notice and Administration Fund may also be invested and earn interest as provided for in ¶2.5 of this Federal Stipulation.

2.11    To the extent the foregoing costs and expenses exceed $250,000.00 prior to the Effective Date, Federal Lead Counsel may apply to the Federal Court for an order allowing for reimbursement from the Federal Settlement Fund of the foregoing costs and expenses in excess of $250,000.00.  After the Effective Date, additional amounts, up to $50,000.00 may be transferred from the Federal Settlement Fund to pay for any necessary additional Class Notice and Administration Expenses without further order of the Federal Court.

2.12    The Released Defendant Parties shall have no responsibility for, interest in, or liability whatsoever with respect to (i) any act, omission, or determination by Federal Lead Counsel, the Escrow Agent, or any of their designees or agents, (ii) the management, investment, or distribution of the Federal Settlement Fund, or (iii) any losses suffered by, or fluctuations in the value of, the Federal Settlement Fund.

### c.    Taxes

2.13    (a) The Federal Settling Parties and their counsel agree that the Federal Settlement Fund is intended to be a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1. The Federal Settling Parties and their counsel agree that the Federal Settlement Fund should be treated as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1.  In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this ¶2.13, including the "relation-back election" (as defined in Treas. Reg. §1.468B-1(j)(2)) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such Treasury regulations promulgated under §1.468B of the Internal Revenue Code of 1986, as amended (the "Code").  It shall be the responsibility of the Escrow Agent to timely and properly prepare and

deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(b)      For the purpose of §1.468B of the Code and the Treasury regulations promulgated thereunder, the Escrow Agent shall be designated as the "administrator" of the Federal Settlement Fund.  The Escrow Agent shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Federal Settlement Fund (including, without limitation, the returns described in Treas. Reg. § 1.468B-2(k)).  Such returns (as well as the election described in ¶2.13 hereof) shall be consistent with this ¶2.13 and in all events shall reflect that all Taxes as defined in ¶2.13(c) hereof (including any estimated Taxes, interest, or penalties) on the income earned by the Federal Settlement Fund shall be paid out of the Federal Settlement Fund as provided in ¶2.13(c) hereof.

(c)      All: (i) Taxes (including any estimated Taxes, interest, or penalties) arising with respect to the income earned by the Federal Settlement Fund, including any Taxes or tax detriments that may be imposed upon the Released Defendant Parties with respect to any income earned by the Federal Settlement Fund for any period during which the Federal Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes ("Taxes"); and (ii) expenses and costs incurred in connection with the operation and implementation of this ¶2.13 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this ¶2.13) ("Tax Expenses"), shall be paid out of the Federal Settlement Fund.  In no event shall the Released Defendant Parties have any responsibility for or liability with respect to any Taxes or Tax Expenses or for the filing of any federal, state, or local tax returns.  The Escrow Agent shall indemnify and hold each of the Released Defendant Parties harmless for Taxes and Tax Expenses

(including, without limitation, Taxes payable by reason of any such indemnification).  Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Federal Settlement Fund and shall be timely paid by the Escrow Agent out of the Federal Settlement Fund without prior order from the Federal Court, and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Federal Authorized Claimants any funds necessary to pay such amount, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(1)(2)).  The Federal Settling Parties agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this ¶2.13.

(d)     For the purpose of this ¶2.13, references to the Federal Settlement Fund shall include both the Federal Settlement Fund and the Notice and Administration Fund and shall also include any earnings thereon.

### d.     Termination of Settlement

2.14     In the event that the Federal Stipulation is not approved, or is terminated, canceled, or fails to become effective for any reason, including, without limitation, in the event that Jumia or Federal Plaintiffs terminate the Federal Action Settlement and this Federal Stipulation in accordance with ¶7.3 below, the Federal Settlement Fund (including accrued interest), less reasonable expenses actually incurred or due and owing from the Federal Settlement Fund for the notice and administration of the Federal Action Settlement pursuant to ¶¶2.9-.11 above, shall be refunded to Jumia or its insurers, plus accrued interest attributable to that amount, by wire transfer in accordance with instructions to be provided by counsel for Jumia within five (5) Business Days of the availability of the monies from the investments authorized herein or as otherwise agreed upon in writing by Jumia's counsel.  At the request of Jumia's counsel, the Escrow Agent or its

designee shall apply for any tax refund owed on the amounts in the Escrow Account and pay the proceeds, after any deduction of any fees or expenses incurred in connection with such application(s), for refund to Jumia.

3.      **Federal Preliminary Approval Order, Notice, and Federal Final Settlement Approval Hearing**

3.1      Promptly after execution of the Federal Stipulation and by no later than October 9, 2020, Federal Plaintiffs shall submit the Federal Stipulation together with its Exhibits to the Federal Court and Federal Lead Counsel shall move for entry of an order (the "Federal Preliminary Approval Order"), substantially in the form of Exhibit A attached hereto, requesting, *inter alia*, (i) the preliminary approval of the Federal Action Settlement set forth in the Federal Stipulation, (ii) the certification of the Exchange Act Settlement Class for settlement purposes only, (iii) the approval of the dissemination of the Long Notice, substantially in the form of Exhibit A-1 attached hereto, approval of the publication of the Summary Notice, substantially in the form of Exhibit A-3 attached hereto, and approval of the mailing of the Postcard Notice, substantially in the form of Exhibit A-4 attached hereto, which motion shall be unopposed by Federal Defendants.  The Notice shall include the general terms of the Federal Action Settlement set forth in the Federal Stipulation, the proposed Plan of Allocation, the general terms of the Federal Fee and Expense Application, and the date of the Federal Final Settlement Approval Hearing.

