**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE JUMIA TECHNOLOGIES AG SECURITIES LITIGATION, | Master File No. 1:19-cv-04397-PKC |

**MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR ENTRY OF ORDER PRELIMINARILY APPROVING SETTLEMENT AND ESTABLISHING NOTICE PROCEDURES**

**TABLE OF CONTENTS**

Page

I.  INTRODUCTION ................................................................................................ 1

II.  SUMMARY OF THE LITIGATION AND THE SETTLEMENT ...................................... 3

    A. Procedural History.......................................................................................... 3

        (i)  The Federal Action ................................................................................ 3

        (ii)  The State Action .................................................................................. 4

    B. Settlement Negotiations ................................................................................. 5

III.  THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR
     SETTLEMENT PURPOSES .................................................................................... 5

    A. Numerosity .................................................................................................... 6

    B. Commonality .................................................................................................. 7

    C. Typicality....................................................................................................... 8

    D. Adequacy ....................................................................................................... 8

        (i)  Adequacy of the Proposed Class Representatives .................................. 9

        (ii)  Rule 23(g) Adequacy of the Proposed Class Counsel ............................ 9

    E. Common Questions Predominate and the Class Is Superior to Other Methods of
       Adjudication ................................................................................................. 10

IV.  PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS APPROPRIATE
     ....................................................................................................................... 12

    A. Standards for Preliminary Approval.............................................................. 12

    B. Federal Plaintiffs and Their Counsel Have Adequately Represented the Class.............. 13

    C. The Proposed Settlement Is the Result of Good Faith Arm's-Length Negotiations by
       Informed, Experienced Counsel Who Were Aware of the Risks of the Litigation......... 14

    D. The Relief Provided to the Class Is Adequate................................................. 15

        (i)  The Substantial Benefits for the Class, Weighted Against the Costs, Risks and
        Delay of Trial and Appeal Support Preliminary Approval ............................ 15

i

a) The Complexity, Expense, and Likely Duration of the Litigation ........................ 16

b) The Stage of the Proceedings and the Amount of Discovery Completed............. 17

c) The Risk of Establishing Liability and Damages .................................................. 17

d) The Risks of Maintaining the Class Action Through Trial................................... 18

e) The Ability of Settling Defendants to Withstand a Greater Judgment and the Reasonableness of the Settlement Fund................................................................. 19

(ii) The Proposed Method for Distributing Relief Is Effective................................. 20

(iii) Attorneys' Fees, Reimbursement of Expenses, and Award to Federal Plaintiffs. 20

(iv) The Parties Have Agreed to a Side Agreement Regarding Opt-Outs................... 21

E. There Was No Preferential Treatment; The Plan Is Designed to Treat Class Members Equitably ............................................................................................................. 21

V. THE PROPOSED FORMS AND METHOD OF PROVIDING NOTICE TO THE CLASS ARE APPROPRIATE AND SATISFY FED. R. CIV. P. 23, THE PSLRA, AND DUE PROCESS ............................................................................................................. 22

VI. PROPOSED SCHEDULE OF EVENTS........................................................................ 25

VII. CONCLUSION............................................................................................................. 25

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*Ackerman v. Coca-Cola Co.*,
   No. 09 CV 395 DLI RML, 2013 WL 7044866 (E.D.N.Y. July 18, 2013) .............................. 10

*Allen, et al., v. PixarBio Corp., et al.*,
   Case No. 2:17-cv-00496 (D.N.J.) ......................................................................................... 24

*Amchem Products, Inc., v. Windsor*,
   521 U.S. 591 (1997) ..................................................................................... 5, 6, 11, 12

*Baker v. SeaWorld Entm't, Inc.*,
   No. 14CV2129-MMA (AGS), 2020 WL 818893 (S.D. Cal. Feb. 19, 2020) ........................... 24

*Cagan v. Anchor Sav. Bank FSB,*
   No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990) .................................................. 19

*Carson v. Am. Brands, Inc.*,
   450 U.S. 79 (1981) ................................................................................................................ 13

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
   504 F.3d 229 (2d Cir. 2007) ................................................................................................. 6

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) .......................................................................................... 15, 19

*Consol. Edison, Inc. v. Ne. Utilities*,
   332 F. Supp. 2d 639 (S.D.N.Y. 2004) ................................................................................... 22

*Consol. Rail Corp. v. Town of Hyde Park*,
   47 F.3d 473 (2d Cir. 1995) ..................................................................................................... 6

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) ................................................................................................... 14

*Espinoza v. 953 Assocs. LLC*,
   280 F.R.D. 113 (S.D.N.Y. 2011) ........................................................................................... 10

*Fogarazzao v. Lehman Bros.*,
   232 F.R.D. 176 (S.D.N.Y. 2005) ............................................................................................. 9

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   903 F.2d 176 (2d Cir. 1990) ................................................................................................... 8

iii

*Graham v. Capital One Bank (USA), N.A.*,
  No. SACV13743JLSJPRX, 2014 WL 12579809 (C.D. Cal. July 29, 2014) ........................... 24

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014) .................................................................................................................. 18

*Hefler v. Wells Fargo & Co.*,
  No. 16-CV-05479-JST, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ..................................... 21

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) .............................................................................................. 24

*In re Akers Biosciences, Inc., Sec. Litig.*,
  Case No. 18-cv-10521 (D.N.J.) ................................................................................................. 23

*In re Am. Bank Note Holographics, Inc.*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001) ................................................................................. 16, 17

*In re China Med. Corp. Sec. Litig.*,
  No. 8:11-1061 JLS (ANX), 2014 WL 12581781 (C.D. Cal. Jan. 7, 2014) ............................... 15

*In re Citigroup Inc. Bond Litig.*,
  296 F.R.D. 147 (S.D.N.Y. 2013) .............................................................................................. 21

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
  2007 WL 2230177 (S.D.N.Y. July 27, 2007) ............................................................... 6, 7, 8, 12

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
  312 F.R.D. 332 (S.D.N.Y. 2015) ................................................................................................ 7

*In re ForceField Energy Inc. Sec. Litig.*,
  Case No. 2:17-cv-00496 (D.N.J.) .............................................................................................. 24

*In re Glob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................................... 7, 19

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007) .................................................................................... 14

*In re Indep. Energy Holdings PLC*,
  2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ........................................................................ 14

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
  No. 04 CIV. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ......................... 8, 11, 19

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) .................................................................................................... 14

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  991 F. Supp. 2d 437 (E.D.N.Y. 2014) ............................................................................... 20

*In re Sadia, S.A. Sec. Litig.*,
  269 F.R.D. 298 (S.D.N.Y. 2010) ........................................................................................ 6

