**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

IN RE JUMIA TECHNOLOGIES AG
SECURITIES LITIGATION,

Master File No. 1:19-cv-04397-PKC

---

**MEMORANDUM OF LAW IN SUPPORT OF FEDERAL PLAINTIFFS' MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND PLAN OF ALLOCATION**

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen
Phillip Kim
Brian Alexander
275 Madison Ave., 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com
Email: balexander@rosenlegal.com

**POMERANTZ LLP**
Jeremy A. Lieberman
Brenda Szydlo
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
Email: jalieberman@pomlaw.com
Email: bszydlo@pomlaw.com

*Federal Class Counsel for Federal Plaintiffs
and the Exchange Act Settlement Class*

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................1

II.  THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL ...................................3

    A.  The Settlement is Entitled to a Presumption of Fairness Because it is the Product of Arm's-Length Negotiations Among Experienced Counsel...............................4

    B.  The Settlement is Substantively Fair, Reasonable and Adequate Under the *Grinnell* Factors .................................................................................................6

        1.  Continued Litigation Would be Complex, Expensive, and Protracted........7

        2.  The Lack of Objections and/or Opt-Outs Support Final Approval..............9

        3.  Federal Plaintiffs had Sufficient Information to Make Informed Decisions About Settling this Case....................................................................................12

        4.  Federal Plaintiffs Faced Risks in Establishing Liability and Damages .....13

            a.  Risks of Establishing Liability......................................................14

            b.  Risks of Establishing Loss Causation and Damages ....................15

        5.  Risks of Maintaining Class Action Status Through Trial.........................16

        6.  The Ability of Federal Defendants to Withstand Greater Judgment .........17

        7.  The Settlement Amount is in the Range of Reasonableness in Light of the Best Possible Recovery and All the Attendant Risks of Litigation ...........18

    C.  The Plan of Allocation Should Be Approved .......................................................20

    D.  Notice to the Exchange Act Settlement Class Satisfied all the Requirements of Rule 23 and Due Process ....................................................................................22

    E.  The Settlement Satisfies the Remaining Rule 23(e)(2) Factors............................24

        1.  Attorneys' Fees ........................................................................................24

        2.  The Parties Have No Other Agreements Aside from Opt-Outs and Disclosed Fee Arrangements ....................................................................24

    F.  Final Certification of the Exchange Act Settlement Class....................................25

III.  CONCLUSION................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

*Arbuthnot v. Pierson*,
    607 F. App'x 73 (2d Cir. 2015) ...................................................................................7, 22

*Baker v. SeaWorld Entm't, Inc.*, No. 14CV2129-MMA (AGS),
    2020 WL 818893 (S.D. Cal. Feb. 19, 2020) ......................................................................23

*Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024,
    1990 WL 73423 (E.D.N.Y. May 22, 1990) .......................................................................19

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)................................................................................... *passim*

*City of Providence v. Aeropostale*, No. 11 Civ. 7132 (CM),
    2014 WL 1883494 (S.D.N.Y. May 9, 2014) ..................................................................7, 23

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001)..................................................................................................4, 6

*Dura Pharm., Inc. v. Broudo*,
    544 U.S. 336 (2005)...........................................................................................................15

*Fishoff v. Coty Inc.*, No. 09 Civ. 628 (SAS),
    2010 WL 305358 (S.D.N.Y. Jan. 25, 2010),
    *aff'd*, 634 F.3d 647 (2d Cir. 2011) ...................................................................................14

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000)..................................................................................................6

*Hayes v. Harmony Gold Mining Co.*,
    509 F. App'x 21 (2d Cir. 2013) ...........................................................................................6

*Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST,
    2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) .......................................................................25

*Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH),
    2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) .......................................................................9

*Hubbard v. BankAtlantic Bancorp, Inc.*,
    688 F.3d 713 (11th Cir. 2012) ...........................................................................................15

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
    298 F.R.D. 171 (S.D.N.Y. 2014) ...................................................................................13, 23

*In re Alloy, Inc. Sec. Litig.*, No. 03 Civ. 1597 (WHP),
2004 WL 2750089 (S.D.N.Y. Dec. 2, 2004) ..........................................................................8

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001) ............................................................... *passim*

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. 02 Civ. 5575 (SWK),
2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ....................................................... *passim*

*In re Bear Stearns Cos. Sec., Derivative & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012) ............................................................... *passim*

*In re Blech Sec. Litig.*, No. 94 CIV. 7696 (RWS),
2000 WL 661680 (S.D.N.Y. May 19, 2000) ........................................................................19

*In re Citigroup Inc. Bond Litig.*,
296 F.R.D. 147 (S.D.N.Y. 2013) ...........................................................................................4

*In re Citigroup Inc. Sec. Litig.*,
965 F. Supp. 2d 369 (S.D.N.Y. 2013)....................................................................................7

*In re Datatec Sys. Inc. Sec. Litig.*, No. 04-CV-525 (GEB),
2007 WL 4225828 (D.N.J. Nov. 28, 2007) .........................................................................21

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM) (PED),
2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) .......................................................................18

*In re Genworth Fin. Sec. Litig.*,
210 F. Supp. 3d 837 (E.D. Va. 2016) ..................................................................................24

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. Nov. 24, 2004) ...................................................... *passim*

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) ...................................................................... *passim*

*In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig.*, No. 13 Civ. 214 (RMB) (RLE),
2017 WL 2559230 (S.D.N.Y. May 22, 2017) .......................................................................5

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
233 F.R.D. 306 (E.D.N.Y. 2006) .........................................................................................21

*In re Marsh & McLennan Cos. Sec. Litig.*, No. 04 Civ. 8144 (CM),
2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) .................................................. *passim*

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK),
2007 WL 313474 (S.D.N.Y. Feb. 1, 2007)...........................................................................11

*In re Nasdaq Mkt.-Makers Antitrust Litig.*, No. 94 Civ. 3996 RWS,
   2000 WL 37992 (S.D.N.Y. Jan. 18, 2000) ............................................................21

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y.),
   *aff'd*, 117 F.3d 721 (2d Cir. 1997) ......................................................................3

*In re Sci. Atlanta Inc. Sec. Litig.*,
   754 F. Supp. 2d 1339 (N.D. Ga. 2010) ................................................................15

*In re Sony Corp. SXRD*,
   448 F. App'x 85 (2d Cir. 2011) ............................................................................7

