**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE JUMIA TECHNOLOGIES AG SECURITIES LITIGATION, | Master File No. 1:19-cv-04397-PKC |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO FEDERAL PLAINTIFFS

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen
Phillip Kim
Brian Alexander
275 Madison Ave., 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com
Email: balexander@rosenlegal.com

**POMERANTZ LLP**
Jeremy A. Lieberman
Brenda Szydlo
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
Email: jalieberman@pomlaw.com
Email: bszydlo@pomlaw.com

*Federal Class Counsel for Federal Plaintiffs*
*and the Exchange Act Settlement Class*

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ............................................................................. 1

II. FACTUAL AND PROCEDURAL HISTORY ..................................................... 2

III. ARGUMENT .......................................................................................................... 3

    A. The Common Fund Doctrine Applies to the Settlement .......................................... 3

    B. The Court Should Award a Reasonable Percentage of the Common Fund ............ 4

    C. The Requested Attorneys' Fees Are Reasonable ..................................................... 6

        1. The Requested Attorneys' Fees Are Reasonable under the Percentage-of-the-Fund Method .............................................................................................. 6

        2. The Lodestar "Cross-Check" Strongly Supports the Reasonableness of the Requested Fee ..................................................................................................... 8

    D. Other Factors Considered by Courts in the Second Circuit to Confirm the Fairness and Reasonableness of the Requested Fee .............................................................. 10

        1. Time and Labor Expended Support the Requested Fee ........................... 10

        2. The Risks of Litigation Support the Requested Fee ................................ 11

        3. The Magnitude and Complexity of the Action Support the Requested Fee .................................................................................................................... 13

        4. The Quality of Federal Class Counsel's Representation Supports the Requested Fee ..................................................................................................... 15

        5. The Requested Fee in Relation to the Settlement ................................... 17

        6. Public Policy Considerations Support the Requested Fee ....................... 17

        7. The Reaction of the Exchange Act Settlement Class Supports the Requested Fee ..................................................................................................... 18

    E. Federal Class Counsel's Expenses Are Reasonable and Were Necessarily Incurred to Achieve the Benefit Obtained .......................................................................... 19

    F. Federal Plaintiffs Should Be Awarded Their Reasonable Costs and Expenses under 15 U.S.C. § 78u-4(a)(4) ...................................................................................... 20

IV. CONCLUSION ..................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arbuthnot v. Pierson*,
  607 F. App'x 73 (2d Cir. 2015) ...................................................................................7

*Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207 (JGK),
  2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010) ...............................................................9

*Blum v. Stenson*,
  465 U.S. 886 (1984) ....................................................................................................4

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ....................................................................................................3

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ......................................................................................11

*City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132 (CM) (GWG),
  2014 WL 1883494 (S.D.N.Y. May 9, 2014) ....................................................6, 15, 18

*Collins v. Olin Corp.*, No. 03-cv-945 (CFD),
  2010 WL 1677764 (D. Conn. Apr. 21, 2010) ..............................................................7

*Davis v. J.P. Morgan Chase & Co.*,
  827 F. Supp. 2d 172 (W.D.N.Y. 2011) ......................................................................6, 9

*Fogarazzo v. Lehman Bros.*, No. 03 Civ. 5194 (SAS),
  2011 WL 671745 (S.D.N.Y. Feb. 23, 2011) ................................................................7

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000) ................................................................................ *passim*

*Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*,
  212 F.R.D. 400 (E.D. Wis. 2002) ..............................................................................13

*Hall v. AT & T Mobility LLC*, No. CIV.A. 07-5325 JLL,
  2010 WL 4053547 (D.N.J. Oct. 13, 2010) ..................................................................9

*Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH),
  2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ..................................................... *passim*

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 MDL 1529 LMM,
  2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006),
  *aff'd*, 272 F. App'x 9 (2d Cir. 2008) .......................................................................16

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. MDL 1500,
2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)................................................................13

*In re AOL Time Warner S'holder Derivative Litig.*, No. 02 Civ. 6302 (CM),
2010 WL 363113 (S.D.N.Y. Feb. 1, 2010)..................................................................9

*In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*,
772 F.3d 125 (2d Cir. 2014)......................................................................................21

*In re Bisys Sec. Litig.*, No. 04 Civ. 3840 (JSR),
2007 WL 2049726 (S.D.N.Y July 16, 2007) .............................................................9

*In re Blech Sec. Litig.*, No. 94 Civ. 7696 (RWS),
2002 WL 31720381 (S.D.N.Y. Nov. 27, 2002).........................................................7

*In re Bristol-Myers Squibb Sec. Litig.*,
361 F. Supp. 2d 229 (S.D.N.Y. 2005).......................................................................6

*In re China Sunenergy Sec. Litig.*, No. 07 Civ. 7895 (DAB),
2011 WL 1899715 (S.D.N.Y. May 13, 2011) .........................................................18

*In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER),
2010 WL 2653354 (E.D.N.Y. June 24, 2010) ...........................................8, 9, 12, 17

*In re Deutsche Bank Aktiengesellschaft Sec. Litig.*, No. 16-CV-03495 (AT) (BCM),
2016 WL 5867497 (S.D.N.Y. Oct. 4, 2016) ............................................................15

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM),
2007 WL 2230177 (S.D.N.Y. July 27, 2007) .......................................................5, 15

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*, MDL No. 12-2389,
2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015),
*aff'd,* 674 F. App'x 37 (2d Cir. 2016)......................................................................11

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM) (PED),
2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)................................................... *passim*

