**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE JUMIA TECHNOLOGIES AG SECURITIES LITIGATION, | Master File No. 1:19-cv-04397-PKC |

**DECLARATION OF PHILLIP KIM IN SUPPORT OF FEDERAL PLAINTIFFS'
MOTIONS FOR: (I) FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND PLAN OF ALLOCATION; AND (II) AN AWARD OF
ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES,
<u>AND AWARD TO FEDERAL PLAINTIFFS'</u>**

PHILLIP KIM declares as follows:

## I.   INTRODUCTION

1.     I, Phillip Kim, am a Partner at The Rosen Law Firm, P.A. ("Rosen Law").[1] Rosen and Pomerantz LLP ("Pomerantz") (together, "Federal Class Counsel" or "Federal Lead Counsel" or "Plaintiffs' Counsel") represent Hexuan Cai, Kalyan Venkataraman, Kalyanasundaram Venkataraman, Matthew Sacks, and Yifeng Zhu ("Federal Plaintiffs" or "Federal Class Representatives") in the above-captioned securities class action lawsuit (the "Federal Action"). I have personal knowledge of the matters set forth herein and, if called upon, I could and would completely testify thereto.

2.     I respectfully submit this Declaration in support of Federal Plaintiffs' Motions for: (I) Final Approval of Class Action Settlement and Plan of Allocation; and (II) an Award of Attorneys' Fees, Reimbursement of Expenses, and Award to Federal Plaintiffs.

3.     On October 19, 2020, the Court entered the Order Preliminarily Approving Proposed Settlement, Certifying Exchange Act Settlement Class, Providing for Notice, and Scheduling Settlement Hearing ("Preliminary Approval Order") (ECF No. 113) which granted preliminary approval of the proposed settlement (the "Federal Settlement" or the "Settlement") and the proposed plan for allocating the proceeds of the Settlement to eligible Settlement Class Members (the "Plan of Allocation").

4.     Federal Plaintiffs now seek final approval of the Federal Settlement and Plan of Allocation as well as an award of attorneys' fees in an amount not to exceed one-third of the Federal Settlement Fund (or $666,666.67) plus interest, reimbursement of Federal Class Counsel's expenses in the amount of $78,180.42 plus interest and awards pursuant to the Private

---

[1] All capitalized terms that are not defined herein have the same meanings as set forth in the Stipulation of Settlement dated October 9, 2020 (*see* ECF No. 109) (the "Stipulation").

Securities Litigation Reform Act of 1995 ("PSLRA") in the total amount of $12,500 (or $2,500 each) for costs and expenses incurred by Federal Plaintiffs in connection with their representation of the Exchange Act Settlement Class (the "Fee and Expense Application").[2]

5.      The resolution of the Federal Action is part of a global settlement which would also resolve the related action *Convery v. Jumia Technologies AG, et al*., Index No. 656021/2019 pending in the Supreme Court of New York, New York County ("State Action"). Approval of the Federal Action Settlement and the State Action Settlement are contingent upon each other.

6.      The proposed Federal Settlement now before the Court provides for the resolution of claims in the Federal Action in exchange for a cash payment of $2,000,000. The Total Settlement Amount to resolve both the Federal Action and the State Action is $5,000,000, with $2,000,000 allocated to resolve to the Federal Action and $3,000,000 allocated to resolve to the State Action.

7.      As detailed herein, Federal Plaintiffs and Federal Class Counsel respectfully submit that the Federal Settlement represents a  favorable result for the Exchange Act Settlement Class in light of the significant risks in the Federal Action. As explained further herein, the Federal Settlement provides a considerable benefit to the Exchange Act Settlement Class by conferring a certain and immediate recovery while avoiding the significant risks and expense of continued litigation, including the risk that the class could recover less than the Federal Settlement Amount (or nothing) after years of additional litigation and delay.

---

[2] In conjunction with this Declaration, Federal Plaintiffs, are submitting a Memorandum of Law in Support of Federal Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation (the "Settlement Memorandum") and Memorandum of Law in Support of Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Award to Federal Plaintiffs (the "Fee Memorandum").

8.    By the time the Federal Settling Parties agreed to settle, Federal Plaintiffs and Federal Class Counsel understood the strengths and weaknesses of the claims and defenses asserted, and could make informed appraisals regarding the chances of success. Federal Class Counsel expended significant time and resources analyzing the legal and factual issues in the Federal Action for the benefit of Jumia shareholders including conducting a thorough investigation the alleged fraud in connection with researching, preparing, and drafting; investigating and drafting several pleadings including the highly detailed Second Amended Securities Class Action Complaint (the "Second Amended Complaint"); retaining a private investigator and an expert; reviewing Jumia's public SEC filings, Jumia's public statements, news articles and research reports; opposing Defendants' pre-motion letters and Defendants' motion to dismiss; and preparing for and participating in the mediation and settlement discussions including drafting a mediation statement.

