**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE JUMIA TECHNOLOGIES AG SECURITIES LITIGATION, | Master File No. 1:19-cv-04397-PKC |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR**
**<u>DISTRIBUTION OF CLASS ACTION SETTLEMENT FUNDS</u>**

Federal Plaintiffs Hexuan Cai, Kalyan Venkataraman, Kalyanasundaram Venkataraman, Matthew Sacks, and Yifeng Zhu ("Federal Plaintiffs")[1] submit this memorandum of law in support of their Motion for Distribution of Class Action Settlement Funds ("Motion") in the above-captioned Action. If entered by the Court, the [Proposed] Order Granting Distribution of Class Action Settlement Fund ("Class Distribution Order") will, among other things: (i) approve the Claims Administrator's recommendations accepting and rejecting Claims submitted in the Action; and (ii) direct the distribution of the Net Settlement Fund to Federal Authorized Claimants whose Claims have been accepted as valid and approved by the Court. The specifics of the proposed plan for distribution of the Net Settlement Fund are set forth in the accompanying Declaration of Josephine Bravata Concerning the Results of the Claims Administration Process ("Bravata Distribution Decl.").

## I.    BACKGROUND

On October 19, 2020, the Court entered the Order Preliminarily Approving Proposed Settlement, Certifying Exchange Act Settlement Class, Providing for Notice, and Scheduling Settlement Hearing ("Preliminary Approval Order") (ECF No. 113). On March 24, 2021, the Court entered the Order Approving Plan of Allocation (ECF No. 127) and the Order and Final Judgment (ECF No. 129).

The Court-appointed Claims Administrator, Strategic Claims Services ("SCS"), has advised Federal Lead Counsel that it completed all analyses and accounting procedures in connection with the Claim Forms submitted by those persons who responded to the Notice, and has determined which of those persons are, subject to Court approval, Federal Authorized

---

[1] All capitalized terms that are not otherwise defined herein have the seams meanings as set forth in the Stipulation of Settlement dated October 9, 2020 (the "Stipulation") (ECF No. 109).

Claimants. Bravata Distribution Decl. ¶¶6-7. All that remains to complete the Settlement process is to distribute the Net Settlement Fund to the Federal Authorized Claimants. Thus, the Court should authorize the distribution of the Net Settlement Fund to Federal Authorized Claimants, as identified in Exhibits B-1 and B-2 to the Bravata Distribution Decl.

## II.    DETERMINATION OF FEDERAL AUTHORIZED CLAIMANTS

All Claims were to be submitted to the Claims Administrator, online or postmarked no later than April 26, 2021.[2] The Claims Administrator has now finalized its determination of which Claims are authorized and which are ineligible. Bravata Distribution Decl. ¶7.

The Claims Administrator continued processing all claims received up to June 24, 2021. Bravata Distribution Decl. ¶6. As a result of an effective notice program, through June 24, 2021, SCS received 4,421 Claim Forms. *Id.* After reviewing, analyzing, and processing all 4,421 Claim Forms, SCS has finalized its determination of which claims are authorized and which are ineligible. ¶7.

### A.    Valid and Properly Documented Claims

SCS analyzed the 4,421 Claim Forms received through June 24, 2021 and determined that 2,124 valid and properly-document claims were received. Bravata Distribution Decl. ¶ 7(a). Of these 2,124 claims, 2,086 were timely (i.e., received or postmarked no later than April 26, 2021) ("Timely Valid Claims") and 38 were received after the April 26, 2021 filing deadline but before the Claim's Administrator's imposed cut-off date of June 24, 2021 ("Late But Otherwise Eligible Claims"). *Id.* These valid claims represent Recognized Claims of $103,650,252.40 for Jumia American Depositary Shares ("ADSs") purchased during the period from April 12, 2019 through

---

[2] The deadline to submit claims was teed off the notice deadline in both this Federal Action and the State Action. *See* ECF No. 115.

December 9, 2019, inclusive, including Recognized Claims of $101,858,769.76 for Timely Valid Claims and Recognized Claims of $1,791,482.64 for Late But Otherwise Eligible Claims. *Id.*

The Court should accept all 2,124 valid claims, including the 2,086 Timely Valid Claims and the 38 Late But Otherwise Valid Claims. The Late But Otherwise Valid Claims have not caused delay to the distribution of the Net Settlement Fund or otherwise prejudiced any Federal Authorized Claimant, and Federal Plaintiffs believe that it would be unfair to prevent otherwise valid claimants from participating in the Net Settlement Fund solely because their claims were submitted after the April 26, 2021 deadline but while claims were still being processed. *See In re Crazy Eddie Securities Litigation*, 906 F. Supp. 840, 845 (E.D.N.Y. 1995) (stating that the "determination of whether to allow the participation of late claimants in a class action settlement is essentially an equitable decision within the discretion of the court," and allowing late claims postmarked within one month and four days of original deadline to participate in the distribution of settlement funds); *In re Gilat Satellite Networks, Ltd.*, No. CV–02–1510 (CPS)(SMG), 2009 WL 803382, at *6 (E.D.N.Y. Mar. 25, 2009) (including late-filed claims as part of a settlement).