3.2      At or after the Federal Final Settlement Approval Hearing, Federal Lead Counsel also will request that the Federal Court approve the proposed Plan of Allocation and the Federal Fee and Expense Application.  Except for Jumia's obligation to pay or cause payment of the Federal Settlement Amount into the Federal Settlement Fund as set forth herein, and Jumia's and the Underwriter Defendants' obligation to reasonably cooperate, as set forth in the Federal Preliminary Approval Order, in providing notice to Exchange Act Settlement Class Members,

Defendants shall have no liability, obligation, or responsibility for the administration of the Federal Action Settlement or disbursement of the Net Federal Settlement Fund, as defined in ¶5.2(d) below.

3.3     No later than ten (10) calendar days following the filing of this Federal Stipulation with the Federal Court, Jumia shall serve on behalf of all Defendants the notice required under the Class Action Fairness Act, 28 U.S.C. § 1715, *et seq.* ("CAFA").  At least seven (7) calendar days before the Settlement Hearing, Jumia shall cause to be served on Federal Lead Counsel and filed with the Federal Court an affidavit or declaration regarding compliance with the CAFA notice requirements.

**4.     Mutual Releases**

4.1     The obligations incurred pursuant to this Federal Stipulation are in consideration of:  (i) the full and final disposition of the Federal Action; and (ii) the payments and Released Claims provided for herein.

4.2     Pursuant to the Federal Order and Final Judgment, without further action by anyone, upon the Effective Date, (i) Federal Plaintiffs, (ii) each and all of the Exchange Act Settlement Class Members and anyone claiming through or on behalf of any of them, and (iii) Federal Lead Counsel shall be deemed to have, and by operation of law and of the Federal Order and Final Judgment shall have fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Plaintiffs' Claim against the Released Defendant Parties, and shall forever be barred and enjoined from commencing, instituting, maintaining, prosecuting, or continuing to prosecute any or all of the Released Plaintiffs' Claims against the Released Defendant Parties, regardless of whether an Exchange Act Settlement Class Member executes and delivers a Proof of Claim and Release Form or shares in the Federal Settlement Fund.  Upon the Effective Date, (i) Federal Plaintiffs, (ii) each and all of

the Exchange Act Settlement Class Members and anyone claiming through or on behalf of any of them, and (iii) Federal Lead Counsel shall be deemed to have covenanted, and by operation of the Federal Order and Final Judgment shall have covenanted not to commence, institute, maintain, prosecute, or continue to prosecute any or all of the Released Plaintiffs' Claims against the Released Defendant Parties in any court of law or equity, arbitration tribunal, administrative forum, or any other forum, regardless of whether an Exchange Act Settlement Class Member executes and delivers a Proof of Claim and Release Form or shares in the Federal Settlement Fund.

4.3     Pursuant to the Federal Order and Final Judgment, without further action by anyone, upon the Effective Date, the Released Defendant Parties shall be deemed to have, and by operation of the Federal Order and Final Judgment shall have fully, finally, and forever compromised, settled, released, relinquished, waived, and discharged each and every Released Defendants' Claim against (i) Federal Plaintiffs, (ii) each and all of the Exchange Act Settlement Class Members and anyone claiming through or on behalf of any of them, and (iii) Federal Lead Counsel, and shall forever be barred and enjoined from commencing, instituting, maintaining, or continuing to maintain any or all of the Released Defendants' Claims against (i) Federal Plaintiffs, (ii) each and all of the Exchange Act Settlement Class Members and anyone claiming through or on behalf of any of them, and (iii) Federal Lead Counsel.

4.4     (i) Federal Plaintiffs, (ii) each and all of the Exchange Act Settlement Class Members and anyone claiming through or on behalf of any of them, and (iii) Federal Lead Counsel agree and covenant not to file or pursue any of the Released Plaintiffs' Claims against the Released Defendant Parties between the date of this Federal Stipulation and the Effective Date.  The Federal Settling Parties agree that if the Federal Action Settlement does not become Final, the period of

time between the date of this Federal Stipulation and the Effective Date shall not be counted for purposes of any defense based on passage of time.

4.5     Notwithstanding ¶¶4.1–4.4 above, nothing in the Federal Order and Final Judgment shall bar any action by any of the Federal Settling Parties to enforce or effectuate the terms of this Federal Stipulation or the Federal Order and Final Judgment.  Also, for the avoidance of doubt, this Federal Stipulation does not release (i) any insurer, co-insurer, excess insurer, or re-insurer from any obligation owed to any Defendant for indemnity or coverage under or relating to any policy of liability or other insurance policy or (ii) Jumia or any selling shareholder in the IPO from any indemnity obligation owed to the Underwriter Defendants under the IPO Underwriting Agreement, dated April 11, 2019, between Jumia and the Underwriter Defendants.