*In re Signet Jewelers Ltd. Sec. Litig.*,
  No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468 (S.D.N.Y. July 21, 2020) ....................... 16

*In re Silver Wheaton Corp. Sec. Litig.*,
  Case No. 2:15-cv-05146 ............................................................................................... 23, 24

*In re Tangoe, Inc., Sec. Litig.*,
  Case No. 3:17-cv-00146 (D. Ct.) ...................................................................................... 24

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008) ............................................................................... 19

*In re Tremont Sec. Law, State Law & Ins. Litig.*,
  No. 08-CV-11117, 2015 WL 5333494 (S.D.N.Y. Sept. 14, 2015) ....................................... 21

*In re USA Technologies, Inc. Sec. Litig.*,
  Case No. 1:19-cv-04565 (E.D. Pa.) ................................................................................... 24

*In re Vivendi Universal, S.A.*,
  242 F.R.D. 76 (S.D.N.Y. 2007) .................................................................................. 6, 7, 8

*In re Warner Commc'ns Sec. Litig.*,
  798 F.2d 35 (2d Cir. 1986) ............................................................................................... 15

*Johnson v. Nextel Commc'ns Inc.*,
  780 F.3d 128 (2d Cir. 2015) ............................................................................................... 7

*Karvaly v. eBay, Inc.*,
  245 F.R.D. 71 (E.D.N.Y. 2007) .......................................................................................... 6

*Leung v. Home Boy Rest. Inc.*,
  No. 07CIV8779RJSDFE, 2009 WL 398861 (S.D.N.Y. Feb. 18, 2009) ................................. 14

*Marisol A. by Forbes v. Giuliani*,
  929 F. Supp. 662 (S.D.N.Y. 1996) ...................................................................................... 8

*Morris v. Affinity Health Plan, Inc.*,
  859 F. Supp. 2d 611 (S.D.N.Y. 2012) ............................................................................... 19

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950) ........................................................................................................ 24

*Palacio v. E\*TRADE Fin. Corp.*,
  No. 10 Civ. 4030 (LAP) (DCF), 2012 U.S. WL 2384419 (S.D.N.Y. June 22, 2012) .............. 12

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ........................................................................................................ 11

*Police & Fire Ret. Sys. v. Safenet, Inc.*,
  645 F. Supp. 2d 210 (S.D.N.Y. 2009) ................................................................................ 18

*Rabbi Jacob Joseph Sch. v. Allied Irish Banks, P.L.C.*,
  No. 11-CV-05801 DLI VVP, 2012 WL 3746220 (E.D.N.Y. Aug. 27, 2012) ......................... 17

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993) ............................................................................................... 6

*Shapiro v. JPMorgan Chase & Co.*,
  No. 11 Civ. 7961 CM, 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) .................................... 22

*Spann v. AOL Time Warner Inc.*,
  No. 02 CIV. 8238DLC, 2005 WL 1330937 (S.D.N.Y. June 7, 2005) ..................................... 12

*Thomas v. MagnaChip Semiconductor Corp.*,
  No. 14-CV-01160-JST, 2017 WL 4750628 (N.D. Cal. Oct. 20, 2017) .................................... 21

*Vargas v. Capital One Fin. Advisors*,
  559 F. App'x 22 (2d Cir. 2014) ........................................................................................... 22

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) ........................................................ 7

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) ............................................................................................ 12, 14

*Weinberger v. Kendrick*,
  698 F.2d 61 (2d Cir. 1982) ................................................................................................... 5

*Zubrinski, et al., v. BioAmber Inc., et. al.*,
  Case No. 2:17-cv-01531 (E.D.N.Y.) ..................................................................................... 23

## **Statutes**

15 U.S.C. §78aa .................................................................................................................. 11

15 U.S.C. §78u-4(a)(4) ........................................................................................................ 21

15 U.S.C. § 78u-4(a)(7) ................................................................................................ 22, 23, 24

15 U.S.C. §§ 77(k), (l)(a)(2), (o) ............................................................................................. 2

**Rules**

Fed. R. Civ. P. 23 ..................................................................................................... passim

**Other Authorities**

7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788, at 528 (1986) .. 10

*Manual for Complex Litigation* (Fourth) § 21.632 ....................................................... 5

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Lead Plaintiff Hexuan Cai and Named Plaintiffs Kalyan Venkataraman, Kalyanasundaram Venkataraman, Matthew Sacks, and Yifeng Zhu ("Federal Plaintiffs" or "Plaintiffs") respectfully submit this memorandum in support of their Unopposed Motion for Preliminary Approval of the Class Action Settlement.

## I.    INTRODUCTION

Federal Plaintiffs and Jumia Technologies AG ("Jumia" or the "Company"), the Individual Defendants,[1] and the Underwriter Defendants (together with Jumia and the Individual Defendants, "Defendants"), have agreed to settle this Federal Action for $2,000,000.00 by the terms stated in the Stipulation. By this motion, Federal Plaintiffs respectfully request the Court enter an order: (1) preliminarily certifying the Exchange Act Settlement Class[2] for the purposes of settlement; (2) preliminarily approving the terms of the Settlement as set forth in the Stipulation; (3) approving the form and method for providing notice of the Settlement; and (4) scheduling a Federal Final Settlement Approval Hearing ("Settlement Hearing") at which the Court will consider the request for final approval of the proposed Settlement, the Plan of Allocation (the "Plan') of Settlement proceeds, the request for attorneys' fees, expenses and case contribution awards, and entry of the Federal Final Judgment.

The Federal Settlement was achieved only after substantial arm's-length negotiations with the aid of highly regarded mediator, Jed Melnick of JAMS. The immediate cash settlement

---

[1] All capitalized terms used herein have the meanings set forth and defined in the Stipulation of Settlement (the "Stipulation") dated October 9, 2020 and filed contemporaneously herewith.

[2] The "Exchange Act Settlement Class" means all persons or entities (and their beneficiaries) who purchased or otherwise acquired Jumia American Depositary Shares ("ADSs") from April 12, 2019 through and including December 9, 2019, and were damaged thereby." Excluded from the Settlement Class are the Released Defendant Parties, except for any Investment Vehicle as defined in the Stipulation. Also excluded are those Persons who timely and validly request exclusion from the Settlement Class pursuant to the Notice.

1

provides a guaranteed recovery for Exchange Act Settlement Class Members which is a favorable result in light of several obstacles Federal Plaintiffs faced with ongoing litigation including proving liability and damages. Federal Plaintiffs believe that the proposed Federal Settlement is fair, reasonable, and adequate, and is in the Exchange Act Settlement Class Members' best interest. Similarly, the proposed content and manner of providing notice satisfies requirements imposed by Fed. R. Civ. P. 23, the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and due process.