*In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173 (RPP),
   2008 WL 1956267 (S.D.N.Y. May 1, 2008) ........................................................13

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008) ........................................................4, 6, 16

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ......................................................... *passim*

*Morris v. Affinity Health Plan, Inc.*,
   859 F. Supp. 2d 611 (S.D.N.Y. 2012) ..................................................................19

*Pelzer v. Vassalle*,
   655 F. App'x 352 (6th Cir. 2016) ........................................................................24

*Phillips v. Sci. Atlanta Inc.*,
   489 F. App'x 339 (11th Cir. 2012) ......................................................................15

*Rabbi Jacob Joseph Sch. v. Allied Irish Banks, P.L.C.*, No. 11-CV-05801 DLI VVP,
   2012 WL 3746220 (E.D.N.Y. Aug. 27, 2012) ......................................................8

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
   258 F. Supp. 2d 254 (S.D.N.Y. 2003) ...................................................................9

*Van Oss v. N.Y.*, No. 10 Civ. 7524 (SAS),
   2012 WL 2550959 (S.D.N.Y. July 2, 2012) ..........................................................4

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005) .......................................................................... *passim*

*Yang v. Focus Media Holding Ltd.*, No. 11 Civ. 9051 (CM),
   2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) ......................................................5, 6

**<u>Statutes</u>**

15 U.S.C. § 78u-4 .................................................................................................22, 24

**<u>Rules</u>**

Fed. R. Civ. P. 23 .................................................................................................. *passim*

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff Hexuan Cai and Named Plaintiffs Kalyan Venkataraman, Kalyanasundaram Venkataraman, Matthew Sacks, and Yifeng Zhu ("Federal Plaintiffs" or "Federal Class Representatives"), on behalf of themselves and the Exchange Act Settlement Class, respectfully submit this memorandum of law in support of their motion for final approval of the proposed Settlement resolving all claims asserted in this securities class action ("Federal Action") and for approval of the proposed Plan of Allocation of the proceeds of the Settlement (the "Plan").[1]

## I.   INTRODUCTION[2]

Subject to this Court's approval, Federal Plaintiffs have agreed to settle all claims in the Federal Action in exchange for a cash payment of $2,000,000. This is a highly favorable result for the Exchange Act Settlement Class given the many risks inherent in this litigation, including proving liability and damages. The resolution of the Federal Action is contingent on final approval of the settlement in the related State Action which would provide a global resolution of $5,000,000 to Jumia investors.

The Settlement is the product of Federal Plaintiffs' extensive investigation concerning the claims asserted in the Federal Action and vigorous prosecution of the litigation on behalf of the Exchange Act Settlement Class. By the time the agreement to settle had been reached, Federal

---

[1] Unless otherwise defined, all capitalized terms used herein have the meanings ascribed to them in the Stipulation of Settlement dated October 9, 2020 (the "Stipulation"). *See* ECF No. 109.

[2] The Declaration of Phillip Kim in Support of Federal Plaintiffs' Motions for: (I) Final Approval of Class Action Settlement and Plan of Allocation; and (II) an Award of Attorneys' Fees, Reimbursement of Expenses, and Award to Federal Plaintiffs ("Kim Declaration" or "Kim Decl."), filed herewith, is an integral part of this submission. For the sake of brevity, the Court is respectfully referred to it for a detailed description of, among other things: the history of the Federal Action; the nature of the claims asserted; the negotiations leading to the Settlement; the risks and uncertainties of continued litigation; and the terms of the Plan for the Settlement proceeds. All citations to "¶ __" and "Ex. __" in this memorandum refer, respectively, to paragraphs in, and exhibits to, the Kim Declaration.

Class Counsel[3] spent considerable time for the benefit of Jumia shareholders including conducting a thorough investigation; retaining a private investigator and experts; drafting highly detailed pleadings, including the Second Amended Complaint, opposing Federal Defendants' pre-motion letters and motion to dismiss; and preparing for and participating in the mediation and settlement discussions overseen by a highly experienced third-party mediator, Jed D. Melnick, Esq., of JAMS, which included drafting a mediation statement. At the time of settlement, Federal Plaintiffs and Federal Class Counsel had a thorough understanding of the strengths and weaknesses of the claims and defenses in the Federal Action and they believe the Settlement represents a favorable outcome of the Federal Action and in the best interests of the Exchange Act Settlement Class as there were risks to establishing liability and damages in this case. ¶¶31-39.

While Federal Plaintiffs and Federal Class Counsel believe that the claims asserted are meritorious, they recognize the substantial challenges to establishing that Federal Defendants acted with scienter and the materiality of the alleged false and/or misleading statements, demonstrating loss causation, proving class-wide damages, and achieving a greater recovery. Federal Defendants have and will continue to contest falsity, materiality, and scienter arguing that Federal Plaintiffs had not alleged any materially misleading statements, or alleged facts sufficient to impute the Individual Defendants' state of mind to Jumia. Federal Defendants made and would continue to make credible damages and loss causation arguments that may have greatly reduced, or even eliminated, any potential recovery. Finally, even if Federal Plaintiffs could have succeeded at trial, there is a significant risk that Jumia could not pay any amount in excess of its insurance coverage,

---

[3] The terms "Federal Class Counsel," "Federal Lead Counsel," and "Plaintiffs' Counsel" are used interchangeably in connection with Federal Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation and Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Award to Federal Plaintiffs.

especially in light of the Company's financial condition. According to the Company's Prospectus Supplement filed with the SEC on November 30, 2020, Jumia reported that, as of September 30, 2020, it had cash and cash equivalents of EUR 147.1M (or approximately $172.5M).

The Settlement is fair, adequate, and reasonable under the governing standards in this Circuit. The $2 million Settlement falls well within the range of settlements in comparable securities fraud cases and eliminates the significant costs and risks of continuing litigation through trial and appeals. Additionally, as of February 17, 2021, no objections have been received from Exchange Act Settlement Class Members (¶51) and there has only been one exclusion request submitted by a Jumia investor who is not an Exchange Act Class Member. *Id.*

For these reasons, and those set forth below, Federal Plaintiffs and Federal Class Counsel believe that the Settlement is in the best interests of the Exchange Act Settlement Class. In addition, the Plan, which ties each investor's recovery to when the securities were acquired and sold, is a fair and reasonable method for distributing the Net Settlement Fund to the Exchange Act Settlement Class and warrants approval.