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
279 F.R.D. 151 (S.D.N.Y. 2011) ...........................................................................7, 21

*In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 (CPS) (SMG),
2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) ......................................................20, 21

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................................8, 15, 19

*In re Ikon Office Sols., Inc. Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000).................................................................................13

*In re Indep. Energy Holdings PLC Sec. Litig.*,
  302 F. Supp. 2d 180 (S.D.N.Y. 2003)........................................................................19

*In re Marsh & McLennan Cos. Sec. Litig.*, No. 04 Civ. 8144 (CM),
  2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ..........................................................21

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ..............................................................................13

*In re MetLife Demutualization Litig.*,
  689 F. Supp. 2d 297 (E.D.N.Y. 2010) ......................................................................20

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  991 F. Supp. 2d 437 (E.D.N.Y. 2014) ........................................................................7

*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005)........................................................................................6

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008).........................................................................9

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
  724 F. Supp. 160 (S.D.N.Y. 1989) ..............................................................................8

*In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM),
  2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007)..................................................... *passim*

*In re WorldCom, Inc. Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005).........................................................................5

*Johnson v. Brennan*, No. 10 Civ. 4712 (CM),
  2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011).........................................................5, 6

*Khait v. Whirlpool Corp.*, No. 06-6381 (ALC),
  2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) .............................................................7

*La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, No. 03-CV-4372 (DMC),
  2009 WL 4730185 (D.N.J. Dec. 4, 2009)..................................................................13

*Maley v. Del Glob. Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002)............................................................... *passim*

*McDaniel v. Cty. of Schenectady*,
  595 F.3d 411 (2d Cir. 2010).........................................................................................4

*Mills v. Elec. Auto-Lite Co.*,
  396 U.S. 375 (1970).....................................................................................................4

iv

*Mo. v. Jenkins*,
  491 U.S. 274 (1989)..................................................................................................8

*Ressler v. Jacobson*,
  149 F.R.D. 651 (M.D. Fla. 1992)..........................................................................19

*Savoie v. Merchs. Banks*,
  166 F.3d 456 (2d Cir. 1999).................................................................................7, 8

*Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8331 (CM),
  2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ......................................................11

*Stefaniak v. HSBC Bank USA, N.A.*, No. 05-CV-720 S,
  2008 WL 7630102 (W.D.N.Y. June 28, 2008) .......................................................7

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
  258 F. Supp. 2d 254 (S.D.N.Y. 2003).....................................................................7

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, No. 01-CV-11814 (MP),
  2004 WL 1087261 (S.D.N.Y. May 14, 2004) .......................................................12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)...............................................................................................17

*Vaccaro v. New Source Energy Partners L.P.*, No. 15 CV 8954 (KMW),
  2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) .........................................................6

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005)............................................................................ *passim*

*Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB,
  2016 WL 6661336 (D.N.J. Nov. 10, 2016) ...........................................................16

## **Statutes**

15 U.S.C. § 78u-4 ..........................................................................................................5, 20

Private Securities Litigation Reform Act of 1995 ................................................... *passim*

Lead Plaintiff Hexuan Cai and Named Plaintiffs Kalyan Venkataraman, Kalyanasundaram Venkataraman, Matthew Sacks, and Yifeng Zhu ("Federal Plaintiffs" or "Federal Class Representatives") respectfully request that the Court grant their motion for: an award of attorneys' fees in the amount of one-third of the Federal Settlement Fund,[1] or $666,666.67, plus interest earned at the same rate as the Federal Settlement Fund;[2] reimbursement of $78,180.42, plus interest, in litigation expenses that Federal Class Counsel[3] reasonably and necessarily incurred in prosecuting and resolving the Federal Action; and reimbursement of $12,500 (or $2,500 each) in total costs and expenses incurred by each of the Federal Plaintiffs directly related to their representation of the Exchange Act Settlement Class, as authorized by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").

## I.    PRELIMINARY STATEMENT

The proposed Federal Settlement, which provides for a payment of $2,000,000 in cash in exchange for the resolution of the Federal Action, represents a favorable result for the Exchange Act Settlement Class, particularly when juxtaposed against the significant hurdles that Federal Plaintiffs would have had to overcome in order to prevail in this complex securities fraud litigation. In undertaking this litigation, Federal Class Counsel faced numerous challenges to establishing liability, loss causation, and damages. The risk of losing was real, and such risk was

---

[1] All capitalized terms used herein that are not otherwise defined herein have the meanings ascribed to them in the Stipulation of Settlement (the "Stipulation") filed with the Court on October 9, 2020. *See* ECF No. 109.

[2] The Notice informed the Exchange Act Settlement Class that Federal Class Counsel would apply to the Court for an award of attorneys' fees in an amount not to exceed one-third of the Federal Settlement Fund.

[3] The terms "Federal Class Counsel," "Federal Lead Counsel," and "Plaintiffs' Counsel" are used interchangeably in connection with Federal Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation and Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Award to Federal Plaintiffs.

1

greatly enhanced by the fact that Federal Plaintiffs were litigating against the Federal Defendants who were represented by highly-skilled defense counsel, under the heightened pleading standard of the PSLRA. Moreover, even if Federal Plaintiffs had won at trial, Jumia's depleting insurance coverage meant that there was a serious risk that Federal Defendants would have been unable to pay any judgment. Accordingly, there was a strong possibility that the case would yield little or no recovery after years of costly litigation. Despite these risks, Federal Class Counsel worked approximately 1,400 hours over the course of almost two years, all on a contingency basis with no guarantee of ever being paid.