9.    On May 12, 2020, Federal Plaintiffs, State Plaintiff, Jumia, and the Individual Defendants engaged in an all-day, virtual mediation before Jed Melnick, Esq. of JAMS. As a settlement was not reached at this mediation session, Federal Defendants proceeded with the filing of the motion to dismiss in the Federal Action and a joinder of that motion. Despite continued litigation, the Federal Settling Parties continued their arm's-length negotiations through Mr. Melnick. Eventually, on August 11, 2020, Federal Plaintiffs, State Plaintiff, Jumia, Federal Defendants, and State Defendants agreed to a global settlement.

10.    As discussed herein, the Plan of Allocation was developed with the assistance of Federal Plaintiffs' damages expert and provides for the distribution of the net proceeds of the Federal Settlement to class members who submit Proof of Claim and Release Forms ("Claim Forms") that are approved for payment by the Court on a *pro rata* basis based on their losses

attributable to the alleged fraud. With respect to the Fee and Expense Application, as discussed in the Fee Memorandum, the requested fee is well within the range of percentage awards granted by courts in this Circuit and across the country in comparable securities class actions. Additionally, the requested fee results in a negative multiplier of 0.65 on Federal Class Counsel's lodestar – which is well below the range of multipliers routinely awarded by courts in this Circuit and across the country.

11.     Similarly, Federal Plaintiffs' request for $2,500 each, or $12,500 in total, as reimbursement of their time dedicated to this litigation is modest and in line with similar requests approved by courts.

12.     For all of the reasons set forth herein and in the accompanying memoranda, including the quality of the result obtained and the numerous significant litigation risks discussed below, Federal Plaintiffs and Federal Class Counsel respectfully submit that the Federal Settlement and the Plan of Allocation are "fair, reasonable, and adequate" and should be approved and the request for attorneys' fees and reimbursement of litigation expenses is also fair and reasonable and should be approved.

## II.     PROSECUTION OF THE ACTION

### A.     Background

13.     On May 14, 2019, a class action complaint was filed in the Southern District of New York, styled as *Strugala v. Jumia Technologies AG*, Case No. 19-cv-4397, asserting violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") (ECF No. 1).

14.     On May 28, 2019, a related action was filed in the Southern District of New York styled as *Zhi v. Jumia Technologies AG*, Case No. 19-cv-4952 alleging the same Exchange Act violations.

15.     After extensive briefing on competing motions for consolidation, appointment of lead plaintiff and lead counsel, on October 29, 2019, the Court consolidated the actions; appointed Hexuan Cai as Lead Plaintiff and Kalyan and Kalyanasundaram Venkataraman as Named Plaintiffs for the Federal Action; and approved Pomerantz and Rosen Law as Co-Lead Counsel. (ECF No. 57).

16.     On December 30, 2019, Federal Plaintiffs filed the Amended Securities Class Action Complaint (the "Amended Complaint") asserting claims against Defendants Jumia, Messrs. Hodara, Poignonnec, Maillet-Mezeray, Bogaert, Igoudala, Judja-Sato, Klein, Ndiaye, Odgers, and Rittenhouse, Ms. Kaya Mwanza, and the Underwriter Defendants under Sections 10(b) and 20(a) of the Exchange Act and Sections 11 and 15 of the Securities Act of 1933 ("Securities Act") (ECF No. 62).

17.     On February 14, 2020, Defendants filed pre-motion letters with the Court explaining the grounds upon which they wished to move to dismiss the Amended Complaint. (ECF Nos. 70, 71). On February 28, 2020, Federal Plaintiffs filed a letter in response to Defendants' pre-motion to dismiss letters and as instructed by the Court's February 18, 2020 order, indicated that they would amend the Amended Complaint. (ECF No. 84)

18.     On March 13, 2020, Federal Plaintiffs filed the operative Second Amended Complaint asserting claims against the Federal Defendants under Sections 10(b) and 20(a) of the Exchange Act and Sections 11 and 15 of the Securities Act. (ECF No. 109).

19.     On April 3, 2020, Defendants filed pre-motion letters with the Court explaining the grounds upon which they wished to move to dismiss the Second Amended Complaint. (ECF Nos. 92, 93). On April 10, 2020, Federal Plaintiffs filed their response to Defendants' pre-motion letters to dismiss the Second Amended Complaint.

20.     On June 1, 2020, Jumia and the Individual Defendants filed a motion to dismiss (ECF No. 99), which the Underwriter Defendants joined. (ECF No. 103).

21.     Federal Plaintiffs filed an opposition to the motion to dismiss on July 31, 2020. (ECF No. 104).

### B.     Mediation and the Negotiation of the Settlement

22.     Federal Plaintiffs and Federal Class Counsel believed that a strategy of prompt mediation was in the best interest of the Federal Plaintiff and the Exchange Act Settlement Class based on Jumia's poor financial condition during the course of the litigation that raised doubt about the Company's ability to pay a judgment after years of litigation. The available insurance was also being reduced by the costs of defending this Federal Action, and the insurance would have been depleted at a substantially greater rate if this Federal Action proceeded into discovery or to trial.

23.     Accordingly, the Federal Settling Parties agreed to retain Jed D. Melnick, Esq. of JAMS as a mediator. Mr. Melnick is an experienced mediator who has successfully mediated many complex securities cases.