The Court should also enter an Order directing that no claims received after June 24, 2021, or any responses to deficiency and/or rejection notices received after February 2, 2022, be included in the distribution. To facilitate the efficient and proportional distribution of the Net Settlement Fund, there must be a final cut-off after which no other claims may be accepted. *In re Citigroup Inc. Sec. Litig.*, No. 09–Md–2070 (SHS), 2014 WL 7399039, at *4 (S.D.N.Y. Dec. 29, 2014) ("[A]t some point in the distribution of a large class action settlement, such as this one, 'a cutoff date is essential and . . . the matter must be terminated.'"); *Hartman v. Powell*, No. 00-5356, 2001 WL 410461, at *1 (D.C. Cir. Mar. 15, 2001) ("Drawing a line is essential to achieve certainty and finality in such a large class action.").

### B.    Deficient and Ineligible Claims

#### 1.    Inadequately Documented Claims

To be eligible for a payment from the proceeds of the Settlement, Exchange Act Settlement Class Members must submit a Claim Form with adequate supporting documentation. *See* Preliminary Approval Order ¶¶13-14. As detailed in the Preliminary Approval Order, proper documentation may consist of broker confirmation slips, broker account statements, an authorized statement from the broker containing the transactional information found in a broker confirmation slip, or such other documentation as is deemed adequate by the Claims Administrator or Federal Lead Counsel. *Id.*

SCS initially identified 337 inadequately documented claims. Bravata Distribution Decl. ¶ 7(b). For all inadequately documented claims, SCS sent inadequacy notices advising claimants of the inadequacy and giving them the opportunity to cure the deficiency, a sample of which is attached as Exhibit C to the Bravata Distribution Decl. *Id.* Of the 337 claims initially identified as deficient, 115 have been successfully cured and are now considered valid. *Id.* The remaining 222 deficient claims either did not respond to the inadequacy notice or responded with insufficient documentation. *Id.* These claimants were sent a rejection notice explaining the reason(s) for their inadequacy. *Id.* A list of claimants rejected due to inadequate supporting documentation is attached as Exhibit D to the Bravata Distribution Decl. To date, none of the 222 inadequate claimants have objected to or contested SCS's determination. *Id.*

The Court approved the content of the Notice when issuing the Preliminary Approval Order and mandated the documentation necessary to the submission of a valid claim. *See* Preliminary Approval Order at ¶14. Each of the 222 claimants have failed to provide proper documentation

and the Court should, therefore, accept the Claim Administrator's determination and reject these claimants' disputed Claims.

### 2. Claims Rejected for Reasons Other Than Inadequate Documentation

To be eligible for a payment from the proceeds of the Settlement, Exchange Act Settlement Class Members must evidence transactions that result in a Recognized Loss under the Court approved Plan of Allocation. *See* Notice (Dkt. No. 109-2 at 27).

SCS identified 2,075 claims that it recommends for complete rejection. Bravata Distribution Decl. ¶ 7(c). The reasons for rejection included: (i) claims with no Recognized Losses; (ii) claims which were withdrawn by the beneficial owner; (iii) claims with Jumia Technologies AG ("Jumia") ADSs purchased outside of the Class Period; (iv) duplicate claims; (v) claims with Jumia ADSs that were not purchased or otherwise acquired, but were received or granted by gift, inheritance, or operation of law; (vi) claims with shares sold short; (vii) claims filed for securities other than Jumia ADSs; and (viii) fraudulent claims. *Id.* A list of these claims is attached as Exhibit E to the Bravata Distribution Decl. Such claimants were sent ineligibility notices advising them of SCS's determination. *Id.*, Exhibit F (sample ineligibility notice).

## III. PLANNED DISTRIBUTION OF THE NET SETTLEMENT FUND

Federal Lead Counsel now seeks to distribute the Net Settlement Fund to the Exchange Act Settlement Class Members, in accordance with ¶5.3 of the Stipulation, whose 2,124 claims have been accepted as set forth in Exhibits B-1 and B-2 of the Bravata Distribution Decl.