**5.     Administration and Calculation of Claims, Final Awards, and Supervision and Distribution of Net Federal Settlement Fund**

5.1     The Claims Administrator, subject to such supervision and direction of the Federal Court and/or Federal Lead Counsel as may be necessary or as circumstances may require, shall administer and calculate the claims submitted by Exchange Act Settlement Class Members and shall oversee distribution of the Net Federal Settlement Fund to Federal Authorized Claimants.

5.2     The Federal Settlement Fund shall be applied as follows:

(a)     to pay all the costs and expenses reasonably and actually incurred in connection with providing notice, locating Exchange Act Settlement Class Members, soliciting Exchange Act Settlement Class claims, assisting with the filing of claims, processing Proof of Claim and Release Forms, administering and distributing the Net Federal Settlement Fund to Federal Authorized Claimants, and paying escrow fees and costs, if any;

(b)     to pay the Taxes and Tax Expenses described in ¶2.13 above;

(c)      to pay the Federal Fee and Expense Award and Award to Federal Plaintiffs, if and to the extent allowed by the Federal Court; and

(d)      to distribute the balance of the Federal Settlement Fund (the "Net Federal Settlement Fund") to Federal Authorized Claimants as allowed by the Federal Stipulation, the Plan of Allocation, or the Federal Court.

5.3      Upon the Effective Date and thereafter, and in accordance with the terms of the Federal Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Federal Court as may be necessary or as circumstances may require, the Net Federal Settlement Fund shall be distributed to Federal Authorized Claimants, subject to and in accordance with the following:

(a)      Each Exchange Act Settlement Class Member shall be required to submit a Proof of Claim and Release Form, substantially in a form approved by the Federal Court, supported by such documents as are designated therein, including proof of the transactions claimed, or such other documents or proof as the Claims Administrator, in its discretion, may deem acceptable;

(b)      All Proof of Claim and Release Forms must be submitted by the date specified in the Notice unless such period is extended by order of the Federal Court.  Any Exchange Act Settlement Class Member who fails to submit a Proof of Claim and Release Form by such date shall be forever barred from receiving any payment pursuant to this Federal Stipulation (unless, by order of the Federal Court, a later-submitted Proof of Claim and Release Form by such Exchange Act Settlement Class Member is approved), but shall in all other respects be bound by all of the terms of this Federal Stipulation and the Federal Action Settlement, including the terms of the Federal Order and Final Judgment, to be entered in the Federal Action and the releases provided for herein, and will be barred from bringing any action against the Released Defendant

33

Parties concerning the Released Plaintiffs' Claims. A Proof of Claim and Release Form shall be deemed to have been submitted when either: (i) submitted electronically through the Claims Administrator's website at www.strategicclaims.net or (ii) posted, if received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the instructions thereon. In all other cases, the Proof of Claim and Release Form shall be deemed to have been submitted when actually received by the Claims Administrator. Notwithstanding the foregoing, Federal Lead Counsel, in its discretion, may accept for processing late submitted claims so long as the distribution of the Net Federal Settlement Fund to Federal Authorized Claimants is not materially delayed;

(c)     Each Proof of Claim and Release Form shall be submitted to and reviewed by the Claims Administrator, who shall determine in accordance with this Federal Stipulation and the approved Plan of Allocation the extent, if any, to which each claim shall be allowed, subject to review by the Federal Court pursuant to subparagraph (e) below;

(d)     Proof of Claim and Release Forms that do not meet the submission requirements may be rejected. Prior to rejection of a Proof of Claim and Release Form, the Claims Administrator shall communicate with the claimant in order to remedy any curable deficiencies. The Claims Administrator shall notify, in a timely fashion and in writing, all claimants whose Proof of Claim and Release Forms it proposes to reject in whole or in part, setting forth the reasons therefor, and shall indicate in such notice that the claimant whose claim is to be rejected has the right to a review by the Federal Court if the claimant so desires and complies with the requirements of subparagraph (e) below;

(e)     If any claimant whose claim has been rejected in whole or in part desires to contest such rejection, the claimant must, within twenty (20) calendar days after the date of

mailing of the notice required in subparagraph (d) above, serve upon the Claims Administrator a notice and statement of reasons indicating the claimant's grounds for contesting the rejection, along with any supporting documentation, and requesting a review thereof by the Federal Court.  If a dispute concerning a claim cannot be otherwise resolved, Federal Lead Counsel shall thereafter present the request for review to the Federal Court; and

(f)     The Net Federal Settlement Fund shall be distributed to the Federal Authorized Claimants substantially in accordance with the Plan of Allocation described in the Notice and approved by the Federal Court.