In addition to a proposed resolution of the Federal Action, the parties in the related action, *Convery* v. *Jumia Technologies AG*, *et al*., Index No. 656021/2019 pending in the Supreme Court of New York, New York County ("State Action"), have agreed to resolve claims brought under Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 ("Securities Act") (15 U.S.C. §§ 77(k), (l)(a)(2), (o)) on behalf of Jumia ADS purchasers pursuant and/or traceable to the Registration Statement issued in connection with Jumia's April 12, 2019 initial public stock offering ("IPO") in exchange for $3,000,000.00. The parties to the Federal Action and State Action have reached a global settlement of both actions for total consideration of $5,000,000.00. Approval of the Federal Action Settlement and the State Action Settlement are contingent upon each other, meaning if one of the settlements is not approved, the other settlement will not become Final. In order to promote efficiency, reduce costs, avoid any potential confusion to Settlement Class Members, and to simplify the process for settlement participation, the parties to both the Federal Action Settlement and State Action Settlement have agreed to one Claims Administrator, one joint Long Notice, Proof of Claim and Release Form ("Claim Form"), Summary Notice, and Postcard Notice. There is one Escrow Agent but two separate escrow accounts will be opened to separate the payments to the Settlement Classes.

## II.    SUMMARY OF THE LITIGATION AND THE SETTLEMENT

### A.    Procedural History

#### (i)    The Federal Action

This action commenced on May 14, 2019 with the filing of *Strugala* v. *Jumia Technologies AG*, No. 19-cv-4397 (the "*Strugala* Action") in the U.S. District Court for the Southern District of New York ("Federal Court"), asserting putative class action claims against Defendants Jumia and Messrs. Hodara, Poignonnec, and Maillet-Mezeray under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") (Dkt. No. 1). On May 28, 2019, *Zhi* v. *Jumia Technologies AG*, No. 19-cv-4952 (the "*Zhi* Action") was filed in the Federal Court, asserting putative class action claims against Defendants Jumia and Messrs. Hodara, Poignonnec, and Maillet-Mezeray under Sections 10(b) and 20(a) of the Exchange Act.

On October 29, 2019, the Federal Court: (i) consolidated the *Strugala* Action and the *Zhi* Action for all purposes and captioned the consolidated action *In re Jumia Technologies AG Securities Litigation*, No. 19-cv-4397 (S.D.N.Y.); (ii) appointed Hexuan Cai as Federal Lead Plaintiff and Kalyan and Kalyanasundaram Venkataraman as named plaintiffs; (iii) appointed The Rosen Law Firm, P.A. and Pomerantz LLP as Federal Lead Counsel; and (iv) set a schedule for the filing of a consolidated amended complaint in the Federal Action. (Dkt. No. 57).

On December 30, 2019, the Federal Plaintiffs filed an amended complaint asserting claims against Defendants Jumia, Messrs. Hodara, Poignonnec, Maillet-Mezeray, Bogaert, Igoudala, Judja-Sato, Klein, Ndiaye, Odgers, and Rittenhouse, Ms. Kaya Mwanza, and the Underwriter Defendants under Sections 10(b) and 20(a) of the Exchange Act and Sections 11 and 15 of the Securities Act. (Dkt. No. 62).

On February 14, 2020, Defendants filed pre-motion letters to explain the grounds of their anticipated motion to dismiss. (Dkt. Nos. 70-71). Federal Plaintiffs filed their responsive letter on

February 28, 2020. (Dkt. No. 84). In their letter, Federal Plaintiffs requested they be able to amend their complaint which the Court granted. (Dkt. No. 85).

On March 13, 2020, Federal Plaintiffs filed the operative Second Amended Securities Class Action Complaint asserting claims against Defendants Jumia, the Individual Defendants, and the Underwriter Defendants under Sections 10(b) and 20(a) of the Exchange Act and Sections 11 and 15 of the Securities Act (the "Second Amended Complaint"). On June 1, 2020, Defendants filed a motion to dismiss the Second Amended Complaint. (Dkt. Nos. 99, 103). Plaintiffs filed an opposition to Defendants' motion to dismiss on July 31, 2020. (Dkt. No. 104).

### (ii)   The State Action

The State Action, commenced on October 15, 2019, is a putative class action asserting claims on behalf of purchasers of the Jumia's ADSs pursuant and/or traceable to the Registration Statement issued in connection with Jumia's April 12, 2019 IPO offering 15.525 million ADSs (including exercise of over-allotment option) at $14.50 per share, seeking to pursue remedies under Sections 11 and 15 of the Securities Act.

On January 22, 2020, Jumia, certain of the Individual Defendants, and the Underwriter Defendants filed a motion to stay all proceedings in the State Action pending adjudication of the Federal Action, which was fully briefed on February 6, 2020. On January 27, 2020, State Plaintiff filed an amended complaint adding a claim under Section 12(a)(2) of the Securities Act and claims against Defendants Puglisi and Ernst & Young, Société Anonyme. On February 13, 2020, the State Court held oral argument on the motion to stay and on August 10, 2020, denied the motion to stay and ordered State Defendants to answer or otherwise respond to the complaint.

### B.    Settlement Negotiations

On May 12, 2020, Federal Plaintiffs, State Plaintiff, Jumia, and the Individual Defendants engaged in a mediation via videoconference before Jed Melnick. Prior to the mediation, the participating parties exchanged detailed mediation statements. As a settlement was not reached at this mediation session, Defendants proceeded with the filing of the motion to dismiss in the Federal Action. Despite continued litigation, the parties continued their arm's-length negotiations through the Mediator. Eventually, on August 11, 2020, Federal Plaintiffs, State Plaintiff, Jumia, and the Individual Defendants agreed to a settlement of the Federal Action and the State Action on terms that included total settlement consideration of $5,000,000.00, with $2,000,000.00 to be allocated to the Federal Action and $3,000,000.00 to be allocated to the State Action. The proposed settlement terms were memorialized in a term sheet executed on August 11, 2020 by Jumia, the Individual Defendants, Federal Plaintiffs, and State Plaintiff. The approval of the settlements in the Federal Action and the State Action are contingent upon each other.