## II.     THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL

A court will approve a settlement if it is "fair, adequate, and reasonable, and not a product of collusion." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005). Although "[t]he decision to grant or deny such approval lies squarely within the discretion of the trial court, . . . this discretion should be exercised in light of the general judicial policy favoring settlement." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 124 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997). Accordingly, public policy considerations strongly favor settlement, particularly in class actions. *Wal-Mart*, 396 F.3d at 116 ("We are mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context.'"). Furthermore, "[i]n evaluating the

3

settlement of a securities class action, federal courts, including this [c]ourt, have long recognized that such litigation is notably difficult and notoriously uncertain." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 189 (S.D.N.Y. 2012) (alterations in original); *In re Marsh & McLennan Cos. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 WL 5178546, at *5 (S.D.N.Y. Dec. 23, 2009) (same).

**A.    The Settlement is Entitled to a Presumption of Fairness Because it is the Product of Arm's-Length Negotiations Among Experienced Counsel**

Courts may apply a presumption of fairness when a class settlement is the product of "arm's-length negotiations between experienced, capable counsel." *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 155 (S.D.N.Y. 2013) (quoting *Wal-Mart*, 396 F.3d at 116). Because counsel are "most closely acquainted with the facts of the underlying litigation," courts give "great weight" to counsel's recommendations regarding settlement, especially when negotiations are facilitated by an experienced, third-party mediator. *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008); *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (finding that a mediator's involvement in settlement negotiations "helps to ensure that the proceedings were free of collusion and undue pressure"); *Van Oss v. N.Y.*, No. 10 Civ. 7524 (SAS), 2012 WL 2550959, at *1 (S.D.N.Y. July 2, 2012) ("a strong presumption of fairness attaches because the Settlement was reached by experienced counsel after extensive arm's length negotiations.").

Here, the Federal Settling Parties' negotiations did not commence until after Federal Class Counsel engaged in an extensive investigation to understand the strengths and weaknesses of the case. Specifically, Federal Class Counsel thoroughly reviewed publicly available information about the Company; consulted a damages expert, and prepared two detailed complaints. ¶¶8, 16, 18. Federal Plaintiffs and Federal Class Counsel briefed two pre-motion letters as well as opposed Federal Defendants' motion to dismiss. ¶¶8, 17, 19, 21. As part of the mediation process facilitated by Mr. Melnick, the Parties exchanged detailed statements concerning liability, damages, loss

4

causation, and Federal Defendants' ability to pay. ¶24. The Federal Settling Parties also engaged in an all-day, virtual mediation. The session ended without an agreement, but over the next several months, Mr. Melnick facilitated further discussions and a settlement was reached with the execution of a settlement term sheet.  ¶25.

The extensive and arm's-length nature of the settlement negotiations and the involvement of an experienced and respected mediator like Mr. Melnick support the conclusion that the Settlement is presumptively fair, adequate, and reasonable. *Yang v. Focus Media Holding Ltd.*, No. 11 Civ. 9051 (CM) (GWG), 2014 WL 4401280, at *5 (S.D.N.Y. Sept. 4, 2014) (noting that "[t]he participation of this highly qualified mediator [Mr. Melnick] strongly supports a finding that negotiations were conducted at arm's length and without collusion."); *In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig.*, No. 13 Civ. 214 (RMB) (RLE), 2017 WL 2559230, at *7 (S.D.N.Y. May 22, 2017) (approving settlement where the settling parties engaged Mr. Melnick as a mediator, including an all-day mediation session with subsequent discussions and arm's-length negotiations among the parties with Mr. Melnick's involvement). The Declaration of Jed Melnick, attached as Exhibit 1 to the Kim Decl., details the process by which the Settlement was reached, Mr. Melnick's perspective of the Settlement and states that he believes that "the proposed settlement of these cases represents a fair and pragmatic resolution of these Actions." *Id.* at ¶9.

Federal Plaintiffs' conclusion that the Settlement is fair, adequate, and reasonable and in the best interests of the Exchange Act Settlement Class further supports its approval. Federal Plaintiffs took an active role in supervising this litigation and recommend that the Settlement be approved. *See* Declaration of Hexuan Cai at ¶¶9, 16; Declaration of Kalyan Venkataraman at ¶¶10, 17; Declaration of Kalyanasundaram Venkataraman at ¶¶10, 17; Declaration of Matthew Sacks at ¶¶10, 17; Declaration of Yifeng Zhu at ¶¶10, 17, attached as Exhibits 3 to 7, respectively, to the

Kim. Decl. Federal Class Counsel, which have extensive experience in prosecuting securities class actions, have also concluded that the Settlement is in the Exchange Act Settlement Class's best interests, and their judgment is entitled to "great weight." *In re Telik*, 576 F. Supp. 2d at 576; *Focus Media Holding Ltd.*, 2014 WL 4401280, at *5 ("great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation"). Accordingly, these facts strongly weigh in favor of affording the Settlement the presumption of fairness and granting final approval.

    **B.**    **The Settlement is Substantively Fair, Reasonable and Adequate Under the *Grinnell* Factors**

    The Settlement is also substantively fair, adequate, and reasonable. It is well-established that "[i]n this Circuit, courts examine the fairness, adequacy, and reasonableness of a class settlement according to the *Grinnell* factors," which are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Wal-Mart*, 396 F.3d at 117 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)); *Deutsche Bank*, 236 F.3d at 86.

    In applying the *Grinnell* factors, a court "must give comprehensive consideration to all relevant factors," *Hayes v. Harmony Gold Mining Co.*, 509 F. App'x 21, 23 (2d Cir. 2013), but "not every factor must weigh in favor of settlement, rather [a] court should consider the totality of these factors in light of the particular circumstances." *IMAX*, 283 F.R.D. at 189. "[W]hen

evaluating a settlement agreement, the court is not to substitute its judgment for that of the parties, nor is it to turn consideration of the adequacy of the settlement into a trial or a rehearsal of the trial." *In re Sony Corp. SXRD*, 448 F. App'x 85, 87 (2d Cir. 2011). As demonstrated below, the Settlement satisfies the criteria for approval under *Grinnell*.