Federal Plaintiffs believe that an attorney fee award of one-third, plus interest, properly reflects the many significant risks taken by Federal Plaintiffs and Federal Class Counsel, as well as the favorable result achieved. When examined under either the percentage of the fund or lodestar methods for calculating attorneys' fees, the requested fee is reasonable, and well within the range of attorneys' fees awarded in similar complex, contingency cases. In addition, the costs and expenses Federal Plaintiffs and their counsel requested are likewise reasonable in amount, and they were necessarily incurred in the successful prosecution of the Federal Action. Accordingly, they too should be approved.

Finally, Federal Plaintiffs each request a modest reimbursement in the amount of $2,500 (or $12,500 in total) to compensate them for their time in leading the Federal Action on behalf of Exchange Act Settlement Class Members. This request is reasonable and in line with awards granted in similar matters.

## II.    FACTUAL AND PROCEDURAL HISTORY

The concurrently filed Declaration of Phillip Kim in Support of Federal Plaintiffs' Motions for: (I) Final Approval of Class Action Settlement and Plan of Allocation; and (II) an Award of Attorneys' Fees, Reimbursement of Expenses, and Award to Federal Plaintiffs ("Kim

Decl.") is an integral part of this submission. For the sake of brevity, the Court is respectfully referred to it for a detailed description of, *inter alia*: the history of the Federal Action; the nature of the claims asserted; the negotiations leading to Settlement; the risks and uncertainties of continued litigation; and a description of the services Federal Class Counsel provided for the benefit of the Exchange Act Settlement Class.[4]

## III.    ARGUMENT

### A.    The Common Fund Doctrine Applies to the Settlement

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).[5] The Second Circuit has confirmed that attorneys who create a "common fund" are entitled to "a reasonable fee—set by the court—to be taken from the fund." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000).

"The rationale for the doctrine is an equitable one: it prevents unjust enrichment of those benefitting from a lawsuit without contributing to its cost." *Id.* at 47; *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115808, at *2 (S.D.N.Y. Nov. 7, 2007). Courts have also recognized that awards of reasonable "attorneys' fees from a common fund serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature." *Id.*; *see also Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) ("'To make certain that the public is represented by talented and experienced trial

---

[4] All citations to "¶ __" and "Ex. __" in this memorandum refer, respectively, to paragraphs in and Exhibits to, the Kim Decl.

[5] Unless otherwise noted, internal citations and quotations are omitted and emphasis is added.

3

counsel, the remuneration should be both fair and rewarding.'").

"For the common fund [doctrine] to apply, the applicant's efforts must confer a 'substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread costs proportionately among them,' an award of attorneys' fees must operate to shift the costs of litigation to that group." *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (quoting *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393-94 (1970)). All these elements are present here: Federal Class Counsel's efforts have conferred a substantial benefit ($2,000,000 in cash) on an ascertainable class, and a fee award from the common fund will operate equitably "to shift the costs of litigation" to the benefitting group – the Exchange Act Settlement Class Members. *Maley,* 186 F. Supp. 2d at 369. Accordingly, the Court should award attorneys' fees from the common fund.

### B.    The Court Should Award a Reasonable Percentage of the Common Fund

In the Second Circuit, courts "'may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method." *McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005)). The Supreme Court has, however, suggested that in common fund cases the attorneys' fee should be determined on a percentage-of-recovery basis. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("[U]nder the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed on the class[.]"). Similarly, "[t]he trend in this Circuit is toward the percentage method," rather than the lodestar method. *Wal-Mart*, 396 F.3d at 121.

"There are several reasons that courts prefer the percentage method," including that it: (i) "'directly aligns the interests of the class and its counsel' because it provides an incentive to

attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made[;]" (ii) is "closely aligned with market practices because it 'mimics the compensation system actually used by individual clients to compensate their attorneys[;]'" (iii) "'provides a powerful incentive for the efficient prosecution and early resolution of litigation[;]" (iv) "discourages plaintiffs' lawyers from running up their billable hours, one of the most significant downsides of the lodestar method[;]" and (v) "preserves judicial resources because it 'relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions.'" *Johnson v. Brennan*, No. 10 Civ. 4712 (CM), 2011 WL 4357376, at \*14-15 (S.D.N.Y. Sept. 16, 2011). "In contrast, the 'lodestar [method] create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits.'" *Wal-Mart*, 396 F.3d at 121.

The percentage method also comports with the PSLRA, which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6); *see also In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 WL 2230177, at \*16 (S.D.N.Y. July 27, 2007) ("[T]he PSLRA implicitly supports the use of the percentage of the fund method."); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005) ("apply[ing] the percentage method" due, at least in part, to "the PSLRA's express contemplation that the percentage method will be used to calculate attorneys' fees in securities fraud class actions").

Use of the percentage method does not, however, render lodestar irrelevant. Rather, part of the reasonableness inquiry is a comparison of the lodestar to the fees awarded pursuant to the

percentage of the fund method "[a]s a 'cross-check.'" *Wal-Mart*, 396 F.3d at 123. "[W]here [the lodestar method is] used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. "Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case," *id.*, or "[t]he district courts may rely on summaries submitted by the attorneys and need not review actual billing records." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005). *See also Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 184 (W.D.N.Y. 2011) (same); *Johnson*, 2011 WL 4357376, at *14-15 ("While courts still use the lodestar method as a 'cross check' when applying the percentage of the fund method, courts are not required to scrutinize the fee records as rigorously.").