24.     On May 12, 2020, Federal Plaintiffs, State Plaintiff, Jumia, and the Individual Defendants engaged in a mediation via videoconference before Mr. Melnick. As part of the mediation process, the Federal Settling Parties exchanged written statements concerning liability, damages, loss causation, and Federal Defendants' ability to pay. At the mediation, there were

detailed discussions about the merits of Federal Plaintiffs' claims and the defenses to those claims.

25.     The session ended without an agreement, but over the next several months, Mr. Melnick facilitated further discussions and a settlement was reached on August 11, 2020 with a term sheet fully executed that same day which included the settlement of the State Action as well.

26.     The Declaration of Jed Melnick ("Melnick Decl."), attached hereto as **Exhibit 1,** provides Mr. Melnick's perspective of the Settlement and the process by which it was reached. After the all-day mediation session and continued settlement discussions, Mr. Melnick issued a mediator's proposal which the parties to both the Federal Action and State Action accepted. Melnick Decl. ¶14. Mr. Melnick believes that the Settlement is a fair, reasonable, and adequate resolution of the claims of the Federal Action, as well as the State Action. *Id.* ¶16.

27.     On August 12, 2020, the Parties notified the Court of the Federal Settlement and requested a continuance of all deadlines. (ECF No. 105).

28.     Thereafter, the Parties negotiated the final terms of the Federal Settlement and drafted the Stipulation and related settlement papers. On October 9, 2020, Federal Plaintiffs filed the Stipulation and the Unopposed Motion for Entry of Order Preliminarily Approving Settlement and Establishing Notice Procedures. (ECF Nos. 109-111).

**C.     Preliminary Approval of the Settlement**

29.     On October 19, 2020, the Court entered the Preliminary Approval Order, which preliminarily approved the Federal Settlement, certified the Exchange Act Settlement Class for settlement purposes, appointed Federal Plaintiffs as Class Representatives of the Exchange Act

Settlement Class, and appointed Rosen Law and Pomerantz as Federal Class Counsel. (ECF No.

113).

30.     Paragraph 1 of the Preliminary Approval Order certified Exchange Act Settlement

Class is defined as follows:

> For settlement purposes only, pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, the Federal Action is hereby preliminarily certified as a class action on behalf of the Exchange Act Settlement Class of all persons or entities (and their beneficiaries) who purchased or otherwise acquired Jumia ADSs from April 12, 2019 through and including December 9, 2019, and were damaged thereby.  Excluded from the Exchange Act Settlement Class are the Released Defendant Parties, except for any Investment Vehicle. Also excluded from the Exchange Act Settlement Class are those persons who timely and validly request exclusion in accordance with this Federal Preliminary Approval Order.

## III.     RISKS OF CONTINUED LITIGATION

31.     The Federal Settlement provides an immediate and certain benefit to the

Exchange Act Settlement Class in the form of a cash payment of $2,000,000. As explained

below, there were significant risks that Federal Plaintiffs and the class might recover

substantially less than the Federal Settlement Amount – or nothing at all – if the case proceeded

through additional years of litigation to a potentially litigated verdict. During the mediation, it

became clear to Federal Class Counsel that Jumia's insurance coverage was likely the only

prospective source of recovery. Significantly, these insurance funds likely would have been

depleted by defense costs of this litigation had the case not settled. Jumia's financial condition

and limited insurance, which would be eroded by substantial defense costs in this Federal Action,

created a very real risk that Federal Plaintiffs would not be able to recover on a judgment as large

as the Settlement after trial or that Jumia might become insolvent during the course of the

litigation. Federal Defendants also had substantial defenses with respect to liability, loss

causation, and damages in this case. Thus, there was a very real risk, that after years of

protracted litigation, Federal Plaintiffs and the Exchange Act Settlement Class could achieve no recovery at all, or a lesser recovery that the Federal Settlement.

### A.      Risks of Proving Liability

32.      Federal Plaintiffs and Federal Class Counsel also recognized that this Federal Action presented a number of substantial risks to establishing liability, loss causation and damages.

33.      For example, Federal Defendants argued that Federal Plaintiffs did not allege any false or misleading statements about Jumia's business including reported metrics, including gross merchandise value, active consumers, and active sellers. (ECF No. 100). With respect to scienter, Federal Defendants argued that Federal Plaintiffs did not meet this heightened burden and that Federal Plaintiffs neither adequately alleged a motive and opportunity or conscious misbehavior or recklessness. *Id.*

### B.      Risks of Proving Loss Causation and Damages

34.      Even assuming that Federal Plaintiffs overcame the above risks and successfully established liability, Federal Plaintiffs would have confronted considerable challenges in establishing loss causation and damages. *See Dura Pharm., Inc. v. Boudo*, 544 U.S. 336, 345-46 (2005) (plaintiffs bear the burden of providing "that the defendant's misrepresentations 'caused the loss for which the plaintiff seeks to recover.'").