Consistent with the Plan of Allocation and with the Court's approval, the Claims Administrator will conduct an initial distribution of the Net Settlement Fund to all Federal Authorized Claimants on a *pro rata* basis whose distribution payments calculates to $10.00 or more. Bravata Distribution Decl. ¶ 9(b); Notice (ECF No. 109-2 at 27). Based on the substantial

experience of Federal Lead Counsel in similar distributions, it can be expected that a certain number of the payments to be distributed to Exchange Act Settlement Class Members who filed valid Claims will not be cashed promptly. To encourage Federal Authorized Claimants to promptly cash their distribution checks and to avoid or reduce future expenses relating to unpaid distributions, Lead Counsel proposes that all the distribution checks bear a notation "CASH PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION 180 DAYS AFTER ISSUE DATE." Bravata Distribution Decl. ¶ 9(c).

The Claims Administrator will make reasonable and diligent efforts to encourage Federal Authorized Claimants who are entitled to participate in the distribution of the Net Settlement Fund to cash their distribution. If, however, after six months any funds remain in the Net Settlement Fund, by reason of uncashed checks or otherwise, the Claims Administrator will conduct a redistribution. During the redistribution, any amounts remaining in the Net Settlement Fund after the initial distribution, after payment of amounts mistakenly omitted from the initial distribution to Federal Authorized Claimants, and after payment of Administration Costs incurred in administering the Settlement (including costs or fees of such redistribution), will be redistributed to all Federal Authorized Claimants in the Initial Distribution who cashed their distribution checks and would receive at least $10.00 from the Second Distribution. *Id.* ¶ 9(d); Stipulation ¶ 5.6.

## IV.    RELEASE OF CLAIMS

To allow the full and final distribution of the Net Settlement Fund, the Court must bar any further claims against the Net Settlement Fund beyond the amounts allocated to Federal Authorized Claimants, and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement

6

Fund, be released and discharged from any and all claims arising out of such involvement. Accordingly, the Court should release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund from any and all claims arising out of such involvement and bar all Exchange Act Settlement Class Members, whether or not they receive payment from the Net Settlement Fund, from making any further claims against the Net Settlement Fund, Federal Plaintiffs, Federal Lead Counsel, the Claims Administrator, the Escrow Agent, or any other agent retained by Federal Plaintiffs or Federal Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund beyond the amounts allocated to them under the terms of the Distribution Order. *See In re Top Tankers, Inc. Sec. Litig.*, Order Authorizing Distribution of Net Settlement Fund at p.4, ECF No. 123, Case No. 1:06-cv-13761-CM (S.D.N.Y Dec. 14, 2009); *In re Veeco Instruments Inc. Sec. Litig.*, Order Approving Distribution of Net Settlement Fund at ¶8, ECF No. 171, Case No. 1:05-cv-10226-CM (S.D.N.Y. Sept. 8, 2009).

## V.    RECORDS RETENTION AND DESTRUCTION

The Court should order that: (i) in no less than one year after the second distribution of the Net Settlement Fund, if that occurs, or, if there is no second distribution, two years after the initial distribution, the Claims Administrator may destroy the paper copies of the Claims and all supporting documentation; and (ii) in no less than one year after all funds have been distributed, the Claims Administrator may destroy the electronic copies of the Claims and all supporting documentation.

## VI.    CONCLUSION

Based on the foregoing, the Court should approve and enter the [Proposed] Order Granting

Motion for Distribution of Class Action Settlement Funds, submitted herewith.

Dated:  February 4, 2022                       Respectfully submitted,

                                               **POMERANTZ LLP**

                                               */s/ Brenda Szydlo*
                                               Jeremy A. Lieberman
                                               Brenda Szydlo
                                               Villi A. Shteyn
                                               600 Third Avenue, 20th Floor
                                               New York, New York 10016
                                               Telephone: (212) 661-1100
                                               Facsimile: (917) 463-1044
                                               Email: jalieberman@pomlaw.com
                                               Email: bszydlo@pomlaw.com
                                               Email: vshteyn@pomlaw.com

                                               **THE ROSEN LAW FIRM, P.A.**
                                               Phillip Kim
                                               Laurence M. Rosen
                                               Brian Alexander
                                               275 Madison Ave., 40th Floor
                                               New York, New York 10016
                                               Telephone: (212) 686-1060
                                               Fax: (212) 202-3827
                                               Email: pkim@rosenlegal.com
                                               Email: lrosen@rosenlegal.com
                                               Email: balexander@rosenlegal.com

                                               *Federal Class Counsel for Federal Plaintiffs and*
                                               *the Exchange Act Settlement Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 4, 2022, a true and correct copy of the foregoing document

was served by CM/ECF to the parties registered to the Court's CM/ECF system.


*/s/ Brenda Szydlo*
Brenda Szydlo