5.4     Except for Jumia's obligation to pay or cause payment of the Federal Settlement Amount into the Federal Settlement Fund as set forth herein, and Jumia's and the Underwriter Defendants' obligation to reasonably cooperate, as set forth in the Federal Preliminary Approval Order, in providing notice to Exchange Act Settlement Class Members, the Released Defendant Parties shall have no responsibility for, interest in, or liability whatsoever with respect to any act, omission, or determination by Federal Lead Counsel, the Escrow Agent, or the Claims Administrator, or any of their respective designees or agents, in connection with (i) the administration of the Federal Action Settlement or otherwise; (ii) the management, investment, or distribution of the Federal Settlement Fund; (iii) the Plan of Allocation or its implementation, administration, or interpretation; (iv) the determination, administration, calculation, or payment of any claims asserted against the Federal Settlement Fund; (v) the payment or withholding of Taxes or Tax Expenses; or (vi) any losses incurred in connection therewith.

5.5     No Person shall have any claim against Federal Plaintiffs, the Escrow Agent, Federal Lead Counsel, any claims administrator, or Federal Defendants or their counsel based on

distributions made substantially in accordance with the Federal Stipulation and the Federal Action Settlement contained herein, the Plan of Allocation, or further order(s) of the Federal Court.

5.6     If there is any balance remaining in the Net Federal Settlement Fund after six (6) months from the date of distribution of the Net Federal Settlement Fund (whether by reason of tax refunds, uncashed checks, or otherwise), then, after the Claims Administrator has made reasonable and diligent efforts to have Exchange Act Settlement Class Members who are entitled to participate in the distribution of the Net Federal Settlement Fund cash their distributions, any balance remaining shall be redistributed among Federal Authorized Claimants who would receive at least $10.00 from such second distribution in an equitable and economic manner, if economically feasible.  If a redistribution is not economically feasible or cost effective, the remaining balance shall be contributed to non-sectarian, not-for-profit, 501(c)(3) organization(s) to be recommended by Federal Lead Counsel, subject to the Federal Court's approval.

5.7     It is understood and agreed by the Federal Settling Parties that any proposed Plan of Allocation of the Net Federal Settlement Fund including, but not limited to, any adjustments to a Federal Authorized Claimant's claim set forth therein, is not a necessary term of the Federal Stipulation and is to be considered by the Federal Court separately from the Federal Court's consideration of the fairness, reasonableness, and adequacy of the Federal Action Settlement set forth in the Federal Stipulation, and any order or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel the Federal Stipulation or affect the finality of the Federal Order and Final Judgment approving the Federal Stipulation and the Federal Action Settlement set forth therein, or any other orders entered pursuant to the Federal Stipulation.

**6.     Federal Lead Counsel's Attorneys' Fees and Expenses**

6.1     Federal Lead Counsel may submit an application or applications (the "Federal Fee and Expense Application") for distributions from the Federal Settlement Fund for: (a) an award of

attorneys' fees for Federal Lead Counsel in connection with prosecuting the claims on behalf of the Exchange Act Settlement Class in the Federal Action; (b) payment of expenses and costs incurred by Federal Lead Counsel in connection with prosecuting the claims on behalf of the Exchange Act Settlement Class in the Federal Action; (c) any interest on such attorneys' fees, costs, and expenses at the same rate and for the same periods as earned by the Federal Settlement Fund; and (d) an Award to Federal Plaintiffs.  State Plaintiff's Counsel may separately apply to the State Court for (a) an award of attorneys' fees from the State Settlement Fund in connection with prosecuting the claims on behalf of the Securities Act Settlement Class in the State Action; (b) payment of expenses and costs incurred in connection with prosecuting the claims on behalf of the Securities Act Settlement Class; (c) any interest on such attorneys' fees, costs, and expenses at the same rate and for the same periods as earned by the State Settlement Fund; and (d) an Award to State Plaintiff.

6.2     The attorneys' fees, expenses, and costs, including the fees of experts and consultants, and the Award to Federal Plaintiffs, as awarded by the Federal Court, shall be paid from the Federal Settlement Fund, as ordered, immediately after the Federal Court executes an order awarding such fees and expenses, notwithstanding any objections to or appeals of such order or the Federal Order and Final Judgment.

6.3     In the event that the Effective Date does not occur, or the Federal Order and Final Judgment or the order making the Federal Fee and Expense Award is reversed or modified, or the Federal Stipulation is canceled or terminated for any other reason, and in the event that the Federal Fee and Expense Award has been paid to any extent, then all counsel who receive any award of attorneys' fees, expenses, and costs shall, within five (5) Business Days from receiving notice from Defendants' counsel or from a court of appropriate jurisdiction, make full refunds or repayments

to the Federal Settlement Fund of the proportion of fees, expenses, and costs previously paid to them respectively from the Federal Settlement Fund plus interest thereon at the same rate as earned on the Federal Settlement Fund in an amount consistent with such reversal or modification. Federal Lead Counsel, as a condition of receiving such fees and expenses, on behalf of themselves and each partner and/or shareholder of them, agree that the law firms and their partners and/or shareholders are subject to the jurisdiction of the Federal Court for the purpose of enforcing the provisions of this paragraph.