### III.    THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

In preliminarily approving the proposed Settlement, this Court must consider whether to certify the Settlement Class settlement under Rules 23(a) and (b)(3). *Amchem Products, Inc., v. Windsor*, 521 U.S. 591, 620 (1997) (trial court may disregard management issues in certifying a settlement class, but the proposed class must still satisfy the other requirements of Rule 23). The Second Circuit has long acknowledged the propriety of certifying a class solely for settlement purposes. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982). Before granting preliminary approval of a class action settlement, however, the Court should determine that the proposed settlement class is a proper class for settlement purposes. *Amchem,* 521 U.S. at 620; *Manual for Complex Litigation* (Fourth) § 21.632.  To certify a class, the Court must determine whether four

threshold requirements of Rule 23(a) are met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Amchem*, 521 U.S. at 613. Additionally, the action must be maintainable under Rule 23(b). *Id.* at 614. In certifying the Exchange Act Settlement Class, however, the Court is not required to determine whether the action, if tried, would present intractable management problems, "for the proposal is that there be no trial." *Id.* at 620; *see also* Fed. R. Civ. P. 23(b)(3)(D). Further, at this point, the Court need not conduct a rigorous analysis to determine whether to certify a settlement class, but should reserve this analysis for the final approval hearing. *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 86 (E.D.N.Y. 2007). Here, the proposed Exchange Act Settlement Class meets the requirements of and satisfies Rule 23(a) and 23(b)(3).

### A.    Numerosity

Rule 23(a)(1) requires a class be so large that joinder of all members is "impracticable." Fed. R. Civ. P. 23(a)(1). For purposes of Rule 23(a)(1), "[i]mpracticable does not mean impossible," *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993), and Plaintiffs must only show "that the difficulty or inconvenience of joining all members of the class make the use of the class action appropriate." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007). Indeed, "numerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *see also In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 83 (S.D.N.Y. 2007), *aff'd sub nom. In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016) ("Precise quantification of the class members is not necessary because a court may make common sense assumptions regarding numerosity"). Although the exact size of the Settlement Class is not yet known, the numerosity requirement is generally satisfied in a securities class action as "a large number of shares were outstanding and traded during the relevant period." *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010); *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 2007 WL 2230177, *12 (S.D.N.Y.

6

July 27, 2007) (numerosity requirement is generally met in cases involving nationally traded securities.).

Here, there are likely hundreds, if not thousands of potential Class Members as Jumia's ADSs were publicly traded on the New York Stock Exchange with over 294 million shares purchased during the Exchange Act Class Period. Thus, the numerosity requirement is met.

### B. Commonality

Commonality requires that "questions of law or fact [are] common to the class." *EVCI*, 2007 WL 2230177, at *13. Securities class actions are particularly well-suited to class treatment as the commonality requirement "is applied permissively." *Id*; *see also Vivendi*, 242 F.R.D. 84. Commonality does not mean that all class members must make identical claims and arguments, but only that "named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 451 (S.D.N.Y. 2004). The common issue must be of such a nature that it is "capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) (*quoting Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011)). Commonality is satisfied if the plaintiffs charge defendants with a common course of misconduct – particularly where, as here, the alleged misrepresentations appeared in the company's public filings and statements. *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 341 (S.D.N.Y. 2015).

Here, commonality is met due to common questions of law and fact pertaining to whether false statements of material fact were made in Jumia's SEC filings and public statements, whether the statements were made with scienter, and what is the measure of damages.

7

### C.    Typicality

Rule 23(a)(3) requires that the representative's claim be typical of those of the class members. Typicality requires that "the claims of the named plaintiffs arise from the same practice or course of conduct that gives rise to the claims of the proposed class members." *Marisol A. by Forbes v. Giuliani*, 929 F. Supp. 662, 691 (S.D.N.Y. 1996), *aff'd sub nom. Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997). "Typical," however, does not mean identical. *EVCI*, 2007 WL 2230177, at *13.; *Vivendi*, 242 F.R.D. at 85 ("In prosecuting their case, plaintiffs will necessarily seek to develop facts relating to the … dissemination of allegedly false or misleading statements underlying their claims. Such allegations are generally considered sufficient to satisfy the typicality requirement"). Particular factual differences, differences in the amount of damages claimed, or even the availability of certain defenses against a class representative may not render his or her claims atypical. *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990).

Federal Plaintiffs are the proposed class representatives. As was the case with all other members of the proposed Settlement Class during the Settlement Class Period, Federal Plaintiffs purchased Jumia ADSs during the Exchange Act Class Period, based on Defendants' allegedly materially false and misleading statements. The typicality requirement is met.

### D.    Adequacy

Rule 23(a)(4) requires that the representative parties fairly and adequately protect the interests of the class. This requirement has traditionally entailed a two-pronged inquiry: first, the showing that the interests of the representative parties will not conflict with the interests of Settlement Class Members, and second, the representative parties' counsel is qualified, experienced, and able to conduct the proposed litigation vigorously. *EVCI*, 2007 WL 2230177, at *13. Plaintiffs are adequate if their interests do not conflict with those of the class. *In re Marsh &*

*McLennan Companies, Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM), 2009 WL 5178546, at *10 (S.D.N.Y. Dec. 23, 2009). Pursuant to Rule 23(g), adequacy of proposed class counsel is now considered separately from the determination of the adequacy of the proposed class representatives. In any event, both prongs of the adequacy requirement are satisfied here.

### (i)      Adequacy of the Proposed Class Representatives

Federal Plaintiffs do not have interests antagonistic to those of the proposed Settlement Class Members. The proposed class representatives purchased Jumia ADSs during the Exchange Act Settlement Class Period and were damaged thereby. The proposed class representatives are seeking, on their own behalf and on behalf of all members, to recover from Defendants damages caused by Defendants' alleged unlawful conduct. The representatives' interests are congruent with other Exchange Act Settlement Class Members' interests. Thus, Federal Plaintiffs should be deemed Federal Class Representatives.

### (ii)      Rule 23(g) Adequacy of the Proposed Class Counsel

Rule 23(g) requires a court to assess the adequacy of proposed class counsel. To that end, the court must consider the following: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. *Fogarazzao v. Lehman Bros.*, 232 F.R.D. 176, 182 (S.D.N.Y. 2005).

Federal Lead Counsel are experienced in prosecuting class actions having successfully prosecuted securities class actions in the Federal Court and throughout the country. Courts have consistently found Federal Lead Counsel, The Rosen Law Firm, P.A. and Pomerantz LLP, to be well suited as class counsel in securities class actions. Federal Lead Counsel's firm resumes were submitted to the Court as Dkt. Nos. 22-5 and 33-4. Both firms utilized their skills and resources to

reach this proposed Settlement. The Settlement was reached after Federal Lead Counsel investigated and drafted several pleadings including the highly detailed Second Amended Complaint. Counsel spent considerable time on this action for the benefit of Jumia shareholders including: conducting a thorough investigation including retaining a private investigator and experts; opposing Defendants' pre-motion letter and Defendants' motion to dismiss; and prepared for and participated in the mediation and settlement discussions including drafting a mediation statement. Federal Lead Counsel's significant securities class action experience make them knowledgeable and capable of evaluating cases to determine when a settlement is beneficial to investors, or when the prudent course would be to continue litigation. Thus, Federal Lead Counsel should be appointed as Federal Class Counsel for the Settlement Class.