### 1.      Continued Litigation Would be Complex, Expensive, and Protracted

In general, "the more complex, expensive, and time consuming the future litigation, the more beneficial settlement becomes as a matter of efficiency to the parties and to the Court." *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 381-82 (S.D.N.Y. 2013). This is particularly true here, as "securities class actions are by their very nature complicated and district courts in this Circuit have 'long recognized' that securities class actions are 'notably difficult and notoriously uncertain' to litigate." *City of Providence v. Aeropostale*, No. 11 Civ. 7132 (CM) (GWG), 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014) (quoting *In re Bear Stearns Cos. Sec., Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 266 (S.D.N.Y. 2012)), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).

Further litigation would have required substantial additional expenditures of time and resources, involving complex issues of law and fact, with a significant risk of a lower recovery. *See In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. 02 Civ. 5575 (SWK), 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) ("In addition to the complex issues of fact involved in this case, the legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages."). Federal Plaintiffs could have faced difficulty in establishing falsity, materiality and scienter as required under the federal securities laws. Additionally, substantial expert testimony would be necessary regarding the damages and Federal Defendants' potential defenses thereto. ¶36.

In the absence of the Settlement, the Federal Action would have required resolution of the motion to dismiss, extensive fact and expert discovery as well as, litigating a class certification motion, summary judgment motions, and *Daubert* motions, followed by proving Federal Plaintiffs' claims at trial, post-trial motions, and appeals. Throughout each litigation phase, Federal Plaintiffs would undoubtedly have faced a robust defense from Federal Defendants' experienced counsel. *See In re Alloy, Inc. Sec. Litig*., No. 03 Civ. 1597 (WHP), 2004 WL 2750089, at *2 (S.D.N.Y. Dec. 2, 2004) (securities fraud issues "likely to be litigated aggressively, at substantial expense to all parties"). As a result of such "notorious complexity, securities class action litigation is often resolved by settlement, which circumvents the difficulty and uncertainty inherent in long, costly trials." *AOL Time Warner*, 2006 WL 903236, at *8. Discovery would be particularly complex here given that Jumia is a German company with substantial operations throughout Africa and many defendants in the United Arab Emirates, there is no guarantee that Federal Plaintiffs would have been able to obtain the necessary evidence to prove their case through discovery; and even if they could do so, it would be costly and significantly delay any potential recovery to Exchange Act Class Members. Litigation with foreign defendants and witnesses adds complications, requiring Federal Plaintiffs to follow appropriate international conventions to retrieve documents and receive testimony. This would also require extensive translation or the retention of multilingual attorneys to facilitate document review. ¶38; *See Rabbi Jacob Joseph Sch. v. Allied Irish Banks, P.L.C.*, No. 11-CV-05801 DLI VVP, 2012 WL 3746220, at *7 (E.D.N.Y. Aug. 27, 2012) ("Courts in the Second Circuit have widely recognized that obtaining evidence through the Hague Convention and letters rogatory are cumbersome and inefficient, and hardly make litigation in the United States convenient").

Even if Federal Plaintiffs could recover an equally large judgment after a trial *and* recover from Federal Defendants – both of which are far from certain given the risks discussed herein – the additional delay through post-trial motions and the appellate process could deny the Exchange Act Settlement Class any recovery for years, further reducing its value. *See Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[E]ven if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation [.]. . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery").

Significantly, due to Jumia's financial condition, insurance coverage was the only practical source of recovery, and these funds would have been reduced by the defense costs of this Federal Action had it continued. Accordingly, there is a very significant risk that further litigation might yield a smaller recovery – or no recovery at all – several years in the future. *See, e.g., Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs; justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action."); *In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001) (protracted litigation could force a company experiencing financial difficulties into bankruptcy and foreclose significant recovery for the class). The Settlement eliminates the expense and delay of continued litigation, the depletion of existing resources for settlement funds, and the risk that the Exchange Act Settlement Class could receive no recovery.

## 2.   The Lack of Objections and/or Opt-Outs Support Final Approval

The reaction of the class to a proposed settlement is a significant factor to weigh in considering its fairness and adequacy. *See Bear Stearns*, 909 F. Supp. 2d at 266-67; *see Wal-Mart*,

396 F.3d at 118 ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."); *Am. Bank Note*, 127 F. Supp. 2d at 425 (noting "the lack of objections may well evidence the fairness of the Settlement").

The absence of any objections and only one, invalid request for exclusion provides evidence of the Exchange Act Settlement Class members' overwhelming approval of the terms of the Settlement. Pursuant to the Preliminary Approval Order, the Court-appointed Claims Administrator, Strategic Claims Services ("SCS"), caused copies of the Postcard Notice to be mailed to potential members of the Exchange Act Settlement Class. *See* Declaration of Sarah Evans Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections ("Evans Decl."), Exhibit 2 to the Kim Decl., at ¶3. To date, SCS has mailed a total of 31,993 Postcard Notices[4]. Of the Postcard Notices mailed, 722 were mailed to the potential Exchange Act Settlement Class Members identified on the records received from Federal Defendants' Counsel; the remaining 31,271 were requested by, and mailed to, Nominee Account Holders and Institutional Groups and other individuals. Evans Decl. ¶6.

The Postcard Notice contains a description of the Federal Action, the Settlement, information about Exchange Act Settlement Class Members' rights, and directs potential Exchange Act Settlement Class Members to a Settlement-dedicated website for the Long Notice, (Ex. A to Evans Decl.) which is a more detailed notice that contains a description of the Federal Action, the Settlement, and information about Exchange Act Settlement Class Members' rights to participate in the Settlement by submitting a Claim Form; to object to the Settlement, the Plan, the

---

[4] Out of the 31,993 Postcard Notices mailed, SCS received 37 requests from potential Exchange Act Settlement Class Members to mail them the Long Notice and Proof of Claim and Release Form. Evans Decl. ¶6 n. 3.

motion for attorneys' fees, expenses, and Award to Federal Plaintiffs; or to request exclusion from the Exchange Act Settlement Class. (Ex. D to Evans Decl.).

In addition to the Postcard Notices mailed, SCS was notified by one of the Nominee Account Holders that they emailed a total of 18,802 of their customers to notify them of this settlement and provided direct links to the Long Notice and Claim Form on the settlement webpage. *Id.* ¶7.  The Summary Notice was published electronically once on the *GlobeNewswire* and in print once in the *Investor's Business Daily* on January 25, 2021.  *Id*. ¶9.