In sum, the weight of authority suggests that the Court should use the percentage-of-recovery method, with a lodestar cross-check, in determining a reasonable attorneys' fee. *In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 233 (S.D.N.Y. 2005) ("Typically, courts utilize the percentage method and then 'cross-check' the adequacy of the resulting fee by applying the lodestar method."); *Hicks*, 2005 WL 2757792, at *10.

## C.   The Requested Attorneys' Fees Are Reasonable

### 1.   The Requested Attorneys' Fees Are Reasonable under the Percentage-of-the-Fund Method

Federal Plaintiffs' request of one-third for Federal Class Counsel's fee is fair, reasonable, and wholly consistent with the range of percentages that the Second Circuit and Southern District of New York have awarded in class-action settlements. *See, e.g.*, *Vaccaro v. New Source Energy Partners L.P.*, No. 15 CV 8954 (KMW), 2017 WL 6398636, at *8 (S.D.N.Y. Dec. 14, 2017) (awarding one-third of $2,850,000 settlement); *City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132 (CM) (GWG), 2014 WL 1883494, at *12 (S.D.N.Y. May 9, 2014), *aff'd sub nom.*

6

*Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) (awarding 33% of $15 million); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 164 (S.D.N.Y. 2011) (approving 33% fee); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (awarding one-third of $1.5 million settlement and collecting cases); *Fogarazzo v. Lehman Bros.*, No. 03 Civ. 5194 (SAS), 2011 WL 671745, at *3 (S.D.N.Y. Feb. 23, 2011) (awarding one-third of $6.75 million settlement); *In re Blech Sec. Litig.*, No. 94 Civ. 7696 (RWS), 2002 WL 31720381 (S.D.N.Y. Nov. 27, 2002) (awarding one-third of $2,795,000 settlement fund).[6]

One of the merits of awarding fees on a percentage basis is that it does not penalize attorneys for achieving a prompt resolution of a case, where, as here, Federal Class Counsel has developed sufficient information concerning the strengths and weaknesses of the case necessary to make an informed decision about the value of the claims. *See Wal-Mart,* 396 F.3d at 121 (one of the merits of the percentage method is that it "'provides a powerful incentive for the efficient prosecution and early resolution of litigation'"); *Savoie v. Merchs. Banks*, 166 F.3d 456, 460-61 (2d Cir. 1999) (the percentage method "removes disincentives to prompt settlement").

In sum, the request for a one-third attorneys' fee is squarely within the range of fees awarded in the Second Circuit for comparable securities class actions.

---

[6] The same is true in other courts. *See, e.g., In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014) ("[I]t is very common to see 33% contingency fees in cases with funds of less than $10 million, and 30% contingency fees in cases with funds between $10 million and $50 million"); *Khait v. Whirlpool Corp.*, No. 06-6381 (ALC), 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010) (awarding 33% of $9.25 million settlement); *Stefaniak v. HSBC Bank USA, N.A.*, No. 05-CV-720 S, 2008 WL 7630102, at *3 (W.D.N.Y. June 28, 2008) (awarding 33% of fund, finding it "typical in class action settlements in the Second Circuit"); *Collins v. Olin Corp.*, No. 03-cv-945 (CFD), 2010 WL 1677764, at *6 (D. Conn. Apr. 21, 2010) (awarding one-third of settlement fund).

## 2.     The Lodestar "Cross-Check" Strongly Supports the Reasonableness of the Requested Fee

A lodestar "cross-check" confirms the reasonableness of the requested fee award. *See Goldberger*, 209 F.3d at 50. The "lodestar" is calculated by multiplying the number of hours expended on the litigation by each particular attorney or paralegal by their current reasonable and customary hourly rate, and totaling the amounts for all time-keepers.[7] Additionally, "[u]nder the lodestar method of fee computation, a multiplier is typically applied to the lodestar." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004). "The multiplier represents the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." *Id.* (citing *Goldberger*, 209 F.3d at 47); *Savoie*, 166 F.3d at 460); *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM) (PED), 2010 WL 4537550, at *26 (S.D.N.Y. Nov. 8, 2010) ("[A] positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors."); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010) ("Where . . . counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar").

Here, Federal Class Counsel (including attorneys, paralegals, and professional support staff) devoted a total of 1,405.5 hours to the prosecution of the Federal Action, resulting in a lodestar of $1,020,601.50. Based on a one-third fee (equal to $666,666.67), Federal Class Counsel's lodestar yields a negative multiplier of 0.65. This multiplier is *well below* the range of

---

[7] The Supreme Court and courts in this Circuit have both approved the use of current rates in the lodestar calculation to "compensate for the delay in receiving compensation, inflationary losses, and the loss of interest." *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989); *Mo. v. Jenkins*, 491 U.S. 274, 283-84 (1989).

multipliers commonly awarded in securities class actions and other complex litigation. *See Wal-Mart*, 396 F.3d at 123 (upholding multiplier of 3.5 as reasonable on appeal); *Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207 (JGK), 2010 WL 3119374, at *6 (S.D.N.Y. Aug. 6, 2010) (finding that a multiplier of 2.05 is "within a range of reasonableness for other awards that have been approved"); *In re Bisys Sec. Litig.*, No. 04 Civ. 3840 (JSR), 2007 WL 2049726, at *3 (S.D.N.Y July 16, 2007) (awarding a fee representing a 2.99 multiplier and finding that the multiplier "falls well within the parameters set in this district and elsewhere"); *Davis*, 827 F. Supp. 2d at 185 (finding that a multiplier of 5.3, which was "not atypical for similar fee-award cases"); *Maley*, 186 F. Supp. 2d at 371 ("[T]he *modest* multiplier of 4.65 is fair and reasonable."); *Hall v. AT & T Mobility LLC*, No. CIV.A. 07-5325 JLL, 2010 WL 4053547, at *22 (D.N.J. Oct. 13, 2010) ("A multiplier of less than one, as is the case here, is therefore quite reasonable for a lodestar.").[8]