35.      Here, Federal Defendants argued that the Second Amended Complaint failed to plead loss causation because the alleged corrective disclosures did not reveal any unknown information. (ECF No. 100). If the Federal Action proceeded beyond the pleading stage, Federal Defendants likely would have raised other arguments to defeat loss causation and disprove damages.

36.     Furthermore, Federal Plaintiffs and Federal Defendants would each need to supply expert testimony regarding loss causation and damages and it is unknown whose expert a jury may believe. Federal Plaintiffs would have to prove that the price of Jumia's ADSs declined as a result of the disclosure of the fraud, not any other non-fraud factors which could be challenging.

C.     **Other Risks**

37.     In order to succeed, Federal Plaintiffs would also have had to prevail at several stages – including Federal Defendants' motion to dismiss the Second Amended Complaint that could have potentially ended or seriously curtailed the Federal Plaintiffs' case; on a motion for class certification; expected motions for summary judgment; and at trial and, even if Federal Plaintiffs prevailed on all of those, on appeals that were likely to follow. This is a process that could possibly extend for years and might lead ultimately to a smaller recovery or no recovery at all. Indeed, even prevailing at trial would not have guaranteed a recovery larger than the $2,000,000 Federal Settlement.

38.     If Federal Plaintiffs defeated the pending motion to dismiss, discovery would commence. In this case, discovery posed particular challenges as Jumia is a German company with substantial operations throughout Africa and many defendants residing in the United Arab Emirates. Accordingly, there was no guarantee that Federal Plaintiffs would have been able to obtain the necessary evidence to prove their case through discovery; and even if they could do so, it would be costly and significantly delay any potential recovery to Exchange Act Class Members. To take substantially all depositions and seek documents, Federal Plaintiffs would have to follow appropriate international conventions and/or apply to this Court for Letters Rogatory. And if documents were produced, it would also require extensive translation or the

retention of multilingual attorneys to facilitate document review as the documents would likely be in foreign languages.

39.     Given these significant litigation risks and ability-to-pay concerns, Federal Plaintiffs and Federal Class Counsel believe that the Federal Settlement represents an excellent result for the Exchange Act Settlement Class.

   **D.     The Settlement is Reasonable in Light of the Potential Recovery in the Federal Action**

40.     The Federal Settlement is also fair and reasonable in light of the potential recovery. Despite limitations on Defendants' resources, the Settlement provides for $2 million to be paid into the Federal Settlement Fund. Taking an aggressive damages analysis, damages are estimated to be $258 million. The Federal Settlement represents a good result, returning almost 0.77% to investors. Moreover, when the Federal Settlement is combined with the State Settlement in the State Action, the recovery is even better, returning almost 1.94% to investors.

41.     In contrast, if Federal Plaintiffs had not settled, Defendants would have contended that Federal Plaintiffs' damages were greatly overstated, or that there were no damages at all.  As noted above, Federal Defendants put forward several damages and loss causation arguments that, if accepted, would have greatly reduced damages. Accordingly, the level of recovery is reasonable in light of the significant litigation risks.

**IV.     FEDERAL     PLAINTIFFS'     COMPLIANCE     WITH     THE     COURT'S PRELIMINARY APPROVAL ORDER REQUIRING ISSUANCE OF NOTICE**

42.     The Court appointed Strategic Claims Services ("SCS") as the Claims Administrator in the Preliminary Approval Order.

43.     Pursuant to the Preliminary Approval Order at ¶10, Federal Class Counsel oversaw the Court's directives for SCS to provide notice of the Federal Settlement to Exchange Act Class Members by:

      a.  either (i) emailing the Summary Notice of (I) Pendency of Class Actions and Proposed Settlement of Federal Action and State Action; (II) Motions for Awards of Attorneys' Fees and Litigation Expenses; and (III) Settlement Fairness Hearings ("Summary Notice") to the Federal Stipulation, to all Exchange Act Settlement Class Members for whom the Claims Administrator is able to obtain email addresses, or (ii) if no email address can be obtained, mailing the Postcard Notice by first class mail to all Exchange Act Settlement Class Members who can be identified with reasonable effort.

      b.  publication of the Summary Notice in *Investor's Business Daily* and electronically disseminated over a *GlobeNewswire*.

      c.  establishing a settlement-specific website with copies of the Notice of (I) Pendency of Class Actions and Proposed Settlement of Federal Action and State Action; (II) Motions for Awards of Attorneys' Fees and Litigation Expenses; and (III) Settlement Fairness Hearings ("Long Notice"), Federal Stipulation, Proof of Claim and Release Form ("Claim Form"), and the ability to file claims electronically.

44.     As detailed in the Declaration of Sarah Evans Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections ("Evans Decl."), attached hereto as **Exhibit 2**, SCS timely completed these notice procedures, supervised by Federal Class Counsel.