6.4    The procedure for, and the allowance or disallowance by the Federal Court of, any Federal Fee and Expense Application are not part of the Federal Action Settlement set forth in this Federal Stipulation, and are separate from the Federal Court's consideration of the fairness, reasonableness, and adequacy of the Federal Action Settlement set forth in the Federal Stipulation, and any order or proceeding relating to any Federal Fee and Expense Application, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel the Federal Stipulation, or affect or delay the finality of the Federal Order and Final Judgment approving the Federal Stipulation and the Federal Action Settlement set forth herein. Federal Plaintiffs and Federal Lead Counsel may not cancel or terminate the Federal Stipulation or the Federal Action Settlement in accordance with ¶7.3 or otherwise based on the Federal Court's or any appellate court's ruling with respect to fees and expenses in the Federal Action.

6.5    The Released Defendant Parties and Defendants' counsel shall have no responsibility for, and no liability whatsoever with respect to, any payment to Federal Lead Counsel from the Federal Settlement Fund.

6.6    The Released Defendant Parties and Defendants' counsel shall have no responsibility for, and no liability whatsoever with respect to the allocation among Federal Lead

Counsel, and/or any other person who may assert some claim thereto, of any Federal Fee and Expense Award that the Federal Court may make in the Federal Action.

7.  **Conditions of Settlement, Effect of Disapproval, Cancellation, or Termination**

7.1    The Effective Date of the Federal Stipulation shall be conditioned on the occurrence of all of the following events:

(a)    the Federal Court has entered the Federal Preliminary Approval Order, as required by ¶3.1 hereof;

(b)    Jumia and its insurers have paid the Federal Settlement Amount, as required by ¶2.2 above;

(c)    the Federal Settlement Amount has been deposited into the Escrow Account in accordance with the provisions of ¶2.2;

(d)    the Federal Court has provided final approval of this Federal Stipulation, following notice to the Exchange Act Settlement Class Members and the Federal Final Settlement Approval Hearing;

(e)    the Federal Court has entered the Federal Order and Final Judgment, substantially in the form of Exhibit B attached hereto;

(f)    the Federal Order and Final Judgment has become Final, as defined in ¶1.35(a) hereof; and

(g)    the State Court has provided final approval of the State Action Settlement, and the State Action Settlement has become Final, as defined in ¶1.35(b) hereof.

7.2    Upon the occurrence of all of the events referenced in ¶7.1 hereof, any and all remaining interest or right of Jumia and its insurers in or to the Federal Settlement Fund, if any,

shall be absolutely and forever extinguished and the releases herein shall be automatically effective.

7.3     Jumia and Federal Plaintiffs shall each have the option to terminate the Federal Action Settlement and this Federal Stipulation by providing written notice of their election to do so ("Termination Notice") to all other parties hereto within thirty (30) calendar days of any of the following events:

(a) the Federal Court's final non-appealable refusal to enter the Federal Preliminary Approval Order in any material respect;

(b) the Federal Court's final non-appealable refusal to approve this Federal Stipulation or any material part of it;

(c) the Federal Court's final non-appealable refusal to enter the Federal Order and Final Judgment in any material respect;

(d) the modification or reversal of the Federal Order and Final Judgment in any material respect by the U.S. Court of Appeals for the Second Circuit, the U.S. Supreme Court, or any other court hearing an appeal from the Federal Court;

(e) the State Court's final non-appealable refusal to enter the proposed order preliminarily approving the State Action Settlement in any material respect;

(f) the State Court's final non-appealable refusal to approve the State Stipulation or any material part of it;

(g) the State Court's final non-appealable refusal to enter the proposed final judgment in the State Action in any material respect;

(h) the modification or reversal of the proposed final judgment in the State Action in any material respect by the Appellate Division of the Supreme Court, the Court of Appeals, or any other court hearing an appeal from the State Court; or

(i) as otherwise set forth in the Supplemental Agreement between the State Settling Parties and the Federal Settling Parties.

The foregoing list is not intended to limit or impair the Federal Settling Parties' rights under the law of contracts of the State of New York with respect to any breach of this Federal Stipulation. No order of the Federal Court, or modification or reversal on appeal of any order of the Federal Court, concerning the Plan of Allocation or the amount of any attorneys' fees, costs, expenses, and interest awarded by the Federal Court to Federal Plaintiffs or Federal Lead Counsel shall constitute grounds for cancellation or termination of the Federal Stipulation.

7.4    Simultaneously with the execution of this Federal Stipulation, the Federal Settling Parties and the State Settling Parties are executing the Supplemental Agreement. The Supplemental Agreement sets forth certain conditions under which Jumia shall have the option (which option shall be exercised unilaterally by Jumia in its discretion) to terminate the Federal Action Settlement and render this Federal Action Stipulation null and void in the event that requests for exclusion from the Federal Action Settlement exceed the Opt-Out Threshold.  The Federal Settling Parties and the State Settling Parties intend that the Supplemental Agreement be maintained as confidential.  Subject to orders of the Federal Court and/or the State Court, the Supplemental Agreement shall be filed with the Federal Court and/or the State Court only if requested by the Federal Court and/or the State Court and in that case, filed under seal or with the Opt-Out Threshold redacted, unless otherwise ordered by the Federal Court and/or the State Court. Notwithstanding the foregoing, the Opt-Out Threshold may be disclosed to the Federal Court

and/or the State Court, as may be required by the Federal Court and/or the State Court, for purposes of approval of the Federal Action Settlement and/or the State Action Settlement, but such disclosure shall be carried out to the fullest extent possible in accordance with the practices of the Federal Court and/or the State Court so as to maintain the confidentiality of the Opt-Out Threshold.