> **E.     Common Questions Predominate and the Class Is Superior to Other Methods of Adjudication**

After meeting the threshold requirements of Rule 23(a), a plaintiff must establish that the proposed class meets the requirements of Rule 23(b)(3). To certify a class under Rule 23(b)(3), the Court must find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Federal Plaintiffs satisfy the predominance and superiority criteria.

"The focus of the predominance inquiry is on defendants' liability, not on damages." *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 125 (S.D.N.Y. 2011). When common questions are a significant aspect of a case and they can be resolved in a single action, class certification is appropriate. *See* 7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788, at 528 (1986). "Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class." *Ackerman v. Coca-Cola Co.*, No. 09 CV 395 DLI RML, 2013 WL 7044866,

10

at *18 (E.D.N.Y. July 18, 2013). Here, the existence of common questions predominates over individual issues, exemplified by the fact that if each class member were to bring an individual action, each would be required to demonstrate the same misrepresentations and/or omissions to prove liability. Thus, this case illustrates the principle that the predominance requirement is "readily met" in many securities fraud class actions. *Amchem*, 521 U.S. at 625.

> Pursuant to Fed. R. Civ. P. 23(b)(3), the factors relevant to a finding of superiority include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Many, if not most, of the Exchange Act Settlement Class Members are individuals for whom prosecution of a costly damages action on their own behalf does not provide a realistic or efficient alternative. The Federal Court is an appropriate forum because pursuant to 15 U.S.C. §78aa, Jumia may be properly sued in any district court in the United States; moreover, Jumia's ADSs trade on NYSE which is located in this district, and the Underwriter Defendants have offices within this district. Additionally, as to Rule 23(b)(3)(D), Federal Plaintiffs believe no difficulties will be encountered in the management of this class action and Settlement.

This Court should balance the merits of certifying a class against other possible methods of adjudication. Without class actions, investors who have been defrauded by securities law violations, but whose losses do not run into several millions of dollars, would likely have no practical recourse. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("most of the plaintiffs would have no realistic day in court if a class action were not available"). The "class action is uniquely suited to resolving securities claims," because "the prohibitive cost of instituting individual actions" in such cases gives class members "limited interest in individually controlling the prosecution or defense of separate actions." *Marsh & McLennan*, 2009 WL 5178546, at *12.

11

*See also Amchem*, 521 U.S. at 617 ("While the text of Rule 23(b)(3) does not exclude from certification cases in which individual damages run high, the Advisory Committee had dominantly in mind vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'"). And if individuals *do* have the means to litigate their own case, absent a class action, this Court would have to try many lawsuits.

As set forth above, a class action is the superior method of adjudication and satisfies the requirements of Rule 23(b)(3). Solely for the purposes of settlement, Defendants do not dispute that the Settlement Class should be certified in accordance with Rule 23(b)(3). As such, the Court should conditionally certify the Settlement Class for settlement purposes.

## IV.    PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS APPROPRIATE

### A.    Standards for Preliminary Approval

The law favors settlement, particularly in class actions and other complex cases because they tie up substantial judicial resources, use up the parties' time and money, and, in such cases, litigation resolution is usually significantly delayed. *Palacio v. E\*TRADE Fin. Corp.*, No. 10 Civ. 4030 (LAP) (DCF), 2012 U.S. WL 2384419, at \*7 (S.D.N.Y. June 22, 2012) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)); *see also Spann v. AOL Time Warner Inc.*, No. 02 CIV. 8238DLC, 2005 WL 1330937, at \*6 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions"); *Newberg on Class Actions* (4th ed. 2002) § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). Due to the presumption in favor of settlement, and "[a]bsent fraud or collusion," courts "should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *EVCI*, 2007 WL 2230177, at \*12. When reviewing a proposed class

12

settlement, courts should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981).

Where, as here, the parties propose to resolve class action litigation through a class-wide settlement, they must request and obtain the Court's approval. Fed. R. Civ. P. 23(e). Pursuant to Rule 23(e)(1), as recently amended, the issue at preliminary approval turns on whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Rule 23(e)(2) provides:

> (2)    ***Approval of the Proposal.*** If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> > (A)    the class representatives and class counsel have adequately represented the class;
> >
> > (B)    the proposal was negotiated at arm's length;
> >
> > (C)    the relief provided for the class is adequate, taking into account:
> >
> > > (i)    the costs, risks, and delay of trial and appeal;
> > >
> > > (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > >
> > > (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and
> > >
> > > (iv)    any agreement required to be identified under Rule 23(e)(3); and
> >
> > (D)    the proposal treats class members equitably relative to each other.

**B.    Federal Plaintiffs and Their Counsel Have Adequately Represented the Class**

Federal Plaintiffs have diligently prosecuted this Action on the Settlement Class's behalf, including by thoroughly investigating the facts to draft several pleadings including the Second Amended Complaint, filing an opposition to Defendants' motion to dismiss, and negotiating a favorable settlement that provides recovery to Exchange Act Class Members.

**C.    The Proposed Settlement Is the Result of Good Faith Arm's-Length Negotiations by Informed, Experienced Counsel Who Were Aware of the Risks of the Litigation**

The Rule 23(e)(2)(B) factor is a procedural one – whether "the proposal was negotiated at arm's length." Courts initially presume that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations. *Wal-Mart Stores, Inc.*, 396 F.3d at 116; *Leung v. Home Boy Rest. Inc.*, No. 07CIV8779RJSDFE, 2009 WL 398861, at *1 (S.D.N.Y. Feb. 18, 2009) (preliminary approval is appropriate where "the proposed settlement appears to be the product of extensive, arms-length negotiations conducted by experienced counsel with input from the parties …"). Further, a mediator's involvement in settlement negotiations supports a presumption of fairness. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re Indep. Energy Holdings PLC*, 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) ("the fact that the Settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable.").

Federal Plaintiffs were armed with sufficient information to evaluate the Settlement's benefits and drawbacks. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("[I]n the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement.") (internal quotations omitted). Informal information sharing is especially appropriate where an action is stayed pursuant to the PSLRA's discovery stay. *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007).

On May 12, 2020, the participating parties attended a virtual mediation with Jed Melnick of JAMS. In advance of that session, mediation statements were exchanged addressing liability

and damages. During the mediation session, the participating parties argued the merits of Federal Plaintiffs' claims and the defenses thereto. The session ended without an agreement, but over the next several months, Mr. Melnick facilitated further discussions and a settlement was reached on August 11, 2020. The negotiations were at all times hard-fought and at arm's length, and have produced a result that the parties believe to be in their respective best interests. The arm's-length nature of the negotiations and Mr. Melnick's involvement support the conclusion that the Settlement is fair and was achieved free of collusion. *See In re China Med. Corp. Sec. Litig.*, No. 8:11-1061 JLS (ANX), 2014 WL 12581781, at \*4 (C.D. Cal. Jan. 7, 2014) (finding settlement reached as a result of mediation before Mr. Melnick weighs in favor of approval). Accordingly, Federal Plaintiffs believe that the Settlement should be preliminarily approved.