While the  deadline for Exchange Act Settlement Class Members to object or exclude themselves from the Exchange Act Settlement Class – February 24, 2021 – has not yet passed, as of February 17, 2021, no objections and one request for exclusion, has been received. ¶51; Evans Decl. at ¶¶12-13. SCS reviewed the transactions provided by the one exclusion request, and under the Plan, the request does not have a valid recognized loss as the transactions result in an overall trading gain and thus, was not submitted by an Exchange Act Settlement Class Member. *Id.* at ¶12.[5]

The Exchange Act Settlement Class's favorable reaction supports approving the Settlement. *Bear Stearns*, 909 F. Supp. 2d at 267 ("Given the absence of significant exclusion or objection—the rate of exclusion is 5.1% and the rate of objection is less than 1%—this factor weighs strongly in favor of approval."); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) (finding that 34 requests for exclusion in response to the mailing of nearly 400,000 notices was a "minimal"

---

[5] Additionally, as stated in Federal Plaintiffs' January 10, 2021 letter to the Court (ECF No. 115), with the Court's permission, SCS will accept claims from Exchange Act Class Members as long as they are submitted no later than 90 calendar days after the deadline for providing notice, *i.e.*, by April 26, 2021. ¶54.

number that "militates in favor of approving the settlement as be[ing] fair, adequate, and reasonable.").

### 3.    Federal Plaintiffs had Sufficient Information to Make Informed Decisions About Settling this Case

The third *Grinnell* factor, which looks to the "stage of the proceedings and the amount of discovery completed," *Wal-Mart*, 396 F.3d at 117, examines "whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' *[sic]* causes of action for purposes of settlement." *Bear Stearns*, 909 F. Supp. 2d at 267. To satisfy this factor, the Parties "need not 'have engaged in extensive discovery' as long as 'they have engaged in sufficient investigation of the facts to enable the Court to intelligently make . . . an appraisal of the settlement.'" *AOL Time Warner*, 2006 WL 903236, at *10; *IMAX*, 283 F.R.D. at 190 ("The threshold necessary to render the decisions of counsel sufficiently well informed…however, is not an overly burdensome one to achieve—indeed, formal discovery need not have necessarily been undertaken yet by the parties.").

At the time of settlement, Federal Plaintiffs and Federal Class Counsel understood the strengths and weaknesses of the claims and defenses asserted, and could make informed appraisals regarding the chances of success. Federal Class Counsel expended significant time and resources, for the benefit of Jumia shareholders, analyzing the legal and factual issues in the Federal Action including conducting a thorough investigation; retaining a private investigator and damages expert; drafting highly detailed pleadings including the operative Second Amended Complaint, opposing Federal Defendants' pre-motion letters and motion to dismiss; and drafting a mediation statement and participating in the mediation and settlement discussions.

Since a settlement was not reached at the all-day mediation, Federal Defendants proceeded with the filing of the motion to dismiss in the Federal Action. Despite continued litigation, the Federal Settling Parties continued their arm's-length negotiations through Mr. Melnick, eventually reaching the global settlement of $5 million with $2 million to be allocated to the Federal Action and $3 million to be allocated to the State Action. The approval of the settlements in the Federal Action and the State Action are contingent upon each other, meaning if one of the settlements if not finally approved, the other settlement will not become Final.

In light of these efforts, Federal Plaintiffs and Federal Class Counsel had a strong understanding of the claims and defenses asserted and the significant risks to establishing liability, damages, and collecting an excess judgment in order to intelligently negotiate the Settlement. *See AOL Time Warner*, 2006 WL 903236, at *10; *see also In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 177 (S.D.N.Y. 2014) (where "no merits discovery occurred," counsel that had conducted their own investigation, engaged in detailed briefing, and conducted targeted due diligence discovery were "knowledgeable with respect to possible outcomes and risks in this matter and, thus, able to recommend the Settlement"); *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173 (RPP), 2008 WL 1956267, at *7 (S.D.N.Y. May 1, 2008) ("[a]lthough the parties did not engage in extensive formal discovery, such efforts are not required for the Settlement to be adequate, so long as the parties conducted sufficient discovery to understand their claims and negotiate settlement terms").

### 4.  Federal Plaintiffs Faced Risks in Establishing Liability and Damages

In assessing the fairness, reasonableness, and adequacy of a settlement, courts should consider the "risks of establishing liability [and] the risks of establishing damages." *Grinnell*, 495 F.2d at 463; *Wal-Mart*, 396 F.3d at 117. Analyzing these risks "does not require the Court to

adjudicate the disputed issues or decide unsettled questions; rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. Nov. 24, 2004); *AOL Time Warner*, 2006 WL 903236, at *11 (same). In other words, "the Court should balance the benefits afforded to members of the Class and the immediacy and certainty of a substantial recovery for them against the continuing risks of litigation." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 364 (S.D.N.Y. 2002). Courts should, therefore, "approve settlements where plaintiffs would have faced significant legal and factual obstacles to proving their case." *Global Crossing*, 225 F.R.D. at 459.

### a.    Risks of Establishing Liability

"The difficulty of establishing liability is a common risk of securities litigation," particularly where, as here, Federal Defendants had credible defenses. *AOL Time Warner*, 2006 WL 903236, at *11. While Federal Plaintiffs believe they adequately alleged falsity, materiality, and scienter, they recognize the difficulties of proving these elements at trial. *See id.* (recognizing that "avoiding dismissal at the pleading stage does not guarantee that scienter will be adequately proven at trial"). Indeed, scienter is often considered "the most difficult and controversial aspect of a securities fraud claim." *Fishoff v. Coty Inc.*, No. 09 Civ. 628 (SAS), 2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010), *aff'd*, 634 F.3d 647 (2d Cir. 2011).

For example, in their motion to dismiss the Second Amended Complaint, Federal Defendants argued that Federal Plaintiffs failed to allege any material misstatements and failed to state with particularity facts that give rise to a strong inference of scienter. (ECF No. 100 at 18, 20). While Federal Plaintiffs argued in their opposition that these arguments have no merit, there is a substantial risk that the Court or a jury would accept Federal Defendants' arguments.