In sum, Federal Plaintiffs' requested fee award is below the range of what courts in this Circuit regularly award in class actions such as this one, whether calculated as a percentage of the fund or in relation to Federal Class Counsel's lodestar. Moreover, as discussed below, each of the factors established by the Second Circuit in *Goldberger* supports a finding that the requested fee is reasonable.

---

[8] *See also In re AOL Time Warner S'holder Derivative Litig.*, No. 02 Civ. 6302 (CM), 2010 WL 363113, at *23 (S.D.N.Y. Feb. 1, 2010) ("The requested multiplier of 1.60 is at the lower end of the range recently seen, which has generally run between 1.5 and 4.0."); *Hicks*, 2005 WL 2757792, at *10 ("In this Circuit, contingency fees of 1.85 times the lodestar and greater have been deemed reasonable by the courts."); *Comverse*, 2010 WL 2653354, at *5 (awarding fee representing a 2.78 multiplier); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008) ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court.").

**D.      Other Factors Considered by Courts in the Second Circuit to Confirm the Fairness and Reasonableness of the Requested Fee**

The Second Circuit has set forth the following criteria that courts should consider when reviewing a request for attorneys' fees in a common fund case:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation…; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50. Consideration of these factors, together with the analyses above, demonstrate that the requested fee is reasonable.

### 1.      Time and Labor Expended Support the Requested Fee

The time and effort expended by Federal Class Counsel in prosecuting the Federal Action and achieving the Federal Settlement supports the requested fee. As set forth in greater detail in the Kim Declaration, Federal Class Counsel's work on this matter included, among other things: (a) conducting a thorough investigation; retaining a private investigator and expert; researching and drafting detailed pleadings including the operative Second Amended Complaint; opposing Defendants' pre-motion letters and Defendants' motions to dismiss; and prepared for and participated in the mediation and settlement discussions including drafting a mediation statement (¶8); (b) engaging in a mediation process overseen by a highly experienced third-party mediator, Jed D. Melnick, Esq., of JAMS, which involved written submissions concerning liability and damages, a full-day formal mediation session, (¶¶8-9); (c) negotiating and drafting the Stipulation and related settlement documents (¶28); (d) working with Plaintiffs' damages expert to prepare the proposed Plan of Allocation (¶¶10, 56); (e) drafting the preliminary approval motion papers (¶28); and (f) overseeing the implementation of the notice process (¶¶42-52).

Moreover, the legal work on this case will not end with the Court's approval of the proposed Settlement. Additional hours and resources will necessarily be expended assisting

10

Exchange Act Settlement Class Members with their Proof of Claim Forms, responding to Exchange Act Settlement Class Members' inquiries, shepherding the claims process to conclusion, and filing a distribution motion. No additional compensation will be sought for this work. *See In re Facebook, Inc. IPO Sec. & Derivative Litig.*, MDL No. 12-2389, 2015 WL 6971424, at *10 (S.D.N.Y. Nov. 9, 2015) ("Considering that the work in this matter is not yet concluded for Plaintiffs' counsel who will necessarily need to oversee the claims process, respond to inquiries, and assist Class Members in submitting their Proof of Claims, the time and labor expended by counsel in this matter support a conclusion that a 33% fee award in this matter is reasonable."), *aff'd,* 674 F. App'x 37 (2d Cir. 2016).

The substantial time and effort devoted to this case by Federal Class Counsel to obtain the $2,000,000 Settlement confirms that the fee request is reasonable.

### 2.    The Risks of Litigation Support the Requested Fee

"[T]he risk of success [is] 'perhaps the foremost' factor to be considered in determining" a reasonable award of attorneys' fees. *Goldberger*, 209 F.3d at 54; *see also Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8331 (CM) (MHD), 2014 WL 1224666, at *21 (S.D.N.Y. Mar. 24, 2014) ("The Second Circuit long ago recognized that courts should consider the risks associated with lawyers undertaking a case on a contingent fee basis."). This is because "[n]o one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974), *abrogated on other grounds by Goldberger,* 209 F.3d 43 (2d Cir. 2002). In applying this factor, courts have repeatedly recognized that "'class actions confront even more substantial risks than other forms of litigation[,]'" *Comverse*, 2010 WL

11

2653354, at \*5, and that "[s]ecurities class actions such as this are 'notably difficult and notoriously uncertain.'" *Flag Telecom*, 2010 WL 4537550, at \*27.[9] This case was no different.

From the outset of their involvement in the Federal Action, Federal Class Counsel understood that they were embarking on a complex, expensive, and potentially lengthy litigation with no guarantee of ever being compensated for the substantial investment of time and money the case would require. In undertaking that responsibility, Federal Class Counsel were obligated to ensure that sufficient resources were dedicated to the prosecution of the Federal Action, and thus funds were available to compensate staff and to cover the considerable costs that this Federal Action requires. Federal Class Counsel received no compensation during the litigation and have advanced and incurred $78,180.42 in expenses in prosecuting the Federal Action for the benefit of the Exchange Act Settlement Class. ¶¶ 61, 76-82. If Federal Class Counsel had not achieved the Settlement, this significant investment of time and money would have been lost.