45.     The Notice contains, among other things, a description of the Federal Action; the definition of the Settlement Class; a summary of the terms of the Federal Settlement and the proposed Plan of Allocation; and a description of Exchange Act Settlement Class Members' rights to participate in the Settlement, object to the Settlement, the Plan of Allocation, and/or the Fee and Expense Application, or exclude themselves from the Settlement Class. The Notice also informs Exchange Act Settlement Class Members of Federal Class Counsel's intent to apply for an award of attorneys' fees in an amount not to exceed one-third of the Settlement Fund, for reimbursement of litigation expenses in an amount not to exceed $125,000, and award to Federal Plaintiffs not to exceed $2,500 each.

46.     The Notice included the February 24, 2021 deadline for Exchange Act Settlement Class Members to file objections to the Settlement, the Plan of Allocation, and/or the Fee and Expense Application, or to request exclusion from the Settlement Class.

47.     To date, SCS mailed 31,993 Postcard Notices. Out of the 31,993 Postcard Notices mailed, SCS received requests from 37 potential Exchange Act Settlement Class Members to mail them copies of the Long Notice and Claim Form. Evans Decl. ¶6. Additionally, SCS was notified by one of the Nominee Account Holders that it emailed a total of 18,802 of their customers to notify them of this settlement and provide direct links to the Long Notice and Claim Form on the settlement website. *Id* at ¶7. SCS also emailed a link to the Long Notice and Claim Form to 8 potential Exchange Act Settlement Class Members. *Id*.

48.     In accordance with the Preliminary Approval Order, SCS caused the Summary Notice to be published once in *Investor's Business Daily* and transmitted over *GlobeNewswire* on January 25, 2021. Evans Decl. ¶9, Ex. C to Evans Decl.

49.     SCS maintains a toll-free telephone number (1-866-274-4004) for Exchange Act Settlement Class Members to call and obtain information about the Settlement and/or request a Long Notice and Claim Form. SCS has promptly responded to each telephone inquiry and will continue to address Exchange Act Settlement Class Member inquiries. Evans Decl. ¶10.

50.     SCS established a settlement-dedicated webpage. The webpage contains the current status of the case; the deadlines; the online claim filing link; and important documents such as the Long Notice and Claim Form, the Postcard Notice, the Federal Preliminary Approval Order, and the Federal Stipulation. Evans Decl. ¶11.

51.     As of February 17, 2021, there have been no objections to any aspect of the Federal Settlement received. There has only been one request for exclusion. Evans Decl. ¶¶12-13. The request for exclusion, however, is from a Jumia shareholder who had a gain with her Jumia transactions and thus no recognized loss under the Plan of Allocation. Accordingly this shareholder does not fall in the definition of an Exchange Act Settlement Class Member as she was not damaged. *Id.* at ¶12, Ex. E to Evans Decl.

52.     Pursuant to the Preliminary Approval Order, Federal Class Counsel will file reply papers on March 10, 2021 that will address the any further requests for exclusion and any objections that may be received.

## V.     ALLOCATION OF THE PROCEEDS OF THE SETTLEMENT

53.     Pursuant to the Preliminary Approval Order, the Notice informed Exchange Act Settlement Class Members that the deadline to file a claim was by February 19, 2021, by mail, and February 24, 2021, electronically. The State Action was preliminarily approved on January 5, 2021. The preliminary approval of the settlement in the State Action triggers the notice provision in the order preliminarily approving the settlement in the Federal Action. Under that

order, "[n]ot later than twenty-one (21) calendar days after the date" this Court granted preliminary approval of the settlement in the Federal Action or the date the State Court granted preliminary approval of the settlement in the State Action, "whichever is later," the claims administrator is required to email the summary notice or mail the postcard notice to all class members. (ECF No. 113, ¶10(a)). The date for SCS to provide notice to Exchange Act Class Members was January 26, 2021.

54.     As envisioned by the Preliminary Approval Order and the similar order entered in the State Action, Federal Class Counsel, with the Court's approval, will accept claims from Exchange Act Settlement Class Members as long as they are submitted no later than "ninety (90) calendar days" after the deadline for providing notice which is April 26, 2021. (*See* ECF No. 115). The Long Notice, Summary Notice and Postcard Notice informed potential Exchange Act Settlement Class Members that "Subject to the Courts' approval, the Claims Administrator will continue to accept as timely submitted Proof of Claim and Release Forms received by April 26, 2021." Evans Decl., Exs. A, C, and D to the Evans Decl.

55.     As set forth in the Notice, the Net Federal Settlement Fund will be distributed among Exchange Act Settlement Class Members according to the plan of allocation approved by the Court.

56.     Federal Plaintiffs' damages expert developed the proposed Plan of Allocation in consultation with Federal Class Counsel. Federal Class Counsel believes that the Plan of Allocation provides a fair and reasonable method to equitably allocate the Net Settlement Fund among Exchange Act Settlement Class Members who suffered losses as result of the conduct alleged in the Second Amended Complaint.

57.     The Plan of Allocation is set forth at pages 26 to 31 of the Long Notice. *See* Exhibit D to the Evans Decl. As described in the Long Notice, calculations under the Plan of Allocation are not intended to be estimates of, nor indicative of, the amounts that Exchange Act Settlement Class Members might have been able to recover at trial or estimates of the amounts that will be paid to Authorized Claimants pursuant to the Federal Settlement. Instead, the calculations under the plan are only a method to weigh the claims of Exchange Act Settlement Class Members against one another for the purposes of making an equitable allocation of the Net Settlement Fund.