In the event of a termination of this Federal Action Settlement pursuant to the Supplemental Agreement, this Federal Stipulation shall become null and void and of no further force and effect, with the exception of the provisions of ¶¶2.14, 7.6, 7.8, 9.1, 10.4, and 10.7 of this Federal Stipulation, which shall continue to apply and survive termination.

7.5     If an option to withdraw from and terminate this Federal Stipulation arises under any of ¶¶ 7.1, 7.3, or 7.4 of this Federal Stipulation, (i) neither Jumia nor Federal Plaintiffs will be required for any reason or under any circumstance to exercise that option, and (ii) any exercise of that option shall be made in good faith, but in the sole and unfettered discretion of Jumia or Federal Plaintiffs, as applicable.

7.6     Except as otherwise provided in this Federal Stipulation, in the event the Federal Action Settlement is terminated or fails to become effective for any reason, then:  (i) the Federal Action Settlement shall be without prejudice, and none of its terms, including, but not limited to, the certification of the Exchange Act Settlement Class, shall be effective or enforceable except as expressly provided in this Federal Stipulation; (ii) the Federal Settling Parties shall be deemed to have reverted *nunc pro tunc* to their respective positions in the Federal Action immediately prior to accepting the Mediator's proposal on August 11, 2020; and (iii) except as otherwise expressly provided in this Federal Stipulation, the Federal Settling Parties shall proceed in the Federal Action in all respects as if this Federal Stipulation and any related orders had not been entered.  In such event, the fact and terms of this Federal Stipulation, or any aspect of the negotiations leading to

this Federal Stipulation or the State Stipulation, shall not be admissible in this Federal Action and shall not be used by Federal Plaintiffs or any other member of the Exchange Act Settlement Class against Defendants or by Defendants against Federal Plaintiffs or any other member of the Exchange Act Settlement Class in any court filings, depositions, at trial, or otherwise.

7.7    The Final Settlement Approval Hearing shall be held at a date and time convenient to the Federal Court, but no earlier than one hundred (100) calendar days after the dissemination of Notice, at the United States District Court for the Southern District of New York, 500 Pearl Street, Courtroom 11D, New York, New York 10007, or at such other location or by means as determined by the Federal Court, to determine (i) whether the proposed Federal Action Settlement on the terms and conditions provided for in this Federal Stipulation is fair, reasonable, and adequate as to the Exchange Act Settlement Class and should be approved by the Federal Court; (ii) whether the Federal Order and Final Judgment as provided in ¶1.27 should be entered herein; (iii) whether the proposed Plan of Allocation should be approved; and (iv) the amount of fees and expenses that should be awarded to Federal Lead Counsel.

7.8    If the Effective Date does not occur, or if the Federal Stipulation is terminated pursuant to its terms, neither Federal Plaintiffs nor Federal Lead Counsel shall have any obligation to repay any amounts actually and properly disbursed from the Federal Settlement Fund for the notice and administration of the Federal Action Settlement pursuant to ¶¶2.10-.11 hereof.  In addition, any expenses already incurred and properly chargeable to the Federal Settlement Fund for the notice and administration of the Federal Action Settlement pursuant to ¶¶2.10-.11 hereof at the time of such termination or cancellation, but which have not been paid, shall be paid by the Escrow Agent in accordance with the terms of the Federal Stipulation prior to the balance being refunded in accordance with ¶2.14 hereof.

### 8.    Exchange Act Settlement Class Certification

8.1    The parties to this Federal Stipulation hereby stipulate that, for settlement purposes only: (i) the requirements of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure are satisfied, and, subject to Federal Court approval, the Exchange Act Settlement Class, as defined in ¶1.14, shall be certified; (ii) Federal Plaintiffs are appointed as class representatives for the Exchange Act Settlement Class; and (iii) Federal Lead Counsel are appointed as class counsel for the Exchange Act Settlement Class.

### 9.    No Admission of Wrongdoing

9.1    This Federal Stipulation, whether or not consummated, and any negotiations, discussions, or proceedings relating to the Federal Stipulation, the Federal Action Settlement, and any matters arising in connection therewith shall not be offered or received against any Defendant for any purpose, and in particular:

(a)    do not constitute, and shall not be offered or received against any Defendant as evidence of, or construed as or deemed to be evidence of, any presumption, concession, or admission by any Defendant of: (i) the truth of any allegations by Federal Plaintiffs or State Plaintiff, or any other Exchange Act Settlement Class Member or Securities Act Settlement Class Member; (ii) the validity of any claim that has been or could have been asserted in the Federal Action or the State Action, or in any other litigation, including, but not limited to, the Released Plaintiffs' Claims; (iii) the deficiency of any defense that has been or could have been asserted in the Federal Action or the State Action, or in any other litigation; or (iv) any liability, negligence, fault, or wrongdoing, on the part of, or damages owed by, any Defendant;