**D.      The Relief Provided to the Class Is Adequate**

**(i)      The Substantial Benefits for the Class, Weighted Against the Costs, Risks and Delay of Trial and Appeal Support Preliminary Approval**

The principal factors in evaluating the fairness of a proposed settlement in the Second Circuit, set out in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), are:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

In weighing these factors, courts recognize that settlements require significant compromise between negotiating parties. Courts do not attempt to rewrite settlement agreements or try to resolve issues that are left undecided as a result of the parties' compromise. *See, e.g., In re Warner Commc'ns Sec. Litig.*, 798 F.2d 35, 37 (2d Cir. 1986) ("It is not a district judge's job to dictate the terms of a class settlement."). It is not possible to evaluate the second factor, the

15

reaction of the class to the settlement, at this time as notice of the Settlement has not yet been disseminated. Federal Plaintiffs, however, support the Settlement.

### a)  The Complexity, Expense, and Likely Duration of the Litigation

Courts generally recognize that securities class actions are complex and expensive. *In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468, at *4 (S.D.N.Y. July 21, 2020) ("Courts recognize that '[s]ecurities class actions are generally complex and expensive to prosecute.'"); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 424 (S.D.N.Y. 2001) ("most securities fraud cases, are complex and challenging as regards both liability and damage.").

The Settlement provides a guaranteed, immediate recovery to Jumia investors. If the Settlement were not reached, the parties would have to incur substantial costs and engage in prolonged litigation through a decision on the motion to dismiss, class certification, summary judgment, trial and if applicable, subsequent appeals. Discovery costs, including document production and hosting fees as well as experts, including for class certification, expert reports, and expert testimony would be significant and could be in the several hundred thousand dollar range for Plaintiffs. Reaching this Settlement now not only guarantees recovery for the Exchange Act Settlement Class, but also reduces overall litigation expenses.

Moreover, in addition to being complex due to its nature of being a securities class action, the fact that many defendants and witnesses are foreign adds another layer of complexity and creates substantial obstacles for discovery. Jumia is a German company with substantial operations throughout Africa and several defendants residing in the United Arab Emirates. Having foreign defendants and witnesses complicates litigation. To take substantially all depositions, Federal Plaintiffs would have to follow appropriate international conventions and/or apply to this Court

16

for Letters Rogatory. "Courts in the Second Circuit have widely recognized that obtaining evidence through the Hague Convention and letters rogatory are cumbersome and inefficient, and hardly make litigation in the United States convenient." *Rabbi Jacob Joseph Sch. v. Allied Irish Banks, P.L.C.*, No. 11-CV-05801 DLI VVP, 2012 WL 3746220, at \*7 (E.D.N.Y. Aug. 27, 2012). There is no guarantee that Federal Plaintiffs would have been able to obtain the necessary evidence to prove their case through discovery; and even if they could do so, it would be costly, take years, and delay any potential recovery to Exchange Act Class Members. Moreover, documents produced will likely be in foreign languages which would require translation or the retention of multilingual attorneys to facilitate document review. Thus, the complexity, expense, and likely duration of these proceedings favor approval of the Settlement.

### b)      The Stage of the Proceedings and the Amount of Discovery Completed

As discussed above, Federal Plaintiffs were able to conduct a thorough and informed investigation. Although formal discovery was stayed pursuant to the PSLRA, by thoroughly investigating the case and working with their experts, Federal Plaintiffs had the information they needed to evaluate the Settlement. *Am. Bank Note*, 127 F. Supp. 2d at 425-426 ("To approve a proposed settlement . . . the Court need not find that the parties have engaged in extensive discovery.  Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make . . . an appraisal of the Settlement.") (quotation marks and citations omitted).

### c)      The Risk of Establishing Liability and Damages

There were substantial risks in this Action and further prosecution may have yielded limited or no recovery. Although Plaintiffs believe they would be successful defeating the motion to dismiss, this was no guarantee as Defendants have raised questions particularly as to falsity,

17

scienter, and loss causation. If successful, Plaintiffs would have to navigate the letters rogatory process and/or abide by international protocols to obtain enough proof to survive summary judgment. Even more, Plaintiffs would encounter significant loss causation defenses and would have had to disaggregate the portion of the alleged price declines that arose from the disclosures that corrected the fraud Plaintiffs alleged from those that pertained to other information and confounding factors disclosed on those dates. *See*, *e.g.*, *Police & Fire Ret. Sys. v. Safenet, Inc.*, 645 F. Supp. 2d 210, 228-29 (S.D.N.Y. 2009) (dismissing claims based on stock drop following press release for failure to "explain why the disclosure on page 8 – as opposed to all other information in the extended 12 page release – caused the price decline"). If they survived summary judgment, Plaintiffs would then have to establish each element of their claims and damages to a jury's satisfaction. If they won at trial, Plaintiffs would have to survive Defendants' inevitable appeals. Through this entire period, every hour Defendants' attorneys worked would diminish the funds available to fund a settlement or pay a judgment. The Settlement avoids these genuine risks.

### d)    The Risks of Maintaining the Class Action Through Trial

For class certification, Federal Plaintiffs must show that common issues predominate over individual issues. To do so, Plaintiffs must show that Jumia's ADSs traded on an efficient market, entitling purchasers to the presumption of reliance on Defendants' allegedly materially false statements. Defendants would have been permitted to rebut the presumption by showing that the false statements did not have an impact on Jumia's stock price. *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 281 (2014). Since Plaintiffs alleged several multi-day stock drops, it is likely Defendants will argue that this cuts against an efficient market. Even if Plaintiffs were able to certify a class, there is no guarantee that a class would remain certified through trial as the Court may re-evaluate the appropriateness of class certification at any time. Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final

18

judgment."); *Glob. Crossing*, 225 F.R.D. at 460 ("[E]ven if plaintiffs could obtain class certification, there could be a risk of decertification at a later stage."). Here, "the uncertainty surrounding class certification supports approval of the Settlement." *Marsh & McLennan*, 2009 WL 5178546, at *6. The Settlement avoids the uncertainty with respect to the maintaining certification and, thus, supports approval of the Settlement.