### b.      Risks of Establishing Loss Causation and Damages

If the litigation had proceeded, Federal Plaintiffs could have encountered significant causation and damages defenses. Federal Plaintiffs must establish that it was the revelation of Federal Defendants' misrepresentations or omissions which caused Federal Plaintiffs to incur a loss, and not non-fraud related business or macroeconomic factors. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005) (plaintiffs bear "'the burden of proving' that the defendant's misrepresentations 'caused the loss for which the plaintiff seeks to recover'"). Disentangling the market's reaction to various pieces of news is a "complicated concept, both factually and legally." *Global Crossing*, 225 F.R.D. at 459. Accordingly, the "[c]alculation of damages is a 'complicated and uncertain process, typically involving conflicting expert opinion' about the difference between the purchase price and the stock's 'true' value absent the alleged fraud." *Id.*

The Federal Settling Parties held extremely disparate views with respect to damages, and Federal Defendants' challenges to loss causation and damages could have posed a serious risk to the Exchange Settlement Class at the pleading stage, summary judgment, trial, and on appeal. *See, e.g.*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 716 (11th Cir. 2012) (reversing plaintiffs' jury verdict for failure to prove loss causation); *In re Sci. Atlanta Inc. Sec. Litig.*, 754 F. Supp. 2d 1339, 1379-80 (N.D. Ga. 2010) (granting motion for summary judgment because plaintiffs did not disentangle fraud-related and non-fraud-related portions of stock decline), *aff'd sub nom. Phillips v. Sci. Atlanta Inc.*, 489 F. App'x 339 (11th Cir. 2012). Specifically, Federal Defendants argued in their motion to dismiss that Federal Plaintiffs cannot show that any of their four corrective disclosures revealed any hidden facts or Federal Defendants caused their losses. (ECF No. 100 at 24-25.)  If Federal Defendants were to prevail on such an argument at any stage, it would significantly reduce or eliminate potential damages.

In complex securities cases, it is axiomatic that parties would rely on expert testimony to assist the jury in determining damages. *Global Crossing*, 225 F.R.D. at 459 ("[P]roof of damages in securities cases is always difficult and invariably requires expert testimony which may, or may not be, accepted by a jury."). While Federal Plaintiffs would argue that the stock price declines were attributable to the disclosure and corrections of the alleged misstatements and omissions, and would present expert testimony addressing loss causation and damages, Federal Defendants would proffer their own expert to offer contrary testimony with respect to all of the price declines. *See IMAX*, 283 F.R.D. at 193 ("[I]t is well established that damages calculations in securities class actions often descend into a battle of experts."). In such a "battle of experts, it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found" by the jury. *In re Telik*, 576 F. Supp. 2d at 579-80.

Therefore, even if liability were established at trial, "a jury could find that damages were only a fraction of the amount that plaintiffs contend" because "[a] jury could be swayed by experts for the Defendants, who would minimize the amount of Plaintiffs' losses." *Del Global*, 186 F. Supp. 2d at 365. If a jury were to accept Federal Defendants' arguments, damages in this case could be greatly reduced or even eliminated. *Marsh & McLennan*, 2009 WL 5178546, at *6 ("[i]f there is anything in the world that is uncertain when a case like [a securities class action] is taken to trial, it is what the jury will come up with as a number for damages."). As a result, "the risks faced by the securities plaintiffs in establishing damages are substantial, and this factor favors approving the settlement." *Global Crossing*, 225 F.R.D. at 459.

### 5.   Risks of Maintaining Class Action Status Through Trial

Although class certification was not briefed in this case, such motions bear risk and uncertainty and are expenses as they require expert testimony. Federal Defendants would

undoubtedly have raised vigorous challenges to class certification, and such disputes "could well devolve into yet another battle of the experts." *Bear Stearns*, 909 F. Supp. 2d at 268. If a class were to be certified, Federal Defendants could move to decertify the class at any time. *See* Fed. R. Civ. P. 23(c)(2); *Global Crossing*, 225 F.R.D. at 460 ("[E]ven if plaintiffs could obtain class certification, there could be a risk of decertification at a later stage."). Here, "the uncertainty surrounding class certification supports approval of the Settlement," *Marsh & McLennan*, 2009 WL 5178546, at *6, because "even the process of class certification would have subjected Plaintiffs to considerably more risk than the unopposed certification that was ordered for the sole purpose of the Settlement." *AOL Time Warner*, 2006 WL 903236, at *12.

### 6.   The Ability of Federal Defendants to Withstand Greater Judgment

Even if Federal Plaintiffs were able to overcome the significant risks described above and prevail at trial, they would still face the very real risk that Federal Defendants would be unable to satisfy any judgment obtained due to Jumia's financial condition.

It is clear from Jumia's public filings and Federal Plaintiffs' due diligence, that Jumia's insurance coverage was the only prospective source of recovery. Significantly, these insurance funds would have been depleted by defense costs of this litigation as well as the State Action had the cases not settled. Courts have recognized that "[t]his factor typically weighs in favor of settlement where a greater judgment would put the defendant at risk of bankruptcy or other severe economic hardship." *Id.*; *Del Global*, 186 F. Supp. 2d at 365 (in light of the company's "dire financial condition, it is unlikely that the Company could withstand a substantial judgment," making a greater recovery than the settlement difficult); *Am. Bank Note*, 127 F. Supp. 2d at 427 (noting the "serious question as to the ability of the Defendants to withstand a greater judgment" because the company's financial condition had substantially weakened at the time of settlement

discussions, and its likelihood of filing for bankruptcy increased with the passage of time). The very significant risk here that continued litigation would yield a smaller recovery – or no recovery at all – several years in the future weighs heavily in favor of the Settlement.

### 7.    The Settlement Amount is in the Range of Reasonableness in Light of the Best Possible Recovery and All the Attendant Risks of Litigation

Courts typically analyze the last two *Grinnell* factors together. *See Grinnell*, 495 F.2d at 463. In so doing, courts "consider[] and weigh[] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM) (PED), 2010 WL 4537550, at *20 (S.D.N.Y. Nov. 8, 2010) (quoting *Grinnell*, 495 F.2d at 462). A court's "determination of whether a given settlement amount is reasonable in light of the best possibl[e] recovery does not involve the use of a mathematical equation yielding a particularized sum." *Bear Stearns*, 909 F. Supp. 2d at 269. Instead, the Second Circuit has held "[t]here is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart*, 396 F.3d at 119.

Federal Plaintiffs submit that the $5 million global settlement, including a $2 million settlement in the Federal Action, is well within the range of reasonableness in light of the best possible recovery and all the attendant risks of litigation, particularly Federal Defendants' ability to pay. If Federal Plaintiffs overcame all the obstacles noted above to establishing liability, the realistic maximum recoverable damages at trial, using an aggressive damages analysis, would be approximately $258 million. ¶40. Under that scenario, the $2 million settlement represents approximately 0.77% of the maximum damages. Moreover, when this Settlement is combined with the Settlement in the State Action, the recovery is even better, returning almost 1.94% to investors.