While Federal Plaintiffs and Federal Class Counsel believe that Federal Plaintiffs' claims are meritorious and remain confident in their ability to prove the claims and rebut Federal Defendants' arguments, Federal Class Counsel also recognize that there were a number of substantial risks in the litigation from the outset and that Federal Plaintiffs' ability to succeed at trial and obtain a substantial judgment was far from certain. As discussed at length in the Kim Declaration and the memorandum in support of final approval of the Settlement and Plan of Allocation, submitted herewith, there were substantial risks here with respect to establishing both liability and damages in the Federal Action. Obstacles included both the well-known general risks of complex securities litigation, as well as the specific risks inherent in this case. ¶¶ 31-39;

---

[9] *See also Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, No. 01-CV-11814 (MP), 2004 WL 1087261, at \*3 (S.D.N.Y. May 14, 2004) ("Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation.").

12

*see also Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 409 (E.D. Wis. 2002) ("Shareholder class actions are difficult and unpredictable, and skepticism about optimistic forecasts of recovery is warranted.").

Despite the many uncertainties regarding the outcome of the case, Federal Class Counsel undertook this case on a wholly contingent basis, knowing that the litigation could last for years and would require the devotion of a substantial amount of time and a significant expenditure of litigation expenses. Federal Class Counsel's assumption of this contingency fee risk strongly supports the reasonableness of the requested fee. *See Flag Telecom*, 2010 WL 4537550, at *27 ("Courts in the Second Circuit have recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award."); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk.").

### 3. The Magnitude and Complexity of the Action Support the Requested Fee

Courts have repeatedly recognized the "notorious complexity" of securities class action litigation. *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. MDL 1500, 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006); *La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, No. 03-CV-4372 (DMC), 2009 WL 4730185, at *8 (D.N.J. Dec. 4, 2009) ("securities class actions are inherently complex"). Courts have also recognized that "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA," and other changes in the law. *In re Ikon Office Sols., Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000); *see also AOL Time Warner*, 2006 WL 903236, at *9 ("[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the

13

calculation of damages. These challenges are exacerbated . . . where a number of controlling decisions have recently shed new light on the standard for loss causation."). Such was the case here.

As noted above and in the Kim Declaration, the litigation raised a number of complex questions concerning Federal Defendants' scienter, as well as liability and loss causation issues that would have required extensive efforts by Federal Class Counsel and consultation with experts to bring to resolution. To build the case, Federal Class Counsel was, among other things, required to: (a) conduct an extensive factual investigation including hiring an investigator and reviewing publicly available information to draft the Amended Securities Class Action Complaint and the operative Second Amended Complaint; (b) research, draft, and file comprehensive pre-motion letters in response to Federal Defendants' pre-motion letters for their motions to dismiss; (c) research, draft, and file an opposition to Federal Defendants' motion to dismiss; (d) consult with damages experts; (e) participate in a mediation with Mr. Melnick, including drafting a detailed mediation statement concerning Federal Plaintiffs' theories of liability, damages, loss causation, and Federal Defendants' ability to pay; (f) review the mediation statement submitted by the Jumia Defendants; (g) continue settlement negotiations after the mediation failed to produce a settlement; (h) negotiate an agreement on the terms of a settlement; (i) negotiate the written settlement documents; and (j) present those settlement terms to this Court by way of a motion for preliminary approval of the proposed settlement. If the Federal Action had not been settled, there would have been much more litigation including additional motion practice, such as a class certification motion, summary judgment motions, and *Daubert* motions; discovery, including depositions of fact and expert witnesses; a trial; post-trial motion practice; and mostly likely appeals.

Accordingly, the magnitude and complexity of the Federal Action supports the conclusion that the requested fee is fair and reasonable. *See City of Providence*, 2014 WL 1883494, at \*16 ("[T]he complex and multifaceted subject matter involved in a securities class action such as this supports the fee request.").

### 4. The Quality of Federal Class Counsel's Representation Supports the Requested Fee

The quality of the representation by Federal Class Counsel is another important factor that supports the reasonableness of the requested fee. Federal Class Counsel submits that the quality of its representation is best evidenced by the quality of the result achieved. *See Veeco*, 2007 WL 4115808, at \*7; *Global Crossing*, 225 F.R.D. at 467. Here, the Settlement provides a favorable result for the Exchange Act Settlement Class in light of the serious risks of continued litigation and the Company's compromised financial condition. *See EVCI*, 2007 WL 2230177, at \*17 ("Given the Company's limited financial wherewithal and the wasting nature of its insurance policies, Lead Counsel maximized the Class's recovery."); *see also Maley*, 186 F. Supp. 2d at 373 ("[E]fficient prosecution of plaintiffs' claims weighs in favor of a finding of the quality of Plaintiffs' Class Counsel's representation [], especially given the dire financial straits of [the company]."). Federal Class Counsel respectfully submits that the quality of their efforts in the litigation to date, together with its substantial experience in securities class actions and commitment to this litigation, provided Federal Class Counsel with the leverage necessary to negotiate the Settlement. *See* The Rosen Law Firm, P.A.'s and Pomerantz LLP's firm resumes attached as Exhibit A to the Rosen Fee Decl. and Pomerantz Fee Decl, attached respectively as Exhibits 8 and 9, to the Kim Declaration; *see also In re Deutsche Bank Aktiengesellschaft Sec. Litig.*, No. 16-CV-03495 (AT) (BCM), 2016 WL 5867497, at \*5-6 (S.D.N.Y. Oct. 4, 2016) (finding Pomerantz "qualified to serve as lead counsel" because it "possess[ed] significant