58.     In developing the Plan of Allocation, Federal Plaintiffs' damages expert calculated the estimated amount of artificial inflation in the per share closing prices of Jumia ADSs which allegedly was proximately caused by Federal Defendants' alleged false and misleading statements and material omissions. In calculating the estimated artificial inflation allegedly caused by Federal Defendants' alleged misrepresentations and omissions, Federal Plaintiffs' damages expert considered price changes in Jumia ADSs in reaction to certain public announcements allegedly revealing the truth concerning Federal Defendants' alleged misrepresentations and material omissions, adjusting for price changes that were attributable to market or industry forces and disclosures of information unrelated to the alleged fraud as well as the strength of the claims.

59.     Under the Plan of Allocation, a "Recognized Loss" will be calculated for each purchase or other acquisition of Jumia ADSs in reaction to certain public announcements allegedly revealing the truth concerning during the Settlement Class Period that is listed in the Claim Form and for which adequate documentation is provided. The calculation of Recognized Loss will depend upon several factors, including when the stock was purchased or acquired and

sold, and at what price. In general, the Recognized Loss calculated will be the difference between the estimated artificial inflation on the date of purchase and the estimated artificial inflation on the date of sale, or the difference between the actual purchase price and sales price, whichever is less.

60.     The Plan of Allocation was designed to allocate the proceeds of the Net Settlement Fund among Exchange Act Settlement Class Members fairly and rationally based on the losses they suffered on transactions in Jumia ADSs that were attributable to the conduct alleged in the Second Amended Complaint. Accordingly, Federal Class Counsel respectfully submits that the Plan of Allocation is fair and reasonable and should be approved by the Court.

## VI.     THE FEE AND LITIGATION EXPENSE APPLICATION

61.     As set forth in the Notice, Federal Class Counsel is also applying to the Court for an award of attorneys' fees not to exceed one-third of the Federal Settlement Fund (or $666,666.67) plus interest earned at the same rate as the Federal Settlement Fund (the "Fee Application"). Federal Plaintiffs also request reimbursement of expenses that Federal Class Counsel incurred in connection with the prosecution of the Federal Action from the Federal Settlement Fund in the amount of $78,180.42, plus interest. Federal Plaintiffs further request reimbursement in the total amount of $12,500 in total, or $2,500 each, for costs and expenses they incurred directly related to their representation of the Settlement Class pursuant to 15 U.S.C. § 78u-4(a)(4). The legal authorities supporting the requested fee and expenses are set forth in the Fee Memorandum. The primary factual bases for the requested fee and expenses are summarized below.

A.      **The Fee Application**

62.     For their efforts on behalf of the Exchange Act Settlement Class, Federal Class Counsel is applying for a fee award to be paid from the Federal Settlement Fund on a percentage basis. As set forth in the accompanying Fee Memorandum, the percentage method is the appropriate method of fee recovery because it aligns the lawyers' interest in being paid a fair fee with the interest of the Settlement Class in achieving the maximum recovery in the shortest amount of time required under the circumstances and has been recognized as appropriate by the Supreme Court and Second Circuit for cases of this nature.

63.     Based on the quality of the result achieved, the extent and quality of the work performed, the significant risks of the litigation, and the fully contingent nature of the representation, Federal Class Counsel respectfully submits that the requested fee award is reasonable and should be approved. As discussed in the Fee Memorandum, a one-third fee award is fair and reasonable for attorneys' fees in common fund cases such as this and is within the range of percentages awarded in securities class actions in this Circuit with comparable settlements.

1.      **Federal Plaintiffs Support the Fee Application**

64.     Each of the Federal Plaintiffs has evaluated the Fee Application and believes it to be reasonable. As set forth in the declarations submitted by Federal Plaintiffs, each has concluded that Federal Class Counsel's requested fee is fair and reasonable based on the work performed, the recovery obtained for the Settlement Class, and the risks of the Federal Action. *See* Declaration of Hexuan Cai ("Cai Decl."), attached hereto as **Exhibit 3**; Declaration of Kalyan Venkataraman ("Kalyan Venkataraman Decl."), attached hereto as **Exhibit 4**; Declaration of Kalyanasundaram Venkataraman ("Kalyanasundaram Venkataraman Decl."),

attached hereto as **Exhibit 5**; Declaration of Matthew Sacks ("Sacks Decl."), attach hereto as **Exhibit 6**; and Declaration of Yifeng Zhu ("Zhu Decl."), attached hereto as **Exhibit 7**.

65.     Federal Plaintiffs' endorsement of Federal Class Counsel's fee request further demonstrates its reasonableness and should be given weight in the Court's consideration of the fee award.

### 2.     The Work and Experience of Counsel

66.     Attached hereto as **Exhibits 8** and **9** are the Declaration of Phillip Kim on Behalf of The Rosen Law Firm, P.A. Concerning Attorneys' Fees and Expenses ("Rosen Fee Decl.") and the Declaration of Brenda Szydlo on Behalf of Pomerantz LLP Concerning Attorneys' Fees and Expenses ("Pomerantz Fee Decl."), respectively.