(b)    do not constitute, and shall not be offered or received (i) against any Defendant as evidence of, or construed as evidence of, a presumption, concession, admission

of any fault, misrepresentation, or omission with respect to any statement or written document approved or made by any Defendant, or (ii) against Federal Plaintiffs or any Exchange Act Settlement Class Member as evidence of any infirmity in the claims of Federal Plaintiffs and the Exchange Act Settlement Class;

(c)      do not constitute, and shall not be offered or received against any Defendant as evidence of, or construed as evidence of, a presumption, concession, or admission of any liability, negligence, fault, infirmity, or wrongdoing on the part of, or any damages owed by, or in any way referred to for any other reason as against any of the parties to this Federal Stipulation, in any civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to consummate or effectuate the provisions of this Federal Stipulation; provided, however, that if this Federal Stipulation is approved by the Federal Court, the Released Defendant Parties may refer to it to effectuate the release granted hereunder;

(d)      do not constitute, and shall not be offered or received against any Defendant, Federal Plaintiffs, or any member of the Exchange Act Settlement Class as evidence of, or construed as evidence of, a presumption, concession, or admission that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial; and

(e)      do not constitute, and shall not be offered or construed as evidence that a class should be certified in the Federal Action if the Federal Action Settlement is not consummated.

### 10.    Miscellaneous Provisions

10.1    The Federal Settling Parties (i) acknowledge that it is their intent to consummate this agreement; and (ii) agree to cooperate reasonably with one another in seeking Federal Court

approval of the Federal Preliminary Approval Order, the Federal Stipulation, and the Federal Order and Final Judgment and in consummating the Federal Action Settlement in accordance with its terms, and to agree promptly upon and execute all such other documentation as reasonably may be required to obtain final approval by the Federal Court of the Federal Action Settlement.

10.2    This Federal Stipulation, the Exhibits attached hereto, and the Supplemental Agreement constitute the entire agreement between the Federal Settling Parties concerning the Federal Action Settlement and supersede all prior or contemporaneous written or oral agreements, promises, representations, understandings, and other communications between the Federal Settling Parties relating thereto.  No other agreements, representations, warranties, or inducements have been made or relied upon by any Federal Settling Party concerning the Federal Stipulation, the Exhibits attached hereto, or the Supplemental Agreement, other than those contained and memorialized in such documents.

10.3    Except as otherwise provided for herein, each Federal Settling Party shall bear his, her, or its own costs.

10.4    Federal Plaintiffs and Federal Lead Counsel shall make no public statements, other than disclosures required for court filings, that substantially deviate from words to the effect that the Federal Settling Parties have reached a mutually acceptable resolution by way of a mediated settlement.  Defendants may publicly disclose the existence of the Settlements, including the total proposed Settlement Amounts and the amounts to be funded by Jumia and by insurance coverage.

10.5    The Federal Settling Parties intend this Federal Action Settlement to be a final and complete resolution of all disputes asserted or which could be asserted by the Federal Settling Parties and any Exchange Act Settlement Class Member with respect to the Released Claims.  The Federal Action Settlement compromises all Released Claims and shall not be deemed an admission

by any Federal Settling Party as to the merits of any claim or defense.  The Federal Order and Final Judgment will contain a statement that, during the course of the Federal Action, the Federal Settling Parties and their respective counsel at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure, or comparable rule or law in connection with the maintenance, prosecution, defense, and settlement of the Federal Action.  The Federal Settling Parties agree that the Federal Settlement Amount and the other terms of the Federal Action Settlement were negotiated at arm's length in good faith by the Federal Settling Parties, and their respective counsel, and reflect a settlement that was reached voluntarily based upon adequate information and after consultation with competent legal counsel.

10.6    The Released Defendant Parties may file the Federal Stipulation and/or the Federal Order and Final Judgment in any action that may be brought against them in order to support a defense, claim, or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim, or to effectuate the liability protection granted them under any applicable insurance policies.  The Federal Settling Parties may file this Federal Stipulation and/or the Federal Order and Final Judgment in any action that may be brought to enforce the terms of this Federal Stipulation and/or the Federal Order and Final Judgment.  All Federal Settling Parties submit to the jurisdiction of the Federal Court for purposes of implementing and enforcing the Federal Action Settlement.

10.7    Except as otherwise provided for herein, all agreements made and orders entered during the course of the Federal Action relating to the confidentiality of information shall survive this Federal Stipulation.

10.8    All of the Exhibits to the Federal Stipulation, except any Plan of Allocation, to the extent incorporated in those exhibits, are material and integral parts hereof and are fully incorporated herein by this reference.  In the event that there exists a conflict or inconsistency between the terms of this Federal Stipulation and the terms of any exhibit to the Federal Stipulation, the terms of the Federal Stipulation shall govern.

10.9    The Federal Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Federal Settling Parties or their respective successors-in-interest.