> e)  **The Ability of Settling Defendants to Withstand a Greater Judgment and the Reasonableness of the Settlement Fund**

In securities class actions, Federal Plaintiffs primarily look to the company defendant for settlement funds. And while Jumia's insurer is contributing to the Federal Settlement Amount, the insurance proceeds diminish as they pay Jumia's attorneys' fees. Defendants are not only defending this action, but the State Action as well. Despite limitations on Defendants' resources, the Stipulation provides a Settlement of $2 million to be paid into the Federal Settlement Fund. Taking an aggressive damages analysis, damages are estimated to be $258 million. As compared to this range of damages, the Settlement represents a good result, returning almost 0.77% to investors. *Grinnell*, 495 F.2d at 455 n.2 ("[T]here is no reason . . . why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) ("It is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair."); *Cagan v. Anchor Sav. Bank FSB,* No. 88 Civ. 3024, 1990 WL 73423, at *12–13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million."). When there are problems facing a case, and here proving liability and damages was no easy feat, "any amount could be deemed reasonable." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 580 (S.D.N.Y. 2008). Moreover, when this Settlement is combined with the Settlement in the

State Action, the recovery is even better, returning almost 1.94% to investors. The Settlement

Amounts is reasonable as Cornerstone Research found that for cases with damages estimated

between $250 million and $499 million, between 2010 and 2018, the median recovery was 3.9%

and for 2019 was 4.8%.[3] As such, the Federal Settlement falls well within the range of possible

approval.

### (ii)    The Proposed Method for Distributing Relief Is Effective

As demonstrated below at 22-25, the method of the proposed notice and claims

administration process are effective. The claims process includes a standard claim form that

requests the information necessary to calculate a claimant's claim amount pursuant to the Plan. The

Plan governs how Exchange Act Class Members' claims will be calculated and, ultimately, how

money will be distributed to Federal Authorized Claimants. The Plan was prepared with the

assistance of Federal Plaintiffs' damages consultant.

### (iii)    Attorneys' Fees, Reimbursement of Expenses, and Award to Federal Plaintiffs

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees,

including timing of payment." Federal Lead Counsel intends to seek an award of attorneys' fees

of no more than one third of the Settlement Amount, and recover litigation expenses in an amount

not to exceed $125,000. This fee request is in line with other settlements approved in recent cases.

"For example, it is very common to see 33% contingency fees in cases with funds of less than

$10 million, and 30% contingency fees in cases with funds between $10 million and $50 million."

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445

(E.D.N.Y. 2014). Further, as explained in the proposed notice, Federal Plaintiffs intend to request

---

[3] Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements – 2019 Review and Analysis;* Available at https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2019-Review-and-Analysis. (Last viewed October 9, 2020).

an amount not to exceed $2,500 each, or $12,500 in total, pursuant to 15 U.S.C. §78u-4(a)(4) in connection with their representation of the Settlement Class.

### (iv) The Parties Have Agreed to a Side Agreement Regarding Opt-Outs

Rule 23(e)(2)(C)(iv) requires the disclosure of any side agreement. The Federal Parties have agreed to a standard supplemental agreement which provides that if Exchange Act Settlement Class Members opt out of the Settlement such that the number of shares of Jumia ADSs represented by such opt outs equals or exceeds a certain amount, Jumia shall have the option to terminate the Settlement. Stipulation ¶7.4. As is standard practice in securities class actions, while the supplemental agreement is identified in the Stipulation (*id.*), the terms are confidential to avoid creating incentives for a small group of class members to opt out solely to leverage the threshold to exact an individual settlement. *See Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018) ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair."); *Thomas v. MagnaChip Semiconductor Corp.*, No. 14-CV-01160-JST, 2017 WL 4750628, at *5 (N.D. Cal. Oct. 20, 2017) (same).

### E. There Was No Preferential Treatment; The Plan Is Designed to Treat Class Members Equitably

A plan of allocation will be preliminarily approved if the proposed plan has a "reasonable, rational basis." *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 158 (S.D.N.Y. 2013). The Plan is fair, reasonable and adequate because it does not treat Federal Plaintiffs or any other Exchange Act Class Member preferentially. *In re Tremont Sec. Law, State Law & Ins. Litig.*, No. 08-CV-11117, 2015 WL 5333494, at *6 (S.D.N.Y. Sept. 14, 2015), *aff'd in part, vacated in part,* 699 F. App'x 8 (2d Cir. 2017). The Plan, set out in the Long Notice, attached as Exhibit A-1 to the Stipulation, explains how the Settlement proceeds will be distributed among Federal Authorized

21

Claimants. The Plan provides that each Exchange Act Class Member will receive the same per-share amount. Federal Plaintiffs and all other Class Members will receive their payment pursuant to the same formula.

**V.     THE PROPOSED FORMS AND METHOD OF PROVIDING NOTICE TO THE CLASS ARE APPROPRIATE AND SATISFY FED. R. CIV. P. 23, THE PSLRA, AND DUE PROCESS**

Class notice of a settlement must meet the requirements of Rules 23(c)(2) and 23(e), the PSLRA, and due process. Under Rule 23(c)(2), the Court "must direct to class members the best notice that is practicable under the circumstances." *Vargas v. Capital One Fin. Advisors*, 559 F. App'x 22, 26 (2d Cir. 2014). In addition to how delivered, the notice "must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings," including the opportunity to opt out of or object to the settlement. *Id.* at 27; *Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 7961 CM, 2014 WL 1224666, at *17 (S.D.N.Y. Mar. 24, 2014) ("Rule 23(e) requires notice that is 'reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections.'"). The PSLRA and the Due Process Clause of the United States Constitution impose similar requirements. *See* 15 U.S.C. § 78u-4(a)(7); *Consol. Edison, Inc. v. Ne. Utilities*, 332 F. Supp. 2d 639, 652 (S.D.N.Y. 2004) ("Due process requires that the notice to class members fairly apprise the . . . members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings.") (internal citations omitted).

The proposed Notice provides detailed information concerning: (a) the rights of Exchange Act Settlement Class Members, including the manner in which objections can be lodged; (b) the nature, history, and progress of the litigation; (c) the proposed Settlement; (d) how to file a Claim Form; (e) a description of the Plan; (f) the fees and expenses to be sought by Federal Lead Counsel;

22

and (g) the necessary information to examine Court records. The Notice also sets forth instructions to securities brokers and other nominee holders for forwarding the Notice to those persons for whom the nominees held shares in a "street name." The proposed Notice closely tracks a model notice published by the Federal Judicial Center.[4]

The proposed Notice also informs Settlement Class Members how to request exclusion from the Settlement and clearly states that all those who do not exclude themselves will be bound by the Settlement and Federal Final Judgment. Furthermore, the PSLRA-mandated disclosures are satisfied as the Notice: (1) states the amount of the Settlement on both an aggregate and average per share basis; (2) provides a brief statement explaining the reasons why the Parties are proposing the Settlement; (3) states the amount of attorneys' fees and maximum amount of litigation expenses (both on an aggregate and average per share basis) that counsel will seek; and (4) provides the contact information for Claims Administrator[5] and Federal Lead Counsel to answer questions from Settlement Class Members. 15 U.S.C. § 78u-4(a)(7).