Federal Defendants, however, could have made arguments regarding the potential loss causation and damages issues discussed herein that, if accepted, would have reduced greatly reduced damages. ¶41. Under these scenarios, the Settlement is an favorable outcome. *Grinnell*, 495 F.2d at 455 n.2 ("[T]here is no reason . . . why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) (granting final approval which amounted to 2% of potential recovery); *Cagan v. Anchor Sav. Bank FSB,* No. 88 Civ. 3024, 1990 WL 73423, at *12–13 (E.D.N.Y. May 22, 1990) (granting final approval which amounted to approximately 1.9% of best possible recovery).

Moreover, weighing "[t]he 'best possible' recovery necessarily assumes Plaintiffs' success on both liability and damages covering the full Class Period alleged in the Complaint as well as the ability of Defendants to pay the judgment." *Del Global*, 186 F. Supp. 2d at 365. This case has been pending since 2019, and could be expected to last several more years had the Settlement not been reached. "While additional years of litigation might well have resulted in a higher settlement or verdict at trial, continued litigation could also have reduced the amount of insurance coverage available and not necessarily resulted in a greater recovery." *In re Blech Sec. Litig.*, No. 94 CIV. 7696 (RWS), 2000 WL 661680, at *5 (S.D.N.Y. May 19, 2000). Given that Jumia's insurance was the source of funding to pay any judgment and the fact that the available insurance coverage would be further eroded or depleted as the litigation continued, the Court should consider that the Settlement provides for payment now without any further risk to the Exchange Act Settlement Class, rather than a speculative and likely lower payment years later.

In sum, the *Grinnell* factors – including Federal Plaintiffs' well-developed understanding of the strengths and weaknesses of the case, and the significant risks, expense, and delay of further litigation – support a finding that the Settlement is fair, adequate, and reasonable.

### C.     The Plan of Allocation Should Be Approved

"When formulated by competent and experienced counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis." *IMAX*, 283 F.R.D. at 192; *Bear Stearns*, 909 F. Supp. 2d at 270 (same). In designing a fair and rational plan, counsel may take into account "the relative strength and values of different categories of claims." *Global Crossing*, 225 F.R.D. at 462; *see also Marsh & McLennan*, 2009 WL 5178546, at *13 ("In determining whether a plan of allocation is fair, courts look largely to the opinion of counsel.").

The proposed Plan is set forth in the Long Notice. *See* Evans Decl., at Ex. D at 21-25. Federal Class Counsel developed the Plan in consultation with Federal Plaintiffs' damages expert with the objective of equitably distributing the Net Settlement Fund. Each eligible Settlement Class Member, including Federal Plaintiffs, will receive a distribution pursuant to the Plan. Federal Plaintiffs, just like all other Exchange Act Settlement Class Members, will be subject to the same formulas for distribution. The expert calculated the estimated amount of artificial inflation in the per share closing prices of Jumia ADSs on each day of the Settlement Class Period as a result of Federal Defendants' alleged materially false and misleading statements and omissions. In calculating this estimated alleged artificial inflation, the damages expert considered price changes in Jumia ADSs in reaction to the alleged corrective disclosures, adjusting for factors attributable to market or industry forces and the strength of the claims, as advised by Federal Class Counsel. Under the Plan, a "Recognized Loss" will be calculated for each purchase of Jumia ADSs, during the Class Period for which adequate documentation is provided. The calculation of Recognized

20

Loss is explained in detail in the Long Notice and incorporates several factors, including when and for what price the Jumia ADSs were purchased and sold, the estimated artificial inflation in the Jumia ADSs respective prices at the time of purchase and sale, as determined by Federal Plaintiffs' damages expert, and the strength of the claims. *See In re Datatec Sys. Inc. Sec. Litig.*, No. 04-CV-525 (GEB), 2007 WL 4225828, at *5 (D.N.J. Nov. 28, 2007) ("plans that allocate money depending on the timing of purchases and sales of the securities at issue are common"); *In re Luxottica Grp. S.p.A. Sec. Litig.,*, 233 F.R.D. 306, 317 (E.D.N.Y. 2006) (approving plan of allocation as fair and reasonable where it treated class members equally and on a *pro rata* basis and comported with the plaintiffs' theory of damages). The Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their total Recognized Loss.

Federal Class Counsel believes that the proposed Plan provides a fair and reasonable method to allocate the Net Settlement Fund equitably among Exchange Act Settlement Class Members who suffered losses as result of the conduct alleged in the Federal Action. Their opinion as to allocation is entitled to "considerable weight" by the Court in deciding whether to approve the plan. *Am. Bank Note*, 127 F. Supp. 2d at 430. As of February 17, 2021, no objections to the Plan have been received, suggesting that the Exchange Act Settlement Class also finds the Plan to be fair and reasonable. ¶51; *In re Nasdaq Mkt.-Makers Antitrust Litig.*, No. 94 Civ. 3996 RWS, 2000 WL 37992, at *2 (S.D.N.Y. Jan. 18, 2000) (holding that the "small number of objections to the Proposed Plan" was entitled to "substantial weight" in approving the plan). Moreover, similar plans have repeatedly been approved by courts in this District. *See, e.g.*, *Global Crossing*, 225 F.R.D. at 462 ("Pro-rata distribution of settlement funds based on investment loss is clearly a reasonable approach.").

For each of the forgoing reasons, Federal Plaintiffs respectfully submit that the proposed Plan is fair and reasonable, and merits final approval from the Court.

### D. Notice to the Exchange Act Settlement Class Satisfied all the Requirements of Rule 23 and Due Process

"The adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Pierson*, 607 F. App'x at 73. The Notice satisfied Fed. R. Civ. P. 23(e)(1), which requires that notice of a settlement be "reasonable" – *i.e.*, it must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Pierson*, 607 F. App'x at 73-74. The Notice also satisfies both Fed. R. Civ. P. 23(c)(2)(B), which requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort" and Fed. R. Civ. P. 23(e)(2)(C)(ii).