experience in the area of securities litigation and securities fraud class actions"); *Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB, 2016 WL 6661336 (D.N.J. Nov. 10, 2016) at *21 ("[Rosen Law] is highly experienced in the complex field of securities fraud class action litigation"). Moreover, the firms have an extensive history of working together to bring significant recoveries to investors, including *Koopman v. Fiat Chrysler Automobiles N.V.*, 1:15-cv-07199 (S.D.N.Y.) ($110 million settlement); *Menaldi v. Och-Ziff Capital Management Group LLC*, 1:14-cv-03251 (S.D.N.Y.) ($29 million settlement); and *In re: Galena Biopharma Inc. Sec. Litig.*, 3:14-cv-00367 (D. Or.) ($20 million settlement).

Courts have also recognized that the quality of the opposition faced by plaintiffs' counsel should be taken into consideration in assessing the quality of the counsel's performance. *See*, *e.g.*, *Veeco*, 2007 WL 4115808, at *7 (among factors supporting 30% award of attorneys' fees was that defendants were represented by "one of the country's largest law firms"); *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 MDL 1529 LMM, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work"), *aff'd*, 272 F. App'x 9 (2d Cir. 2008). Here, Federal Defendants were represented by accomplished attorneys at Sullivan & Cromwell LLP and O'Melveny & Myers LLP, two prominent national law firms with highly skilled and securities practitioners who vigorously represented the interests of their clients throughout the Federal Action.

Notwithstanding this formidable opposition, Federal Class Counsel was able to present a strong case and demonstrated willingness to prosecute the Federal Action vigorously which enabled Federal Class Counsel to achieve the favorable Settlement. Consequently, this factor

16

militates in favor of the requested fee.

### 5.    The Requested Fee in Relation to the Settlement

Courts have interpreted this factor as requiring the review of the fee requested in terms of the percentage it represents of the total recovery. "When determining whether a fee request is reasonable in relation to a settlement amount, 'the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value.'" *Comverse*, 2010 WL 2653354, at *3. As discussed in detail in Section III(C) above, the requested one-third fee is well within the range of percentage fees that courts in the Second Circuit have awarded in comparable cases. Accordingly, the fee requested is reasonable in relation to the Settlement.

### 6.    Public Policy Considerations Support the Requested Fee

"In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered." *Maley*, 186 F. Supp. 2d at 373. This is because private actions such as this one serve to further the objective of the federal securities laws to protect investors. "[The Supreme] Court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). If the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook." *Flag Telecom*, 2010 WL 4537550, at *29. As a practical matter, "[l]awsuits such as this one can only be maintained if competent counsel can be retained to prosecute them. This will occur if courts award reasonable and adequate compensation for such services where successful results are achieved." *City of Providence*, 2014 WL 1883494, at *18; *see also Hicks*, 2005 WL 2757792, at *9 ("Private

17

actions to redress real injuries further the objectives of the federal securities laws by protecting investors and consumers against fraud and other deceptive practices[,] . . . [but] [s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class."). Accordingly, public policy considerations favor Federal Class Counsel's attorneys' fee request. *See In re China Sunenergy Sec. Litig.*, No. 07 Civ. 7895 (DAB), 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) ("The Court finds that public policy supports granting attorneys' fees 'that are sufficient to encourage plaintiffs' counsel to bring securities class actions that supplement the efforts of the SEC.'").

### 7.   The Reaction of the Exchange Act Settlement Class Supports the Requested Fee

The overwhelmingly positive reaction of the Exchange Act Settlement Class also supports the requested fee. *See Flag Telecom*, 2010 WL 4537550, at *29 ("[N]umerous courts have noted that the lack of objection from members of the class is one of the most important factors in determining the reasonableness of a requested fee."). To date, the Claims Administrator had mailed 31,993 Postcard Notices to potential Settlement Class Members informing them, among other things, that Federal Class Counsel intended to apply to the Court for an award of attorneys' fees in an amount not to exceed one-third of the Settlement Fund and up to $125,000 in litigation expenses and Federal Plaintiffs would seek awards and reimbursement from the Court up to $2,500 each. While the time to object does not expire until February 24, 2021, not a single objection has been received as of February 17, 2021. ¶51; Declaration of Sarah Evans Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections ("Evans Decl."), Exhibit 2 to the Kim Decl., at ¶¶6, 13. The lack of objections is "strong evidence" of the

reasonableness of the fee request. *Ressler v. Jacobson,* 149 F.R.D. 651, 656 (M.D. Fla. 1992).[10]

**E.    Federal Class Counsel's Expenses Are Reasonable and Were Necessarily Incurred to Achieve the Benefit Obtained**

Federal Class Counsel also requests reimbursement of $78,180.42, plus interest, in expenses incurred while prosecuting the Federal Action. In support of this request, Federal Class Counsel have submitted declarations attesting to the accuracy of these expenses, which are properly recoverable by counsel. *See Flag Telecom*, 2010 WL 4537550, at *30 ("It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class"); *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) ("'Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients.'"). A significant portion of the expenses were incurred for professional services rendered by Federal Plaintiffs' damages expert, investigators, and Mr. Melnick's mediation services, and the remaining expenses are attributable to the costs of copying documents, legal and factual research, travel and other incidental expenses incurred in the course of the litigation. ¶79; Exs. 8 and 9 to the Kim Decl. These expenses were critical to Federal Plaintiffs' success in achieving the proposed Settlement, are reasonable in amount, and are customary and necessary expenses for a complex securities action. As such, they should be reimbursed. *See Flag Telecom*, 2010 WL 4537550, at *30; *Global Crossing*, 225 F.R.D. at 468 ("The expenses incurred—which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review—are the type for which 'the paying, arms' length market' reimburses attorneys. For this reason, they are properly chargeable to the Settlement fund."). Additionally, no objections to the expense request have