67.     Rosen Law has expended a total of 848.36 hours in the prosecution of the Federal Action. Rosen Law's resulting lodestar is $639,150.50. Rosen Fee Decl. ¶¶5-6. Pomerantz has expended a total of 557.14 hours in the prosecution of the Federal Action. Pomerantz's resulting total lodestar is $381,451.00. Pomerantz Fee Decl. ¶¶5-6. In total, Federal Class Counsel have spent 1,405.5 hours on the litigation of the Federal Action for a total lodestar of $1,020,601.50.

68.     The requested fee of one-third of the Federal Settlement Fund represents $666,666.67 (plus interest), and therefore represents a negative multiplier of 0.65 to Federal Class Counsel's lodestar. This multiplier is fair and reasonable based on the risks of the litigation, the quality of the representation, and the results obtained. As discussed in further detail in the Fee Memorandum, the requested multiplier is well below the range of fee multipliers typically awarded in comparable securities class actions and in other class actions involving significant contingency fee risk, in this Circuit and elsewhere.

69.     As demonstrated by the firm resumes attached as Exhibit A to the Rosen Fee Decl. and Exhibit A to the Pomerantz Fee Decl., Federal Class Counsel are experienced and skilled securities litigation practitioners, with long and successful track records of representing investors in similar cases. Not only does each firm have experience and successful individually, but they have an extensive history of working together to bring significant recoveries to investors in this District, including *Koopman v. Fiat Chrysler Automobiles N.V.*, 1:15-cv-07199 (S.D.N.Y.) ($110 million settlement) and *Menaldi v. Och-Ziff Capital Management Group LLC*, 1:14-cv-03251 (S.D.N.Y.) ($29 million settlement). Federal Class Counsel's experience and the results achieved for the Exchange Act Settlement Class Members supports the Fee and Expense Application.

### 3.     Standing and Caliber of Defendants' Counsel

70.     The quality of the work performed by Federal Class Counsel in attaining the Settlement should also be evaluated in light of the quality of the opposition. Here, Federal Defendants were represented by Sullivan & Cromwell LLP and O'Melveny & Myers LLP, two highly respected law firms that vigorously represented the interests of their clients throughout the Federal Action. In the face of this experienced and formidable opposition, Federal Class Counsel was nonetheless able to persuade Federal Defendants to settle the case on terms favorable to the Exchange Act Settlement Class.

### 4.     The Risks of Litigation and the Need to Ensure the Availability of Competent Counsel in High-Risk Contingent Securities Cases

71.     This prosecution was undertaken by Federal Class Counsel entirely on a contingent-fee basis. From the outset, Federal Class Counsel understood that they were embarking on a complex, expensive, and lengthy litigation with no guarantee of ever being compensated for the substantial investment of time and money the case would require. In

undertaking that responsibility, Federal Class Counsel was obligated to ensure that sufficient resources were dedicated to the prosecution of the Federal Action, and that funds were available to compensate attorneys and staff and to cover the considerable litigation costs that a case like this requires. With an average lag time of many years for complex cases like this to conclude, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis.

72.     Federal Class Counsel also bore the risk that no recovery would be achieved. As discussed above, from the outset, this case presented multiple risks and uncertainties that could have prevented any recovery whatsoever. Despite the most vigorous and competent of efforts, success in contingent-fee litigation like this is never assured. Federal Class Counsel knows from experience that the commencement of a class action does not guarantee a settlement. To the contrary, it takes hard work and diligence by skilled counsel to develop the facts and theories that are needed to sustain a complaint or win at trial, or to induce sophisticated defendants to engage in serious settlement negotiations at meaningful levels.

73.     Moreover, courts have repeatedly recognized that it is in the public interest to have experienced and able counsel enforce the securities laws and regulations pertaining to the duties of officers and directors of public companies. As recognized by Congress through the passage of the PSLRA, vigorous private enforcement of the federal securities laws can only occur if private investors take an active role in protecting the interests of shareholders. If this important public policy is to be carried out, the courts should award fees that adequately compensate plaintiffs' counsel, taking into account the risks undertaken in prosecuting a securities class action.

74.     Federal Class Counsel's extensive efforts in the face of substantial risks and uncertainties has resulted in a favorable recovery for the benefit of the Exchange Act Settlement Class. In circumstances such as these, and in consideration of the hard work and the result achieved, the requested fee is reasonable and should be approved.

**5.      The Reaction to the Settlement Class to the Fee Application**

75.     As noted above, as of February 17, 2021, 31,993 Postcard Notices have been mailed advising Exchange Act Settlement Class Members that Federal Class Counsel would apply for an award of attorneys' fees in an amount not to exceed one-third of the Federal Settlement Fund. Evans Decl. ¶6. In addition, the Court-approved Summary Notice has been published in *Investor's Business Daily* and transmitted over *GlobeNewswire*. *Id.* ¶9. As of February 17, 2021, no objections to the request for attorneys' fees set forth in the Notice have been received. *Id*. ¶13. Should any objections be received, Federal Plaintiffs will address them in their reply papers.