10.10    Federal Lead Counsel, on behalf of the Exchange Act Settlement Class, is expressly authorized by Federal Plaintiffs to take all appropriate action required or permitted to be taken by the Exchange Act Settlement Class pursuant to the Federal Stipulation to effectuate its terms and also is expressly authorized to enter into any modifications or amendments to the Federal Stipulation on behalf of the Exchange Act Settlement Class that it deems appropriate.

10.11    All counsel or any other person executing the Federal Stipulation, any of its Exhibits, or any related Federal Action Settlement documents on behalf of any party hereto, hereby warrant and represent that they have the full authority to do so, and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Federal Stipulation to effectuate its terms.

10.12    The Federal Stipulation may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  Signatures sent by facsimile or sent electronically will be deemed originals.

10.13    The Federal Stipulation shall be binding when signed, but the Federal Action Settlement shall be effective only on the condition that the Effective Date occurs.

10.14    The Federal Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Federal Settling Parties and the Related Parties, and any corporation, partnership, or other entity into or with which any Federal Settling Party or any Related Party may hereto merge, consolidate, or reorganize.

10.15    The administration and consummation of the Federal Action Settlement as embodied in the Federal Stipulation shall be under the authority of the Federal Court, and the Federal Court shall retain jurisdiction for the purpose, *inter alia*, of entering orders, providing for awards of attorneys' fees or any other fee and expense awards, and implementing and enforcing the terms of the Federal Stipulation, and the Federal Settling Parties submit to the jurisdiction of the Federal Court for purposes of implementing and enforcing the Federal Action Settlement embodied in the Federal Stipulation.

10.16    Any claim or dispute among the Federal Settling Parties arising out of, relating to, or in connection with the interpretation or implementation of the terms of the Federal Stipulation prior to joint submission to the Federal Court of the Federal Preliminary Approval Order shall first be mediated before the Mediator, by way of expedited telephonic mediation and, if unsuccessful, then by the Federal Court.  The fees and expenses of the Mediator shall be divided equally between Federal Plaintiffs on the one hand, and Jumia on the other.

10.17    The waiver by one party of any breach of this Federal Stipulation by any other Federal Settling Party shall not be deemed a waiver by any other Federal Settling Party or a waiver of any other prior or subsequent breach of this Federal Stipulation.

10.18    Nothing in this Federal Stipulation, or the negotiations relating thereto, is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including, without limitation, attorney-client privilege, joint defense privilege, or work product protection.

10.19   The construction, interpretation, operation, effect, and validity of this Federal Stipulation, the Exhibits attached hereto, and all documents necessary to effectuate the Federal Action Settlement, shall be governed by the internal laws of the State of New York without regard to conflicts of laws, except to the extent that federal law requires that federal law govern.

10.20   The headings in this Federal Stipulation are used for the purpose of convenience only and are not meant to have legal effect.

10.21   This Federal Stipulation shall not be construed more strictly against one Federal Settling Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Federal Settling Parties, it being recognized that it is the result of arm's-length negotiations among the Federal Settling Parties and all Federal Settling Parties have contributed substantially and materially to the preparation of this Federal Stipulation.

IN WITNESS WHEREOF, the parties hereto have caused the Federal Stipulation to be executed by their duly authorized attorneys dated October 9, 2020.

Dated:  October 9, 2020

**THE ROSEN LAW FIRM, P.A.**
By:  */s/Phillip Kim*
Laurence Rosen
Phillip Kim
Brian B. Alexander
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: lrosen@rosenlegal.com
Email: pkim@rosenlegal.com
Email: balexander@rosenlegal.com

*Co-Lead Counsel for Federal Plaintiffs and the Exchange Act Settlement Class*

Dated:  October 9, 2020

**POMERANTZ LLP**

By:  */s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
Brenda Szydlo
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
Email: jalieberman@pomlaw.com
Email: bszydlo@pomlaw.com

*Co-Lead Counsel for Federal Plaintiffs and
the Exchange Act Settlement Class*

Dated:  October 9, 2020

**SULLIVAN & CROMWELL LLP**

By:  */s/ David M.J. Rein*
David M.J. Rein
Julia A. Malkina
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
Email: reind@sullcrom.com
Email: malkinaj@sullcrom.com

*Counsel for Defendants Jumia Technologies
AG, Jeremy Hodara, Sacha Poignonnec,
Antoine Maillet-Mezeray, Gilles Bogaert,
Andre T. Iguodala, Blaise Judja-Sato,
Jonathan D. Klein, Angela Kaya Mwanza,
Alioune Ndiaye, Matthew Odgers, John H.
Rittenhouse, and Donald J. Puglisi*

Dated:  October 9, 2020

**O'MELVENY & MYERS LLP**

By: */s/ Jonathan Rosenberg*

Jonathan Rosenberg
William J. Sushon
7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
Email: jrosenberg@omm.com
Email: wsushon@omm.com

*Counsel for Defendants Morgan Stanley & Co. LLC, Citigroup Global Markets Inc., Berenberg Capital Markets LLC, RBC Capital Markets, LLC, Stifel, Nicolaus & Company, Incorporated, Raymond James & Associates, Inc., and William Blair & Company, L.L.C.*