The proposed Federal Preliminary Approval Order mandates that Federal Lead Counsel provide Class Members notice of the Settlement by either: (a) emailing the Summary Notice to Settlement Class Members for whom the Claims Administrator is able to obtain email addresses[6]

---

[4] *Compare* Ex. A-1, *with* Federal Judicial Center, *Securities Class Action Certificate and Settlement: Full Notice*. Available at https://www.fjc.gov/sites/default/files/2016/ClaAct13.pdf.

[5] Plaintiffs request Strategic Claims Services ("SCS") be appointed the Claims Administrator. Federal Lead Counsel and State Plaintiffs' Counsel requested proposals to several claims administration companies for the administration of the Settlements. After reviewing responses, counsel decided to retain SCS due to its substantial experience and cost of its proposal.

[6] Pursuant to Fed. R. Civ. P. 23(c)(2)(B), amended in December 2018, notice may be disseminated by "electronic means." According to the Committee Notes, email is an electronic method of notice. Providing electronic notice to class members by email, if obtained, will reduce administration costs and ultimately benefit the class. Similar electronic notice is permitted in securities class action settlements. *See Zubrinski, et al., v. BioAmber Inc., et. al.,* Case No. 2:17-cv-01531 (E.D.N.Y.) (Dkt. No. 59); *In re Silver Wheaton Corp. Sec. Litig.*, Case No. 2:15-cv-05146 (C.D. Cal.) (Dkt. No. 487); *In re Akers Biosciences, Inc., Sec. Litig.,* Case No. 18-cv-10521 (D.N.J.) (Dkt. No. 40),

23

or (b) mailing the Postcard Notice, if an email address cannot be obtained, by first class mail to Exchange Act Settlement Class Members who can be identified with reasonable effort. Also after entry of Federal Preliminary Approval Order, the Stipulation and its exhibits, the Federal Preliminary Approval Order, and the Long Notice and Claim Form will be posted on the Claims Administrator's website. Additionally, Summary Notice will be published electronically once over a newswire and in print once in the *Investor's Business Daily*.

The proposed Notice and its dissemination are "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). "The use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 (S.D.N.Y. 2014) (citations omitted); *Baker v. SeaWorld Entm't, Inc.*, No. 14CV2129-MMA (AGS), 2020 WL 818893, at *2-*3 (S.D. Cal. Feb. 19, 2020) (approving postcard notice and similar proposed notice program including website); *see also Graham v. Capital One Bank (USA), N.A.*, No. SACV13743JLSJPRX, 2014 WL 12579809, at *2 (C.D. Cal. July 29, 2014); *In re ForceField Energy Inc. Sec. Litig.*, Case No. 1:15-cv-3020-NRB (S.D.N.Y.) (Dkt. No. 243); *Allen, et al., v. PixarBio Corp., et al.,* Case No. 2:17-cv-00496 (D.N.J.) (Dkt. No. 135); *In re Silver Wheaton Corp. Sec. Litig.*, Case No. 2:15-cv-05146 (C.D. Cal.) (Dkt. No. 487); and *In re Tangoe, Inc., Sec. Litig.*, Case No. 3:17-cv-00146 (D. Ct.) (Dkt. No. 64).

The form and manner of providing notice to Settlement Class Members are the best practicable under the circumstance and satisfy the requirements of due process, Rule 23, and the PSLRA, 15 U.S.C. § 78u-4(a)(7).

---

*Allen, et al., v. PixarBio Corp., et al.,* Case No. 2:17-cv-00496) (D.N.J.) (Dkt. No. 135), and *In re USA Technologies, Inc. Sec. Litig.*, Case No. 1:19-cv-04565 (E.D. Pa.) (Dkt. No. 88).

## VI.   PROPOSED SCHEDULE OF EVENTS

Plaintiffs propose the following schedule as set forth in the Federal Preliminary Approval Order, paragraphs of which are referenced in the chart. This schedule is similar to those used in numerous class action settlements:

| Event | Deadline for Compliance |
|---|---|
| Emailing Summary Notice and/or mailing Postcard Notice; Creating website with Stipulation, Long Notice, and Claim Form. | No later than 21 calendar days after the entry of the Federal Preliminary Approval Order or the State Preliminary Approval Order, whichever is later. (¶10(a), (c)) |
| Publication of the Summary Notice. | No later than 30 calendar days after entry of Federal Preliminary Approval Order or State Preliminary Approval Order, whichever is later. ¶10(b).) |
| Date for Plaintiffs to file papers in support of the Settlement, the Plan, and for application of attorneys' fees and expenses. | No later than 28 calendar days prior to the Settlement Hearing. (¶31) |
| Submission deadline for requests for exclusion. | No later than 21 calendar days prior to the earlier of the Settlement Hearing and the State Final Settlement Approval Hearing. (¶17) |
| Submission deadline for objections. | No later than 21 calendar days prior to the Federal Final Settlement Approval Hearing. (¶21) |
| Submission deadline for Claim Forms. | 90 calendar days from the Notice Date. (¶13) |
| Date for Plaintiffs to file reply papers in support of the Settlement, the Plan, and for application of attorneys' fees and expenses. | 7 calendar days prior to the Federal Final Settlement Approval Hearing. (¶31) |
| Dated for Federal Final Settlement Approval Hearing | At least 100 calendar days after the Notice is disseminated. |

## VII.   CONCLUSION

For the above-stated reasons, Plaintiffs request that the Court: (1) preliminarily certify the Class for the purposes of Settlement; (2) preliminarily approve the Settlement as set forth in the Stipulation; (3) approve the form and manner of notice; and (4) set a Settlement Hearing.

Dated: October 9, 2020                                          Respectfully submitted,

                                                                                THE ROSEN LAW FIRM, P.A.
                                                                                By: /s/ *Phillip Kim*
                                                                                Phillip Kim

25

Laurence M. Rosen
Brian Alexander
275 Madison Ave., 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com

Email: lrosen@rosenlegal.com
Email: balexander@rosenlegal.com

**POMERANTZ LLP**
Jeremy A. Lieberman
Brenda Szydlo
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
Email: jalieberman@pomlaw.com
Email: bszydlo@pomlaw.com

*Federal Lead Counsel for Federal Plaintiffs and the
Exchange Act Settlement Class*

26

27

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2020, a true and correct copy of the foregoing document

was served by CM/ECF to the parties registered to the Court's CM/ECF system.


By: */s/ Phillip Kim*
Phillip Kim