Both the substance of the Notice and the method of dissemination to potential members of the Exchange Act Settlement Class satisfies these standards. The Notice program was carried out by SCS, a nationally-recognized claims administrator. The Long Notice contains the information required by Fed. R. Civ. P. 23(c)(2)(B) and the PSLRA, 15 U.S.C. § 78u-4(a)(7), including: (i) an explanation of the nature of the Federal Action and claims asserted; (ii) the definition of the Exchange Act Settlement Class; (iii) a description of the key terms of the Settlement, including the consideration amount and the releases to be given; (iv) the Plan; (v) the Federal Settling Parties' reasons for proposing the Settlement; (vi) a description of the attorneys' fees and expenses that will be sought; (vii) an explanation of Exchange Act Settlement Class Members' right to request exclusion from the Exchange Act Settlement Class and to object to the Settlement, the Plan of or the requested attorneys' fees or expenses; and (viii) notice of the binding effect of a judgment on Exchange Act Settlement Class Members. The Notice also provides: instructions for submitting a

22

Claim Form in order to be eligible to receive a distribution from the Net Settlement Fund and relevant deadlines; and the contact information for Federal Class Counsel and SCS. *See id.* ¶45.

SCS has mailed a total of 31,993 Postcard Notices which contains a description of the Federal Action, the Settlement, information about Exchange Act Settlement Class Members' rights, and directs Exchange Act Settlement Class Members to a website for the Long Notice (Ex. D to Evans Decl.). SCS also caused the Summary Notice to be published electronically once on the *GlobeNewswire* and in print once in the *Investor's Business Daily* on January 25, 2021. *Id.* ¶9. SCS also established a settlement-specific website to provide members of the Exchange Act Settlement Class with information concerning the Settlement, all applicable deadlines, and copies of key documents including the Long Notice containing the Plan, Preliminary Approval Order, the Claim Form and the Stipulation. *Id.* ¶11. The claims process is also effective and includes a standard claim form that requests the information necessary to calculate a claimant's claim amount pursuant to the Plan. The Plan will govern how SCS will calculate Exchange Act Settlement Class Members' claims and, ultimately, how the Settlement Fund will be distributed.

The mailing of Postcard Notice to all members of the Exchange Act Settlement Class who could be identified with reasonable effort, supplemented with notice in a widely-circulated publication and over a newswire, and a dedicated website, was "the best notice ... practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see, e.g., Advanced Battery*, 298 F.R.D. at 183 ("The use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts."); *Baker v. SeaWorld Entm't, Inc.*, No. 14CV2129-MMA (AGS), 2020 WL 818893, at *2-*3 (S.D. Cal. Feb. 19, 2020) (approving postcard notice and similar notice program including website);*City of Providence*, 2014 WL 1883494, at *2.

### E.     The Settlement Satisfies the Remaining Rule 23(e)(2) Factors

#### 1.     Attorneys' Fees

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." As discussed in the memorandum of law in support of the motion for an award of attorneys' fees, reimbursement of expenses, and an Award to Federal Plaintiffs, filed concurrently herewith, Federal Class Counsel seeks an award of attorneys' fees of one-third of the Federal Settlement and reimbursement of litigation expenses incurred. These requests, fully disclosed in the Notice, are in line with other settlements approved in the Second Circuit.

In addition, Federal Class Counsel requests that any award of fees and expenses be paid at the time the Court makes its award. *See In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 846 (E.D. Va. 2016) (ordering that "attorneys' fees and Litigation Expenses awarded above may be paid to Lead Counsel immediately upon entry of this Order."). Indeed, such "provisions are common." *Pelzer v. Vassalle*, 655 F. App'x 352, 365 (6th Cir. 2016).

Federal Plaintiffs also request $2,500 each (or $12,500 in total) pursuant to 15 U.S.C. § 78u-4(a)(4) in connection with their efforts in stewarding the Federal Action.

#### 2.     The Parties Have No Other Agreements Aside from Opt-Outs and Disclosed Fee Arrangements

Pursuant to Rule 23(e)(2)(C)(iv), as disclosed in the Stipulation (¶7.4), and in Federal Class Representatives' Preliminary Approval Brief (ECF No. 111 at 21), the Federal Settling Parties have entered into a standard supplemental agreement which provides that if Settlement Class Members opt out of the Settlement such that the number of shares of Jumia ADSs represented by such opt outs equals or exceeds a certain amount, Jumia has the option to terminate the Settlement. As is standard practice in securities class actions, while the supplemental agreement is identified in the Stipulation (*id.*), the terms were confidential to avoid creating incentives for a small group

of investors to opt out solely to leverage the threshold to exact an individual settlement. *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018) ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair.").

Additionally, pursuant to Local Civil Rule 23.1, the Long Notice informed the Exchange Act Settlement Class that Federal Class Counsel would apply to the Court for an award of attorneys' fees and intends to share part of any attorneys' fees awarded by the Court with Robbins Geller Rudman & Dowd LLP, the Schall Law Firm, and the HAO Law Firm, in accordance with their level of contribution to the initiation, prosecution, and resolution of the Federal Action. (Ex. D to Evans Decl. at 16).

### F.    Final Certification of the Exchange Act Settlement Class

The Court's Preliminary Approval Order certified the Exchange Act Settlement Class for settlement purposes only under Fed. R. Civ. P. 23(a) and (b)(3). (ECF No. 113 at ¶1). There have been no changes to alter the propriety of class certification for settlement purposes. Thus, for the reasons stated in Federal Plaintiffs' Preliminary Approval Brief (ECF No. 111), Federal Plaintiffs respectfully request that the Court affirm its determinations in the Preliminary Approval Order certifying the Exchange Settlement Class under Rules 23(a) and (b)(3).

## III.    CONCLUSION

For all the forgoing reasons, Federal Plaintiffs respectfully request that the Court grant their motion.

Dated: February 17, 2021                    Respectfully submitted,

                                            **THE ROSEN LAW FIRM, P.A.**

                                            By: /s/ Phillip Kim

Phillip Kim
Laurence M. Rosen
Brian Alexander
275 Madison Ave., 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com
Email: balexander@rosenlegal.com

**POMERANTZ LLP**
Jeremy A. Lieberman
Brenda Szydlo
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
Email: jalieberman@pomlaw.com
Email: bszydlo@pomlaw.com

*Federal Class Counsel for Federal Plaintiffs
and the Exchange Act Settlement Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 17, 2021, a true and correct copy of the foregoing

document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

By: /s/ Phillip Kim
    Phillip Kim