---

[10] Should any objections be received, Federal Plaintiffs will address them in their reply papers.

been received, and the amount requested is well below the $125,000 limit disclosed in the Notice. *See* Postcard Notice, Summary Notice, and, Long Notice, attached as Exhibits A, C, and D to the Evans Decl.; ¶51. Accordingly, Federal Class Counsel respectfully requests payment for these expenses.

### F.    Federal Plaintiffs Should Be Awarded Their Reasonable Costs and Expenses under 15 U.S.C. § 78u-4(a)(4)

The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4). Accordingly, the Court should award $2,500 each, or $12,000 in total, to Federal Plaintiffs Hexuan Cai, Kalyan Venkataraman, Kalyanasundaram Venkataraman, Matthew Sacks, and Yifeng Zhu. Courts in the Second Circuit "routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *In re Gilat Satellite Networks, Ltd.,* No. CV-02-1510 (CPS) (SMG), 2007 WL 2743675, at *19 (E.D.N.Y. Sept. 18, 2007); *Hicks*, 2005 WL 2757792, at *10 (same). "PSLRA awards are not limited to 'lost wages or other documented expenses' … [and] may be awarded in recognition of, for example, 'the time and effort expended by that plaintiff in assisting in the prosecution of the litigation." *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 370 (E.D.N.Y. 2010).

Each Plaintiff dedicated a significant amount of time to the successful prosecution of the Federal Action by, among other things: receiving periodic status reports from Federal Class Counsel regarding case developments; participating in discussions concerning the prosecution of the Federal Action, the strengths of and risks to the claims, and potential settlement; reviewing

all significant pleadings and briefs filed in the Federal Action; consulting with Federal Class Counsel regarding the settlement negotiations; and evaluating and approving the proposed Federal Settlement. *See* Declaration of Hexuan Cai at ¶¶5-8; Declaration of Kalyan Venkataraman at ¶¶6-9; Declaration of Kalyanasundaram Venkataraman at ¶¶6-9; Declaration of Matthew Sacks at ¶¶6-9 Declaration of Yifeng Zhu at ¶¶6-9, attached to the Kim. Decl. as Exhibits 3 to 7, respectively.

These are "precisely the types of activities that support awarding reimbursement of expenses to class representatives." *In re Marsh & McLennan Cos. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 WL 5178546, at *21 (S.D.N.Y. Dec. 23, 2009). Accordingly, Federal Plaintiffs respectfully request that the Court grant their requests for reimbursement of their "reasonable costs and expenses incurred in managing this litigation and representing the Class." *Id.*; *see also In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*, 772 F.3d 125, 132 (2d Cir. 2014) (affirming award of approximately $453,000 to representative plaintiffs); *Veeco*, 2007 WL 4115808, at *12 (awarding lead plaintiff approximately $15,900 for time spent supervising litigation, and characterizing such awards as "routine" in this Circuit); *Gilat,* 2007 WL 2743675, at *19 (granting PSLRA awards where "the tasks undertaken by employees of Lead Plaintiffs reduced the amount of time those employees would have spent on other work and these tasks . . . appear[ed] reasonable to the furtherance of the litigation")*; Giant Interactive Grp.,* 279 F.R.D. at 166 (awarding $10,000 as an incentive and for lost time).

## IV.   CONCLUSION

For the foregoing reasons, Federal Plaintiffs respectfully request that the Court: (a) award Federal Class Counsel their reasonable attorneys' fees in the total amount of one-third of the Federal Settlement Amount (or $666,666.67); (b) reimburse Federal Class Counsel for expenses and costs in the amount of $78,180.42; and (c) reimburse Federal Plaintiffs for their time spent

21

on the Federal Action in the amount of $2,500 each, or $12,500 in total.

Dated: February 17, 2021                Respectfully submitted,

                                        **THE ROSEN LAW FIRM, P.A.**

                                        By: /s/Phillip Kim
                                        Phillip Kim
                                        Laurence M. Rosen
                                        Brian Alexander
                                        275 Madison Ave., 40th Floor
                                        New York, New York 10016
                                        Telephone: (212) 686-1060
                                        Fax: (212) 202-3827
                                        Email: pkim@rosenlegal.com
                                        Email: lrosen@rosenlegal.com
                                        Email: balexander@rosenlegal.com

                                        **POMERANTZ LLP**
                                        Jeremy A. Lieberman
                                        Brenda Szydlo
                                        600 Third Avenue, 20th Floor
                                        New York, New York 10016
                                        Telephone: (212) 661-1100
                                        Facsimile: (917) 463-1044
                                        Email: jalieberman@pomlaw.com
                                        Email: bszydlo@pomlaw.com

                                        *Federal Class Counsel for Federal Plaintiffs and*
                                        *the Exchange Act Settlement Class*

## CERTIFICATE OF SERVICE

I hereby certify that on February 17, 2021, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

By: /s/ Phillip Kim
Phillip Kim

23