**B.      The Litigation Expense Application**

76.     Federal Class Counsel also seek reimbursement from the Federal Settlement Fund of $78,180.42 in litigation costs and expenses that were reasonably incurred by Federal Class Counsel in connection with litigating and settling the claims asserted in the Federal Action.

77.     From the beginning of their involvement in the Federal Class Action, Federal Class Counsel were aware that it might not recover any of their expenses, and, even in the event of a recovery, would not recover any of their out-of-pocket expenditures until such time as the Federal Action might be successfully resolved. Federal Class Counsel also understood that, even assuming that the case was ultimately successful, reimbursement for expenses would not compensate them for the lost use of the funds advanced by them to prosecute the Federal Action.

Accordingly, Federal Class Counsel were motivated to and did take appropriate steps to avoid incurring unnecessary expenses and to minimize costs without compromising the vigorous and efficient prosecution of the case.

78.     Rosen Law incurred $12,487.45 in unreimbursed litigation expenses in connection with the prosecution of the Federal Action. Rosen Fee Decl. ¶7. Pomerantz incurred $65,692.97 in unreimbursed litigation expenses in connection with the prosecution of the Federal Action. Pomerantz Fee Decl. ¶7. Federal Class Counsel has incurred $78,180.42 in total of unreimbursed expenses.

79.     Substantial litigation expenses for which Federal Class Counsel seeks reimbursement included mediation fees, investigator fees, expert consultant fees, and notice to class member fees. Each of these items, as well as the other expenses incurred such as legal research fees, document retrieval fees, photocopying, travel fees, service of process fees, and filing fees, were necessary for the successful prosecution of this case. These expenses for which Federal Class Counsel seeks reimbursement are the types of expenses that are necessarily incurred in litigation and routinely charged to clients billed by the hour.

80.     The Notice informed potential Settlement Class Members that Federal Class Counsel would be seeking reimbursement of expenses in an amount not to exceed $125,000. The total amount requested, $78,180.42, is significantly below the amount that Settlement Class Members were advised could be sought. As of February 17, 2021, no objection has been raised as to the maximum amount of expenses set forth in the Notice. Evans Decl. ¶13.

81.     All of the litigation expenses incurred by Federal Counsel were reasonable and necessary to the successful litigation of the Action and have been approved by the Federal

Plaintiffs. *See* Cai Decl. ¶11; Kalyan Venkataraman Decl. ¶12, Kalyanasundaram Venkataraman Decl. ¶12; Sacks Decl. ¶12; and Zhu Decl. ¶12.

82.    The expenses incurred by Federal Class Counsel were reasonable and necessary to represent the Settlement Class and achieve the Settlement. Accordingly, Federal Plaintiffs and Federal Class Counsel respectfully submit that the litigation expenses should be reimbursed in full from the Settlement Fund.

83.    Additionally, Federal Plaintiffs seek reimbursement of their reasonable costs and expenses directly incurred in connection with their representation of the Settlement Class, in the amount of $2,500 for each Federal Plaintiff (Cai Decl. ¶¶13, 15; Kalyan Venkataraman Decl. ¶¶14, 16; Kalyanasundaram Venkataraman Decl. ¶¶14,16; Sacks Decl. ¶¶14, 16; and Zhu Decl. ¶¶¶14, 16). Each Federal Plaintiffs, as detailed in their individual declarations, communicated regularly with their counsel regarding case strategy and the procedural posture of the Federal Action, reviewed significant pleadings, and were engaged in the settlement discussions. Knowing they each had a duty to the Exchange Act Class Members, Federal Plaintiffs were actively involved in the Federal Action to obtain the best result as possible for Jumia investors.

84.    The Notice clearly stated that the Federal Plaintiffs would seek up to $2,500 each for their participation in the Federal Action and for reimbursement of their time and expenses. To date, no Exchange Class Member has objected to the request for these awards to Federal Plaintiffs. Evans Decl. ¶13.

## VII.   CONCLUSION

85.    For all the reasons set forth above, Federal Plaintiffs and Federal Class Counsel respectfully submit that: (a) the Federal Settlement and the Plan of Allocation should be approved as fair, reasonable and adequate; (b) the requested fee on behalf of Federal Class

Counsel in the amount of one-third of the Federal Settlement Fund (or $666,666.67) plus interest should be approved as fair and reasonable; (c) the request for reimbursement of actual costs and expenses in the amount of $78,180.42, plus interest, should be approved; and (d) the request for reimbursement to Federal Plaintiffs for their time dedicated to the Federal Action in the amount of $2,500 each, or $12,500 in total, should also be approved.

I declare, under penalty of perjury under the law of the United States, that the foregoing facts are true and correct.  Executed this 17th day of February, 2021.


/s/ Phillip Kim
Phillip Kim

## CERTIFICATE OF SERVICE

I hereby certify that on February 17, 2021, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

By: /s/ Phillip Kim
Phillip Kim